Jonah J. Horwitz, Idaho Bar No. 10494
Christopher M. Sanchez, Idaho Bar No. 12070
FEDERAL DEFENDER SERVICES OF IDAHO
702 W. Idaho Street, Suite 900, Boise, ID 83702-8929
Telephone: (208) 331-5530; Facsimile: (208) 331-5559
ECF: jonah_horwitz@fd.org
        christopher_m_sanchez@fd.org

Stanley J. Panikowski, California Bar No. 224232
(admitted *pro hac vice*)
DLA PIPER LLP (US)
401 B Street, Suite 1700, San Diego, CA 92101-4297
Telephone: (619) 699-2700; Facsimile: (619) 699-2701
ECF: stanley.panikowski@dlapiper.com

Sarah E. Kalman, Pennsylvania Bar No. 325278
(admitted *pro hac vice*)
DLA PIPER LLP (US)
One Liberty Place
1650 Market Street, Suite 500, Philadelphia, PA 19103-7301
Telephone: (215) 656-2438; Facsimile: (215) 656-3301
ECF: sarah.kalman@dlapiper.com

*Attorneys for Plaintiff Gerald Ross Pizzuto, Jr.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **GERALD ROSS PIZZUTO, JR.,** ) | **CASE NO. 1:21-cv-00359-BLW** |
| ) | |
| Plaintiff, ) | **MEMORANDUM IN SUPPORT OF** |
| ) | **SECOND MOTION TO COMPEL** |
| v. ) | **DISCOVERY (Idaho Code § 19-** |
| ) | **2716A)** |
| **JOSH TEWALT**, Director, Idaho Dept. of ) | |
| Correction, et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

For the reasons that follow, and pursuant to Fed. R. Civ. Proc. 37 Plaintiff Gerald Ross Pizzuto, Jr. asks that the Court order Defendants to produce the discovery described below.[1]

**I.      Defendants have waived many of their Idaho Code § 19-2716A objections.**

Eight separate invocations of Idaho Code § 19-2716A by Defendants came in several different untimely responses. These objections should be deemed waived based on lateness alone.

The discovery requests at issue in this section of the memorandum are Interrogatories 3, 4, 7, 8, 15, and 19, as well as Requests for Admission (RFAs) 54 and 89. Interrogatories 3, 4, 7, and 8 were all served in Mr. Pizzuto's first set. *See* Dkt. 54-31. The first set of interrogatories were served on October 14, 2022. *See id.* Absent stipulation or court order (which did not occur here), responses were due November 14, 2022. *See* Fed. R. Civ. P. 33(b)(2). Defendants responded on November 18, 2022. *See* Dkt. 54-13. Interrogatory 15 was included in Mr. Pizzuto's second set, which was served on November 27, 2022. *See* Ex. 1. Thus, a response was due by December 27, 2022. *See* Fed. R. Civ. P. 33(b)(2). Defendants responded on January 17, 2023. *See* Ex. 2. Interrogatory 19 appeared in the third set. *See* Ex. 3. Mr. Pizzuto served the third set of interrogatories on January 20, 2023. *See id.* Thirty days from January 20, 2023 was February 19, 2023. That was a Sunday and the next day was a federal holiday. Consequently, responses were due the following day, February 21, 2023. *See* Fed. R. Civ. P. 6(a)(1)(C). Defendants provided their response on March 22, 2023. *See* Ex. 4.

_____

[1] Mr. Pizzuto refers here to the Interrogatories by the numbers assigned in his request to Defendants. *See* Dkt. 54-31 at 22–23. In their response to the Interrogatories, Defendants mistakenly repeated the number "three" twice, and then proceeded sequentially from there. *See* Dkt. 54-13 at 3–4.

RFA 54 and 89 were both a part of Mr. Pizzuto's second set. The second set was served on January 20, 2023. *See* Ex. 5. For the same reasons just noted, a response was due February 21, 2023. *See* Fed. R. Civ. P. 36(a)(3). Defendants responded on February 22, 2023. *See* Ex. 6.

In short, all eight of the objections were late.

