Jonah J. Horwitz, Idaho Bar No. 10494
Christopher M. Sanchez, Idaho Bar No. 12070
FEDERAL DEFENDER SERVICES OF IDAHO
702 W. Idaho Street, Suite 900, Boise, ID 83702-8929
Telephone: (208) 331-5530; Facsimile: (208) 331-5559
ECF: jonah_horwitz@fd.org
    christopher_m_sanchez@fd.org

Stanley J. Panikowski, California Bar No. 224232
(admitted *pro hac vice*)
DLA PIPER LLP (US)
401 B Street, Suite 1700, San Diego, CA 92101-4297
Telephone: (619) 699-2700; Facsimile: (619) 699-2701
ECF: stanley.panikowski@dlapiper.com

Sarah E. Kalman, Pennsylvania Bar No. 325278
(admitted *pro hac vice*)
DLA PIPER LLP (US)
One Liberty Place
1650 Market Street, Suite 500, Philadelphia, PA 19103-7301
Telephone: (215) 656-2438; Facsimile: (215) 656-3301
ECF: sarah.kalman@dlapiper.com

*Attorneys for Plaintiff Gerald Ross Pizzuto, Jr.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **GERALD ROSS PIZZUTO, JR.,**<br><br>                Plaintiff,<br>v.<br><br>**JOSH TEWALT**, Director, Idaho Dept. of Correction, et al.<br><br>                Defendants. | CASE NO. 1:21-cv-00359-BLW<br><br>**MEMORANDUM IN SUPPORT OF SIXTH MOTION TO COMPEL DISCOVERY (source of old and new drugs the same)** |

For the reasons that follow, and pursuant to Fed. R. Civ. P. 37, Plaintiff Gerald Ross Pizzuto, Jr. asks that the Court order the defendants to address Request for Admission (RFA) 240.

MEMORANDUM IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 1

I.  **The discovery request and responses**

Pursuant to Dist. Idaho Loc. Civ. R. 37.2, the relevant discovery request that Mr. Pizzuto posed, and the defendants' objections, are provided verbatim below.

240. Admit or deny that IDOC has obtained New Execution Drugs from the source of the Old Execution Drugs.[1]

DEFENDANT TEWALT'S INITIAL APRIL 17, 2024 ANSWER:

Defendant Tewalt objects to this RFA under Federal Rule of Civil Procedure 26(b)(1). Defendant Tewalt asserts the subject of this RFA creates an undue burden on the IDOC and interferes with the agency's duty to carry out a lawfully imposed death sentence. The Idaho Legislature enacted Idaho Code § 19-2716A to prohibit the disclosure of the identities of any person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution. Defendant Tewalt objects to disclosure of any information that could lead to the identification of the person or entity from which IDOC acquired execution chemicals and/or any person or entity who manufactured the execution chemicals. Defendant Tewalt asserts disclosure of the requested information specifically seeks information about the identity of a person or entity who manufactured the execution chemicals.

Defendant Tewalt acknowledges the Court recently issued an order directing Defendants to provide certain information related to IDOC's source of execution chemicals. Defendants intend to file an appeal from this order. Defendant Tewalt acknowledges that the information requested in this RFA may be subject to disclosure and reserves the right to amend this response following the appellate court's decision on the order to disclose.

Defendant Tewalt objects to disclosure of any information that could lead to the identity of IDOC's source of execution chemicals. IDOC will provide a certificate of analysis to document the results of scientific testing completed on the execution chemicals, detail the process and materials used during manufacturing, confirm compliance with

---

[1] The RFAs defined "Old Execution Drugs" as chemicals that the defendants obtained in October 2023 or earlier and intended to have available for use in Thomas Creech's execution. They defined "New Execution Drugs" as chemicals that the defendants obtained after February 28, 2024 or are seeking for future executions. Mr. Creech will use the same terms, with the same definitions, in this memorandum.

MEMORANDUM IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 2

regulatory and quality standards, and establish the quality and safety of the execution chemicals. Defendant asserts any connection between IDOC's source of execution chemicals acquired prior to February 28, 2024, and after February 28, 2024, increases the risk of disclosure of IDOC's sources of execution chemicals. Such risk creates an undue burden on IDOC, especially where disclosure is immaterial to the claims raised in Plaintiff's *as applied* method-of-execution claim and disproportionate to his needs in this litigation. Plaintiff's interest in disclosure is outweighed by the State's interest in protecting its execution chemical sources.

