UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR.,<br><br>    Plaintiff,<br><br>    v.<br><br>JOSH TEWALT, Director, Idaho Department of Correction, in his official capacity, TIMOTHY RICHARDSON, Warden, Idaho Maximum Security Institution, in his official capacity,<br><br>    Defendants. | Case No. 1:21-cv-00359-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendants' Motion to Stay (Dkt. 139). For the reasons explained below, the Court will grant the Motion.

## BACKGROUND

On March 28, 2024, the Court partially granted Plaintiff Gerald Ross Pizzuto, Jr.'s Motions to Compel Discovery (Dkts. 102, 108 & 116) and ordered Defendants to respond to the disputed discovery requests within fourteen days. *See generally Mem. Decision & Order*, Dkt. 123 ("the Discovery Order"). On April 10, 2024, Defendants timely filed a Notice of Appeal (Dkt. 130) of the Discovery

MEMORANDUM DECISION AND ORDER - 1

Order. Defendants now seek to stay that Order pending the resolution of their appeal. *See Motion to Stay*, Dkt. 139. Pizzuto opposes a stay. *Pl.'s Resp.*, Dkt. 140.

## LEGAL STANDARDS

When a litigant files an appeal, the district court may stay its own order until the appeal is resolved. FED. R. APP. P. 8(a)(1)(A). The standard for obtaining a stay pending appeal is well-established. Courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nkhen v. Holder*, 556 U.S. 418, 434 (2009); *see also Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). This test is applied flexibly, and a "strong showing of one element may offset a weaker showing of another." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011). Ultimately, though, it is the applicant's burden to show that the factors support a stay. *Id.* at 433–34.

## ANALYSIS

1. **Likelihood of Success**

To obtain a stay, Defendants must first show that they are likely to succeed on appeal. *Nkhen*, 556 U.S. at 434. At minimum, that means showing they have a "substantial case for relief on the merits." *Leiva-Perez*, 640 F.3d at 968.

    A. **Jurisdiction**

MEMORANDUM DECISION AND ORDER - 2

The threshold question is whether Defendants are likely to even obtain appellate review of the Discovery Order. *See, e.g.*, *Smith v. Cnty. of Lenawee*, No. 09-10648, 2009 WL 3672107, at *2 (E.D. Mich. Nov. 3, 2009) (considering appellate jurisdiction when evaluating likelihood of success).[1] Generally, appellate courts have jurisdiction to review only "final decisions" of federal district courts. 28 U.S.C. § 1291. Under the collateral order doctrine, however, appellate courts may also review "a narrow class of decisions that do not terminate the litigation, but must, in the interest of achieving a healthy legal system, nonetheless be treated as final." *In re Copley Press, Inc.*, 518 F.3d 1022, 1025 (9th Cir. 2008) (internal citation and quotation marks omitted). An order is appealable under the collateral order doctrine if it "[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [will] be effectively unreviewable on appeal from a final judgment." *Id.* (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978), *superseded on other grounds by rule as stated in Microsoft v. Baker*, 582 U.S. 23, 42 (2017)).

There is a reasonable probability that Defendants can satisfy these three requirements. *Leiva-Perez*, 640 F.3d at 967. "Secrecy is a one-way street: Once information is published, it cannot be made secret again." *In re Copley Press, Inc.*,

---

[1] A stay applicant cannot be likely to succeed on appeal if the appellate court lacks jurisdiction to even review the district court's order.

518 F.3d at 1025.² The Discovery Order compels Defendants to provide Pizzuto with various discovery responses and unredacted documents. *Mem. Decision & Order* at 24–25, Dkt. 123. In doing so, the Order conclusively resolves an important, disputed issue—the confidentiality of execution-drug-related information—that is separate from the merits of Pizzuto's Eighth Amendment claim. Whether the Discovery Order will be "effectively unreviewable" on appeal from a final judgment is a closer question. But, given the impact that publicly identifying the State's execution-drug supplier could have on Defendants' ability to obtain execution drugs in the future, Defendants have a fair prospect of showing that the Discover Order would be practically unreviewable on appeal from a final judgment. *See Mem. Decision & Order* at 8, Dkt. 138 ("The potential prejudice to Defendants therefore extends beyond this litigation alone.").

In sum, Defendants have made a "substantial case" for obtaining appellate review of the Discovery Order. For purposes of obtaining a stay, that is enough.

