RAÚL LABRADOR
ATTORNEY GENERAL

Karin Magnelli (ISBN 6929)
Lead Deputy Attorney General
Kristina M. Schindele (ISBN 6090)
Deputy Attorney General
Idaho Department of Correction
1299 North Orchard St., Suite 110
Boise, Idaho 83706
Telephone: (208) 658-2094
Facsimile: (208) 327-7485
kmagnell@idoc.idaho.gov
krschind@idoc.idaho.gov

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
Tanner J. Smith (ISBN 12245)
MOORE ELIA KRAFT & STACEY, LLP
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031
mje@melawfirm.net

*Attorneys for Defendants*

# IN THE UNITED STATES DISTRIC COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD R. PIZZUTO,<br><br>  Plaintiff,<br><br>vs.<br><br>JOSH TEWALT, et al.,<br><br>  Defendants. | Case No. 1:21-cv-359-BLW<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S SIXTH MOTION TO COMPEL**<br><br>**[Dkt. 148]** |

COME NOW Defendants, by and through their undersigned counsel, and hereby submit this Opposition to Plaintiff's Sixth Motion to Compel as follows:

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 1**

## INTRODUCTION

Pizzuto has moved the Court to compel Defendants to answer whether the source IDOC obtained pentobarbital from after February 28, 2024, (the "New Chemical"), i.e., the date of Thomas E. Creech's execution, is the same source that provided IDOC the pentobarbital that was to be used during Creech's execution (the "Old Chemical"). This information is irrelevant and disproportionate to Pizzuto's needs in this case, and an affirmative or negative response would do nothing but point him to IDOC's source—particularly because he knows the manufacturer for each set of chemical can only be one of four companies. Defendants respectfully request the Court deny Pizzuto's Sixth Motion to Compel.

## LEGAL STANDARD

"Broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed 'except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.'" *Sablan v. Dep't of Fin. of Com. of N. Mariana Islands*, 856 F.2d 1317, 1321 (9th Cir. 1988) (citations omitted). Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "The party seeking to compel discovery has the burden of establishing that its request satisfies the requirements of Rule 26." *Apple Inc. v. Wi-LAN Inc.*, No. 14CV2235-DMS (BLM), 2017 WL 11680855, at *2 (S.D. Cal. Nov. 28, 2017). "Generally, if the responding party objects to a discovery request, the party moving to compel bears the burden of demonstrating why the objections are not justified." *Hammler v. Clark*, No. 1:19-CV-00373-AWI-SAB (PC), 2020 WL 8483914, at *2 (E.D. Cal. Dec. 11, 2020) (citations omitted).

"When a district court considers a motion to compel brought pursuant to Rule 37, it must,

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 2**

'on motion or on its own,' evaluate such factors as relevance, timeliness, good cause, utility, materiality, and whether the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Valenzuela v. City of Calexico*, No. 14-CV-481-BAS-PCL, 2015 WL 2184304, at *3 (S.D. Cal. May 11, 2015) (quoting Fed. R. Civ. P. 26(b); citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

## REQUEST FOR ADMISSION NO. 240

Pizzuto's 240th request for admission asked: "Admit or deny that IDOC has obtained New Execution from the source of the Old Execution Drugs."  Defendant Tewalt answered as follows:

