Jonah J. Horwitz, Idaho Bar No. 10494
Christopher M. Sanchez, Idaho Bar No. 12070
FEDERAL DEFENDER SERVICES OF IDAHO
702 W. Idaho Street, Suite 900, Boise, ID 83702-8929
Telephone: (208) 331-5530; Facsimile: (208) 331-5559
ECF: jonah_horwitz@fd.org; christopher_m_sanchez@fd.org

Stanley J. Panikowski, California Bar No. 224232
(admitted *pro hac vice*)
DLA PIPER LLP (US)
401 B Street, Suite 1700, San Diego, CA 92101-4297
Telephone: (619) 699-2700; Facsimile: (619) 699-2701
ECF: stanley.panikowski@dlapiper.com

Sarah E. Kalman, Pennsylvania Bar No. 325278
(admitted *pro hac vice*)
DLA PIPER LLP (US)
One Liberty Place, 1650 Market Street, Suite 500, Philadelphia, PA 19103-7301
Telephone: (215) 656-2438; Facsimile: (215) 656-3301
ECF: sarah.kalman@dlapiper.com

*Attorneys for Plaintiff Gerald Ross Pizzuto, Jr.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **GERALD ROSS PIZZUTO, JR.,**<br><br>　　　　　Plaintiff,<br>v.<br><br>**JOSH TEWALT**, Director, Idaho Dept. of Correction, et al.<br><br>　　　　　Defendants. | **CASE NO. 1:21-cv-359-BLW**<br><br>**REPLY IN SUPPORT OF SIXTH MOTION TO COMPEL [DKT. 148]** |

Recycling a series of stale arguments long ago rejected by the Court, the defendants object on secrecy grounds to a question that sheds zero light on the identity of their drug source. *See generally* Dkt. 151. The defendants' theories are no less meritless now than they were when rebuffed months ago, and their objections are due to be overruled.

REPLY IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 1

### I. RFA 240 is relevant.

On relevance, as on the other objections, the defendants ignore the Court's prior rulings, under which the information sought is plainly and directly connected to Mr. Pizzuto's claim.

Beginning with the legal test for relevance, the defendants believe that *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978), has been abrogated. *See* Dkt. 151 at 6. The only authority they offer is a non-controlling decision from the District of Arizona. *See id.* Whatever the persuasive value of that opinion, the Ninth Circuit disagrees. *See In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (explaining that the 2015 amendments to Rule 26 only affected *Oppenheimer* in the sense that information must be relevant to claims as opposed to the subject matter of the litigation). As outlined below, RFA 240 is very much relevant to Mr. Pizzuto's claim, and not just the subject matter, rendering the 2015 amendments—ironically—irrelevant.

The core of the defendants' view of relevance is that "it does not matter who supplied the chemical" because a certificate of analysis (COA) will at some point be provided to Mr. Pizzuto. Dkt. 151 at 5.[1] Unfortunately for the defendants, the Court has quite plainly ruled to the contrary. As the Court observed as early as July 2023, "[r]elevance is not analyzed with a view toward some future event or anticipated test result" and "[i]t is enough to say that here, the reliability or unreliability of Defendants' execution-drug supplier" is relevant to Mr. Pizzuto's Eighth Amendment claim. Dkt. 88 at 12.[2] The defendants insist that it would be "premature" for the Court to rely upon its own prior analysis in light of the pending interlocutory appeal. *See* Dkt. 151 at 6 n.1. But that appeal does not challenge the July 2023 order, *see* Dkt. 130, so it is not at issue

---

[1] Such a document has not yet been supplied, despite repeated requests by the undersigned.

[2] Unless otherwise noted, all internal quotation marks and citations are omitted, and all emphasis is added.

REPLY IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 2

in the Ninth Circuit, *see* Fed. R. App. P. 3(c)(1)(B) (requiring a notice of appeal to "designate the judgment—or the appealable order—from which the appeal is taken"); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317 (1988) (clarifying that courts "may not waive the jurisdictional requirements of Rule[] 3"). And even with respect to the order that has been appealed, it is black-letter law that "until" a "decision is *reversed* for error by orderly review, either by itself or by a higher court," the ruling is "to be respected." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 294 (1947). The defendants therefore lack any legitimate basis for the Court to disregard the analysis it correctly conducted earlier in the case, under which RFA 240 is relevant.

