# Exhibit D

Jonah J. Horwitz, Idaho Bar No. 10494
Christopher M. Sanchez, Idaho Bar No. 12070
Federal Defender Services of Idaho
702 W. Idaho Street, Suite 900
Boise, ID 83702
Telephone: (208) 331-5530
Facsimile: (208) 331-5559
ECF:   Jonah_Horwitz@fd.org;
       Christopher_M_Sanchez@fd.org

Stanley J. Panikowski, California Bar No. 224232
(admitted *pro hac vice*)
DLA PIPER LLP (US)
401 B Street, Suite 1700, San Diego, CA 92101-4297
Telephone: (619) 699-2700
Facsimile: (619) 699-2701
ECF: stanley.panikowski@dlapiper.com

Sarah E. Kalman, Pennsylvania Bar No. 325278
(admitted *pro hac vice*)
DLA PIPER LLP (US)
1650 Market Street, Suite 500
Philadelphia, PA 19103
Telephone: (215) 656-2438
ECF: sarah.kalman@dlapiper.com

*Attorneys for Plaintiff Gerald Ross Pizzuto, Jr.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **GERALD ROSS PIZZUTO, JR.,** | CASE NO. 1:21-cv-00359-BLW |
| Plaintiff, | |
| v. | **Plaintiff's Twelfth Set of Requests for Admission** |
| **JOSH TEWALT, et al.,** | |
| Defendants. | |

Plaintiff's Twelfth Set of Requests for Admission – Page 1

**Plaintiff's Twelfth Set of Requests for Admission**

Plaintiff Gerald Ross Pizzuto, Jr., hereby requests, pursuant to Rule 36 of the Federal Rules of Civil Procedure, that Defendants answer the requests for admission set forth below within thirty days of service.

**Definitions**

1. The term "Akorn" refers to Akorn Pharmaceuticals, Akorn Operating Company, and any other business in the pharmaceutical industry with the word "Akorn" in its name.

2. The term "Chemicals Protocol" means the form entitled "Execution Chemicals Preparation and Administration" that is available on IDOC's website at http://forms.idoc.idaho.gov/WebLink/0/edoc/982043/Execution%20Chemicals%20Preparation%20and%20Administration.pdf [https://perma.cc/3SE6-E3ZB].

3. The term "Central Line" has the same meaning as in the Chemicals Protocol.

4. The term "Chemical Room" refers to the space behind the Execution Chamber from which the members of the Medical Team will observe the inmate on monitors.

5. The term "Compounded" means mixed, made, and/or prepared by either a Pharmacy/Pharmacist operating under § 503A of the Federal Food, Drug, and Cosmetic Act (2016) (FDCA) or by an Outsourcing Facility operating under § 503B of the FDCA.

6. The terms "Defendants" and "you" mean the defendants in this action, including their current or former officials, managers, employees, agents, attorneys, representatives, contractors, subcontractors, and/or other persons acting on their behalf.

7. The term "Execution Chamber" refers to the room at IMSI in which the inmate is placed on a table and put to death.

8. The term "Exhibit 1" refers to the document attached to these RFAs and labeled "Exhibit 1."

9. The term "FDA" refers to the United States Food and Drug Administration.

10. The term "Hikma" refers to Hikma Pharmaceuticals and any other business in the pharmaceutical industry with the word "Hikma" in its name, including Hikma doing business as Leucadia.

11. The term "IDOC" refers to the Idaho Department of Correction.

12. The term "IMSI" refers to the Idaho Maximum Security Institution.

13. The term "IMSI staff" refers to individuals who regularly work at IMSI, whether as IDOC employees or as contractors.

14. The term "M1" refers to the person designated as Medical Team Member One, the term "M2" refers to the person designated as Medical Team Member Two, and so on.

15. The term "Made" means created, fabricated, produced, etc.

16. The term "Manufactured" is defined as the process of industrial-scale synthesis of pharmaceutical drugs by pharmaceutical companies. For purpose of these RFAs, a drug that is Compounded is by definition not Manufactured.

