UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR., | Case No. 1:21-cv-00359-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| JOSH TEWALT, Director, Idaho Department of Correction, in his official capacity, TIMOTHY RICHARDSON, Warden, Idaho Maximum Security Institution, in his official capacity, | |
| Defendants. | |

## INTRODUCTION

Before the Court are Centurion of Idaho, LLC's Motion to Quash Subpoena Duces Tecum (Dkt. 121) and Defendant's Motion to Quash Non-Party Subpoena (Dkt. 122). For the reasons described below, the Court will deny both Motions.

## BACKGROUND

Plaintiff Gerald Ross Pizzuto, Jr. is an inmate on Idaho's death row. He brought this lawsuit in September 2021 to prevent the Idaho Department of Corrections (IDOC) from executing him using pentobarbital, which he claims would constitute cruel and unusual punishment in violation of the Eighth

**MEMORANDUM DECISION AND ORDER - 1**

Amendment. Discovery is ongoing, and the parties have experienced numerous conflicts.[1] The current contention concerns third-party records from Centurion of Idaho, a medical contractor for the IDOC, related to the attempted execution of Thomas Creech on February 28, 2024.

Because of the nature of the discovery request and resulting objections, it is necessary to review the underlying issues in the case. Pizzuto alleges that executing him with pentobarbital would create an unconstitutionally high risk of serious pain and suffering due to his particular medical conditions and systemic problems with the IDOC's execution procedures. One problem he anticipates is difficulty accessing his veins, leading to a prolonged execution and severe pain. To show the likelihood of this occurring, he points to the botched execution of Mr. Creech in February. There, Pizzuto says, the execution team spent nearly an hour unsuccessfully trying to access Mr. Creech's veins. They halted the attempt after sticking needles into at least eight parts of his body. *Second Am. Compl.* ¶¶ 240-42.

On March 8, 2024, Pizzuto served a subpoena on Centurion seeking:

> All DOCUMENTS generated between January 29, 2024 and the present REGARDING preparations for and the attempted execution of Thomas Creech, including but not limited to COMMUNICATIONS, training materials such as agendas and checklists, notes, memoranda,

---

[1] This Court's ruling on one dispute is currently being appealed, and that Discovery Order is stayed pending the appellate disposition. Dkt. 150. The Motions to Quash currently before the Court are unrelated to the matters, so it is unnecessary to wait for the Ninth Circuit's decision before making a ruling here.

medical records, and so forth, as well as all DOCUMENTS REGARDING efforts to assess Mr. Creech's veins after the February 28, 2024 execution was called off.

Centurion has objected and moved to quash the subpoena. The company argues that the medical records sought are protected from disclosure under HIPAA and, alternatively, that compliance would be unduly burdensome. *Centurion's Mem. Supp. Mot. Quash*, Dkt. 121 [hereinafter *Centurion's Mem.*]. Defendants also asked the Court to quash the subpoena, asserting that they have standing in the matter due to the IDOC's interest in protecting inmates' health records. *Defs.' Mem. Supp. Mot. Quash*, Dkt. 122 [hereinafter *Defs.' Mem.*].

## LEGAL STANDARD

Under the Federal Rules of Civil Produce, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A party may use subpoenas to command non-parties to produce discoverable evidence in their possession, but the party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." R. 45(a)(1)(A)(iii), (d)(1). Upon motion by the subpoenaed entity, a court must quash or modify a subpoena seeking material that falls outside the contours of Rules 26 and 45. For example, a subpoena must be quashed if it "requires disclosure of privileged or other protected matter" or if compliance would "subject[] a person to undue burden." R.

45(3)(3)(iii)-(iv). The burden is on the movant to show that the subpoena should be quashed. The party seeking the records, however, must show that the information sought is relevant and material. *Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Group, Inc.*, No. 4:13-cv-00064, 2013 WL 6446704, at *2 (D. Idaho Dec. 9, 2013).

