UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR., <br><br> Plaintiff, <br><br> v. <br><br> JOSH TEWALT, Director, Idaho Department of Correction, in his official capacity, TIMOTHY RICHARDSON, Warden, Idaho Maximum Security Institution, in his official capacity, <br><br> Defendants. | Case No. 1:21-cv-00359-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Parties to litigation have a duty to preserve material evidence. A litigant who believes that evidence is at risk of destruction may ask the court to intervene and grant a preservation order. In this case, uniquely, the evidence at stake is the person of Thomas Creech, an inmate on death row who Idaho unsuccessfully attempted to execute earlier this year. Plaintiff Gerald Ross Pizzuto, Jr. is also death row inmate, and he has a pending Eighth Amendment challenge to Idaho's proposed method of execution. Pizzuto asserts that Mr. Creech is now evidence in his case. He asks the Court to prohibit Defendants from executing Mr. Creech, and thus destroying

**MEMORANDUM DECISION AND ORDER - 1**

evidence, during the pendency of his litigation (Dkt. 141). For the reasons described below, the Court concludes that a preservation order is not justified under these extraordinary circumstances. Accordingly, Plaintiff's Motion to Preserve Evidence denied.

## BACKGROUND

Pizzuto brought this case in September 2021 to prevent the Idaho Department of Corrections (IDOC) from executing him using pentobarbital. Discovery is ongoing and contentious. Of the many discovery disputes taken up by this Court so far, the current Motion to Preserve Evidence is the most novel and far-reaching in implication.

In his complaint, Pizzuto alleges that executing him with pentobarbital will violate the Eighth Amendment by creating a substantial risk of excessive pain and suffering. This is an as-applied challenge. Pizzuto acknowledges that pentobarbital executions are normally constitutional, but he argues that his many health conditions together with systemic flaws in IDOC execution procedures render the method cruel and unusual in his case. Among other problems, he anticipates that executioners will struggle to access his veins because of his age: Pizzuto is sixty-eight – while the average executed inmate is fifty-four – and older individuals have lower quality veins. Indeed, vein access has been a challenge in recent executions around the country, including Idaho's unsuccessful attempt to execute Mr. Creech

**MEMORANDUM DECISION AND ORDER - 2**

in February of this year.

The IDOC planned to execute Mr. Creech, then seventy-three years old, on February 28, 2024. The execution team spent nearly an hour trying to set IVs into his veins, a process that entailed probing needles into eight locations on his body. The team eventually ended the attempt, making Mr. Creech one of six inmates to have an execution halted due to failure to set an IV line. *See Pl.'s Rep.* at 10, Dkt. 146. Defendants have not sought a new death warrant for Mr. Creech, but they remain free to do so at any time.

Pizzuto argues that Mr. Creech, as the survivor of a botched execution by the IDOC, is now a uniquely important witness for his case. He asks the Court to prevent Defendants from destroying evidence by executing Mr. Creech prior to the resolution of this litigation.

## LEGAL STANDARD

The duty to preserve material evidence during litigation is well established, as is a federal district court's expansive authority to address such matters. *See State Farm Fire & Cas. Co. v. Gen. Motors, LLC*, 542 F. Supp. 3d 1124, 1128 (D. Idaho 2021). A district court "has the inherent discretionary power to make appropriate evidentiary rulings regarding the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). And under the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their

respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651. From these principles emerges a court's broad power to "order a state official to retain, preserve, or protect tangible things." *Hall v. Davis*, No. 1:18-cv-00218, 2022 WL 16574136, at *2 (D. Idaho Nov. 1, 2022); *see Harris v. Nelson*, 394 U.S. 286, 299 (1969) ("[C]ourts may rely upon [the All Writs Act] in issuing orders appropriate to assist them in conducting factual inquiries.").

The standard for issuing preservation orders, however, has received relatively little discussion, and virtually none at the appellate level. This Court has previously evaluated their merits based on the following factors:

> (1) the level of concern the court has for continuing existence and maintenance of integrity of evidence in question absent an order directing preservation of evidence; (2) any irreparable harm likely to result to the party seeking preservation of evidence absent order directing preservation; and (3) the capability of the individual, entity or party to maintain evidence sought to be preserved, not only as to evidence's original form, condition or contents, but also physical, spatial, and financial burdens created by ordering preservation.

