RAÚL LABRADOR
ATTORNEY GENERAL

Karin Magnelli (ISBN 6929)
Lead Deputy Attorney General
Kristina M. Schindele (ISBN 6090)
Deputy Attorney General
Idaho Department of Correction
1299 North Orchard St., Suite 110, Boise, Idaho 83706
Telephone: (208) 658-2094; Facsimile: (208) 327-7485
kmagnell@idoc.idaho.gov; krschind@idoc.idaho.gov

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
Tanner J. Smith (ISBN 12245)
MOORE ELIA KRAFT & STACEY, LLP
Post Office Box 6756, Boise, Idaho 83707
Telephone: (208) 336-6900; Facsimile: (208) 336-7031
mje@melawfirm.net; tanner@melawfirm.net

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRIC COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD R. PIZZUTO,<br><br>          Plaintiff,<br><br>vs.<br><br>JOSH TEWALT, et al.,<br><br>          Defendants. | Case No. 1:21-cv-359-BLW<br><br>**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE [DKT. 166]** |

COME NOW Defendants, by and through their undersigned counsel, and hereby submit

their Objection and Opposition to Plaintiff's Second Motion to Preserve Evidence as follows:

### INTRODUCTION

Plaintiff Gerald Pizzuto ("Pizzuto") filed a motion for mandatory and prohibitory

injunction under the caption of a motion to preserve evidence. Plaintiff's Motion should be denied

because it is procedurally improper, the Court lacks jurisdiction to provide Pizzuto his desired

**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION
TO PRESERVE EVIDENCE - 1**

relief, Pizzuto's Second Amended Complaint does not concern the matters he is raising, and Pizzuto otherwise fails to establish that he is entitled to his requested relief. Further, Pizzuto has not established that he would be irreparably harmed absent his desired relief and his requested relief conflicts with the public's interest.

## LEGAL STANDARD

The Court previously denied Pizzuto's First Motion to Preserve Evidence (Dkt. 160); that "evidence" being Creech's person. In that Order, the Court explained:

> The standard for issuing preservation orders, however, has received relatively little discussion, and virtually none at the appellate level. This Court has previously evaluated their merits based on the following factors:
>
> > (1) the level of concern the court has for continuing existence and maintenance of integrity of evidence in question absent an order directing preservation of evidence; (2) any irreparable harm likely to result to the party seeking preservation of evidence absent order directing preservation; and (3) the capability of the individual, entity or party to maintain evidence sought to be preserved, not only as to evidence's original form, condition or contents, but also physical, spatial, and financial burdens created by ordering preservation.
>
> *Truckstop.net, L.L.C. v. Sprint Commc'ns Co.*, No. CV-04-561-S-BLW, 2005 WL 8166974, at *2 (D. Idaho Feb. 18, 2005) (citing *Capricorn Power Co., Inc. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429 (W.D. Penn. 2004)). Both parties agree that this test should apply.

(Dkt. 160, p. 4). Pizzuto states that the *Truckstop* test should apply here. (Dkt. 166-1, p. 7). Defendants disagree.

Defendants acknowledge that their Response to Pizzuto's First Motion articulated the *Truckstop* test. However, upon review of what Pizzuto is seeking here, it is clear that Pizzuto is seeking a temporary restraining order ("TRO"), as well as a mandatory and prohibitory injunction requiring IDOC to affirmatively act, manufacture evidence, change their execution protocol, and retain execution-related equipment (including biohazardous waste). For his desired relief, then,

**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE - 2**

Pizzuto must satisfy the injunction standards.[1]

The standards for a TRO are the same as those for a preliminary injunction. *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001)). Both a TRO and preliminary injunction are "extraordinary remed[ies] that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Dawson v. Asher*, 447 F. Supp. 3d 1047, 1049 (W.D. Wash. 2020) (quoting *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (quoting *Chalk v. U.S. Dist. Ct. Cent. Dist. of California*, 840 F.2d 701, 704 (9th Cir. 1988) (cleaned up)). "A mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored." *Id.* (quoting *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1979) (cleaned up)). "In general, mandatory injunctions 'are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.'" *Id.* (quoting *Anderson v. U.S.*, 612 F.2d at 1114). "A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." *Winter*, 555 U.S. at 24. A plaintiff seeking such injunctive relief bears a high burden:

> And what is at issue here is not even a defendant's motion for summary judgment, but a plaintiff's motion for preliminary injunctive relief, as to which the requirement for substantial proof is much higher. "It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."

