RAÚL LABRADOR
ATTORNEY GENERAL

Karin Magnelli (ISBN 6929)
Lead Deputy Attorney General
Kristina M. Schindele (ISBN 6090)
Deputy Attorney General
Idaho Department of Correction
1299 North Orchard St., Suite 110
Boise, Idaho 83706
Telephone: (208) 658-2094
Facsimile: (208) 327-7485
kmagnell@idoc.idaho.gov
krschind@idoc.idaho.gov

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
Tanner J. Smith (ISBN 12245)
MOORE, ELIA, KRAFT & STACEY, LLP
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031
mje@melawfirm.net

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRIC COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD R. PIZZUTO, <br><br> Plaintiff, <br><br> vs. <br><br> JOSH TEWALT, et al., <br><br> Defendants. | Case No. 1:21-cv-359-BLW <br><br> **REPLY IN SUPPORT OF MOTION TO VACATE NOTICES OF DEPOSITION OF MEDICAL TEAM LEADER AND CENTRAL LINE VOLUNTEER (DKT. 175)** |

COME NOW, Defendants Josh Tewalt, Tim Richardson, and Liz Neville ("Defendants"), by and through their counsel of record, and hereby submit this Reply in Support of their Motion to Vacate Notices of Deposition of Medical Team Leader and Central Line Volunteer (Dkt. 175)

**REPLY IN SUPPORT OF MOTION TO VACATE NOTICES OF DEPOSITION - 1**

as follows:

## INTRODUCTION

The Court should decline Plaintiff's efforts to depose IDOC's Medical Team Leader and Central Line Volunteer.[1] Defendants have made a strong showing that the proposed depositions pose an undue burden on IDOC and the confidential team members. Pizzuto's arguments to the contrary are unavailing. Essentially, Pizzuto argues relevance has no bearing on the scope of his discovery efforts and Defendants' confidentiality concerns are protected by the existing protective order. Defendants respectfully request that the Court grants their Motion.

## ARGUMENT

**1. Pizzuto's requested depositions of confidential team members are unduly burdensome, disproportionate to the needs of this case, and not relevant to his Eighth Amendment claims.**

The parties dispute the relevancy of the requested depositions. Pizzuto has raised an Eighth Amendment *as applied* method of execution claim, based on his particular medical conditions. Defendants submit the nature of his claim necessarily limits the scope of relevant discovery. Pizzuto contends his sweeping claims regarding "problems with the central line" broaden the inquiry into relevant evidence. (Pl's Resp., Dkt. 177, p. 6). The Court should decline Pizzuto's efforts to engage in a fishing expedition into information that could identify the confidential team members and venous access procedures where such information would not cure his alleged constitutional violation – the superadded pain a pentobarbital execution would inflict given his specific medical conditions.

In deciding whether to authorize the requested depositions, this Court must consider the

---

[1] On January 17, 2024, the parties filed a notice regarding the depositions, advising the Court that the depositions had been vacated pending the Court's decision on the motion. Dkt. 176.

**REPLY IN SUPPORT OF MOTION TO VACATE NOTICES OF DEPOSITION - 2**

burden posed to the third-party deponents. *In re Subpoena of DJO, LLC*, 295 F.R.D. 494, 497 (S.D. Cal. 2014) (Federal Rule of Civil Procedure 45 incorporates Rule 26 standards and a court must quash or modify a deposition subpoena that "subjects a person to undue burden.") Whether to permit the deposition involves the balancing of the burden on the deponent and the value to the serving party. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (citing *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)). Discovery is a valuable right, but restrictions may be necessary, particularly when a non-party is the target of discovery. *Id.* (collecting cases). In addition to the requesting party's need and the burden on the non-party target, other factors to consider include the relevance of the information sought, the scope of the requested information, and the ability of a party to provide the information. *Id.* Defendants acknowledge they bear the burden of persuasion regarding undue burden and proportionality. However, Rule 26 clearly requires Pizzuto, as the requester, to initially demonstrate relevance. F.R.C.P. 26(b)(1) (a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim and proportional to the needs of the case….").