Unless there has been a finding of excusable neglect to justify an enlargement of time, *see* Fed. R. Civ. P. 6(b)(1)(B), untimely objections are waived, and a responding party is compelled to answer the discovery request, *see Puget Sound Underwriters, Inc. v. Inlet Fisheries, Inc.*, 232 F.R.D. 609, 610–11 (D. Alaska 2005). Courts weigh the following factors: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was reasonably under the control of the movant, and (4) whether the moving party's conduct was in good faith." *Id.* (quoting *Pincay v. Andrews*, 389 F.3d 853, 855 (9th Cir. 2004) (en banc)).[2]

Although there has admittedly not been a substantial amount of prejudice to Mr. Pizzuto, the remaining factors tip the scales in favor of a waiver. To begin, there have been substantial delays. As the recitation above demonstrates, Defendants submitted their response to the second set of interrogatories approximately three weeks late and their response to the third set one month late. *See, e.g., Asurea Wholesale Ins. Servs. v. Mountain Fin. Network, etc.,* No. 2:20-cv-3673, 2020 WL 12309499, at *7 (C.D. Cal. Oct. 5, 2020) (finding discovery objections waived where the responses were three weeks late). Moreover, Defendants have provided no credible reason for the delay. Indeed, they never asked for Mr. Pizzuto's permission to extend any of the relevant deadlines. There is no reason Defendants' objections could not have been prepared more

---

[2] Unless otherwise noted, all internal quotation marks and citations are omitted, and all emphasis is added.

rapidly and served within the timeframe clearly delineated by the Rules. Accordingly, this factor militates against enlarging time.

Finally, although there is arguably no evidence of bad faith per se, Defendants' pattern of delay does necessitate consequences. In particular, Defendants have submitted untimely responses to at least *seven* separate discovery requests. Apart from the four untimely responses described above, Defendants were also late in dealing with Mr. Pizzuto's first request for production of documents (RFP), his request for entry upon land for inspection, and his first set of RFAs. *See* Dkt. 61-1 at 2–3. The unusual consistency over time of Defendants' unexplained lateness is a compelling basis for judicial intervention. There should be ramifications to such largescale violation of mandatory timelines, and waiver is the most natural remedy. *See Carfagno v. Jackson Nat'l. Life Ins. Co.*, No. 5:99CV118, 2001 WL 34059032, at *1 (W.D. Mich. Feb. 13, 2001) ("If the time limits set forth in the discovery rules are to have any meaning, waiver is a necessary consequence of dilatory action in most cases."). In any event, "the absence of bad faith in the context of this case does not weigh in favor of an enlargement of time" when the remaining factors so strongly favor Mr. Pizzuto. *Puget Sound*, 232 F.R.D. at 611.

In light of the above, the § 19-2716A objections to the eight discovery requests outlined above should be deemed waived and Defendants should be ordered to respond.

## II.    Defendants' § 19-2716A objections are meritless.

Moving to the substance of the discovery disputes, Mr. Pizzuto will first quote the germane requests and responses. Every part of this memorandum is incorporated into every other part.

### A. The discovery requests and responses

Pursuant to Dist. Idaho Loc. Civ. R. 37.2, the relevant discovery requests that Mr. Pizzuto

posed, and Defendants' objections, are provided verbatim below.

### 1. Interrogatories

3. If manufactured, what companies are involved in their manufacture?
RESPONSE: Defendants Tewalt and Richardson object to this interrogatory pursuant to Idaho Code § 19-2716A, which prohibits the disclosure of "[a]ny person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution…." Further, Defendants cannot answer this interrogatory as the Department does not currently have any execution chemical in its possession.

4. If compounded, what is the compounding pharmacy?
RESPONSE: Defendants Tewalt and Richardson object to this interrogatory pursuant to Idaho Code § 19-2716A, which prohibits the disclosure of "[a]ny person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution…." Further, Defendants cannot answer this interrogatory as the Department does not currently have any execution chemical in its possession.

7. Describe how the drugs were chosen for Mr. Pizzuto's execution.
RESPONSE: Defendants Tewalt and Richardson object to this interrogatory pursuant to Idaho Code § 19-2716A, which prohibits the disclosure of "[a]ny person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution…." Further, Defendants cannot answer this interrogatory as the Department does not currently have any execution chemical in its possession.

8. Describe how the source of the drugs was chosen for Mr. Pizzuto's execution, i.e., the compounder or manufacturer.
RESPONSE: Defendants Tewalt and Richardson object to this interrogatory pursuant to Idaho Code § 19-2716A, which prohibits the disclosure of "[a]ny person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution…." Further, Defendants cannot answer this interrogatory as the Department does not currently have any execution chemical in its possession.

15. Describe in detail every step you have taken from August 23, 2022 to the present to locate a source of chemicals for Mr. Pizzuto's execution. If you invoke Idaho Code § 19-2716A in responding to this Interrogatory, please provide every piece of responsive information that is not exempted by the statutory provision. Please also characterize with as much specificity as possible the information that is being

MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL – Page 5

withheld pursuant to § 19-2716A. Note that the relevant text of § 19-2716A only applies to "the identities" of various persons and entities. To the extent that a response calls for information other than identity, the information should be provided. By way of non-exhaustive example, Defendants should set forth what types of people are being contacted for chemicals, what mediums the communications are taking, what specifications are being provided to potential sources, what information is being sought from potential sources, what research is being done to identify and screen potential sources, and so on.