DEFENDANT TEWALT'S MAY 23, 2024 SUPPLEMENTAL ANSWER:

Defendant Tewalt's May 23, 2024 Supplemental Answer: Defendant Tewalt understands Plaintiff has requested Defendant reconsider his response. Defendant Tewalt has reviewed his original response and renews his objection based on Federal Rule of Civil Procedure 26(b)(1). Defendant Tewalt asserts answering this RFA will lead to the identification of IDOC's source for execution chemicals and cause an undue burden on Defendants, IDOC and the State of Idaho. Such burden is disproportionate to Plaintiff's needs. To the extent Plaintiff contends a response to this RFA will not provide any information concerning identification, Defendant Tewalt further objects to the RFA on the grounds that the RFA is not relevant to any matter at issue in the litigation.

Notwithstanding the objections noted herein, Defendant Tewalt admits that IDOC treats each acquisition of execution chemical as a separate and distinct act. Defendant Tewalt further admits that the "Old Execution Drugs" were lawfully acquired from a domestic source in compliance with all state and federal laws and regulations. Defendant Tewalt further admits that IDOC's source of "Old Execution Drugs" is authorized under state and federal laws and regulations to possess, distribute, sell, and provide pentobarbital to IDOC. Defendant Tewalt further admits that IDOC has acquired additional execution chemical from a source authorized to possess, distribute, sell, and provide execution chemical to IDOC. Finally, Defendant Tewalt admits that IDOC will only acquire additional execution chemical from a source authorized to possess, distribute, sell, and provide execution chemical to the Department if subsequent acquisitions occur.

## II. Argument

Mr. Pizzuto will first address the defendants' points about secrecy and then turn to relevance.

### A. The defendants' secrecy objection is meritless.

In regard to secrecy, the defendants recycle their boilerplate refrain that answering RFA 240 will cause the Department's execution-drug supplier to be identified. *See supra* at Part I. However, the objection is foreclosed by the Court's prior rulings. The Court has explained that it will only permit the defendants to avoid discovery requests on secrecy grounds when the information sought would, "to a reasonable degree of certainty, identify any person or entity involved in preparing for, supplying drugs for, or administering the death penalty in Idaho." Dkt. 88 at 4–5. RFA 240 poses no risk of identifying any source, let alone to a reasonable degree of certainty. The RFA asks only whether two separate sets of drugs came from the same source. *See supra* at Part I. It probes for no details about the source itself whatsoever.

The defendants claim that "any connection between IDOC's source of execution chemicals acquired prior to February 28, 2024, and after February 28, 2024, increases the risk of disclosure of IDOC's sources of execution chemicals." *Supra* at Part I. But the only meaningful facts that Mr. Pizzuto has about the source of the Old Execution Drugs come from information that undersigned counsel have obtained either because the Court, properly interpreting the secrecy test, ordered IDOC to produce it, or from responses that the Department willingly provided in discovery without objection. *See*

MEMORANDUM IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 4

Dkts. 88, 123. By definition, such information does not violate the Court's secrecy standard. Because Mr. Pizzuto has no clues that create a risk of identifying the source of the old drugs, the mere fact that it is—or is not—the same source for the next execution is likewise consistent with the Court's secrecy framework.

### B. The defendants' relevance objection is meritless.

Apart from secrecy, the defendants maintain that RFA 240 "is not relevant to any matter at issue in the litigation." *Supra* at Part I. The defendants are plainly mistaken. Relevance "broadly . . . encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The Ninth Circuit has described relevance as a "low bar." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021).

Mr. Pizzuto has alleged that the defendants are violating his Eighth Amendment rights by subjecting him to an execution that carries an intolerably high risk of pain and suffering, caused in part by concerns regarding the reliability of the lethal chemicals. *See* Dkt. 13 at 5–19. This Court has properly directed the defendants to provide Mr. Pizzuto with a range of facts about the Old Execution Drugs on the ground that the information "may bear on the reliability of the drugs." Dkt. 123 at 14; *see id.* at 23. Furthermore, the defendants have acknowledged that they could potentially use both (or either) the Old Execution Drugs and the New Execution Drugs at Mr. Pizzuto's execution. *See* Ex. 1 at 14. Because the information the defendants have disclosed about the Old Execution Drugs has already been

deemed relevant, the same information about the New Execution Drugs is also relevant, and thus so too is the question of whether the sources are the same.

Consider, by way of example, RFA 190, which asks whether the Old Execution Drugs came from a veterinary source. *See* Dkt. 108-1 at 2. As Mr. Pizzuto has demonstrated through his expert pharmacologist, Dr. Michaela Almgren, the use of veterinary drugs on a human is problematic because they are formulated for animals and the oversight is less rigorous. *See* Dkt. 108-2 at 4. That makes the RFA relevant to Mr. Creech's Eighth Amendment claim that the drugs are unreliable. Moreover, if the source is the same, it would at the very least make it more likely that a veterinary supplier has provided the New Execution Drugs as well, which would likewise by relevant.