B.   **Merits**

---

² Pizzuto highlights various factual difference between this case and *Copley Press*. Notwithstanding those differences, *Copley Press* is helpful because, there, the Ninth Circuit emphasized the irreversible nature of confidential disclosures in finding that the first and third elements of the collateral order doctrine were satisfied. *See In re Copley Press, Inc.*, 518 F.3d at 1025. The same is true here, where the irreversible nature of the ordered disclosures makes the Discovery Order a "conclusive[] determine[ation]" of the disputed question (Element #1) *and* makes that order "effectively unreviewable on appeal from a final judgment" (Element #3).

Defendants must also demonstrate a "substantial case for relief on the merits." *Leiva-Perez*, 640 F.3d at 968. For several reasons, Defendants face steep odds on appeal. First, the standard of review will be highly deferential. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Second, although Defendants have broadly described the aspects of the Discovery Order that they contest, *see Def.'s Memo. in Supp.* at 4–5, Dkt. 139-1, they have not explained why the Ninth Circuit would reverse this Court on any particular issue. Moreover, while Defendants now characterize Dr. Almgren's testimony—on which this Court relied—as "flawed," they fail to explain how it is flawed or why the Ninth Circuit would discard this Court's credibility determination, especially when Defendants failed to offer any contrary evidence of their own. *See Mem. Decision & Order* at 12–13, Dkt. 123; *see also Def.'s Resp.*, Dkt. 104.

Although Defendants face long odds on appeal, they have nevertheless raised "serious legal questions" involving issues not yet squarely addressed by the Ninth Circuit. *Leiva-Perez*, 640 F.3d at 968. In the Discovery Order (Dkt. 123), this Court rejected Defendants' claim that responding to various discovery requests and providing unredacted documents would unduly burden their ability to obtain execution drugs in the future. *See Mem. Decision & Order*, Dkt. 123. The undue burden analysis involves the challenging task of balancing the requesting party's need for information against the potential harm that disclosure may have on the

objecting party. *Id.* at 5; *see also Mem. Decision & Order* at 19–24, Dkt. 88 (describing undue burden analysis under Rule 26(c)(1)). This Court struck the balance it thought proper but recognizes that reasonable minds may differ on the outcome. Moreover, to this Court's knowledge, the application of Rule 26(c)(1)'s undue burden analysis in this unique context is a matter of first impression in the Ninth Circuit. *See Def.'s Reply* at 5–6, Dkt. 142 ("The[] appeal will provide the Ninth Circuit an opportunity to address a pressing legal issue for the first time[.]").

Defendants argue that this Court erred by failing to consider Pizzuto's discovery requests "as a whole," and failing to "remember" that that "these parties are involved in other litigation regarding different yet related claims." *Def.'s Memo. in Supp.* at 4–5, Dkt. 139-1. Considering the information that Defendants have already disclosed in this case and others, they claim that it will "only be a matter of time" before their execution drug supplier is identified. *Id.* at 5. For the reasons stated in the Discovery Order, this Court is unpersuaded. That said, the Court is not familiar with every item of discovery that Defendants have produced to Pizzuto and other death-row inmates in each separate case.[3] And reasonable

---

[3] To be clear, however, Defendants bore the burden of showing that answering the discovery requests would impose an undue burden under Rule 26(c)(1). *Mem. Decision & Order* at 13, Dkt. 123. Consequently, to the extent they have disclosed information in other cases that could narrow the list of possible drug suppliers, Defendants should have directed the Court's attention to those specific disclosures rather than relying upon their own broad conclusory statements.

**MEMORANDUM DECISION AND ORDER - 6**

minds may differ as to whether, viewing that discovery as a whole, compliance with the Discovery Order would make Defendants' execution-drug supplier identifiable to a reasonable degree of certainty.

Ultimately, although the Court stands by its Discovery Order, it recognizes that the Order addresses difficult and unsettled issues that are "fair ground for litigation and thus for more deliberative investigation." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir. 1991). And, by raising a "fair prospect" of success, Defendants have offered the "minimum quantum of likely success" that is necessary to satisfy the first requirement for obtaining a stay. *Leiva-Perez*, 640 F.3d at 967.