> **Defendant Tewalt's April 17, 2024 Answer:** Defendant Tewalt objects to this RFA under Federal Rule of Civil Procedure 26(b)(1). Defendant Tewalt asserts the subject of this RFA creates an undue burden on the IDOC and interferes with the agency's duty to carry out a lawfully imposed death sentence. The Idaho Legislature enacted Idaho Code § 19-2716A to prohibit the disclosure of the identities of any person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution. Defendant Tewalt objects to disclosure of any information that could lead to the identification of the person or entity from which IDOC acquired execution chemicals and/or any person or entity who manufactured the execution chemicals. Defendant Tewalt asserts disclosure of the requested information specifically seeks information about the identity of a person or entity who manufactured the execution chemicals.
> Defendant Tewalt acknowledges the Court recently issued an order directing Defendants to provide certain information related to IDOC's source of execution chemicals. Defendants intend to file an appeal from this order. Defendant Tewalt acknowledges that the information requested in this RFA may be subject to disclosure and reserves the right to amend this response following the appellate court's decision on the order to disclose.
> Defendant Tewalt objects to disclosure of any information that could lead to the identity of IDOC's source of execution chemicals. IDOC will provide a certificate of analysis to document the results of scientific testing completed on the execution chemicals, detail the process and materials used during the manufacturing process, confirm compliance with regulatory and quality standards, and establish the quality and safety of the execution chemicals. Defendant asserts any connection between IDOC's source of execution chemicals acquired prior to February 28, 2024, and after February 28, 2024, increases the risk of disclosure of IDOC's sources of execution chemicals. Such risk creates an undue burden on IDOC, especially where

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 3**

disclosure is immaterial to the claims raised in Plaintiff's as applied method-of-execution claim and disproportionate to his needs in this litigation. Plaintiff's interest in disclosure is outweighed by the State's interest in protecting its execution chemical sources.

**Defendant Tewalt's May 23, 2024 Supplemental Answer:** Defendant Tewalt understands Plaintiff has requested Defendant reconsider his response. Defendant Tewalt has reviewed his original response and renews his objection based on Federal Rule of Civil Procedure 26(b)(1). Defendant Tewalt asserts answering this RFA will lead to the identification of IDOC's source for execution chemicals and cause an undue burden on Defendants, IDOC and the State of Idaho. Such burden is disproportionate to Plaintiff's needs. To the extent Plaintiff contends a response to this RFA will not provide any information concerning identification, Defendant Tewalt further objects to the RFA on the grounds that the RFA is not relevant to any matter at issue in the litigation.

Notwithstanding the objections noted herein, Defendant Tewalt admits that IDOC treats each acquisition of execution chemical as a separate and distinct act. Defendant Tewalt further admits that the "Old Execution Drugs" were lawfully acquired from a domestic source in compliance with all state and federal laws and regulations. Defendant Tewalt further admits that IDOC's source of "Old Execution Drugs" is authorized under state and federal laws and regulations to possess, distribute, sell, and provide pentobarbital to IDOC. Defendant Tewalt further admits that IDOC has acquired additional execution chemical from a source authorized to possess, distribute, sell, and provide execution chemical to IDOC. Finally, Defendant Tewalt admits that IDOC will only acquire additional execution chemical from a source authorized to possess, distribute, sell, and provide execution chemical to the Department if subsequent acquisitions occur.

## ARGUMENT

1. **The information sought is irrelevant.**

The Federal Rules of Civil Procedure provide that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). Before Rule 26 was amended in 2015, the test for discoverable evidence was whether the information is "reasonably calculated to lead to the discovery of admissible evidence." *See, e.g., Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005). However, in 2015, Rule 26 was amended by deleting the "reasonably calculated" provision. *See In re Bard IVC Filters Products Liab. Litig.*, 317 F.R.D.

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 4**

562, 563-64 (D. Ariz. 2016) (discussing 2015 amendment to Rule 26); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's notes (2015 amendment).  The current test is "whether evidence is 'relevant to any party's claim or defense,' not whether it is 'reasonably calculated to lead to admissible evidence.'"  *Id.* at 564; *compare with* Dkt. 123 at p. 21 (Order on Prior Motions to Compel) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), for the proposition that "Relevance 'broadly . . . encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'").