Dissatisfied with the Court's prior resolution of the COA issue, the defendants bring forward decisions by other judges involving other inmates and other procedural postures. *See* Dkt. 151 at 9–10. The defendants likewise resurrect their perfunctory challenges to Dr. Michaela Almgren's assessment of the COA. Even though Dr. Almgren is an associate professor of pharmacy with a Doctor of Pharmacy Degree and a current practice as a working pharmacist, opposing counsel feels entitled in his lay capacity—without the support of any specialist whatsoever—to place scare quotes around while referring to her as an "expert." *Id.* Again, these strategies of the defendants have already been attempted and they have already come up short in the Court's eyes. *See* Dkt. 123 at 14 (relying on Dr. Almgren and finding that the defendants "cannot use the Certificate of Analysis to shield themselves from all discovery related to the reliability of the execution drugs," especially since nothing is known about the lab that created it). The defendants are effectively seeking reconsideration months late, while not even purporting to establish that the Court did anything "clearly erroneous" in its prior orders, *see Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988), the standard they would have to satisfy.

Plus, the defendants' conception of relevance fails on its own terms. The defendants complain that RFA 240 "does not ask for information related to Mr. Pizzuto's individual [health] concerns." Dkt. 151 at 6. Nor need it. Mr. Pizzuto's claim is that a host of factors—including drug-reliability issues—collectively create an unconstitutional risk of pain and suffering at his execution. *See* Dkt. 13 at 5–18. Those issues are distinct from Mr. Pizzuto's individual health conditions, and the defendants' emphasis is misplaced.

Lastly, the defendants ask "what information relevant to [Mr. Pizzuto's] Eighth Amendment claim could he learn from knowing whether or not IDOC obtained the chemicals from the same source?" Dkt. 151 at 6. Easy: the same information he is pursuing regarding the old source. As this Court has found, all that information is relevant to Mr. Pizzuto's claim. *See* Dkt. 123 at 13–23. Since those facts have been deemed relevant to the claim, it is by definition relevant whether the source is identical.

## II.    RFA 240 is proportional.

The defendants fare no better on proportionality. They first assert that Mr. Pizzuto has already asked for similar information about the new source. *See* Dkt. 151 at 7. What the defendants conveniently neglect to mention is that they have refused to engage with every such question. *See* Dkt. 148-2 at 4–23. The defendants are as a result entirely in error when they maintain that Mr. Pizzuto already "has access to the information." Dkt. 151 at 9. In fact, the defendants have fully obstructed his access to the information. Nothing about these other discovery requests—all of which have been blocked by the defendants—relieves IDOC of the obligation to answer RFA 240. The information remains necessary and proportional.

**III.     RFA 240 is not unduly burdensome.**

Turning to burdensomeness, the defendants first attack the test the Court has crafted to protect IDOC's secrecy interests. *See* Dkt. 151 at 11. In the defendants' view, the Court's "reasonable degree of certainty" formulation ought to be jettisoned in favor of a framework that would ask whether information could *possibly* lead to the identification of sources. *See id.* As before, the defendants are in an untimely fashion pursuing reconsideration without even attempting to satisfy the controlling standard, and their proposal is properly rejected on that basis alone.

The proposal is also unsound. IDOC provides a single citation to bolster its preferred test: *Martin v. Ward*, No. 1:18-cv-4617, 2021 WL 1186749 (N.D. Ga. Mar. 30, 2021). *See* Dkt. 151 at 13. The defendants misread the case. Although *Martin* refers in one place to information that "could possibly identify any entity or person," 2021 WL 1186749, at *9, the court there was not adopting the defendants' favored approach. Taking the context into account, it is clear that the *Martin* court was not suggesting that information can be withheld whenever a correctional official claims without any specific evidence that the fact at issue will be one tiny part of a grand conspiracy to unmask a drug source, which is IDOC's philosophy. To the contrary, *Martin* directed the Georgia correctional defendants to disclose a broad array of information, including documents concerning the making of the drugs, their properties, and oversight of the production facilities. *See id.* at *9. The only information the court protected from disclosure consisted of "the identities" themselves. *See id.* With this background in mind, the *Martin* court presumably meant by its "possibility" language that information directly tied to an identity—like a license number associated with a single individual—could be withheld. That reading of *Martin* is backed up by the fact that other execution-secrecy cases also involve information that directly identifies sources in the same way, and not the sort of map-on-the-wall narrowing imagined by the Department. *See*

REPLY IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 5

*Jordan v. Comm'r, Miss. Dep't of Corrs.*, 947 F.3d 1322, 1330 (11th Cir. 2020); *McGehee v. Tex. Dep't of Crim. Just.*, No. H-18-1546, 2018 WL 3996956, at *8 (S.D. Tex. Aug. 21, 2018).