17. The term "Medical Team" is used in the same sense as in SOP 135.

18. The term "Medical Team Leader" is used in the same sense as in SOP 135.

19. The term "New Execution Drugs" refers to chemicals that you obtained in or after February 2024.

20. The term "Old Execution Drugs" refers to the chemicals that you obtained in October 2023 or earlier and intended to have available for use in Thomas Creech's execution and which were not disposed of after the attempted execution on February 28, 2024.

21. The term "Outsourcing Facility" has the same meaning here as in 21 U.S.C. § 353b.

22. The term "the Present" refers to the date you respond to these RFAs.

23. The term "RFA" means "Request for Admission."

24. The term "Sagent" refers to Sagent Pharmaceuticals and any other business in the pharmaceutical industry with the word "Sagent" in its name.

25. The term "SOP 135" means the document entitled "Execution Procedures," denominated version 4.0 of IDOC Standard Operating Procedure Control Number 135.02.01.001, approved March 30, 2021, and available at https://perma.cc/9T7Z-USJ9.

## Instructions

1. These RFAs are directed equally at Defendant Josh Tewalt, Defendant Liz Neville, and Defendant Randy Valley.[1]  Defendants should clarify who is responding to each RFA and whether they have different responses or the same responses.

## Requests for Admission

360. Admit or deny that the New Execution Drugs were made by the same manufacturer as the Old Execution Drugs.

    **Answer:**

361. Admit or deny that you would use drugs at an execution Manufactured by a company that opposed the use of its products in executions.

    **Answer:**

---

[1] Randy Valley is automatically substituted into this case as a defendant in place of his predecessor as Warden of IMSI.  Responses to these Requests should therefore be made by Defendants Tewalt, Valley, and Neville.

362. Admit or deny that a Central Line procedure would be audible to witnesses through the closed-circuit system you described in your answer to RFA 323.

    **Answer:**

363. Admit or deny that the New Execution Drugs have an expiration date on or after November 1, 2025.

    **Answer:**

364. Admit or deny that at future executions the drugs will be administered from the Chemical Room using a delivery pump.

    **Answer:**

365. Admit or deny that the Central Line volunteer referred to in the defendants' response to RFA 322 has been selected.

    **Answer:**

366. Admit or deny that the construction of the facility for the use of the Central Line is complete.

    **Answer:**

367. Admit or deny that the Central Line volunteer referred to in the defendants' response to RFA 322 has participated in a Central Line execution in the past.

    **Answer:**

368. Admit or deny that the Central Line volunteer referred to in the defendants' response to RFA 322 is a medical doctor.

    **Answer:**

369. Admit or deny that Defendant Valley has medical training.

    **Answer:**

370. Admit or deny that Defendant Valley has a medical degree.

    **Answer:**

371. Admit or deny that Defendant Valley has medical expertise.

    **Answer:**

372. Admit or deny that Defendant Valley has pharmaceutical training.

    **Answer:**

373. Admit or deny that Defendant Valley has a pharmaceutical degree.

    **Answer:**

374. Admit or deny that Defendant Valley has pharmaceutical expertise.

    **Answer:**

375. Admit or deny that M1[2] is the Medical Team Leader.

    **Answer:**

376. Admit or deny that M2 is the Medical Team Leader.

    **Answer:**

377. Admit or deny that M3 is the Medical Team Leader.

    **Answer:**

378. Admit or deny that M4 is the Medical Team Leader.

    **Answer:**

379. Admit or deny that M5 is the Medical Team Leader.

    **Answer:**

---

[2] Defendants have indicated that M1 is vacant.  Mr. Pizzuto poses RFAs about M1 in the event the position has been filled.  If M1 becomes filled, Defendants have an obligation to supplement their discovery responses to answer every request previously made regarding M1.

Plaintiff's Twelfth Set of Requests for Admission – Page 6

380. Admit or deny that M6 is the Medical Team Leader.

    **Answer:**

381. Admit or deny that M7 is the Medical Team Leader.

    **Answer:**

382. Admit or deny that the members of the Medical Team are screened to determine whether they have any connection to the criminal proceedings associated with inmates they may execute.