A party may quash a subpoena served on a non-party under far more limited circumstances. As this Court recently explained, a party typically has standing to object to a non-party subpoena only if asserting a claim of privilege regarding the documents sought. Dkt. 97 at 2. The exception is when the third-party information would jeopardize the party's own interests and subject it to "annoyance, embarrassment, oppression, or undue burden or expense." *Id.* at 2-3; *see* Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC, No. 4:16-CV-00427, 2017 WL 4839375, at *3 (D. Idaho Oct. 26, 2017); *see also* Fed. R. Civ. P. 26(c)(1).

## ANALYSIS

### A. Defendants' Motion to Quash Non-Party Subpoena

The Court first considers Defendants' standing to object to the subpoena served on Centurion. Though Defendants have brought a motion to quash the subpoena entirely, they primarily contest the request for Mr. Creech's medical records. First, they argue that the IDOC "has an interest in protecting the electronic health records of its residents" based on federal law governing the release of health care information as well as internal IDOC policies. *Defs.' Mem.* at 3, Dkt. 122.

MEMORANDUM DECISION AND ORDER - 4

Second, they contend that documents related to the attempted execution of Mr. Creech are irrelevant to Pizzuto's claims.

Parties have succeeded in quashing non-party subpoenas when the information sought contains sensitive personal or financial information about the party. *See Nova Products, Inc. v. Kisma Video Inc.*, 220 F.R.D. 238, 241 (S.D.N.Y. 2004) (collecting cases); *Nelson-Ricks Cheese Co.*, 2017 WL 4839375 at * 3; *Jacobs v. Conn. Cmty. Tech. Coll.*, 258 F.R.D. 192, 195 (D. Conn. 2009). Here, the records sought from Centurion will not reveal improper information about the IDOC. Rather, Defendants suggest that they have a blanket interest in preventing the disclosure of inmate medical records. This argument is unpersuasive.

Defendants have contracted out to an independent entity the work of providing health care to inmates. Thus, it is Centurion—not the IDOC—that has been commanded to produce the records at issue. *Pl.'s Resp. to Defs.* at 3, Dkt. 128. Defendants have not explained how Centurion's release of records pursuant to a subpoena would compromise the IDOC's privacy obligations. First, Defendants have not produced any support, beyond broad and unhelpful citations to HIPAA and tangential case law, for the conclusory statement that the IDOC could face a monetary fine due to Centurion's compliance with the subpoena. *Defs.' Mem.* at 4, Dkt. 122. Second, as explained below, Centurion's compliance with the subpoena does not violate HIPAA. And third, the mere existence of IDOC policies governing

**MEMORANDUM DECISION AND ORDER - 5**

inmate medical records does not show that Defendants will suffer "annoyance, embarrassment, oppression, or undue burden or expense"—especially because IDOC rules allow disclosure upon receipt of a court order or subpoena.

Defendants also argue that Mr. Creech's medical records are not relevant to Pizzuto's litigation because his Eighth Amendment claim hinges on his specific medical conditions. *Defs.' Mem.* at 5, Dkt. 122. This Court has previously specified that a party cannot oppose a non-party subpoena based on irrelevance alone. Dkt. 97 at 5. That principle applies here. Nonetheless, the Court also observes that Defendants have far too narrow an understanding of relevance. Pizzuto has brought an as-applied challenge to the constitutionality of pentobarbital execution based on a constellation of medical factors and alleged systemic problems with executions in Idaho. The examination of his claim is necessarily based on his particular circumstances. *See* Dkt. 147. However, this in no way suggests that other executions and execution attempts are *irrelevant* to him. Defendants strain credulity by asserting that the IDOC's recent bungled execution of an individual who shares important characteristics with Pizzuto has no material bearing on Pizzuto's case.

Finally, as Plaintiff notes, the parties have been instructed in the Court's scheduling orders to bring discovery disputes for informal mediation prior to filing written motions. Defendants had valid reasons to think that this requirement did

not apply to motions concerning subpoenas. *See Defs.' Rep.* at 2, Dkt. 134. However, for future disputes concerning subpoenas, the parties should contact the Court for informal mediation before filing motions. *See* Dkt. 43 at 5.

In sum, because Defendants have not articulated a legitimate interest in the subpoenaed documents, their Motion to Quash is denied.