*Truckstop.net, L.L.C. v. Sprint Commc'ns Co.*, No. CV-04-561-S, 2005 WL 8166974, at *2 (D. Idaho Feb. 18, 2005) (citing *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429 (W.D. Penn. 2004)). Both parties agree that this test should apply.

## ANALYSIS

This motion poses unprecedented questions about the nature and scope of an

MEMORANDUM DECISION AND ORDER - 4

order to preserve evidence. It is extraordinary both that a party's witness faces imminent execution and that a preservation order would infringe deeply on the state's power to carry out a lawful punishment. The Court will first briefly consider the procedural propriety of Pizzuto's Motion and then turn to the merits.

### A. Procedure

Defendants argue that a motion to preserve evidence is not the proper vehicle for an attempt to secure and protect Mr. Creech's body. They submit that Pizzuto really seeks a stay of execution, and he lacks standing to do this. *Defs.' Opp'n* at 7-8, Dkt. 145. Pizzuto acknowledges that he cannot ask the Court to stay Mr. Creech's execution. He also recognizes that the Motion is quite unusual. But, he maintains, "The power to preserve evidence extends to all 'tangible things,' and Mr. Creech is incontrovertibly that." *Pl.'s Rep.* at 9-10, Dkt. 146 (citing *Cherrix v. Braxton*, 131 F. Supp. 2d 756, 782 (E.D. Va. 2001)).

Defendants' objection invites the Court to wade into a philosophical quagmire about whether Mr. Creech is "evidence" that can be preserved, or simply a witness. Pizzuto maintains he is both. Defendant contests this without citing any contradictory authority. However, it is a distinction without a difference.

The Rules of Civil Procedure recognize that an individual can be required to provide physical and testimonial evidence during the discovery process. *See* Fed. R. Civ. P. 32, 35. Likewise, it is commonplace for an individual to not only be

**MEMORANDUM DECISION AND ORDER - 5**

called upon to testify at a trial, but to make their bodies a form of trial evidence in a variety of ways. For example, DNA testing is a form of physical evidence derived from one's body. Most DUI trials feature blood alcohol testing as a central part of the prosecutor's case. In tort trials, it is routine for plaintiff's counsel to have their client show the jury their disability or disfigurement. Indeed, the condition of an individual's body is routinely a key evidentiary issue in many civil and criminal proceedings.

The broad power to order preservation of evidence extends to both physical and testimonial evidence. Clearly, a party can be ordered to preserve blood samples, urine tests, biopsies, medical tests, and hair samples in its possession. It seems equally obvious that a party can be precluded from making an individual unavailable for deposition or trial by removing them from the court's jurisdiction through deportation or a job transfer.

So, whether Mr. Creech is viewed as a witness or as evidence, the result is the same. The Court has broad jurisdiction to issue orders necessary to ensure that his evidence – whether physical or testimonial – is available to the parties. The Court concludes that, under these unique circumstances, Pizzuto's motion to preserve evidence by temporarily barring the execution of Mr. Creech is procedurally proper. This determination stems from a district court's wide authority to make evidentiary rulings and maintain the status quo during the

**MEMORANDUM DECISION AND ORDER - 6**

pendency of litigation. The Court, however, recognizes that this would be an extraordinary injunction and turns now to the question of whether Pizzuto has shown that such action is justified.

### B. Merits

When considering whether to issue a preservation order, courts balance (1) the likelihood of the evidence's destruction; (2) harm to the moving party if the evidence is destroyed; and (3) capacity to preserve the evidence along with the burden of doing so. *Truckstop.net, L.L.C.*, 2005 WL 8166974 at *2. Defendants do not contest that they will seek to execute Mr. Creech absent a preservation order. Therefore, the first factor weighs clearly in Pizzuto's favor. The other two factors, though, are much murkier.

#### 1. Harm of Destruction

Evaluating the evidentiary harm of Mr. Creech's execution raises two questions. The first is the relevance of any testimony that Mr. Creech may provide. The second is the adequacy of methods for obtaining that testimony now – such as a deposition – compared to his live testimony in the future.