---

[1] In the event the Court disagrees, the analysis below is directly applicable to the *Truckstop* test. Defendants incorporate the *Truckstop* factors into the below analysis.

**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE - 3**

*Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original).

## ARGUMENT

**1. The Court cannot provide Pizzuto with his desired relief because it lacks jurisdiction over Creech's execution.**

"A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). "The pendency of this action does not give the Court jurisdiction over prison officials in general who are not parties to this action." *Hollis v. Mims*, No. 1:11-CV-00739-AWI, 2012 WL 3691690, at *1 (E.D. Cal. Aug. 24, 2012) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 491-93 (2009), and *Mayfield v. U.S.*, 599 F.3d 964, 969 (9th Cir. 2010)). "The Court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding." *Ibid.*

This case only concerns Pizzuto and Pizzuto's execution. The Court only has power over Defendants in this case to the extent of this lawsuit. Creech is not a party to this lawsuit and the Court lacks jurisdiction over the happenings at Creech's execution. Creech has his own execution-related challenges and only those courts possess the potential power to alter the happenings at Creech's execution. While Defendants recognize that there is some overlap between this case and Creech's method-of-execution challenge, *see Creech v. Tewalt, et al.,* 1:20-cv-114-GMS, that alone does not provide the Court jurisdiction to enter orders concerning Creech's case or Creech's execution. The Court lacks the authority to grant Pizzuto his desired relief.

**2. Pizzuto's Motion concerns nonjusticiable political questions.**

"The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution

to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 (1986). The Supreme Court has explained that access to penal institutions is committed to the legislature of a particular state. *See, e.g., Houchins v. KQED, Inc.*, 438 U.S. 1, 12 (1978) ("Whether the government should open penal institutions in the manner sought by respondents is a question of policy which a legislative body might appropriately resolve one way or the other."); *Holden v. State of Minnesota*, 137 U.S. 483, 491 (1890) ("These are regulations which the legislature, in its wisdom, and for the public good, could legally prescribe in respect to executions ...."). At issue in *Houchins* was whether "the news media have a constitutional right of access to a county jail, over and above that of other persons, to interview inmates and make sound recordings, films, and photographs for publication and broadcasting by newspapers, radio, and television." *Id.* at 3. The Supreme Court rejected the plaintiff's request, in part, "because it invites the Court to involve itself in what is clearly a legislative task which the Constitution has left to the political processes." *Id.* at 12.

Here, Pizzuto seeks heightened access to IDOC's equipment and information related to Creech's November 13 execution. Pizzuto also asks the Court to intertwine itself within the execution process to issue court-requirements on what IDOC is allowed to dispose of and what IDOC must keep after an execution. Pizzuto also asks for the Court to issue a judge-made law requiring Creech's execution be recorded and for IDOC to provide Pizzuto with a copy of said recording and various other items from Creech's execution. Pizzuto's request is a political question.

Idaho's Legislature has determined that the person who determines the procedures to be used in any execution is Director Tewalt. I.C. § 19-2716(6). *See also Rice v. Kempker*, 374 F.3d 675 (8th Cir. 2004) (holding that Missouri's similar statute upon which Missouri's Director

prohibited recordings of executions was a valid exercise of statutory authority). Director Tewalt has determined what will be retained from and after Creech's execution, what will be disposed of and the manner of disposal, and that no recordings of Creech's execution will be permitted. The Legislature, and only the Legislature, is the body who can change this statutorily provided discretion. Pizzuto's request is a political question that exceeds this Court's Article III jurisdiction. The Court lacks jurisdiction to provide Pizzuto his desired relief.