Pizzuto claims his proposed inquiries into information that will identify IDOC's confidential team members are necessarily relevant because he "must question the executioners about their qualifications." (Pl.'s Resp., Dkt. 177, p. 9). He also seeks information about the events that occurred on February 28, 2024, when IDOC attempted to establish peripheral venous access on Thomas Creech. Pizzuto characterizes the relevance of the latter information in broad strokes – because Creech and Pizzuto have similar medical conditions, the Medical Team's attempts to establish an IV on February 28 are relevant to Pizzuto's Eighth Amendment claim. Pizzuto disregards the elements of his *as applied* Eighth Amendment claim.

**REPLY IN SUPPORT OF MOTION TO VACATE NOTICES OF DEPOSITION - 3**

Defendants cited the risk of disclosure of the proposed deponents' identities in their motion to vacate *in toto*. The risk of disclosure directly impacts the undue burden analysis and the proportionality assessment. The scope of the proposed depositions will produce information of limited relevance to Pizzuto's Eighth Amendment claim while greatly infringing on the confidential team members' privacy interests. Any relevant information can be readily obtained by alternative means. Defendants have and will continue to verify the certifications and licensure of the confidential team members.

Pizzuto asks this Court to disregard Defendants' repeated assurances that they know, understand, and will comply with IDOC's statutory and constitutional obligations. (Pl's Resp., Dkt. 177, pp. 11-12 (citing *Spirit of Aloha Temple v. Cnty. of Maui*, 49 F.4th 1180, 1192 (9th Cir. 2022). Then, Pizzuto denigrates the actions Defendants took on February 28, 2024, to ensure constitutional minimums were met. *Id.* Pizzuto accuses Defendants of failing to follow its execution protocol because the administration and execution teams refused to pursue central line venous access without a medical doctor or use expired chemical in an execution. *Id.* at 10-12. He claims Defendants intend to rely on safeguards provided by unqualified IDOC staff – namely Defendants Tewalt and Neville. *Id.* at 10-11 (Defendants Tewalt and Neville are "untrained individuals volunteering to help put Mr. Pizzuto to death…"). Yet Pizzuto also discredits the review and assessment conducted by IDOC's identified expert witness. *Id.* at 11, n.4. Defendants have made assurances and taken action to meet IDOC's statutory and constitutional requirements. *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (government actors are accorded a presumption of good faith that they will properly exercise their duties); *see also Brown v. Buhman*, 822 F.3d 1151, 1167-1168 (10th Cir. 2016) ("[G]overnment 'self-correction … provides a secure foundation for mootness so long as it seems genuine.") (citation omitted).

**REPLY IN SUPPORT OF MOTION TO VACATE NOTICES OF DEPOSITION - 4**

Pizzuto seeks to test the assurances Defendants have made regarding the qualifications and actions of its confidential team members. In support, he cites *West v. Brewer*, No. CV-11-1409, 2011 WL 6724628 (D. Ariz. Dec. 21, 2011). *West* easily squares with Defendants' approach to these issues. In *West*, the district court referenced earlier litigation in which the court had accepted the exact process proposed by Defendants and required by IDOC's execution protocol – the department will conduct license and background checks annually and upon issuance of a death warrant. *Id.* at *3 (citing *Dickens v. Brewer*, 631 F.3d 1139 (9th Cir. 2011)). Arizona subsequently admitted that executions proceeded after *Dickens* even though the Director, who is responsible for verifying execution procedures were followed, knew Medical Team members did not meet the requirements, and the Department deviated from the written protocol. *Id.* at 6-8. The court then considered whether the "deviations in practice from the protocol as written present a substantial, objectively intolerable risk of harm that is likely to cause needless suffering and severe pain during an execution, in violation of the Eighth Amendment." *Id.* at 11. Contrary to Pizzuto's claims, IDOC's suspensions of the execution protocol and cited mistakes did not create a risk of "needless suffering and severe pain" but eliminated those risks. Defendant Tewalt's three decisions – to suspend the SOP upon service of a death warrant on Pizzuto when IDOC did not possess execution chemical, to halt further attempts to establish peripheral venous access on Creech, and to not use expired execution chemicals – decreased the risk of possible pain. Despite Pizzuto's protestations to the contrary, the proposed deposition testimony is not relevant to his claim that the use of pentobarbital in his execution will result in superadded pain.