DEFENDANT TEWALT'S RESPONSE: On December 1, 2022, counsel for IDOC objected to this interrogatory. Director Tewalt continues to object to this interrogatory on the grounds that Idaho Code § 19-2716A(4) requires that the identifies of any person or entity providing the chemicals or substances for use in an execution remain confidential. Disclosure of the specific steps taken during the search for executions chemicals creates a high potential for indirect identification of the source of execution chemicals. Once execution chemicals are secured, the chemicals can be tested for purity and potency; verification of purity and potency of the chemicals to be used in an execution satisfied 8th Amendment requirements. As such, IDOC objects to this interrogatory requesting details regarding its efforts to secure execution chemicals as such information is not relevant to the 8th Amendment claims in this matter.

Notwithstanding this objection, Director Tewalt responds that IDOC staff have contacted people or entities likely to have in their possession chemicals or substances authorized for use in an execution pursuant to SOP 135 and *Execution Chemicals preparation and Administration*. IDOC staff have used various forms of communication in their efforts to lawfully secure execution chemicals.

SUPPLEMENTAL RESPONSE MARCH 31, 2023: Plaintiff has asked for clarification regarding: the types of people or entities IDOC have contacted; specific types of chemicals IDOC staff have pursued; whether IDOC staff have sought compounded chemical(s), and the types of communication IDOC staff have used. Defendant Tewalt offers the following supplemental response: IDOC staff have contacted people or entities authorized under state and federal law to possess and dispense chemical or substances authorized for use in an execution pursuant to SOP 135 and Execution Chemicals Preparation and Administration. Defendant Tewalt has nothing further to add.

19. In their Response to Plaintiff's First Set of Interrogatories, served on November 18, 2022, Defendants indicated that "Medical Team No. 1" left the medical team "after March 2022." Describe the circumstances under which "Medical Team No. 1" left, including their reasons for leaving.

RESPONSE: Director Tewalt objects to this interrogatory on the grounds that Idaho Code § 19-2716A(4) requires that the identities of any person involved in the planning, training, or performance of an execution shall remain confidential. Notwithstanding this objection, Director Tewalt responds that Medical Team No. 1 retired from the Medical Team in good standing. Director Tewalt further responds he is not aware of any disciplinary or other basis that would have required removal of Medical Team No. 1.

## 2.  Requests for Admission

54. Admit that you will make inquiries to determine the manufacturer of the API for the Execution Drugs.
    ANSWER: Defendant Tewalt objects to this request as it is protected information under Idaho Code § 19-2716A. Defendant Tewalt denies he will request this information from the chemical source.

89. Admit that you will identify to undersigned counsel the person or persons providing the "technical assistance" and performing the "technical review" described on page 25 of SOP 135.
    ANSWER:  Defendant Tewalt objects to this request for admission under the prohibitions of Idaho Code § 19-2716A.

## 3.  Requests for Production

On October 28, 2022, Mr. Pizzuto served on Defendants his Second Set of RFPs. They included RFP 16, which sought—inter alia—emails involving IDOC official Ross Castleton and relating to the execution chemicals. Defendants responded that they

    object to this request as it does not contain a date range.[3] Defendants Tewalt and Richardson further object to this request pursuant to the provisions of Idaho Code § 19-2916A to the extent that production could result in the identification of any employee, agent or contractor involved in carrying out the execution or obtaining, transporting, compounding and/or otherwise administering execution chemicals.
    Notwithstanding the foregoing objections, Defendants provide responsive emails via file transfer link.

One of the responsive emails provided was IDOC document number 5996. See Ex. 8. It is an email from Mr. Castleton to his colleague Chad Page bearing several redactions.[4] Defendants' privilege log references two bases for the redactions: personal identifiable information (PII) and § 19-2716A. See Ex. 9 at 1. In the space for "further explanation," Defendants wrote: "This

---

[3] Defendants' date-range objection was erroneous. The Second Set of RFPs indicated that "[f]or each of the Requests," Mr. Pizzuto was "seeking responsive emails generated between January 1, 2020" and the present. Ex. 7 at 2.

[4] Mr. Pizzuto added redactions to the document so that it only reveals the information germane to the discovery dispute. The redactions made by Mr. Pizzuto include the letters "FDSI."

MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL – Page 7

email contains personnel information related to former Deputy Chief Ross Castleton. The information is confidential and for attorney eyes only. The redacted information could lead to the disclosure of a potential source or team member – the recovery doctor." *Id.*

### B. Defendants' reliance on Idaho Code § 19-2716A is misplaced.

Turning to the argument, Mr. Pizzuto will first show why the statute does not apply to most of the requested discovery and then why it should not be enforced here in any event.

#### 1. Much of the requested information does not implicate the statute.

A large percentage of the facts at issue do not implicate § 19-2716A under the plain language of the statute.

The decisive language in § 19-2716A has never been subjected to judicial analysis before. "In deciding the merits of a claim that involves a novel question of state law, it is the rule in this circuit that [the Court] must try to predict how the highest state court would decide the issue." *Mueller v. Auker*, No. CV-04-399, 2005 WL 8159827, at *14 (D. Idaho Apr. 13, 2005) (quoting *Kohler v. Inter-Tel Tech.*, 244 F.3d 1167, 1171 (9th Cir. 2001)). The Idaho Supreme Court consistently adheres to the principal that judicial interpretations of statutes turn on the provisions' "literal words," which "must be given their plain, usual, and ordinary meaning." *State v. Thiel*, 343 P.3d 1110, 1115 (Idaho 2015). "Where the language of a statute is clear and unambiguous, statutory construction is unnecessary, and" the courts "need only determine the application of the words to the facts of the case at hand." *Porter v. Bd. of Trustees, Preston Sch. Dist. No. 201*, 105 P.3d 671, 674 (Idaho 2004).

Following the Idaho Supreme Court's straightforward and well-settled approach, several of the objected-to requests fall far outside the ambit of the statute.

The terms of section 19-2716A apply only to "the identities" of certain persons or entities. But a great deal of the information sought in these discovery requests does not relate to anyone's identity. Interrogatories 7 and 8, for instance, ask how the specific drug and chemical source chosen for Mr. Pizzuto's execution were selected. Defendants can easily answer the interrogatories without revealing any person or company whatsoever. *See supra* at 5. Likewise, Interrogatory 19 seeks "the circumstances under which" medical team member 1 left the execution team. *See supra* at 6. Defendants will only say that the individual retired from the team "in good standing." *See supra* at 6. Yet there is no doubt that Defendants would be able to supply more information about the departure without exposing the person's identity. Their refusal to meaningfully engage with the interrogatories is not justifiable under § 19-2716A.

Similarly, Interrogatory 15 requests from Defendants an account of the steps they have taken "to locate a source of chemicals for Mr. Pizzuto's execution." *See supra* at 5. The only information Defendants have provided in response to the interrogatory is a generic statement that "IDOC staff have contacted people or entities likely to have in their possession chemicals or substances authorized for use" under the protocol. *See supra* at 6. In further discussions, Mr. Pizzuto clarified some of the information he believed Defendants could supply without violating the statute, including the types of drugs IDOC has made inquiries about; whether the chemicals inquired about are compounded or manufactured; the categories of people contacted (e.g., correctional staff, pharmacies, etc.); and the types of communications used. *See supra* at 6. Defendants added only that the inquiries have gone to those "authorized under state and federal law to possess and dispense" the drugs. *See supra* at 6.

The rationale Defendants have articulated for their boilerplate responses is that any further facts "create a high potential for indirect identification of the source of execution

chemicals." *Supra* at 6; *accord* Ex. 10 at 2 (elaborating on the same theory in a letter dated December 1, 2022). There are two flaws in Defendants' reasoning.

First, the statute does not prohibit the disclosure of information that generates "a high potential for the indirect identification of" sources. *Id.* Instead, § 19-2716A was written precisely to bar only the exposure of "*identities*." § 19-2716A(4). There is nothing ambiguous about the term "identity." The pertinent definition is "information (as a name or address) that distinguishes a person." Merriam-Webster, identity, available at https://www.merriam-webster.com/dictionary/identity; *see also* Ga. Code Ann. § 42-5-36(d)(1) (defining identifying information for purposes of an execution-secrecy statute as "any records or information that reveals a name, residential or business address, . . . telephone number, day and month of birth, social security number, or professional qualifications"). "Reasonable minds could" not interpret the term any other way, and it is accordingly unambiguous. *State v. Winkler*, 473 P.3d 796, 800 (Idaho 2020). Defendants wish that the statute had been drafted to cover a broader range of information beyond identities, but that is not a license to "insert words into a statute that the Court believes the legislature left out, be it intentionally or inadvertently." *St. Alphonsus Reg'l Med. Ctr. v. Gooding Cnty.*, 356 P.3d 377, 382 (Idaho 2015).