At a minimum, Mr. Pizzuto has certainly made "a threshold showing of relevance," so the defendants have "the heavy burden of showing specifically why the discovery request is irrelevant" or "disproportional to the needs of the case." *Cleaver v. Transnation Title & Escrow, Inc.*, No. 1:21-cv-031, 2022 WL 623251, at *2 (D. Idaho Mar. 2, 2022). The defendants cannot satisfy that heavy burden and RFA 240 is proportional. A proportionality analysis takes into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

The importance of the issues at stake in the action are life-and-death and could not be higher. *See* Dkt. 123 at 21 ("'[M]uch is at stake in this capital case . . . ."). Although the amount in controversy is not at issue, the parties' relative access to relevant information favors disclosure. Mr. Pizzuto has no means of determining essentially anything about the drugs because of the defendants' persistent lack of transparency. The importance of this discovery is significant because of the reliability concerns outlined earlier. And finally, there is no burden or expense associated with the defendants answering the question. It will take an infinitesimal amount of time and energy. Indeed, an answer to RFA 240 will lessen the burden on both parties, because in its absence Mr. Pizzuto will have to repeat every question that he asked about the Old Execution Drugs in connection with the New Execution Drugs. The request is proportional.

Finally, in objecting to RFA 240, the defendants recite the fact that they will disclose a certificate of analysis, which in their opinion will "document the results of scientific testing completed on the execution chemicals, detail the process and materials used during manufacturing, confirm compliance with regulatory and quality standards, and establish the quality and safety of the execution chemicals." *Supra* at Part I. It is not clear to Mr. Pizzuto what kind of objection this statement is, if any. Perhaps the defendants mean to argue that the RFA is disproportionate to the needs of the case because Mr. Pizzuto can rely on the certificate and conduct no further due diligence into the reliability of the drugs. If so, the defendants are mistaken. The Court has already correctly determined that the defendants "cannot

use the Certificate of Analysis to shield themselves from all discovery related to the reliability of the execution drugs," particularly when they "have not identified the entity responsible for performing the chemical analysis." Dkt. 123 at 14.  That conclusion was well-founded.  As Mr. Pizzuto has set forth in previous filings and supported with an unopposed expert declaration, all of which he incorporates by reference here, IDOC's disclosure of the last certificate is nearly meaningless since it was prepared by an unknown laboratory with uncertain standards after the Department previously hired a laboratory riddled with regulatory violations and then lost the results—which were never shared with anyone.  *See* Dkt. 108-1 at 8–9 & exhibits cited therein.  The next certificate will presumably suffer from the same flaws.

In addition, the contents of the previous certificate trigger doubt about its trustworthiness.  As Dr. Almgren has clarified, that certificate does not indicate that the testing was performed according to the United States Pharmacopeia (USP)—the proper standard, and the one she would expect to see referenced.  *See* Dkt. 116-7 at 2–3; *see also* Dkt. 116-3 (USP on U.S. Government's certificate of analysis).  The formulation used by the laboratory is an unfamiliar one, with unknown credibility.  *See* Dkt. 116-7 at 2–3.  And test results are only as good as the methodologies used in the testing.  Again, the defendants have offered no reason to suppose that the next certificate will be more reliable than the previous one.

Moreover, the defendants' characterization of the certificate in their response to RFA 240 is inaccurate.  The defendants posit that the certificate will "detail the

MEMORANDUM IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 8

process and materials used during manufacturing." *Supra* at Part I. Contrary to that description, the last certificate sheds no light on anything that happened during the manufacturing process. Rather, the certificate speaks only to testing done *after* manufacturing. *See* Dkt. 116-7 at 4. The forthcoming certificate will likely do the same, and that is yet another reason why more information is needed, and why this motion to compel should be granted.

### III. Conclusion

Mr. Pizzuto respectfully asks that the Court order the defendants to comply with RFA 240.

DATED this 13th day of June 2024.

/s/ *Jonah J. Horwitz*
Jonah J. Horwitz
Christopher M. Sanchez
FEDERAL DEFENDER SERVICES OF IDAHO

/s/ *Stanley J. Panikowski*
Stanley J. Panikowski
Sarah E. Kalman
DLA PIPER LLP (US)

*Attorneys for Plaintiff Gerald Ross Pizzuto, Jr.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which is designed to send a Notice of Electronic Filing to persons including the following:

Kristina Schindele
kscchind@idoc.idaho.gov

Michael Elia
mje@melawfirm.net

    /s/ *Julie Hill*
Julie Hill