2.  **Irreparable Injury Absent a Stay**

The second stay factor weighs heavily in favor of granting a stay. According to Defendants, if they are forced to comply with the Discovery Order, members of the public will be able to identify the State's execution drug supplier. *Def.'s Memo. in Supp.* at 4, Dkt. 139-1. The Court recognizes that, if that is true, requiring Defendants to make the disclosures before their appeal is resolved would cause irreparable injury. As this Court already concluded, publicly identifying the execution-drug supplier would make it more difficult—or impossible—for the state to obtain execution drugs in the future. *Mem. Decision & Order* at 22, Dkt. 88; *see also id.* at 21–23 (reviewing history behind state execution secrecy statutes). And

MEMORANDUM DECISION AND ORDER - 7

that, in turn, would impede the State in performing *any* execution by lethal injection, not just Pizzuto's. *See id.* at 23 ("[T]he Court finds ample support in case law for the conclusion that disclosing the identity of an execution-drug supplier seriously jeopardizes a state's ability to obtain execution drugs in the future."). Thus, while evidentiary rulings on appeal are ordinarily sufficient to remedy the forced disclosure of privileged information, *see Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 109 (2009), such tools are inadequate here, where the potential injury to Defendants "extends beyond this litigation alone." *Mem. Decision & Order* at 8, Dkt. 138. Indeed, in this context, "[o]nce [t]he cat is already out of the bag, it may not be possible to get it back in." *Agster v. Maricopa Cnty.*, 422 F.3d 836, 838 (9th Cir. 2005) (internal citation and quotation omitted).

### 3.   Substantial Injury and the Public Interest

The third and fourth factors also weigh in favor of granting a stay. The Ninth Circuit has set Defendants' appeal on an expedited schedule. Dkt. 133; Ninth Cir. Case. No. 24-2275, Dkt. 3.1. While a stay will deprive Pizzuto of the requested discovery for several months, that is true in every case where a stay pending appeal is granted. And, although the information sought in the disputed discovery requests is relevant, Pizzuto has obtained substantial discovery throughout this case and is not, as he says, being forced to litigate "with his hands tied behind his back." *Pl.'s Resp.* at 19, Dkt. 140. Furthermore, there is no active death warrant pending

against Pizzuto and, as of October 24, 2023, the Idaho Attorney General is enjoined from seeking one until authorized to do so by this Court in Case No. 1:23-cv-00081-BLW. Ultimately, the Court believes that whatever harm Pizzuto may suffer because of the delayed disclosures is outweighed by the other considerations.

The public also has an interest in ensuring that the State can enforce its criminal laws, including its death penalty laws. And if Defendants are correct that their compliance with the Discovery Order would expose the drug supplier's identity, the public interest in enforcing the death penalty laws—in this case *and* in future cases—would be seriously jeopardized. *See Mem. Decision & Order* at 20, Dkt. 88 (citing *Virginia Dep't of Corr. v. Jordan*, Civil Action No. 3:17mc02, 2017 WL 5075252, at *17 (E.D. Va. Nov. 3, 2017) ("The Circuit Courts concur that requiring disclosure of suppliers of lethal injection chemicals and team members imposes an undue burden on states.") (collecting cases)). Moreover, even if the public has a countervailing interest in ensuring the reliability of drugs used for lethal injection, *see Pl.'s Resp.* at 18, Dkt. 140, delaying the ordered disclosures during this expedited appeal will not substantially impair that interest.

In sum, Defendants have raised "serious legal questions" sufficient to establish the "minimum quantum of likely success necessary to justify a stay." *Leiva-Perez*, 640 F.3d at 967. And, weighing the minor harm Pizzuto will suffer

against the potential for irreparable harm to Defendants and the public interest, the Court will stay the Discovery Order for the duration of the appeal in Ninth Circuit Case No. 24-2275.

**4.      Litigation Deadlines**

Pursuant to the existing Scheduling Order (Dkt. 43), as amended (Dkt. 144), fact discovery must be completed by June 14, 2024, and dispositive motions are due by August 16, 2024. If these deadlines are left in place, Pizzuto will have to litigate critical stages of this case without the benefit of relevant information. Because the Court will stay the Discovery Order (Dkt. 123) pending a resolution of Defendants' appeal, the Court finds good cause to extend the litigation deadlines at least until the appeal is resolved.

## ORDER

**IT IS ORDERED that** Defendants' Motion to Stay (Dkt. 139) is **GRANTED**. The Discovery Order (Dkt. 123) is hereby **STAYED** pending disposition of the appeal in Ninth Circuit Case No. 24-2275. This stay shall automatically lift one day after the Ninth Circuit issues a decision resolving Defendants' appeal, and the discovery responses ordered by the Court in the Discovery Order (Dkt. 123) shall be served within fourteen days after this stay lifts.

**IT IS FURTHER ORDERED that** the deadlines set forth in the modified scheduling order (Dkt. 144) are suspended for the duration of the appeal. Within seven days after the Ninth Circuit issues a decision resolving the Defendants' appeal, the parties shall file a joint proposal to reset the deadlines.

DATED: June 21, 2024

B. Lynn Winmill
U.S. District Court Judge