Here, the information Pizzuto would receive from an "admit" or "deny" response is not relevant.  Pizzuto has asserted an *as-applied* Eighth Amendment method-of-execution claim, alleging that an execution by pentobarbital is unconstitutional because of his specific health conditions and has asserted that IDOC should instead execute him via firing squad.  (*See generally* Dkt. 13).  In large part, Pizzuto positioned this case on an inference that IDOC would execute him with compounded pentobarbital, in contrast to manufactured pentobarbital.  (*See id.* at pp. 7-12). IDOC, however, is executing Pizzuto with manufactured pentobarbital.  The manufactured pentobarbital will be certified and compliant with all applicable regulations.  (*See* Dkt. 148-1, pp. 2-3 ("IDOC will provide a certificate of analysis to document the results of scientific testing completed on the execution chemicals, detail the process and materials used during manufacturing, confirm compliance with regulatory and quality standards, and establish the quality and safety of the execution chemicals.")).  Indeed, as discussed below, Pizzuto knows that the manufacturers of both the New and Old Chemical can be only *one of four* companies.  (*See infra*, § 2B).  Nevertheless, it does not matter who supplied the chemical, and whether the source of the New and Old Chemical was the same has no bearing on the chemical's efficacy or regulatory compliance.  The only possible use Pizzuto can have for this information is directed at finding

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 5**

IDOC's source's identity, which he is not entitled to.

Pizzuto misstates the applicable discovery relevance test. (*See* Dkt. 148-1, p. 5). Pizzuto quotes *Oppenheimer Fund* for the above-quoted contention that relevant evidence includes "all matters that bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." 437 U.S at 351; (Dkt. 148-1, p. 5). This is an outdated test that has been replaced. *Bard IVC Filters*, 317 F.R.D. at 564. The correct test is whether the requested information is relevant to a party's claim or defense, not whether it reasonably could lead to such admissible evidence. *See Bard IVC Filters*, 317 F.R.D. at 563-64.

The crux of Pizzuto's relevance argument is that since the Court already deemed some of his requests directed at the Old Chemical relevant, that he is entitled to know if the New and Old Chemical came from the same source.[1] Pizzuto's attempt to conflate this request with others is misplaced. The at-issue request does not ask for information related to Pizzuto's individual "concerns." Rather, it is directed solely at finding IDOC's source. Indeed, what information relevant to his Eighth Amendment claim could he learn from knowing whether or not IDOC obtained the chemicals from the same source? The potential information has nothing to do with what chemical IDOC has obtained, that chemical's efficacy, or whether that chemical comports with regulatory requirements. Just because the Court has previously found that some of Pizzuto's other requests sought relevant information does not mean this request does.

Based on his other discovery requests, Pizzuto implicitly acknowledges that the at-issue request is not necessary to his claims or to analyze the chemical's efficacy and reliability, but rather is directed at identifying IDOC's source. On May 10, 2024, Pizzuto served his *eleventh* set

---

[1] Defendants have appealed the Court's order (Dkt. 123) requiring them to disclose certain information. That appeal has not yet been heard and the Ninth Circuit has not issued an opinion on such. To the extent Pizzuto relies on the Court's order, Defendants submit that such reliance is premature since the Ninth Circuit has not had a chance to analyze the issues.

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 6**

of requests for admission, containing requests numbers 277 through 359. (Dkt. 148-2). Through these eighty-two requests, Pizzuto has asked for all the information he could want to know, and which he already asked about the Old Chemical, with respect to the New Chemical. In his briefing, Pizzuto specifically brings up his requests asking if the Old Chemical came from a veterinary source as an example of how request number 240 seeks relevant information. However, Pizzuto has specifically posed that exact same question in request 294, which asks, "Admit or deny that the New Execution Drugs were made for veterinary use" (Dkt. 148-2, p. 8), and request 295 which asks, "Admit or deny that IDOC obtained the New Execution Drugs from a Veterinary Source." (*Id.*). Further, Pizzuto has made several specific requests about the chemical acquired prior to February 28, 2024, that were addressed in prior motions to compel with respect to the New Chemical. For instance, request 282 asks if the New Chemical was manufactured by Akorn (*id.* at pp. 4-5), 288-290 ask about the New Chemical's expiration date (*id.* at p. 7), requests 299, 300, and 303 ask about the New Chemical's country of origin and if the chemical was imported (*id.* at pp. 11-15), and 301 and 302 ask about the supplier's industry (i.e., wholesaler, distributor, pharmacy). (*Id.* at pp. 12-14; *compare with* Dkts. 102, 108, and 116). If the answer to the at-issue request was intended to provide the same information as the questions previously directed to the Old Chemical, Pizzuto would have only asked the single question; the additional questions encompassing the same information would not have been necessary to ask. Even if the Court deems the question asked—whether IDOC used the same source—to be relevant, by asking these additional questions about the New Chemical, Pizzuto has made a response to whether IDOC received the New Chemical from the same source as the Old Chemical irrelevant.