Additionally, it is telling that Idaho's secrecy statute—which continues to serve as IDOC's north star—is squarely at odds with the novel test lobbied for here by the Department. Section 19-2716A, which was enacted as a result of advocacy by IDOC itself, bars only the exposure of "*identities*." § 19-2716A(4). "Identity" is an unambiguous term. The pertinent definition is "information (as a name or address) that distinguishes a person." *Identity,* Merriam-Webster, https://www.merriam-webster.com/dictionary/identity. There is nothing in § 19-2716A that would give life to IDOC's attenuated "possibility" construction. *Cf. Blau v. Ga. Dept. of Corrs.*, 873 S.E.2d 464, 470 (Ga. Ct. App. 2022) (interpreting Georgia's execution-secrecy act as allowing for the state to redact only text that "*reveals* a name, residential, or business address" or other unique identifying information while requiring the disclosure of records otherwise responsive to open record requests (emphasis in original)). Although Mr. Pizzuto recognizes that the statute does not control this federal discovery dispute, the daylight between § 19-2716A and IDOC's view again illustrates how untenable the Department's proposed secrecy test is.

Applying the test aptly fashioned by the Court, the defendants flunk it again. They repeat the usual speculative fears about IDOC's drug source being revealed. *See* Dkt. 151 at 9. The defendants' anxiety with respect to RFA 240 is even more unfounded than it has been in connection with the many other conjectural appeals to secrecy that have previously missed the mark. That is because RFA 240 literally asks for no information about the source other than whether it has remained the same. *See* Dkt. 148-1 at 2. As Mr. Pizzuto has explained, the only way in which RFA 240 could possibly lead to the identification of the supplier is if the first source itself were revealed. *See id.* at 4–5. And any information Mr. Pizzuto learns about the first source will be as

REPLY IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 6

a result of rulings by this Court and potentially the Ninth Circuit that the questions at issue do not unduly implicate confidentiality concerns. It follows that RFA 240 is not a threat to anyone's anonymity. For all of their pontifications about secrecy, the defendants have no rejoinder to this basic point, and their proportionality attack accordingly stalls at the outset.

Because they cannot plausibly point to any valid secrecy worries relating to RFA 240—the sole discovery request in dispute here—the defendants switch the spotlight to entirely different RFAs. Specifically, they are troubled by RFAs 209 and 280. *See* Dkt. 151 at 15. Those RFAs asked whether the manufacturers of the old and new drugs respectively were listed in the Orange Book maintained by the Food and Drug Administration (FDA), and the defendants answered both in the affirmative. *See* Dkt. 148-2 at 4; Dkt. 151-1 at 2. The defendants repeatedly harp on the fact that, by their lights, the answers to RFAs 209 and 280 limit the potential manufacturers to four companies. *See* Dkt. 151 at 16, 17. What the defendants never explain, however, is what that has to do with RFA 240, the only issue before the Court. An answer to RFA 240 does not affect that four-manufacturer pool at all—it only confirms or denies that the source has remained constant. If the defendants thought that RFAs 209 and 280 endangered the secrecy of their sources, they should have objected at the time, as they routinely do in connection with numerous other discovery requests. It is not appropriate for the defendants to answer two RFAs and then use their own responses to complain about a completely unrelated request.

According to the defendants, they were forced by Mr. Pizzuto into a "catch-22" by RFAs 209 and 280 because an objection to them "would call into question IDOC's regulatory compliance and would otherwise be false." Dkt. 151 at 15–16. As an initial matter, even if this logic held together, it would still have nothing to do with RFA 240. What is more, the logic is specious. An objection to the RFAs would have said no more than that a response potentially narrows the

REPLY IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 7

manufacturers down to four, just as the defendants are now maintaining in their opposition to the motion to compel. If there is any catch-22 here, it is entirely of the defendants own making.

The defendants' section on burdensomeness also includes a confusing discussion of how some of the discovery provided by IDOC has been filed publicly in either the present action or in Mr. Creech's case. *See* Dkt. 151 at 14. It is not clear what connection the talking point has to the discovery dispute. In any event, it is mistaken. The insinuation by the defendants is that the filings somehow evidence the kind of collusion in revealing drug sources that the Department fears. They don't. The simpler explanation is the true one. Discovery has been cited in both cases because both plaintiffs are challenging the reliability of the same drugs and the execution plans of the same defendants. The information at issue speaks to those questions, as the Court has rightly determined. Furthermore, the use of discovery in a separate but related case is fully harmonious with the Ninth Circuit's pragmatic policy "strongly favor[ing] access to discovery materials to meet the needs of parties engaged in collateral litigation" in the service "of judicial economy." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003). Notwithstanding the defendants' cryptic insinuations to the contrary, even before the protective order was modified to allow for the sharing of *confidential* materials, there was nothing prohibiting Mr. Pizzuto's counsel from sharing non-sensitive discovery with Mr. Creech's attorneys (who are employed by the same office). Indeed, the defendants have throughout the litigation been entitled to mark documents as attorney-eyes only whenever they chose. *See* Dkt. 81 at 2; Dkt. 83. They did not do so on any documents filed by Mr. Creech, making it entirely permissible and appropriate for him to use the material in support of a similar claim. *See Phillips ex rel. Ests. of Byrd v. GMC*, 307 F.3d 1206, 1210–11 (9th Cir. 2002) (discussing the default principle that "the public can gain access to litigation documents and information produced during discovery").