    **Answer:**

383. Admit or deny that there is a range of temperature at which the Old Execution Drugs are supposed to be kept.

    **Answer:**

384. Admit or deny that IDOC has received a package insert or other document indicating the temperature range at which the Old Execution Drugs are supposed to be kept.

    **Answer:**

385. Admit or deny that there is a range of temperature at which the New Execution Drugs are supposed to be kept.

    **Answer:**

386. Admit or deny that IDOC has received a package insert or other document indicating the temperature range at which the New Execution Drugs are supposed to be kept.

    **Answer:**

387. Admit or deny that the appropriate temperature range for the Old Execution Drugs to be stored at is 68 to 77 degrees Fahrenheit.

    **Answer:**

Plaintiff's Twelfth Set of Requests for Admission – Page 7

388. Admit or deny that the appropriate temperature range for the New Execution Drugs to be stored at is 68 to 77 degrees Fahrenheit.

    **Answer:**

389. Admit or deny that the Old Execution Drugs have remained within the recommended temperature range since they entered IDOC's possession.

    **Answer:**

390. Admit or deny that the New Execution Drugs have remained within the recommended temperature range since they entered IDOC's possession.

    **Answer:**

391. Admit or deny that the air conditioning and/or cooling system at IMSI has been functioning at full strength from June 1, 2024 to the Present.

    **Answer:**

392. Admit or deny that the air conditioning and/or cooling system in the Warden's office at IMSI has been functioning at full strength from June 1, 2024 to the Present.

    **Answer:**

393. Admit or deny that there have been outages in the air conditioning and/or cooling system at IMSI from June 1, 2024 to the Present.

    **Answer:**

394. Admit or deny that there have been outages in the air conditioning and/or cooling system in the Warden's office at IMSI from June 1, 2024 to the Present.

    **Answer:**

395. Admit or deny that the Old Execution Drugs have been in the Warden's office at IMSI from June 1, 2024 to the Present except for when they were moved for the attempted execution of Mr. Creech on February 28, 2024.

    **Answer:**

396. Admit or deny that the New Execution Drugs have been in the Warden's office at IMSI from June 1, 2024 to the Present.

    **Answer:**

397. Admit or deny that the Old Execution Drugs have been refrigerated from June 1, 2024 to the Present except for when there were moved in connection with the attempted execution of Mr. Creech on February 28, 2024.

    **Answer:**

398. Admit or deny that the New Execution Drugs have been refrigerated from June 1, 2024 to the Present.

    **Answer:**

399. Admit or deny that the Old Execution Drugs have been tested between June 1, 2024 and the Present.

    **Answer:**

400. Admit or deny that the New Execution Drugs have been tested between June 1, 2024 and the Present.

    **Answer:**

401. Admit or deny that there have been multiple days from June through August 2024 when the Old Execution Drugs were stored at a temperature higher than the recommended range.

    **Answer:**

402. Admit or deny that there have been multiple days from June through August 2024 when the New Execution Drugs were stored at a temperature higher than the recommended range.

    **Answer:**

403. Admit or deny that the temperature around the Old Execution Drugs has been measured every day since they entered IDOC's possession.

    **Answer:**

404. Admit or deny that the temperature around the New Execution Drugs has been measured every day since they entered IDOC's possession.

    **Answer:**

405. Admit or deny that the temperature around the Old Execution Drugs has been logged every day.

    **Answer:**

406. Admit or deny that the temperature around the New Execution Drugs has been logged every day.

    **Answer:**

407. Admit or deny that during the July 2024 heat wave additional steps were taken to ensure the Old Execution Drugs remained within the required temperature range.

    **Answer:**

408. Admit or deny that during the July 2024 heat wave additional steps were taken to ensure that the New Execution Drugs remained within the required temperature range.