### B. Centurion's Motion to Quash Subpoena Duces Tecum

Centurion has also moved to quash the subpoena pursuant to Federal Rule of Civil Procedure 45(d)(3). The company argues that the subpoena requires the disclosure of privileged and confidential medical records; is unduly burdensome; and seeks records not in Centurion's custody or control. Like Defendants, Centurion seeks to quash the subpoena entirely, but its argument focuses on the request for medical records.

#### 1. Privilege

Centurion claims that medical records regarding the execution attempt constitute protected health care information, and HIPAA prevents their disclosure without authorization from Mr. Creech. *Centurion's Mem.* at 4, Dkt. 121 (citing 45 C.F.R § 160.103). In response, Pizzuto argues that the materials sought "do not relate to the provision of health care" because they concern an execution attempt, and health care is specifically "designed to improve one's physical condition." *Pl.'s Resp. to Centurion* at 2, Dkt. 127. Therefore, Pizzuto contends, the records

**MEMORANDUM DECISION AND ORDER - 7**

are not health care information and fall outside of HIPAA, even accepting Centurion's interpretation of the law.

Pizzuto raises an interesting philosophical question about the nature of health care. However, the plain text of the subpoena seeks "medical records," which are generally synonymous with health care information. HIPAA itself does not appear to contemplate the unique circumstances of an execution attempt. But, as Centurion observes, there are accepted health care contexts such as hospice care—and, in several states, medical aid in dying—where improvement of an individual's physical condition is obviously not the goal. The Court thus accepts that medical records relating to the attempted execution of Mr. Creech are health care information protected by HIPAA.

None of the parties, however, address the fact that HIPAA provides for exactly this situation. "It is well established that HIPAA regulations do not create a federal physician-patient or hospital-patient privilege." *Polk v. Swift*, 339 F.R.D. 189, 195 (D. Wyo. 2021). Rather, the law expressly permits disclosure without authorization from the individual as long as certain procedures are followed. 45 C.F.R. § 164.512(e); *see Nw. Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 925-26 (7th Cir. 2004). Upon receipt of a subpoena, a covered entity may disclose protected health information without authorization if it has "satisfactory assurance" that the requesting party has made "reasonable efforts" to either (A) notify the

individual who is the subject of the protected health information, or (B) secure a qualified protective order prohibiting further disclosure of the information. 45 C.F.R. § 164.512(e)(1)(i)-(ii).

It does not appear that Pizzuto has attempted to notify Mr. Creech of the demand for the records at issue. However, there is already a protective order entered in this case. *See* Dkt. 81, 83. If that order meets HIPAA's standards, then the "satisfactory assurances" requirement is met. *See Polk*, 339 F.R.D. at 196. The question, then, is whether the current order constitutes a qualified protective order under HIPAA. To so qualify, the court order must:

> (A) Prohibit[] the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
> (B) Require[] the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. § 164.512(e)(v).

The present protective order does not specifically address other inmates' medical records, but it contains a blanket provision protecting "any document or information designated as CONFIDENTIAL or ATTORNEYS EYES ONLY." Dkt. 81 at 2. Information so designated is shielded from disclosure and must only be used for litigation purposes, meeting the first requirement of a qualified protective order. *See id.* at 3-4. Such information must also either be returned to the producing party or destroyed within thirty days of the end of the litigation, meeting

MEMORANDUM DECISION AND ORDER - 9

the second requirement. *See id.* at 7. Thus, there is already a qualified protective order in place that will prevent unwarranted disclosure of Mr. Creech's medical records, provided that Centurion simply marks the records as "Confidential."

Beyond the formal requirements of HIPAA, several supplemental considerations support the conclusion that the existing protective order suffices to protect Mr. Creech's privacy interests. Pizzuto and Mr. Creech are both represented by the Capital Habeas Unit, an overlap that limits the impact of disclosure. In fact, in February, this Court granted an emergency modification of Pizzuto's protective order to permit Mr. Creech access to all Pizzuto's discovery materials, including Pizzuto's own medical records. Dkt. 117. And, though the Court is not convinced by Pizzuto's claim that the records at issue are not "health care information," the privacy interests in records pertaining to one's attempted execution are fundamentally different from the interests at stake in any other medical disclosure.