Pizzuto contends, first, that the circumstances of the botched execution in February are highly relevant to his claim. He explains:

> Mr. Creech had a front row seat to the preparation for and attempted execution on February 28, 2024. He is a witness to the execution team assessing his veins prior to the execution attempt. Ex. 2 at 15. He is a witness to everything that occurred in the execution chamber on

**MEMORANDUM DECISION AND ORDER - 7**

> February 28 from the condemned's point of view. The testimony of a witness so close to the entire process would be instrumental in a determination of whether the execution team made "serious mistakes" during the botched execution attempt, which is highly relevant to whether such mistakes will also be made at Mr. Pizzuto's execution. Additionally, only Mr. Creech knows the full extent of the pain and suffering he felt that day, as the members of the execution team—the same people that remain on the team, Ex. 2 at 12–13—attempted multiple times to establish vein access.

*Pl.'s Mem.* at 6, Dkt. 141. Further, though Pizzuto's claim hinges largely on his specific medical conditions, age is a major vulnerability that he shares with Mr. Creech. "The two are consequently situated quite similarly in many ways, further underscoring how central a witness Mr. Creech is to Mr. Pizzuto's case." *Id.* at 7.

Second, Pizzuto asserts that a deposition now is insufficient to capture all the information he needs. Defendants are in the process of revising Idaho's execution protocol, and those changes might lead to more questions for Mr. Creech. Pizzuto is also still seeking discovery from Defendants regarding the execution attempt, materials that could likewise raise further questions. *Id.* at 7-8. And more fundamentally, Pizzuto says, "live testimony is the bedrock of the search for truth in our judicial system." *Id.* at 8 (quoting *United States v. Thoms*, 684 F.3d 893, 903 (9th Cir. 2012)). From this perspective, Pizzuto argues that a deposition is not a viable alternative because it does not permit the Court to weigh Mr. Creech's credibility against that of the defense witnesses.

Obviously, Mr. Creech's experience on February 28 has some bearing on

**MEMORANDUM DECISION AND ORDER - 8**

Pizzuto's litigation. Pizzuto brings an as-applied challenge that requires an individualized inquiry into his unique circumstances. But the IDOC attempted to execute Mr. Creech using the same method they intend to use with Pizzuto, and they encountered one of the problems that Pizzuto anticipates they will encounter with him. Pizzuto claims that repeated vein access attempts cause severe physical pain as the equipment punctures skin, and emotional anguish as the inmate and his loved ones endure the wait for death. Mr. Creech can speak directly to both matters – "what he saw, heard, and felt on February 28." *Defs.' Opp'n* at 4, Dkt. 145.[1] Thus, the Court accepts that Mr. Creech's testimony is material to the case.

The importance of live testimony is far less compelling. Mr. Creech alone can describe what he felt on February 28, and his description of the events can certainly help illuminate whether the execution team made "serious mistakes." This information, however, can be acquired now through a deposition. Given Mr. Creech's lack of expertise, it is not clear why future developments like the modification of the execution protocol would create new questions for him.

---

[1] Defendants suggest that Mr. Creech's testimony about the execution attempt is minimally relevant because "[a] single mistake does not rise to the level of an Eighth Amendment violation." *Defs.' Resp.* at 5, Dkt. 145. But it is immaterial, for purposes of resolving Pizzuto's Motion, whether the problems with Mr. Creech's execution were a constitutional violation. Relevance has a far lower threshold than the Eighth Amendment, and "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26 comm. note to 2000 amendment.

**MEMORANDUM DECISION AND ORDER - 9**

Pizzuto's need to make these future queries is purely speculative. And while the Court appreciates the bedrock role of live testimony, this case does not turn on a traditional credibility determination. The parties certainly disagree about the significance of the failed execution, but they do not appear to dispute the essential facts of what happened that day.

In short, Pizzuto has shown that being deprived of Mr. Creech's testimony may cause him irreparable harm, but his argument about the materiality of live testimony is not persuasive. The Court concludes that the second factor weighs in favor of Defendants.