### 3. The Tenth Amendment bars Pizzuto's relief.

The Tenth Amendment provides, "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X. The Tenth Amendment limits the power of the "United States;" this includes all three branches. The Supreme Court has examined the limits imposed by the Tenth Amendment on Congress in its discussion of the anti-commandeering doctrine. *See, e.g., Printz v. U.S.*, 521 U.S. 898 (1997). These same principles apply to the Federal Judiciary and its judge-created common law. The anti-commandeering doctrine prohibits federal laws that "commandeer[] a State's legislative or administrative apparatus for federal purposes," and laws that "us[e] financial inducements to exert a 'power akin to undue influence.'" *Natl. Fedn. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 578 (2012) (citing *Charles C. Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937)). Stated simply, the anti-commandeering doctrine prohibits the Federal Government from requiring states to regulate. *Id*. Because the text of the Tenth Amendment is not limited to the Federal Legislature, but instead applies to the Unites States as a whole, the same logic and reasoning behind anti-commandeering principles apply to judicially-created common law requiring a state to regulate and act. *See also Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272 (2016) ("in the law, what is sauce for the goose is normally sauce for the gander.").

**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE - 6**

Here, Pizzuto is asking the Court to reach into matters reserved for Idaho's Legislature and require IDOC to create evidence and affirmatively retain certain items from Creech's execution. But the Supreme Court has recognized that the operation of state penal institutions is reserved to the states. *See, e.g., Houchins*, 438 U.S. at 12; *Holden*, 137 U.S. at 491. Idaho's Legislature has determined how it wants its execution procedures to be implemented: at the discretion of the Director. I.C. § 19-2716(6). The Director has done just that. Pizzuto's Motion is a request to circumvent Idaho's laws and require IDOC to affirmatively act. Had Pizzuto asked Congress for this relief, it would be prohibited by anti-commandeering principles. The same is true when the medium Pizzuto goes through is the Judiciary. Because the Court is within the meaning of "the United States" for purposes of the Tenth Amendment, the Court lacks the ability to compel IDOC to affirmatively act in the manner Pizzuto requests. The Tenth Amendment bars Pizzuto's desired relief.

### 4. Pizzuto's Motion is moot.

Article III's case or controversy requirement deprives the Court of jurisdiction to hear moot cases. *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). A motion becomes moot where "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455 U.S. 478, 481 (1982); *see also North Carolina v. Rice*, 404 U.S. 244, 246 (1971) ("federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").

Pizzuto filed his present Motion while Creech's death warrant was active. However, Judge Snow in case number 1:24-cv-00485-GMS stayed Creech's execution through the time period in which Creech's warrant was active. *Id.* at Dkt. 20. On November 13, 2024, Creech's death warrant expired. Because Creech's warrant expired and Creech is not currently facing a new warrant, the

issues raised in Pizzuto's Motion are now moot. Further, because the Court has shown that this matter could be expedited and assumably decided within two weeks, the "capable of repetition but evading review" exception does not apply. *See Wallingford v. Bonta*, 82 F.4th 797, 801 (9th Cir. 2023) ("the 'capable of repetition, yet evading review' exception is concerned not with particular lawsuits, but with classes of cases that, absent an exception, would *always* evade judicial review." (quoting *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014), emphasis in original)). The Court lacks jurisdiction over Pizzuto's Motion.

**5. Pizzuto's requests are barred by the anti-claim-splitting doctrine.**

"The anti-claim-splitting doctrine prevents a party from maintaining 'two separate actions involving the same subject matter at the same time in the same court and against the same defendant.'" *Simplot Livestock Co. v. Sutfin*, No. 1:18-CV-0086-EJL-CWD, 2018 WL 4259229, at *3 (D. Idaho Sept. 6, 2018) (quoting *Adams v. California Dept. of Health Services*, 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 533 U.S. 880 (2008)). "The doctrine of claim-splitting is the notion that a party is 'not at liberty to split up his demand, and prosecute it ... piecemeal, or present only a portion of the grounds upon which special relief is sought, and leave the rest to be presented in a second suit, if the first fails." *Id.* (quoting *The Haytian Republic*, 154 U.S. 118, 125 (1894)). "There would be no end to litigation if such a practice were permissible." *Ibid.* "[I]n assessing whether the second action is duplicative of the first, we examine whether the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Adams*, 487 F.3d at 689 (collecting sources). "To determine whether an action is barred under this doctrine, 'the appropriate inquiry is whether, assuming that the first suit were already final, the second suit could be precluded pursuant to claim preclusion.'" *Id.* (quoting *Adams*, 487 F.3d at 689).