Because the limited relevance of the testimony Pizzuto seeks is outweighed by the burden on the non-party witnesses, Defendants, IDOC, and the state, this Court must decline his request to re-notice the depositions.

**REPLY IN SUPPORT OF MOTION TO VACATE NOTICES OF DEPOSITION - 5**

**2. If the Court authorizes the depositions, an additional order is necessary to protect the identities of these confidential team members.**

Pizzuto demands in-person, recorded depositions. If Defendants are forced to produce confidential team members for in-person, recorded depositions where they are protected solely by an anonymous moniker, the Defendants, IDOC, the State and the team members will be immediately harmed. Pizzuto contends that the current Protective Order, which permits Defendants to object to specific questions on confidentiality grounds, is sufficient to protect Defendants' secrecy needs. Pizzuto further claims Defendants' requests for a remote, audio-only deposition are excessive. (Pl.'s Resp., Dkt. 177, p. 15). Pizzuto's arguments are unavailing.

Trial courts possess wide discretion in determining the time, place and manner for taking depositions. *Swenson v. Geico Casualty Company*, 336 F.R.D. 206, 209 (D. Nev. August 19, 2020). Leave for remote depositions should be "granted liberally". *Id.* (citing *Brown v. Carr*, 253 F.R.D. 410, 412 (S.D. Tex. 2008); *Lopez v. CIT Bank, N.A.*, Case no. 15-cv-00759-BLF (HRL), 2015 WL 10374104, at *2 (N.D. Cal. Dec. 18, 2015) (citing Ninth Circuit cases)). Once the party requesting a remote deposition advances a legitimate reason for the ask, the opposing party must make a "particularized showing" that the remote nature would be prejudicial. *Id.* (citing *United States v. $160,066.98 from Bank of Am.*, 202 F.R.D. 624, 629 (S.D. Cal. 2001) (citing cases)).

Contrary to Pizzuto's assertions, Defendants cited legitimate reasons for the remote, audio-only depositions. If the Court deems the depositions of IDOC's confidential team members appropriate discovery tools, the non-party witnesses should be afforded the protections Idaho's statutory system demands and this Court has previously recognized. (Dkts. 88; 123). Disclosure of their faces and voices to counsel, counsel's agents, the stenographer, and the videographer identifies the confidential team members to those present during the deposition and fails to protect their anonymity.

**REPLY IN SUPPORT OF MOTION TO VACATE NOTICES OF DEPOSITION - 6**

Defendants understand and acknowledge that several courts have permitted depositions to occur with anonymous monikers. But Pizzuto's efforts to distinguish *King v. Parker*, 2020 WL 488314 (M.D. Tenn. July 20, 2020), fail. By the plain language of the opinion, the court's precautions to preserve the anonymity of team members were not limited to live court testimony. *Id.* at *11. Additionally, one of the cases Pizzuto cites, *Nance v. Oliver*, 1:20-cv-00107-JPB, Dkt. 132-19 (N.D. Ga May 16, 2024)[2], involved the very same deposition conditions that Defendants request here – an audio-only Zoom deposition of the anonymous physician. *See id.*, Dkt. 82, *6-7 (N.D. Ga. July 7, 2023) (the deposition of any person involved in the administration of Georgia's lethal injection protocol would be conducted remotely, occur by means of audio only, and could use voice-altering technology). Based on the confidential identities of IDOC's Medical Team Leader and Central Line Volunteer, Defendants' proposed manner of conducting any deposition is reasonable.[3]

Finally, with respect to Defendants' requests for an order limiting the scope of any court-ordered deposition, Pizzuto claims Defendants "get the legal framework backwards" by proposing

---

[2] Defendants also ask the Court to take judicial notice of documents filed in other district court cases. (*See* Pl.'s Resp., Dkt. 177, p. 5, n. 3.)