When the Idaho legislature wants to establish a statutory test dealing with disclosure that might *lead* to identifying information, it does so. *See* Idaho Code § 16-1626 (providing that a person receiving juvenile court records for research purposes "must agree not to disclose any information which *could lead to the identification of the child*"). Other lawmakers elsewhere understand how to create the same rule. *See State v. Mordowanec*, 788 A.2d 48, 56 n.11 (Conn. 2002) (quoting a statute that exempts from a public records act documents "which identify *or could lead to identification* of the utility usage or billing information of individual customers").

The fact that the legislature could have codified the test proposed by Defendants—and chose not to—gives rise to a strong inference that the literal words of the statute are instead the proper guideposts. *See Twin Lakes Canal Co. v. Choules*, 254 P.3d 1210, 1215 (Idaho 2011) (observing that the legislature "knows how to insert" the kind of language a party was reading into a statute and relying on the words' absence from the law to reject the party's position).

Second, even if Defendants' extra-statutory test about indirect risk were appropriate, it would not authorize their level of non-transparency. Defendants' stance with respect to Interrogatory 15 is that they cannot even tell Mr. Pizzuto whether they are seeking pentobarbital or another drug; whether it is compounded pentobarbital or manufactured; whether they contacted an unnamed prison official in an unnamed state for the chemical or instead a pharmacist; or anything else. But it is simply incorrect that any of these pieces of information engender any real danger of exposing an actual source. The fact that a state is seeking compounded pentobarbital is entirely unremarkable. Several other jurisdictions do, and their choice in that regard has been litigated in federal court without any impact on their ability to carry out executions. *See, e.g.*, *United States v. Mitchell*, 971 F.3d 993, 998 (9th Cir. 2020); *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1325 (11th Cir. 2020); *Whitaker v. Collier*, 862 F.3d 490, 493–94 (5th Cir. 2017). Defendants would have the court believe that Idaho is the only state in the country where correctional officials have to keep even those most rudimentary facts about a matter of great public interest shrouded in complete darkness. They are mistaken, and their bald invocation of risk does not satisfy their obligation to demonstrate "*specifically* how the objected-to request is unreasonable or otherwise unduly burdensome." *Rhodes v. JLG Indus.*, *Inc.,* No. 1:13-cv-872, 2015 WL 11199066, *2 (N.D. Ga. Apr. 30, 2015).

In their December 1, 2022 letter, Defendants also maintained—in part in response to Interrogatory 15—that "[t]he identity of the team members and the source of the chemical are irrelevant to this case." Ex. 10 at 2. Interrogatory 15 does not seek the identity of any team members. As for the source of the chemical, Defendants' letter averred that testing the drugs obviates any need to learn about the source. *See id*. Defendants misunderstand relevance. Relevance is construed "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Mr. Pizzuto's claim revolves around the risk of unconstitutional pain and suffering at his execution. *See generally* Dkt. 13. One set of risk factors Mr. Pizzuto has highlighted stems from problems with the sourcing and compounding of execution drugs. *See id.* at 7–12. If IDOC is contacting unreliable sources, that is plainly a matter that bears on an issue in the case, and it is consequently relevant.[5]

The other defect in Defendants' reasoning is that the testing results do not exist. IDOC has not obtained the drugs and it has not had the testing done. In discovery, Defendants have acknowledged that they are not obligated to review the testing results until "seven to two days

---

[5] At the April 3, 2023 mediation conference, Mr. Pizzuto explained that IDOC is refusing to make available any information about the laboratory that performs the testing of the execution drugs, which means that the results are insufficient to allay concerns about the reliability of the source. The Court directed Mr. Pizzuto to provide a list to Defendants of questions he would like answered about the testing. He has done so and is awaiting a response from Defendants. Based on previous dialogue with Defendants, Mr. Pizzuto believes there will ultimately be intractable disputes about the accessibility of information concerning the testing, which will further undermine Defendants' relevancy objection. Mr. Pizzuto will address the status of these discussions in his reply in support of the instant motion.

Insofar as Defendants were asserting in their December 1 letter a relevancy objection to the *other* interrogatories at issue here—3, 4, 7, and 8—the argument is waived not only because all of the responses were untimely, but because when they were finally provided the responses said nothing about relevance. *See supra* at 5–6.

MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL – Page 12

prior to the execution." Ex. 6 at 15.[6] Mr. Pizzuto is currently seeking discovery that he is entitled

to seek under a scheduling order imposed by the Court with the parties' consent. *See* Dkts. 41–

43, 65, 66, 78, 80. One of the primary purposes of discovery is to enable the parties to adequately

brief summary-judgment papers, *see, e.g.*, *In re DBSI, Inc.*, No. 1:13-cv-86, 2013 WL 12306486,

at *2 (D. Idaho Nov. 20, 2013), which are currently due in September 2023, *see* Dkt. 80 at 2. Mr.

Pizzuto has a right to develop his summary-judgment case with all of the relevant evidence in

Defendants' possession now. There is no authority requiring him to wait until a week before his

execution before he can access relevant information, and it would be inappropriate to defer

important discovery based on an entirely speculative timeframe. *See Alzheimer's Found. of Am.*

*v. Alzheimer's Disease and Related Disorders Assoc.*, No. 10 Civ. 3314, 2015 WL 4033019, at

*17 (S.D.N.Y. June 29, 2015) (rejecting a defendant's attempt to postpone productions to a later

date because even though there might be "additional disclosure obligations in the future, it is not

relevant to the [defendant's] current duty to disclose" and ordering that any responsive materials

in existence "be turned over now, not later").

Defendants' effort to free themselves from binding discovery duties based on

hypothetical future events is especially inapt for a method-of-execution case like this one. Mr.

Pizzuto has been diligent in prosecuting his claim and has been steadily seeking discovery in

accordance with the Court's scheduling orders. If Mr. Pizzuto is provided with all the discovery

to which he is entitled, he will be able to present his claim with enough information such that the

Court can in a deliberative and thorough fashion render the correct decision. Defendants'

---

[6] Defendants' representation is in keeping with recent history. For Mr. Pizzuto's prior two death
warrants, the State was actively pursuing chemicals until—respectively—sixteen days and
fourteen days before the execution. *See* Dkts. 63-1, 74-1. If IDOC had obtained the drugs, the
testing would presumably have been done during that extremely short timeframe.

MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL – Page 13

competing plan is to conceal key information so that the most important facts are revealed only on the eve of an execution, with no time for the full and thoughtful process warranted in this life-and-death case. That is precisely the approach the Ninth Circuit has cautioned against in such serious matters. *See Towery v. Brewer*, 672 F.3d 650, 653 (9th Cir. 2012) (characterizing as unacceptable "a rolling protocol that forces [the parties and the Court] to engage with serious constitutional questions and complicated factual issues in the waning hours before executions").

RFA 89 also lies beyond the reach of § 19-2716A. The RFA involves the identity of the person "providing the 'technical assistance' and performing the 'technical review' described on page 25 of SOP 135." *Supra* at 7. Defendants' appeal to § 19-2716A on the RFA is off-point. Section 19-2716A carefully delineates the people protected by the statute. They are characterized in § 19-2716A(4) as "the following persons or entities," and the next two provisions contain the list: "[t]he on-site physician and any member of the escort team or medical team" as well as anyone "who compounds, synthesizes, tests, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances" or "that provides the medical supplies or medical equipment for the execution process." § 19-2716A(4)(a), (b). The individual providing the "technical assistance" and the "technical review" is not on the list. As before, Defendants' preference for a different statute with a longer list does not affect the Court's duty to construe the law as written. *See Pentico v. Idaho Comm. for Reapportionment*, 504 P.3d 376, 379–80 (Idaho 2022) ("Where a statute or constitutional provision is clear we must follow the law as written.").

Finally, Defendants' redaction of IDOC document number 5996 has not been justified under the statute. The email refers to the "rescue doctor," and the first redaction appears to be the physician's name. Ex. 8 at 1. This presumably reflects the identity of the "on-site physician," § 19-2716A(4)(a), and would therefore seem to be properly redacted under the statute. It is

plausible that the second redaction, which immediately follows, falls into the same category. *See* Ex. 8 at 1. But the focus of the email then shifts to matters regarding pharmacy licensing, federal drug registration, and lethal-injection chemicals. *See id*. None of those subjects raise on their face the "identities" that are the sole concern of § 19-2716A. Because Defendants have not established a valid basis for the final redaction, they should be ordered to provide the email without the markings. Alternatively, the Court should at least call for an unredacted version of the email for its own in camera review so that the legitimacy of the claimed privilege can be assessed.  *See Mogadam v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-224, 2015 WL 6510352, at *2 (D. Idaho Oct. 28, 2015) (noting that this Court ordered a party to submit unredacted copies of a document to resolve a dispute over whether the redactions were appropriate in light of the asserted privilege).[7]

## 2.   Section 19-2716A does not govern these federal discovery proceedings.

Defendants seek to avail themselves of a state confidentiality law to restrict discovery in federal court. Put another way, they ask this Court to recognize a new privilege to evade federal discovery obligations. The Court should decline this invitation.