      The Court should deny Pizzuto's Sixth Motion to Compel because Request 240 does not concern relevant information.

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 7**

### 2. The information is disproportionate to Pizzuto's claim.

The 2015 amendment to Rule 26 also added proportionality as a requirement for discoverable information. *See Bard IVC Filters*, 317 F.R.D. at 564 ("Relevancy alone is no longer sufficient—discovery must also be proportional to the needs of the case."). "[A] party seeking discovery of relevant, non-privileged information must show, before anything else, that the discovery sought is proportional to the needs of the case." *Lonn v. Corizon Health*, No. 1:14-cv-00031-EJL-CWD, 2016 WL 6433846, at *2 (D. Idaho Oct. 27, 2016) (citations omitted). Rule 26 lists various considerations for analyzing proportionality: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. (b)(1). Further,

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

The information sought by Request 240 is disproportionate to the case. As stated, Pizzuto has already asked individualized and specific questions regarding the New Chemical consistent with the subject matter of his prior motions to compel. Further, as discussed below, Pizzuto has asked questions which have narrowed the pool of potential manufacturers down to four. (*See infra* § 2B). Because he has asked these questions, there is nothing a response to Request 240 will provide Pizzuto besides the source's identity. The request is unreasonably cumulative and duplicative of other requests, and therefore, the Court should not require Defendants to provide a

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 8**

substantive response.  Fed. R. Civ. P 26(b)(2)(C)(i).

The Rule 26(b) factors also weigh against requiring a response.  As for the importance of the issue at stake in the action, whether IDOC used the same source is inapposite since the pentobarbital is certified and compliant with all applicable regulatory standards.  Further, since Pizzuto has asked all the specific questions directed at who the source is, a response indicating whether the source is the same provides Pizzuto nothing.  As Pizzuto concedes, the amount in controversy is not at issue.  With respect to access to information, Pizzuto has asked specific questions about the New Chemical and its source; thus, he has access to the information.  Pizzuto's claim to the contrary is incorrect and overlooks his other requests for the specific information.  As for the parties' resources, this factor is neutral.  The importance in discovery prong, however, weighs against disclosure because there is nothing substantive to be learned besides IDOC's source's identity.  The burden and expense prong also weighs against disclosure because of the specific requests and excessive number of requests for admission Pizzuto has served so far (359 to date).  Indeed, because Pizzuto has already negated his only identified benefit (that he will not have to repeat requests for admission), the burden and expense in requiring Defendants to provide a response weighs heavily against disclosure.

Pizzuto's arguments about the certificate of analysis do not otherwise establish that a response would be proportional to this case.  Pizzuto argues that since he does not know who performed the testing, that the certificate is "meaningless."  (Dkt. 148-1, p. 8).  Pizzuto tries to discredit the certification based on his "expert's," Dr. Almgren, opinions.  (*Id.*).  Dr. Almgren's speculation, however, has been rejected by other courts in this District and the Ninth Circuit with respect to this subject.  *See Creech v. Tewalt*, No. 1:20-CV-00114-AKB, 2024 WL 756356, at *5 (D. Idaho Feb. 23, 2024) ("The hypothetical answers Almgren posits with respect to her remaining