REPLY IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 8

The defendants feel that RFA 240 is burdensome partly because there have been many other discovery requests. *See* Dkt. 151 at 9. They are wrong. For one thing, the defendants agreed to a discovery plan that placed no cap on RFAs. *See* Dkt. 21 at 4. For another, the only question before the Court now is whether RFA 240 is burdensome, not any other discovery requests. *See Lenard v. Sherwin-Williams Co.*, No. 2:13-cv-2548, 2015 WL 854752, at *3 (E.D. Cal. Feb. 26, 2015) (rejecting a similar argument because the "other discovery requests are not before the court"). Additionally, this is a complex capital case in which numerous facts have emerged during the course of the litigation that called for further investigation. Most significantly, while discovery here was ongoing, IDOC attempted its first execution in twelve years and failed to put the inmate to death, raising substantial questions about the kinds of risks that are at the heart of the present lawsuit. *See generally* Dkt. 141-1. Moreover, IDOC's own obstructionism has played a significant role in making discovery more complicated and involved than it would otherwise be. The defendants have refused to answer numerous discovery requests on meritless secrecy objections, necessitating extensive litigation that has frequently led to orders rejecting IDOC's extreme stances. *See* Dkts. 88, 97, 123. Much of the burdensomeness associated with discovery flows from the defendants' resistance to transparency, and they cannot rely on it to justify their most recent unresponsiveness to valid discovery requests.

Finally, the defendants fall back on the tired truism that sometimes sensitive information is revealed in other contexts and cases, thereby supposedly authorizing them to withhold whatever facts they see as too dangerous. Their opening example is Aaron von Ehlinger, *see* Dkt. 151 at 11, an incident the defendants have previously—and unavailingly—alluded to in the past, *see* Dkt. 104 at 5. At any rate, there is nothing in the von Ehlinger coverage that references any piece of information comparable to the requests under review here. *See* Ruth Brown, *Lawsuit dismissed in*

REPLY IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 9

*ex-legislative intern's lawsuit after $200,000 settlement*, Idaho Capital Sun Jan. 12, 2023, https://idahocapitalsun.com/2023/01/12/lawsuit-dismissed-in-ex-legislative-interns-lawsuit-after-200000-settlement/. The "scoop" in the von Ehlinger article was the monetary amount—something IDOC voluntarily disclosed here. *See* Dkt. 102-4 at 2.

IDOC's other example is John Oliver's recent revelation of a source tapped by the federal government for its executions. *See* Dkt. 151 at 11–12. The episode only underscores how tangential discovery is to IDOC's own concerns. Mr. Oliver's researchers uncovered the company that made the federal government's raw execution chemicals by submitting public record requests to federal regulators, discussing the information with liaisons at those agencies, speaking to confidential sources, reviewing correspondence sent by congresspeople, and reading news articles produced by other outlets. *See* Last Week Tonight with John Oliver, *Executions*, YouTube (Apr. 7, 2024), https://www.youtube.com/watch?v=SOn3wba8c-Y, at 11:24–16:15. None of those avenues depend upon information produced by government actors in discovery. The defendants are under the impression that when execution drug sources are uncovered, the individuals involved "have not provided a roadmap of how they came up with the information." Dkt. 151 at 13. Yet that is precisely what Mr. Oliver did—he detailed for his audience how the show's staff uncloaked the source. Such efforts will take place regardless of whether states are held to their discovery obligations or not. More to the point, the defendants have not even tried to show how an answer to the innocuous question of whether the source has changed is comparable to a fact in any case from anywhere in the country that led to a source's identity. That notable omission dooms the defendants' position.

### IV.    Conclusion

The sixth motion to compel, *see* Dkt. 148, should be granted.

REPLY IN SUPPORT OF SIXTH MOTION TO COMPEL – Page 10

DATED this 17th day of July 2024.

    /s/ Jonah J. Horwitz
Jonah J. Horwitz
Christopher M. Sanchez

/s/ Stanley J. Panikowski
Stanley J. Panikowski
Sarah E. Kalman
DLA PIPER LLP (US)

# CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which is designed to send a Notice of Electronic Filing to persons including the following:

| | |
|---|---|
| Kristina Schindele<br>kschind@idoc.idaho.gov | Michael Elia<br>mje@melawfirm.net |
| Karin Magnelli<br>kmagnell@idoc.idaho.gov | Tanner Smith<br>tanner@melawfirm.net |

    /s/ Julie Hill
Julie Hill