    **Answer:**

409. Admit or deny that the emails contained in Exhibit 1 are authentic.

Plaintiff's Twelfth Set of Requests for Admission – Page 10

**Answer:**

410. Admit or deny that the letter dated February 22, 2019 and included in Exhibit 1 was sent to Director Tewalt.

    **Answer:**

411. Admit or deny that the letter dated February 22, 2019 and included in Exhibit 1 was reviewed by Director Tewalt.

    **Answer:**

412. Admit or deny that you discussed with Jared Larsen the letter dated February 22, 2019 and included in Exhibit 1.

    **Answer:**

413. Admit or deny that you discussed with other individuals in the Governor's office, apart from Jared Larsen, the letter dated February 22, 2019 and included in Exhibit 1.

    **Answer:**

414. Admit or deny that you discussed with other IDOC employees the letter dated February 22, 2019 and included in Exhibit 1.

    **Answer:**

415. Admit or deny that you are aware that Hikma has placed controls on its products to ensure they are not used in executions.

    **Answer:**

416. Admit or deny that you are aware that Sagent has placed controls on its products to ensure they are not used in executions.

    **Answer:**

417. Admit or deny that you are aware that Akorn has placed controls on its products to ensure they are not used in executions.

**Answer:**

DATED this 2nd day of August 2024.

                                       */s/ Jonah J. Horwitz*
                                       Jonah J. Horwitz

                                       */s/ Christopher M. Sanchez*
                                       Christopher M. Sanchez

                                       Attorneys for Plaintiff Gerald Ross Pizzuto, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of August 2024, I served the foregoing document by email on opposing counsel at the following addresses:

Kristina M. Schindele
krschind@idoc.idaho.gov

Mary Karin Magnelli
kmagnell@idoc.idaho.gov

Michael Elia
mje@melawfirm.net

Tanner J. Smith
tanner@melawfirm.net

                                       */s/ Jonah J. Horwitz*
                                       Jonah J. Horwitz

# EXHIBIT 1

## Jared Larsen

**From:** Jared Larsen
**Sent:** Monday, March 18, 2019 5:06 PM
**To:** 'Tewalt, Josh'
**Cc:** Brian Wonderlich
**Subject:** RE: Message from "GOV-RICOHC5501"
**Attachments:** Hikama.pdf


**From:** Tewalt, Josh <jtewalt@idoc.idaho.gov>
**Sent:** Monday, March 18, 2019 4:54 PM
**To:** Jared Larsen <Jared.Larsen@gov.idaho.gov>
**Cc:** Brian Wonderlich <Brian.Wonderlich@gov.idaho.gov>
**Subject:** Re: Message from "GOV-RICOHC5501"

The full letter didn't scan.

Get Outlook for iOS

**From:** Jared Larsen <Jared.Larsen@gov.idaho.gov>

**Sent:** Monday, March 18, 2019 4:52:24 PM

**To:** Tewalt, Josh

**Cc:** Brian Wonderlich

**Subject:** FW: Message from "GOV-RICOHC5501"


Josh, See the attached letter from Himkma Pharmaceuticals. Can you call sometime and talk? Jared



-----Original Message----- From: mpc5501@soi.com Sent: Monday, March 18, 2019 3:54 PM To: Jared Larsen Subject: Message from "GOV-RICOHC5501" This E-mail was sent from "GOV-RICOHC5501" (Aficio MP C5501). Scan Date: 03.18.2019 15:53:31 (-0600) Queries to: mpc5501@soi.com

DO NOT read, copy, or disseminate this communication unless you are the intended addressee. This e-mail communication contains confidential and/or privileged information intended only for the addressee. If you have received this communication in error, please call us immediately at 208-658-2000 and ask to speak to the sender. Please e-mail the sender to notify him immediately that you have received the communication in error, and delete message received in error immediately.

9 069664

**Jared Larsen**

**From:** Jared Larsen
**Sent:** Monday, March 18, 2019 5:12 PM
**To:** 'Tewalt, Josh'
**Cc:** Brian Wonderlich
**Subject:** RE: Message from "GOV-RICOHC5501"
**Attachments:** Hikama.pdf

Third time's a charm.