In short, the subpoenaed records are not privileged, and Pizzuto has satisfied HIPAA requirements for unauthorized disclosure of health care information through the existing protective order for this case.[2]

_____

[2] Centurion also suggests that disclosure could violate the Health Care Quality Improvement Act (HCQIA). Because Centurion has not provided any concrete argument that the information sought is protected under the HCQIA, the Court will not take up this issue. *See Centurion's Mem.* at 5, Dkt. 121.

MEMORANDUM DECISION AND ORDER - 10

## 2. Undue Burden

Centurion next argues that the subpoena should be quashed because compliance would pose an undue burden.

In general, discovery must not be unduly burdensome, and courts in the Ninth Circuit have stressed that this duty is heightened for non-parties subject to subpoenas. *E.g., Lemberg Law LLC v. Hussin*, No. 16-mc-80066, 2016 WL 3231300, at *5 (N.D. Cal. June 13, 2016). Courts use a number of factors to assess whether a burden is undue, such as "(1) the relevance of the information requested; (2) the need of the party requesting the documents; (3) the breadth of the discovery request; (4) the time period covered by the request; (5) the particularity with which the requesting party has described the requested documents; and (6) the burden imposed." *Rocky Mountain Med. Mgmt.*, 2013 WL 6446704, at *3.

Centurion states that, as a non-party, it lacks information to analyze anything but the second and sixth factors. Regarding the need of the requesting party, Centurion insists that Pizzuto's need is minimal because Centurion is not involved in the execution of inmates. Therefore, the company argues, Pizzuto should attempt to obtain the information from Defendants. *Centurion's Mem.* at 6, Dkt. 121. Regarding the burden imposed, Centurion states that compliance is both "an unreasonable hardship" and "a mere impossibility" due to its lack of involvement

in executions. *Id.* at 6-7.  Compliance would thus require Centurion to "scour its business records . . . for any possible documents related to the attempted execution of a non-party." *Centurion's Rep.* at 3, Dkt. 135. Further, Centurion claims, the subpoena—which seeks records from January 29 to March 8—duplicates existing discovery because Pizzuto already has records for Mr. Creech's medical care prior to the execution attempt on February 28.

Centurion has not demonstrated that these two factors justify quashing the subpoena.[3] First, though Centurion's Motion to Quash does not speak to relevance, Pizzuto has established that the information sought is material. Anticipated difficulty with vein access is an important part of his argument, and the IDOC's recent problem in this regard obviously has direct bearing on the case. Second, as to the needs of the requesting party, Pizzuto states that he has sought the information from Defendants, and they do not appear to have the records in question. *Pl.'s Resp. to Centurion* at 9, Dkt. 127. Third, Centurion has not established that it will face an undue burden. As Pizzuto notes, if Centurion does not possess the records, it must simply attest to this and explain the search it has

---

[3] Though Centurion does not address the remaining factors in the undue burden analysis, Pizzuto makes a strong argument that these favor the enforcement of the subpoena. The subpoena seeks information related to one event involving one inmate; it covers a period of approximately six weeks; and it describes the documents sought with a reasonable degree of specificity. *Pl.'s Resp. to Centurion* at 10, Dkt. 127.

MEMORANDUM DECISION AND ORDER - 12

conducted to confirm that the records do not exist. *Id.* at 10-11; *see V5 Techs. v. Switch, Ltd.*, 332 F.R.D 356, 366-67 (D. Nev. 2019). The obligation to search business records may create some inconvenience, but this always the case when a third party receives a subpoena. The evidentiary needs of our legal system unfortunately sometimes pose burdens for third parties. Centurion has not shown that the burden here is unreasonable.

ORDER

**IT IS ORDERED that:**

1. Centurion of Idaho, LLC's Motion to Quash Subpoena Duces Tecum (Dkt. 121) is **DENIED**; and

2. Defendants' Motion to Quash Non-Party Subpoena (Dkt. 122) is **DENIED**.

DATED: October 4, 2024

_____

B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 13**