### 2. Burden of Preservation

In a literal sense, Defendants can easily preserve the evidence because Mr. Creech is in their custody and control: "all the defendants need to do is continue on as they have for the past 40-plus years and keep Mr. Creech alive and confined." *Pl.'s Mem.* at 8, Dkt. 141. Defendants do not dispute that they are physically capable of waiting to execute Mr. Creech. This hiatus, however, would compromise Idaho's ability to enforce its criminal laws and exacerbate the extraordinary delays that characterize the capital punishment system. Though Defendants have not articulated these arguments, they are important costs to consider when assessing the merits of a preservation order.

The Supreme Court has made clear that the state's "sovereign power to

enforce the criminal law" is "an interest of great weight." *In re Blodgett*, 502 U.S. 236, 239 (1992). In Pizzuto's litigation, this Court has repeatedly emphasized Idaho's law enforcement interests when ruling on past discovery disputes. *See* Dkt. 88, 123. For example, the Court – like many others – recognized that publicly identifying the supplier of Idaho's execution drugs "would seriously harm [Defendants'] interest in enforcing Idaho's death penalty laws." Dkt. 88 at 23; *see Va. Dep't of Corr. v. Jordan*, No. 3:17mc02, 2017 WL 5075252, at *17 (E.D. Va. Nov. 2, 2017) (collecting cases). For this reason, the Court denied Pizzuto's motion to compel production of such evidence despite the relevance of that information.

  Waiting to execute Mr. Creech until Pizzuto's case is resolved poses a qualitatively different burden. A preservation order would have no impact on Idaho's broader ability to carry out executions; it would not even technically interfere with the eventual execution of Mr. Creech. Nonetheless, putting Mr. Creech's execution on hiatus for reasons completely unrelated to his case represents a meaningful infringement on Idaho's power to carry out a lawful method of punishment. And in our federal system, respect for Idaho's enforcement of its criminal laws must be given great weight.

  Substantiating this concern, the Supreme Court has expressed intense frustration with the delays that mark capital proceedings. Notably, these sentiments

**MEMORANDUM DECISION AND ORDER - 11**

have come from Justices who otherwise disagree sharply about capital punishment. *See Glossip v. Gross*, 576 U.S. 863, 898 (2015) (Scalia, J., concurring) (criticizing the delay resulting from "the proliferation of labyrinthine restrictions on capital punishment"); *id.* at 923-25 (Breyer, J., dissenting) (arguing that lengthy delays are cruel and undermine penological justifications for the death penalty); *Baze v. Rees*, 553 U.S. 35, 69 (2008) (Alito, J., concurring) (criticizing "[t]he seemingly endless proceedings that have characterized capital litigation"). Ordering Mr. Creech to be preserved as evidence until Pizzuto's own case resolves would open an entirely new frontier for death penalty delay.

The Court thus concludes that preservation would pose a significant burden by preventing Idaho from carrying out a lawful punishment in a timely manner. The third factor, for this reason, weighs heavily in favor of Defendants.

Under some circumstances, the evidentiary interests of the legal system can legitimize such a trade-off; this is why the essential determination in most discovery disputes is whether a particular burden is "undue." *See* Fed. R. Civ. P. 26(c). For example, federal law permits the arrest of a material witness if securing the witness's presence by subpoena "may become impracticable." 18 U.S.C. § 3144. This preemptive deprivation of freedom is an extraordinary cost, but it is regularly justified by the government's interest in criminal law enforcement. *See Hornof v. United States*, 107 F.4th 46, 61 (1st Cir. 2024). The current Motion

**MEMORANDUM DECISION AND ORDER - 12**

presents an inverse dynamic, with the burden of preservation falling on the criminal system rather than the witness, but a similar logic applies.

Here, the burden on Defendants is not justified. Pizzuto has not shown that Mr. Creech's execution would cause harm sufficient to justify the intrusion on Idaho's ability to enforce its laws. Though Mr. Creech's testimony is material, a deposition is an adequate method for obtaining this evidence. Because there is a less burdensome way to vindicate Pizzuto's need for the testimony, the Court will not grant a preservation order.

## ORDER

**IT IS ORDERED that:**

1. Plaintiff's Motion to Preserve Evidence (Dkt. 141) is **DENIED**.

DATED: October 17, 2024

B. Lynn Winmill
U.S. District Court Judge