**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE - 8**

Creech's method-of-execution case was filed March 5, 2020, and Pizzuto's current case was filed September 9, 2021. These cases assert the same type of claim: *as applied* Eighth Amendment challenges to an execution with manufactured pentobarbital. While the two cases are separate in that they involve different inmates with different alleged medical conditions, Pizzuto's Motion is another attempt to raise supposed issues with Creech's execution in this case. (*See also* Dkt. 119, Pl.'s Mot. to Consolidate; Dkt. 137, Order Denying Consolidation). This is impermissible under the anti-claim-splitting doctrine. The Court lacks power over Creech's execution. Pizzuto's relief is barred by the anti-claim-splitting doctrine.

**6. Providing Pizzuto with his relief would create an overbroad injunction.**

"Crafting a preliminary injunction is 'an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents.'" *California v. Azar*, 911 F.3d 558, 582 (9th Cir. 2018) (quoting *Trump v. Intl. Refugee Assistance Project*, 582 U.S. 571, 579 (2017)). "It is an abuse of discretion to issue an overly broad injunction." *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188 (9th Cir. 2024).

Pizzuto has asked the Court to issue a blanket injunction barring IDOC, its personnel, or anyone else present at Creech's execution from disposing of or cleaning anything present during the day of Creech's execution. For instance, Pizzuto asks that the Court order all people present at the execution, "including but not limited to the Execution Team, the Escort Team, the Warden, the IDOC Director, and Ada County Coroner" to turn over their shoes, clothing, etc., so that Pizzuto may inspect them. (Dkt. 166-1). This request extends to the people present beyond IDOC personnel: such as the Governor, Attorney General, Ada County Prosecutor, etc. (*Id*.). But that would be overbroad because, *inter alia*, Director Tewalt's suit and shoes have nothing to do with

Pizzuto's as applied Eighth Amendment claim. The same goes with the other categories of things Pizzuto seeks to have preserved in an untouched state. For example, Pizzuto asks that the Court issue an injunction barring IDOC from disposing medical supplies used at Creech's execution. But those supplies cannot arguably be said to be relevant to Pizzuto's execution because they cannot be used in Pizzuto's execution since they will be disposed of after Creech's execution. Further, Pizzuto's request includes retaining things from the Ada County Coroner, Coroner's personnel, and members of the witness area. But these Defendants have no power or control over those people. Moreover, while Pizzuto lists twenty-four categories of things he wants preserved, he also qualified that list as being "an illustrative, rather than an exhaustive list[.]" (Dkt. 166-1, p. 6). What Pizzuto "ultimately seeks [is to] preserve all material evidence from Mr. Creech's execution." (*Id*.). This request is so overly broad and vague that it would be an abuse of discretion to provide it. Additionally, some of the items clearly do not fall into Pizzuto's only qualifier—material evidence. Pizzuto's request should be denied.

### 7. Pizzuto cannot require IDOC to record Creech's execution.

Pizzuto's Second Amended Complaint does not raise the recording of executions as an issue; Pizzuto's sole claim is that the use of manufactured pentobarbital at his execution is allegedly unconstitutional. (Dkt. 153). The Court can deny Pizzuto's request related to recording Creech's execution purely for the matter not being pled. *See P. Radiation Oncology, LLC v. Queen's Med. Ctr*., 810 F.3d 631, 633 (9th Cir. 2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction.").

Notwithstanding, Pizzuto cannot force IDOC to record Creech's execution. Defendants are not aware of any Supreme Court case recognizing a First Amendment right of access to executions.

*Accord Arkansas Times, Inc. v. Norris*, No. 5:07CV00195 SWW, 2008 WL 110853, at *2 (E.D. Ark. Jan. 7, 2008)). In fact, while the Ninth Circuit once recognized a constitutional right of news organizations to access penal institutions over and above that of other persons, which allowed news organizations to record, film, and photograph within prisons, the Supreme Court rejected those rights in *Houchins*, 438 U.S. 1. In doing so, the Supreme Court found no basis for creating a "constitution[al] a right of the public or the media to enter these institutions, with camera equipment, and take moving and still pictures of inmates for broadcast purposes." *Id.* at 9. The Supreme Court also explained that it "has never intimated a First Amendment guarantee of a right of access to all sources of information within government control." *Id.* at 9.