[3] Pizzuto also relies upon several cases that address the pragmatic benefits related to in-person depositions. (Pl.'s Resp., Dkt. 177, pp. 16- 17). Several of these cases pre-date the technological advances in remote hearings wrought by the pandemic. At least one case cited the pandemic as the sole justification for the request for remote depositions. *See Watson v. U.S. Army Corps of Engineers*, 2021 WL 12319912, *1 (S.D. Miss. April 23, 2021) (rejecting generalized assertion that the pandemic supported remote venue and recognizing the need to consider individualized circumstances). Defendants respectfully submit the risk of disclosure of confidential identities of the proposed deponents outweigh the benefits of an in-person proceeding. Defendants are not seeking the protective order out of convenience. *See Huddleston v. Bowling Green Inn of Pensacola*, 333 F.R.D. 581, 584-585 (N.D. Fla. Dec. 18, 2019) (plaintiff chose forum in which to sue; cost and convenience did not support a telephonic deposition). Additionally, the Court can craft the protective order to address Pizzuto's concerns about coaching the deponents. The Court should reject Pizzuto's efforts to minimize Defendants' articulated and supported identification concerns.

**REPLY IN SUPPORT OF MOTION TO VACATE NOTICES OF DEPOSITION - 7**

a proper scope while also discounting Defendants' requested limits on areas of inquiry. Contrary to Pizzuto's contentions, Defendants addressed the reasons for the proposed limited scope of deposition testimony throughout its memorandum. Based on the good cause for the limitation in scope, Defendants asked the Court to 1) limit the scope to relevant inquiries and 2) prohibit irrelevant inquiries. Defendants reiterate herein that unfettered deposition questions will not produce admissible testimony or lead to admissible evidence. Rather, Pizzuto seeks open-ended questioning to secure facts separate and distinct from the issues raised in this litigation, to include information related to the identities of the confidential team members and chemical supplier. Creech is not engaged in discovery, so Pizzuto's inquiries into the events of February 28 appear to be inappropriate inroads into potential issues with Creech's subsequent execution. Additionally, IDOC's efforts to train and secure an appropriate staff and premises for central line venous access obviate the risk that Pizzuto will suffer any pain not attendant to the process of death.

For these reasons, the Court must grant Defendants' reasonable request for a protective order governing the manner and scope of any deposition of IDOC's confidential team members that the Court might authorize.

## CONCLUSION

Defendants respectfully request that the Court grant their Motion and decline to authorize Pizzuto to take the depositions of IDOC's confidential team members. Alternatively, Defendants ask the Court to issue a protective order governing the manner and scope of the depositions.

Respectfully submitted this 4th day of February 2025.

                                             MOORE ELIA KRAFT & STACEY, LLP

                                             */s/ Tanner J. Smith*
                                             Tanner J. Smith
                                             Attorneys for Defendants

**REPLY IN SUPPORT OF MOTION TO VACATE NOTICES OF DEPOSITION - 8**

OFFICE OF THE ATTORNEY GENERAL

*/s/ Kristina M. Schindele*
Kristina M. Schindele
Deputy Attorney General
Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of February 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Jonah J. Horwitz<br>Christopher M. Sanchez<br>Federal Defender Services of Idaho<br>702 W. Idaho St., Ste. 900<br>Boise, Idaho 83702<br><br>Stanley J. Panikowski<br>DLA Piper LLP<br>401 B St., Ste. 1700<br>San Diego, CA 92101<br><br>*Attorneys for Plaintiff* | ☐ U.S. Mail, postage prepaid<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Facsimile Transmission<br>☒ Electronic service: Jonah_horwitz@fd.org,<br>Christopher_m_sanchez@fd.org,<br>stanley.panikowski@dlapiper.com, |

                                                            */s/ Kristina M. Schindele*
                                                            Kristina M. Schindele

**REPLY IN SUPPORT OF MOTION TO VACATE NOTICES OF DEPOSITION - 9**