A core presumption of federal civil litigation is that "discovery disputes in federal courts are governed by federal law, especially the Federal Rules of Civil Procedure and the Federal Rules of Evidence." *Pearson v. Miller*, 211 F.3d 57, 61 (3d Cir. 2000); *see also Henry A. v. Willden*, 271 F.R.D. 184, 187 (D. Nev. 2010) (citing, *inter alia*, Advisory Committee Notes to

---

[7] To the extent Defendants are relying on PII and attorney eyes only in their privilege log in connection with document 5996, it is Mr. Pizzuto's understanding that such designations mean only that the relevant information will be provided after the Court has entered a protective order, which the parties have now proposed. *See* Dkt. 81. However, because there appears to be information redacted solely in reliance on § 19-2716A—and because that reliance is grounded in a mistaken legal theory—it is appropriate for the Court to resolve the statutory issue now.

Rule 501 for the proposition that "state law applies *only in diversity cases*"). "Only to the extent that federal law may recognize the force of [state statutory confidentiality provisions] are they relevant" to a discovery dispute in federal court. *Pearson,* 211 F.3d at 61.

Accordingly, Federal Rule of Civil Procedure 26(b)(1) requires Defendants to produce, at Mr. Pizzuto's request, "any *nonprivileged* matter that is relevant to any party's claim or defense and proportional to the needs of the case." There are, consequently, three grounds on which Defendants can refuse to respond to a valid discovery request, other than lack of knowledge: (1) relevance; (2) proportionality; and (3) privilege. By refusing to answer certain requests on the basis of section 19-2716A, Defendants have intimated that the information called for is subject to a state-created privilege.

But the question of what is, or what is not, privileged is a question of federal law. *See, e.g.*, *Roberts v. Heim*, 123 F.R.D. 614, 620 (N.D. Cal. 1988); *see also* Fed. R. Evid. 501 (clarifying that state privilege law applies only in cases where state law supplies the substantive law). Indeed, to permit a state to decide the scope of federal discovery based on state-created privileges that are not recognized under federal law is unconstitutional under the Supremacy Clause of Article IV and the federal-question jurisdictional provisions of Article III. *See* Wright & Miller, 23A Fed. Prac. & Proc. Evid. § 5432 ("A person who had read Article III of the Constitution . . . would be startled to hear it argued that the states can impose restrictions on the power to compel testimony that apply to federal as well as state judges.")

Where a state has passed a confidentiality law on which a party seeks to rely to refuse to comply with a discovery request, the federal court can recognize the asserted privilege based on the statute only if (1) the cause of action arises from state law, *see* Fed. R. Evid. 501, which is not the case here; or, (2) the federal court is prepared to create a new privilege under federal law,

see *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996). "The general test to be applied in assessing privilege candidates is whether such a privilege promotes sufficiently important interests to outweigh the need for probative evidence." *Pearson*, 211 F.3d at 67 (quoting *Trammel v. United States*, 445 U.S. 40, 51 (1980)). The Supreme Court has cautioned that privileges "are not lightly created nor expansively construed." *United States v. Nixon*, 418 U.S. 683, 710 (1974). And although the creation of a privilege under state law might sometimes counsel in favor of recognizing the privilege in federal court, "[t]he appropriateness of deference to a state's law of privilege is diminished . . . in cases in which a defendant state actor alleged to have violated citizens' federal rights is asserting the privilege." *Pearson*, 211 F.3d at 68.

It would be wholly inappropriate to craft a new federal privilege to conform to § 19-2716A. The purpose of that statute, by its own terms, is to protect the identity of manufacturers, compounders, distributors, and those who administer the chemicals that will be used to kill Mr. Pizzuto. It defies credulity to suggest that such confidentiality "outweighs the need for probative evidence" to determine whether Mr. Pizzuto's execution will be carried out constitutionally. *See id.* at 67. Moreover, remedies are immediately available that would cure Defendants' concerns. Federal Rule of Civil Procedure 26(c) empowers this Court to issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The animating purpose of § 19-2716A is to ensure that drug manufacturers, compounders, administrators, and other related parties are not publicly known to have participated in the process of ending a human life. Whatever the merits of that policy are, they can be easily met by the Court issuing a protective order restricting the information from the public's view. Recognizing the asserted privilege, on the other hand, would directly benefit the same state actors who have putatively violated Mr. Pizzuto's constitutional rights, and would clearly not

promote a more important interest than ensuring Mr. Pizzuto's execution is carried out in compliance with the United States Constitution. *See ACLU of Miss. v. Finch*, 638 F.2d 1336, 1343–44 (5th Cir. 1981) (holding that because there is a "special danger in permitting state governments to define the scope of their own privilege when the misconduct of their agents is alleged," "the federal interest in evaluating the privilege independent of state law in a § 1983 case is particularly strong").