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 9**

'questions' about 'whether IDOC has obtained its pentobarbital from a reliable source' are speculative[.]"); *Creech v. Tewalt*, 94 F.4th 859, 862–63 (9th Cir. 2024)*, cert. denied,* 144 S. Ct. 1027 (2024) ("Creech's other arguments about the provenance, quality, and reliability of the drug are purely speculative and are based on unauthenticated exhibits submitted with his motion and the conjecture of his expert."); *see also* Dkt. 108-2, ¶¶ 14-16, 18-20 (Dr. Almgren qualifying her statements about specific requests with the statement "I don't think such information would enable me or others to identify a particular company responsible for manufacturing the chemicals."); *see also* Dkt. 116-7 (Dr. Almgren making various guesses as to the Old Chemical's testing but relying only on her "opinion" (¶ 10), and "suggestion[s] that not all the testing done on the pentobarbital was performed according to USP standards," without offering any substantive proof).  For the same reasons, Dr. Almgren is not otherwise qualified to testify on this topic under Federal Rule of Evidence 702.

Further, Pizzuto's argument centered around United States Pharmacopoeia standards is likewise based on Dr. Almgren's "opinion" that "any testing on the pentobarbital should be done utilizing USP methodologies," (Dkt. 116-7, ¶ 10), not a state or federal regulation.[2]  Indeed, while Dr. Almgren opines that IDOC should test their pentobarbital by USP standards, she even acknowledges that IDOC's protocol provides that the chemical must be "tested at an accredited lab following United States Pharmacopeia or other applicable, nationally recognized or generally accepted standards."  (Dkt. 116-7, ¶ 10).  Neither Pizzuto nor Dr. Almgren have offered any admissible or credible evidence to suggest that IDOC has not complied with these testing requirements.  And to top it off, Dr. Almgren's contentions are unwarranted because Pizzuto knows the chemicals came from one of the four FDA approved manufacturers.  (*See infra* § 2B).

---

[2] Defendants maintain that all testing performed on the Old and New pentobarbital complies with all applicable regulatory standards.

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 10**

Requiring Defendants to answer Request for Admission number 240 would be disproportionate to Pizzuto's needs.

### 3. Answering Request No. 240 would be unduly burdensome.

#### A. The Court should replace the "reasonable degree of certainty" test with the "possibility" test.

The Court's test for disclosure when discovery is concerned with IDOC's source's identity is as follows: Defendants do not have to provide information that "would, to a reasonable degree of certainty, identify any person or entity involved in preparing for, supplying drugs for, or administering the death penalty in Idaho." (Dkt. 88, pp. 5-6). On its face, this test appears to adequately protect IDOC's source's identity. However, when applied, the test breaks down and requires improper disclosures. For example, the Court's implementation of the reasonable degree of certainty test made disclosure mandatory in every instance where Defendants did not show specific, concrete examples of the information actually resulting in disclosure of a state's source. However, this result overlooks the fact that everything must happen at least once for the first time, allowed the Court to disregard plausible articulated harms and circumstances following similar disclosures, and did not take into account the fact that anti-death penalty advocates do not normally lay out how they uncovered a state's source, *but see infra* (discussing John Oliver).

For example, Defendants previously gave an example of how seemingly meaningless information uncovered a confidential settlement agreement entered into with the Idaho Legislature in connection with the Aaron von Ehlinger lawsuit. (Dkt. 104, p. 5). The risk of disclosure, here, is amplified since it concerns the death penalty—which receives national and global attention instead of the mostly local attention received in the von Ehlinger matter.