**From:** Tewalt, Josh <jtewalt@idoc.idaho.gov>
**Sent:** Monday, March 18, 2019 4:54 PM
**To:** Jared Larsen <Jared.Larsen@gov.idaho.gov>
**Cc:** Brian Wonderlich <Brian.Wonderlich@gov.idaho.gov>
**Subject:** Re: Message from "GOV-RICOHC5501"

The full letter didn't scan.

Get Outlook for iOS

**From:** Jared Larsen <Jared.Larsen@gov.idaho.gov>
**Sent:** Monday, March 18, 2019 4:52:24 PM
**To:** Tewalt, Josh
**Cc:** Brian Wonderlich
**Subject:** FW: Message from "GOV-RICOHC5501"

Josh, See the attached letter from Himkma Pharmaceuticals. Can you call sometime and talk? Jared

-----Original Message----- From: mpc5501@soi.com Sent: Monday, March 18, 2019 3:54 PM To: Jared Larsen Subject: Message from "GOV-RICOHC5501" This E-mail was sent from "GOV-RICOHC5501" (Aficio MP C5501). Scan Date: 03.18.2019 15:53:31 (-0600) Queries to: mpc5501@soi.com

DO NOT read, copy, or disseminate this communication unless you are the intended addressee. This e-mail communication contains confidential and/or privileged information intended only for the addressee. If you have received this communication in error, please call us immediately at 208-658-2000 and ask to speak to the sender. Please e-mail the sender to notify him immediately that you have received the communication in error, and delete message received in error immediately.

9 069666



Hikma Pharmaceuticals PLC
1 New Burlington Place
London W1S 2HR

T (0)20 7399 2760

RECEIVED

MAR 18 2019

OFFICE OF THE GOVERNOR

22nd February 2019

The Honorable Brad Little
Governor, State of Idaho
State Capitol
PO Box 83720
Boise, ID 83720
USA

Dear Governor Little,

Hikma aims to improve lives by providing patients with access to high quality, affordable medicines. Our medicines are used millions of times a day to treat illness and save lives. This has been our mission for more than 40 years.

We are extremely dismayed to learn that, despite our best efforts to ensure our medicines are used only for their intended medicinal purposes, some states continue to attempt to procure our products from distributors and other intermediaries for use in lethal injection. Not only is this inconsistent with the FDA indication and contrary to our intention of manufacturing the product for the health and well-being of patients in need, but also it is completely counter to our values as an organization.

We are writing for two purposes. First, we are requesting that you notify us in writing if the state of Idaho is in possession of any Hikma or West Ward product intended for the purpose of lethal injection. Please respond to this request by 29 April 2019. Second, we are writing as we do regularly to restate our objection in the strongest possible terms to the use of any of our products for lethal injection.

You are likely aware that to prevent our products being used by Departments of Corrections for lethal injection, we have put certain controls in place including the restriction of any direct sales to Departments of Corrections of restricted products, or sales to customers

As states continue to experiment with new lethal injection cocktails, and some continue to attempt to procure our products from distributors and other intermediaries for use in lethal injection despite our clear statement of policy and strict controls, we have had to extend the restriction of products to include additional drugs. This list of restricted products is kept current on our website at www.hikma.com.

To this point, we would like to make clear that our objection should be applied to any and all West-Ward and Hikma products, not just those on our restricted list.

We also request that you encourage the Director and other relevant Idaho Department of Corrections officials to not circumvent our carefully prepared controls or potentially

undermine these specifically drafted legal provisions in our agreements. In the event we were forced to implement additional controls to prevent diversion and misuse, it may have the unintended consequence of potentially preventing certain patients from receiving these medicines despite having a genuine medical need. This outcome would not be beneficial for anyone, particularly the good people of your state. High quality, generic medicines play a vital role in improving health. As such, we hope you will be our partner in furthering our values and upholding our policy.

Brooke S Clarke
VP Corporate Affairs

9 069668