Further, the Supreme Court has upheld restrictions on accessing executions. For example, the Supreme Court explained in *Holden*, 137 U.S. 483, that penal institutions may regulate the "number and character of those who may witness the execution, and the exclusion altogether of reporters or representatives of newspapers ... are regulations which the legislature, in its wisdom, and for the public good, could legally prescribe ...." *Id.* at 491. And the Supreme Court explained in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), that penal institutions, "which, by definition, are not 'open' or public places," "do not share the long tradition of openness" that historically has been a part of courtrooms. *Id.* at 577 n. 11. Also, while courts in the Ninth Circuit recognize a First Amendment right of execution witnesses to see and hear an execution, *see First Amend. Coalition of Arizona, Inc. v. Ryan*, 938 F.3d 1069, 1075 (9th Cir. 2019), the Ninth Circuit has not recognized a corresponding First Amendment right to have an execution recorded.

IDOC prohibits recording executions. (*See* Dkt. 166-2, p. 7). Audio and video recording prohibitions are consistent with the First Amendment and have been upheld by courts. *See, e.g., McGehee v. Hutchinson*, 463 F. Supp. 3d 870, 921 n. 9 (E.D. Ark. 2020), *aff'd sub nom. Johnson*

*v. Hutchinson*, 44 F.4th 1116 (8th Cir. 2022):

> As a threshold matter, defendants cite Arkansas Code Annotated § 16-90-502 at certain times as their basis for limiting execution witnesses to one attorney per inmate and to prohibit audio and video recordings of executions (Dkt. No. 27, at 79–80). To the extent that this is in dispute, Arkansas Code Annotated § 16-90-502(e)(5)(C) expressly outlaws audio or video recordings of executions. This Court previously determined that such a regulation does not run afoul of the First Amendment. *See Ark. Times, Inc. v. Norris*, No. 5:07CV00195 SWW, 2008 WL 110853 *4 (E.D. Ark. Jan. 7, 2008) (observing that, while the Supreme Court has recognized that the First Amendment guarantees public access to criminal trials, an execution carried out by lethal injection "bears little resemblance to a criminal judicial proceeding, where public participation plays an indispensable functional role in the process itself, and where public access enables citizens to judge whether our system of criminal justice is fair").

Circuit courts have also determined that the Constitution does not require executions to be recorded. For example, in *Rice v. Kempker*, 374 F.3d 675 (8th Cir. 2004), the Eighth Circuit made that exact determination. In doing so, the Eighth Circuit held that "neither the public nor the media has a First Amendment right to videotape, photograph, or make audio recordings of government proceedings that are by law open to the public." *Id*. at 678. The Eighth Circuit considered the Ninth Circuit's holding in *California First Amend. Coalition v. Woodford*, 299 F.3d 868 (9th Cir. 2002), and determined that even under that line of case law, there is not a right to record an execution. *Id*.; *see also Garrett v. Estelle*, 556 F.2d 1274 (5th Cir. 1977), *cert. denied* 438 U.S. 914 (1978) (holding that the First Amendment did not require the state department of correction to allow a news reporter to record or photograph an execution); *Ent. Network, Inc. v. Lappin*, 134 F. Supp. 2d 1002, 1013-14 (S.D. Ind. 2001) (same, explaining: "the right to record or broadcast an execution from within a prison ... does not exist."); *Lawson v. Dixon*, 446 S.E.2d 799 (N.C. 1994) (same).

   Pizzuto does not have a constitutional basis to force IDOC to record Creech's execution or provide Pizzuto with a recording of Creech's execution. Pizzuto cannot compel IDOC to record Creech's execution or allow anyone else to record Creech's execution.

**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE - 12**

Further, IDOC does not have the present ability to record executions. IDOC's recording prohibition is based on upholding the dignity in the execution process and preserving the confidentiality of IDOC's Medical Team. Pizzuto has not pointed to any court rule, law, or constitutional right which would force IDOC to create his desired recording(s).