Other courts have agreed with Mr. Pizzuto. In *Jordan*, the court announced that Georgia's execution secrecy statute did not "create[] a new federal evidentiary privilege." 947 F.3d at 1340. The federal district court in the Middle District of Louisiana is in accord. *See Hoffman v. Cain*, No. 12-796, 2014 WL 12662276, at *2 (M.D. La. Jan. 13, 2014). In *Hoffman*, the defendants relied upon a state statute purporting to make the identities of various execution-team members not "discoverable in any proceeding before any court." La. Stat. Ann. § 15:570(G). The reliance was found by the court to be "unavailing" because the state statute did "not determine what information is discoverable in a federal court case brought under 42 U.S.C. § 1983"). *Hoffman*, 2014 WL 12662276, at *2. Just so here, with another state statute attempting to make the same information not "discoverable in any proceeding." Idaho Code § 19-2716A(4).

In sum, the Court should not recognize the proposed privilege. "For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence." *Jaffee*, 518 U.S. at 9. It would be a grave and likely reversible error to excuse the Defendants from engaging in reasonable discovery by crafting a new federal privilege based on Idaho's state law.

III.    **Defendants' objection based on the lack of drugs is meritless.**

Defendants have insisted that they are unable to answer a number of interrogatories because IDOC "does not currently have any execution chemical in its possession." *Supra* at 5. That has been their refrain on Interrogatories 3, 4, 7, and 8. *See supra* at 5. Interrogatories 3 and 4 involve the manufacturers and pharmacies potentially sourcing the drugs. *See supra* at 5. And Interrogatories 7 and 8 involve IDOC's process for selecting the drug and the source. *See supra* at 5.

Mr. Pizzuto acknowledges that the actual manufacturer or compounder of the drugs at issue in Interrogatories 3 and 4 cannot be identified before it has been chosen. Apparently, that has not yet occurred. Nevertheless, read fairly, the interrogatories should be understood as pursuing the identity of *potential* sources that have been contacted. As such, the timing of the requests does not prevent Defendants from answering them.[8]

With respect to Interrogatories 7 and 8, Defendants' objection is unfounded. By definition, Defendants make a decision before they contact a supplier about what they will ask the supplier. That decision relates to the identity of the drug and whether it is compounded or manufactured. In other words, there is some process leading up to the contact Defendants make with their suppliers, and that is what Interrogatories 7 and 8 delve into. If Defendants are asking suppliers for compounded pentobarbital, then there has already been some decision-making process that led IDOC to ask about compounded pentobarbital. The same reality holds true even

---

[8] Even if Defendants' overly rigid reading of the interrogatories is adopted, it is not correct that the State is incapable of answering them until it has the chemicals "in its *possession*." *Supra* at 5. IDOC chooses a source of drugs before it has the chemicals in hand. The drugs do not magically appear one day on IDOC's premises in the absence of any communication between Defendants and the supplier. It is the moment that IDOC has *selected* a source that Interrogatories 3 and 4 are answerable under Defendants' interpretation of the questions.

MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL – Page 19

if Defendants are inquiring with suppliers about multiple options. That is, if Defendants are

informing potential suppliers that IDOC is interested in *either* pentobarbital *or* sodium pentothal,

either compounded or not, then they still have some reason to approach the undertaking in such a

fashion. Simply put, no matter what Defendants are saying to suppliers, there is something

animating the questions, and the timing of the drug acquisition is irrelevant.

## IV.    Conclusion

Mr. Pizzuto respectfully asks that the Court order Defendants to comply with the

discovery requests described above.

DATED this 13th day of April 2023.

/s/ Jonah J. Horwitz
Jonah J. Horwitz
Christopher M. Sanchez
FEDERAL DEFENDER SERVICES OF IDAHO

/s/ Stanley J. Panikowski
Stanley J. Panikowski
Sarah E. Kalman
DLA PIPER LLP (US)

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of April 2023, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system, which is designed to send a

Notice of Electronic Filing to persons including the following:

Kristina Schindele
kscchind@idoc.idaho.gov

/s/ Julie Hill
Julie Hill

MEMORANDUM IN SUPPORT OF SECOND MOTION TO COMPEL – Page 20