To provide a closer example, recently, John Oliver, comedian and host of HBO's hit weekly television show "Last Week Tonight," broadcasted a roughly thirty-minute segment on his

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 11**

show detailing how his team uncovered the Federal Government's execution-chemical source by lodging a Freedom of Information request for ancillary information. *See* https://www.youtube.com/watch?v=SOn3wba8c-Y (last visited June 18, 2024). In this featured segment, Mr. Oliver explained that he and his team "are pretty sure [they] have tracked down exactly who supplied the Trump administration with its pentobarbital." *Id.* at 11:21-11:30. Mr. Oliver identified the supplier as being Absolute Standards. Mr. Oliver explained that a member of his team has been covering the death penalty "for years" and found that Absolute Standards had "registered with the DEA to produce pentobarbital in August of 2018." *Id.* at 12:13-12:23. Mr. Oliver explained that his team "filed a freedom of information act . . . with the DEA back in 2020 asking for any records they had on Absolute Standards. And while we [were] waiting for them to send us over the documents, the agency's liaison slipped up twice over the phone, and told us the reason the request was taking so long was because the documents were related to the death penalty." *Id*. at 13:18-13:38. Mr. Oliver explained that this is "what's known in the government world as a big, old whoopsie." *Id.* at 13:38-13:40; *see also* Adrian Horton, *John Oliver on lethal injections: 'A protracted nightmare of suffering'*, https://www.theguardian.com/tv-and-radio/2024/apr/08/john-oliver-lethal-injections-death-penalty (last visited May 16, 2024). Mr. Oliver went on to explain that a "confidential source our researcher trusts has now confirmed that Absolute Standards is the company who made the drugs. So, its them; its Absolute Standards." *Id.* at 13:53-14:02. Mr. Oliver proves, once again, that interested parties spend years tracking down state's sources by using ancillary information (such as the date a company registered with the DEA) in hopes of uncovering who states and the Federal government receive execution chemicals from.

Under the Court's application of the "reasonable degree of certainty" test, the information,

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 12**

insight, and examples offered by Defendants are not credited unless it is exactly the type of information at issue in Pizzuto's specific discovery requests. While some of the examples provided by Defendants did not deal with the exact information that has led to source identification, they show how seemingly unimportant, ancillary information can and has been used to uncover identity information. And the John Oliver example demonstrates a recent, real-world instance of how information, such as what was at issue in Pizzuto's previous motions to compel as well as the present Motion, will result in IDOC's source being found out.

Other federal courts have implemented different tests that more appropriately account for the risk involved in disclosing information connected to a source's identity. For instance, at least one federal court has implemented a "possibility" test for determining when information connected to a state's execution-chemical's source's identity must be divulged. *See Martin v. Ward*, No. 1:18-CV-4617-MLB, 2021 WL 1186749, at *9 (N.D. Ga. Mar. 30, 2021). In *Martin*, the Georgia District Court determined that the state had to divulge materials where it could redact all the information that could *possibly* lead to the identity of people/entities in the administration of the death penalty. *Id.* Defendants respectfully offer this test as the proper standard for determining whether disclosure is necessary because it allows the Court to adequately consider similar and persuasive examples of how ancillary information can lead to the disclosure of IDOC's source. The possibility test better accounts for the fact that these identities have been discovered in the past and that the people/entities piecing together the information have not provided a roadmap of how they came up with the information or list of things they considered.

The possibility test further allows consideration of the fact that just because a circumstance has not yet occurred, does not mean it will never happen in the future. And the fact that this is a cutting-edge time for search engine optimization with the advancements in artificial intelligence

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 13**

and quantum computing, such as Chat GPT, Apple Intelligence, Google Quantum AI, etc., the possibility test more appropriately accounts for how disclosure of ancillary information now will lead to the identification of a state's source in the near future.

Defendants respectfully request that the possibility test be used going forward to determine when disclosure is necessary under Rule 26's undue burden analysis.