Pizzuto's request should be denied.

**8.   Pizzuto's requested relief is barred by the Prison Litigation Reform Act ("PLRA").**

Under the PLRA, a "court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). This test is commonly referred to as the "needs-narrowness-intrusiveness" test.

Pizzuto has not established a need. What happens at Creech's execution has nothing to do with Pizzuto's *as applied* Eighth Amendment challenge. Pizzuto's *as applied* challenge is only concerned with Pizzuto's alleged medical condition(s). Pizzuto's medical conditions are different from Creech's alleged medical conditions. There is not a need for the Court to intertwine itself with IDOC's operations.

Providing Pizzuto his desired relief would be overly broad. Under the PLRA, "[w]hat is important, and what the PLRA requires, is a finding that the set of reforms being ordered—the 'relief'—corrects the violations of prisoners' rights with the minimal impact possible on defendants' discretion over their policies and procedures." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 783 (9th Cir. 2019). As explained throughout this Objection, Pizzuto's requests are excessive in scope, protrude beyond the information relevant to Pizzuto's Eighth Amendment claim, and conflict with Idaho's legislative enactments.

**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE - 13**

Providing Pizzuto with an injunction would be overly intrusive. "Under the PLRA, [t]he overarching inquiry is whether the same vindication of federal rights could have been achieved with less involvement by the court in directing the details of prison operations." *Armstrong v. Newsom*, 58 F.4th 1283, 1297 (9th Cir. 2023) (citation omitted). The "core concern of the intrusiveness inquiry [is] whether the district court has 'enmeshed [itself] in the minutiae of prison operations,' beyond what is necessary to vindicate plaintiffs' federal rights." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) (quoting *Lewis v. Casey*, 518 U.S. 343, 362 (1996)). The Supreme Court has already indicated that the relief Pizzuto seeks is barred as a nonjusticiable political question. (*Supra* § 2). Further, because the manner and method of Idaho's execution process is a state matter, the Tenth Amendment precludes Pizzuto's relief. (*Supra* § 3). Because the decision on what information/things to keep related to executions is committed to a branch of government other than the Federal Judiciary, providing Pizzuto his claimed redress would be overly intrusive. Likewise, issuing the injunction Pizzuto requests would be overly intrusive because the scope of the request exceeds Pizzuto's needs in his *as applied* claim.

**9. Defendants lack the ability to preserve certain items Pizzuto requests.**

These Defendants are being sued based on their positions with IDOC and roles during lawful executions. Pizzuto's requested injunction, however, is directed towards people that are not part of IDOC, such as the Ada County Coroner and accompanying personnel. Further, Pizzuto's request also includes preservation of things from all the people who are witnessing Creech's execution—including media representatives, Creech's counsel, Creech's victim's family members, Ada County's Prosecutor, Idaho's Attorney General, Idaho's Governor, Creech's spiritual advisor, etc. *See* SOP 135, pp. 12-14 (listing people allowed in Execution Unit). Because these Defendants lack control over the people in attendance who are not employed with IDOC,

**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE - 14**

these Defendants lack the ability to preserve the things within those people's possession. Therefore, it would be improper for the Court to issue an order with respect to things within other peoples' possession and control.

**10. Pizzuto's request must be denied to the extent it would result in unsafe conditions and biohazards.**

Pizzuto asks "the Court to order defendants not to clean any items or spaces in the Execution Chamber or Execution Preparation Room, so that they may later be viewed …." (Dkt. 166-1, p. 6).[2] Pizzuto asks that none of the things used in Creech's execution be cleaned, made safe, or be put away. Providing Pizzuto with his relief would be improper because it would be unsanitary, unsafe, and would create biohazards. This is particularly true because what is at issue are lethal chemicals and used medical equipment. Further, in the event of a spilled drink, etc., somewhere in the facility, Pizzuto's desired relief would prevent anyone from cleaning it up and making the area safe. Forcing IDOC to leave out all the things used in Creech's execution in an uncleaned, unsafe, and unsecured manner creates extreme safety issues. Moreover, Pizzuto's request creates potential safety hazards in the administration of the execution because it would prevent the Execution Teams from freely moving about the execution chamber as needed. Pizzuto's requested relief would create dangerous conditions and be impractical. The Court should deny Pizzuto's request to the extent it would be unsanitary, unsafe, and biohazardous.