### B. Answering Request 240 will result in IDOC's source being uncovered.

Again, it must be reiterated that Pizzuto's request cannot be viewed in a vacuum but must be viewed collectively with Pizzuto's other requests as well as the other death penalty cases. For instance, Creech has an Eighth Amendment method-of-execution lawsuit pending before Judge Brailsford. (*See* Dkt. 137). By non-opposition, Creech has been provided the ability to access discovery materials herein for purposes of Creech's case—in large part because Pizzuto moved for this while Creech had a pending death warrant and both Creech and Pizzuto share counsel from the same firm. (Dkts. 113, 117). However, Creech obtained and filed various documents received from discovery in this case in support of his pleadings before the parties entered into the agreement to permit sharing of information or the Court entered a modified protective order. (*See* Dkt. 115, pp. 6-7 (discussing Dkt. 115-1 (Mem. in Supp. of Prelim. Inj. filed by Creech in 1:20-cv-114-AKB on Feb. 6, 2024) where Creech filed various items of evidence only produced herein before Dkt. 117 was entered)); *see also* 1:20-cv-114-AKB Dkts. 123-7, 123-10, 123-13, 124-8, 124-9, 125-2, 125-7, 126-1, 126-2. Pizzuto has also filed Defendants' discovery responses and various items of evidence offered herein, including materials that would lead to the identification of IDOC's source if various redactions were not applied. (*See* Dkts. 82-3, 82-5, 82-7, 82-9, 91-5, 102-4, 102-6, 102-7, 102-8, 108-3, 108-4, 116-3, 116-9, 141-3, and 148-2).[3] These dockets are now public records

---

[3] While some of the discovery responses Pizzuto has taken issue with in his motions to compel are included in these dockets, much of the other information Pizzuto has not taken issue with, i.e., admissions about the chemical, are also

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 14**

and accessible to anyone with a Pacer account.

Request 240 is another attempt to uncover IDOC's source's identity. As explained above, there is nothing probative Pizzuto can gain from a response since he has already asked the same questions with respect to the New and Old Chemical. (*See* Dkt. 148-2). The only information to be gained from a response to Request 240 is directed at uncovering the source's identity.

It is important to keep in mind some of Pizzuto's other requests made in this case. For instance, Pizzuto's 209th request asked Defendants to admit that the Old Chemical was manufactured by a company listed in the Orange Book, and his 280th request was the same but directed at the New Chemical. (Dkt. 148-2, pp. 4-5; 3rd Decl. Smith, ¶¶ 3-6). The Orange Book[4] is a list of companies the FDA has approved to manufacture particular drugs. *See aaiPharma Inc. v. Thompson*, 296 F.3d 227 (4th Cir. 2002). The FDA requires all manufacturers of brand name drugs to provide the FDA with a listing of all patents that claim the approved drug or a method of using the drug. *Id.* at 230 (citing 21 U.S.C. §§ 355(b)(1), (c)(2)). "The FDA publishes these listings in its *Approved Drug Products With Therapeutic Equivalence Evaluations*, a publication commonly known as the Orange Book." *Id.* Stated differently, and as applied to this case, the Orange Book lists every company approved to manufacture pentobarbital. There are only *four* companies in the Orange Book approved to manufacture pentobarbital. *See* Orange Book, p. 401; *see also* App. B to Orange Book, pp. 53, 103, 167, and 171.

IDOC has complied with all state and federal regulations with respect to obtaining execution chemicals. Knowing this, Pizzuto lodged requests directed at the Orange Book to trap

---

included in those dockets.

[4] The Orange Book can be found at: https://www.fda.gov/media/71474/download?attachment. Appendix B to the Orange Book (product name index) can be found at: https://www.fda.gov/media/71494/download?attachment. The FDA's website page discussing the Orange Book can be found at: https://www.fda.gov/drugs/drug-approvals-and-databases/approved-drug-products-therapeutic-equivalence-evaluations-orange-book#:~:text=The%20publication%20Approved%20Drug%20Products,Act)%20and%20related%20patent%20and.

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 15**

Defendants in a catch-22. On one hand, an admission would narrow the manufacturer to being one of the four companies listed in the Orange Book. On the other, a denial would call into question IDOC's regulatory compliance and would otherwise be false—a fact already known to Pizzuto. A response of only objections would have the same detrimental effect as a denial. Accordingly, Defendants objected to the request, but admitted that the manufacturers, Old and New, are listed in the Orange Book. (Dkt. 148-2, pp. 4-5; 3rd Decl. Smith, ¶¶ 3-6).