**11. Pizzuto's request is unduly burdensome.**

Pizzuto asks for every single thing present in F Block at the time of Creech's execution to be preserved—down to the peoples' clothes, socks, and shoes. Pizzuto is asking for things used

---

[2] While Pizzuto originally requested that the materials be preserved until the Court and Pizzuto's counsel could inspect F Block on their scheduled November 15, 2024, inspection, now that Creech's death warrant has expired, it is unclear what timeframe Pizzuto seeks.

**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE - 15**

and unused to be preserved in an untouched state. Pizzuto is asking for IDOC not to clean, sterilize, or make safe anything within F Block for a now unknown period of time. As discussed above, this creates safety problems and biohazards—particularly since IDOC is dealing with lethal chemicals. Moreover, providing Pizzuto his desired relief will result in IDOC officials having to not only think about Creech's execution (which should be the only thing on anyone's mind during the execution to ensure the safety of those involved and dignity of the process) but also about Pizzuto's unneeded preservation requests. IDOC's Execution Teams should not be burdened with thinking about anything during Creech's execution except ensuring that the process is carried out as safely and with as much dignity as possible. Pizzuto's desired relief will do nothing but put unneeded concerns in the Execution Teams' minds. Pizzuto's request is unduly burdensome.

**12. Some of Pizzuto's requests are too vague and speculative to be granted.**

Because Pizzuto is seeking an order for Defendants "to preserve all material evidence from Mr. Creech's execution," and notes that his list of twenty-four categories is simply "illustrative," the Court and Defendants lack the ability to adequately know what Pizzuto deems "material evidence" and arguably, none of the items listed is material to his claim. Because Pizzuto has not identified all of the things he wants preserved, his request should be denied to the extent he seeks a blanket preservation injunction.

**13. Defendants object to Pizzuto's request to the extent of inadvertent destruction.**

Because Pizzuto's request is so overly broad, if the Court granted Pizzuto some type of injunction, it would be improper to make an adverse ruling against these Defendants for someone's inadvertent destruction of things on the day of Creech's execution. Because Defendants lack control over the people Pizzuto wishes to enjoin, Defendants are not able to require those individuals to submit to Pizzuto's requests. Further, because the Medical Team is accustomed to

**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE - 16**

disposing of potentially biohazardous and unsanitary materials, Defendants should not be negatively impacted if the Medical Team throws out used and normally disposed of material, such as a glove, or anything that came into contact with the lethal injection chemicals or Creech's biological substances; particularly because such items cannot be used in Pizzuto's execution.

**14. Pizzuto's request regarding things not used in Creech's execution should be denied.**

Pizzuto seeks to review and inspect things used in Creech's execution and not used in Creech's execution. Because Pizzuto is claiming that these things are relevant to his case only because they were used in Creech's execution but has not articulated how anything not used in Creech's execution is relevant, the Court should deny Pizzuto's motion with respect to unused materials.

**15. The matters raised in Pizzuto's Motion are not relevant to his claim.**

Pizzuto has only raised an *as applied* Eighth Amendment claim. Pizzuto's *as applied* claim alleges that his supposed unique medical condition renders an otherwise constitutional execution by manufactured pentobarbital unconstitutional. Pizzuto's *as applied* claim only concerns his person and his alleged unique medical conditions. Pizzuto's claim has nothing to do with Creech's *as applied* Eighth Amendment claim, Creech's alleged unique medical conditions, or Creech's execution. Pizzuto has not articulated how the things he wants preserved have anything to do with his *as applied* Eighth Amendment claim. The categories of things requested by Pizzuto are irrelevant and immaterial to Pizzuto's *as applied* Eighth Amendment claim.