Forcing Defendants to admit or deny whether the sources of the two sets of chemicals were the same will result in the source being found out. Pizzuto already has the short-list of who the manufacturer can be. The third-party intermediary that supplies IDOC with execution chemical is reflected in the records of these companies. Just as John Oliver's team homed in on the Federal Government's suspected manufacturer, providing Pizzuto an admit or deny response will give him the information to target the four possible manufacturers and uncover their and IDOC's third party intermediary's identities.

If Defendants are forced to provide a response, it will allow Pizzuto or another anti-death penalty advocate to search and lodge requests with governmental agencies (most of which, be it a federal or state agency, would not be informed of Idaho's shield law) to uncover the source, just as the press did in connection with the von Ehlinger settlement and John Oliver's team did with respect to the Federal Government's source. Indeed, Defendants have told Pizzuto the date by which they had identified a potential source of the Old Chemical. (*See* Dkt. 123, pp. 7-8). Defendants have told Pizzuto that they obtained the New Chemical on or after February 28, 2024. If Defendants were to tell Pizzuto that the supplier was the same or different for both sets of chemicals, Pizzuto, Creech, or other interested anti-death penalty advocates will be able to cross-reference the records of the four potential manufacturers and/or state/federal agencies to find out

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 16**

who the supplier is.

Pizzuto argues that he "has no clues that create a risk of identifying the source of the old drugs," and thus, secrecy is not a concern with this request. The fault in Pizzuto's reasoning, however, is that he does not take into account his requests as a whole and overlooks all of the information discussed above. When viewed in the context of Defendants' initial disclosures, and responses to Pizzuto's 358 other requests for admission, thirty-seven interrogatories,[5] twenty-nine requests for production, and fact that the manufacturer is one of four companies, even this seemingly unrelated information leads directly to the source's identity.

## CONCLUSION

Pizzuto's 240th request for admission seeks irrelevant information that is disproportionate to Pizzuto's needs and an answer to it will result in IDOC's source being identified. Accordingly, Defendants respectfully request the Court deny Pizzuto's Sixth Motion to Compel.

DATED this 3rd day of July, 2024.

MOORE ELIA KRAFT & STACEY, LLP

*/s/ Tanner J. Smith*
Tanner J. Smith
Attorneys for Defendants

OFFICE OF THE ATTORNEY GENERAL

*/s/ Kristina M. Schindele*
Kristina M. Schindele
Deputy Attorney General
Attorneys for Defendants

---

[5] Pizzuto has exceeded the number of interrogatories permitted by the Court's Discovery Plan. (Dkt. 41). Defendants have answered twenty-five interrogatories, as set forth in the Discovery Plan, and two additional interrogatories by Court order. See Dkt. 97 (ordering responses to interrogatories 27 and 29.

**DEFENDANTS' OPPOSITION TO SIXTH MOTION TO COMPEL - 17**

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 3rd day of July, 2024, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Jonah J. Horwitz<br>Christopher M. Sanchez<br>Federal Defender Services of Idaho<br>702 W. Idaho St., Ste. 900<br>Boise, Idaho 83702<br><br>Stanley J. Panikowski<br>DLA Piper LLP<br>401 B St., Ste. 1700<br>San Diego, CA 92101<br><br>Sarah E. Kalman<br>DLA Piper LLP<br>One Liberty Place<br>1650 Market St., Ste. 500<br>Philadelphia, PA 19103<br><br>*Attorneys for Plaintiff* | ☐ U.S. Mail, postage prepaid<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Facsimile Transmission<br>☒ E-Mail: Jonah_horwitz@fd.org,<br>Christopher_m_sanchez@fd.org,<br>stanley.panikowski@dlapiper.com,<br>sarah.kalman@dlapiper.com |

                                            */s/ Tanner J. Smith*
                                            Tanner J. Smith

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S SIXTH MOTION TO COMPEL - 18**