**16. Pizzuto's request should be denied to the extent it impacts the decency of Creech's execution.**

The Supreme Court has explained that a state has a legitimate "interest in preserving the dignity of the [execution] procedure." *Baze v. Rees*, 553 U.S. 35, 57 (2008). Here, Pizzuto asks for Defendants to retain things in an untouched state from the time Creech is declared deceased. For

instance, Pizzuto asks all of Creech's clothing to be retained untouched along with body bags, body coverings, anything that is within Creech's corpse's vicinity from the time Creech is declared deceased until after he is at the Coroner's office. To do this, however, will require Creech's corpse to be stripped naked in front of the witnesses, etc. IDOC is not willing to do this as it impacts the dignity of the execution and Creech's dignity. The same goes for the requested recording of Creech's execution. The Court should deny Pizzuto's motion to the extent his relief negatively impacts the dignity of Creech's execution.

**17. Pizzuto will not be irreparably harmed absent an injunction.**

For the reasons stated above, Pizzuto's as applied Eighth Amendment claim is not affected absent a preservation injunction. Pizzuto's claim only depends on whether manufactured pentobarbital is unconstitutional *as applied* to him. Indeed, the relevancy bases Pizzuto has raised all rely on purely speculative negligence in the administration of Creech's execution. But "[t]he risk of negligence in implementing a death-penalty procedure ... does not establish a cognizable Eighth Amendment claim." *Baze*, 553 U.S. at 107 (Thomas, J., dissenting) (quoting *Workman v. Bredesen*, 486 F.3d 896, 907-08 (6th Cir. 2007)). If the Court denies Pizzuto's Motion, Pizzuto will be in the same position he is in currently. Therefore, the materials are not relevant to Pizzuto's *as applied* Eighth Amendment claim. Further, the materials Pizzuto wants preserved do not help his claim because those materials cannot be reused for Pizzuto's execution.

**18. Pizzuto's desired injunction weighs against the public's interest.**

The public, through the Legislature, have determined how they want executions to be performed and the materials therefrom kept. I.C. § 19-2716. The public has expressed its interest in relying on the Director. Forcing IDOC to circumvent the Director's discretion is directly at odds with the public's interest. To the extent that Pizzuto's request contradicts the Director's discretion,

it is against the public's interest.

**19. Pizzuto's request must be denied to the extent the information puts the identities of protected persons or entities, including team members, equipment and medical supply suppliers, and execution-chemical sources, at issue.**

Pizzuto's stated relief includes keeping all packaging for the things used in the execution. This presumably would include the packaging of IDOC's medical supplies and execution chemicals and may implicate DNA of execution team members. Such disclosure is impermissible as it will allow Pizzuto to discover who IDOC's execution-chemical source is, determine the person or entity who provides medical supplies, and identify and invade the privacy of team members. *See* I.C. § 19-2716A(4) (state statute protects identities of persons and entities involved in executions). Defendants believe that there may also be other items and materials present during Creech's execution that may have information about protected persons and entities. The Court should deny Pizzuto's request in this respect for anything that can lead to the identification of of any protected person or entity.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court deny Pizzuto's Motion.

DATED this 15th day of November 2024.

MOORE ELIA KRAFT & STACEY, LLP


_/s/ Tanner J. Smith_
Tanner J. Smith
Attorneys for Defendants


OFFICE OF THE ATTORNEY GENERAL


/s/ Kristina M. Schindele
Kristina M. Schindele
Deputy Attorney General
Attorneys for Defendants


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of November 2024, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Jonah J. Horwitz | ☐ U.S. Mail, postage prepaid |
| Christopher M. Sanchez | ☐ Hand Delivered |
| Federal Defender Services of Idaho | ☐ Overnight Mail |
| 702 W. Idaho St., Ste. 900 | ☐ Facsimile Transmission |
| Boise, Idaho 83702 | ☒ E-Mail: Jonah_horwitz@fd.org, |
| | Christopher_m_sanchez@fd.org, |
| Stanley J. Panikowski | stanley.panikowski@dlapiper.com, |
| DLA Piper LLP | |
| 401 B St., Ste. 1700 | |
| San Diego, CA 92101 | |

_Attorneys for Plaintiff_


_/s/ Tanner J. Smith_
Tanner J. Smith


**DEFENDANTS' OBJECTION AND OPPOSITION TO PLAINTIFF'S SECOND MOTION TO PRESERVE EVIDENCE - 20**