UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR., | Case No. 1:21-cv-00359-BLW |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| JOSH TEWALT, Director, Idaho Department of Correction, in his official capacity, TIMOTHY RICHARDSON, Warden, Idaho Maximum Security Institution, in his official capacity, | |
| Defendants. | |

## INTRODUCTION

Before the Court is Defendants' Motion to Vacate Notices of Deposition for Medical Team Leader and Central Line Volunteer (Dkt. 175). For the reasons described below, the Court will decline to vacate the noticed depositions but will order that they take place remotely and only by audio.

## BACKGROUND

The facts are familiar and need not be repeated here. Plaintiff Gerald Ross Pizzuto, Jr. brought this as-applied Eighth Amendment challenge to prevent the Idaho Department of Corrections (IDOC) from executing him using pentobarbital.

**MEMORANDUM DECISION AND ORDER - 1**

He argues that his constellation of medical conditions together with systemic flaws in IDOC execution protocols cause an unconstitutional risk of serious and unnecessary pain.

Since discovery began in October 2022, the Court has addressed a myriad of disputes between the parties. Two recurring issues are the relevance of the botched attempt to execute Thomas Creech in February 2024 and the scope of the IDOC's interest in keeping secret the identities of those involved in the execution process. Defendants' Motion to Vacate again raises these concerns.

In October 2024, Pizzuto issued notices to depose two confidential members of the IDOC's execution team: the Medical Team Leader and Central Line Volunteer. The Medical Team Leader is responsible for inserting the peripheral IV line. Dkt. 175-7 at 7. If that fails—as happened at Creech's execution attempt—the Central Line Volunteer instead establishes vein access through a central line, which involves threading a catheter through deep veins. *See* Dkt. 175-8 at 5-6. Idaho law shields the identities of both individuals. Idaho Code § 19-2716A(4). While the state statute does not create a federal evidentiary privilege, this Court has recognized that disclosure of the identities of the execution team would pose an undue burden on Defendants. *See* Dkt. 88 at 15-23.

The deposition notices instruct the Medical Team Leader and Central Line Volunteer to appear in person at the offices of the Capital Habeas Unit of the

Federal Defender Services of Idaho. Dkt. 175-4, 175-5. To preserve the deponents' anonymity, Pizzuto proposes referring to them only by title. *See* Dkt. 177-2. Defendants argue that this is insufficient to protect their identities. Defendants ask the Court to vacate the deposition notices entirely or, in the alternative, impose a protective order limiting the scope of questioning and requiring the deposition to be remote and audio-only. Dkt. 175-1.

## LEGAL STANDARD

Under the Federal Rules of Civil Produce, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This applies equally to information possessed by non-parties, who can be compelled to produce evidence. *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993). "This broad right of discovery is based on the general principle that litigants have a right to 'every man's evidence,' and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Id.* (citing *United States v. Bryan*, 339 U.S. 323, 331 (1950)).

Within these general parameters, district courts have significant discretion to prohibit or limit discovery. *Sablan v. Dep't of Fin. of Com. of N. Mariana Islands*, 856 F.2d 1317, 1321 (9th Cir. 1988). For "good cause," the court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense," including by restricting the scope of discovery or forbidding the disclosure altogether. Fed. R. Civ. P. 26(c)(1). This decision requires the court to balance the requesting party's need for the evidence against the harm that disclosure may have on the objecting party. *See* Dkt. 88 at 19.

## ANALYSIS

At the outset, the Court rejects Defendants' request to vacate the deposition notices. Such a remedy is warranted only in extraordinary circumstances, and Defendants have not come close to showing that a prohibition is justified. *See Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error."); *Apple Inc. v. Samsung Elecs. Co.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012) ("[A] party seeking to prevent a deposition 'carries a heavy burden to show why discovery should be denied.'"). While Defendants raise legitimate points about anonymity, these can easily be addressed through restrictions on the means of the deposition. The Court will discuss the anonymity issue after considering Defendants' other objections.

Defendants opine that the depositions will not produce relevant evidence and are disproportionate to the needs of the case. Their logic is that Pizzuto's claim revolves around the possibility that his medical conditions and medication history will interfere with the efficacy of pentobarbital, and neither the Medical Team

Leader nor Central Line Volunteer can shed light on this risk. Further, Defendants contend, to the extent that the witnesses can provide evidence about the failure to insert an IV line at Creech's execution, this information is irrelevant because Pizzuto is a different person with different medical circumstances. *Defs.' Mem.* at 8-10, Dkt. 175-1.

These arguments fail. To start, Pizzuto's complaint is not limited to the risk of pharmacological complications. The complaint also includes extensive allegations regarding peripheral vein access, the qualifications of the Medical Team, and problems with the insertion of a central line. The Medical Team Leader and Central Line Volunteer can both speak directly to these issue—and, moreover, likely have information that no other witness could provide. As Pizzuto points out, "It is difficult to imagine more obviously relevant witnesses in a lethal-injection lawsuit than the people who will be directly inserting the needles into the inmate's veins." *Pl.'s Resp.* at 6, Dkt. 177. And the bald assertion that IDOC team members are qualified does not diminish Pizzuto's interest in obtaining this evidence. *See* Dkt. 178 at 9 ("Defendants cannot defeat Pizzuto's claim that their execution procedures will violate the Constitution by pointing out that they have an obligation to follow the Constitution.").

This facet of relevancy alone would be enough to justify allowing the deposition to proceed. Nonetheless, the Court will take a moment to address

Defendants' contentions about Creech's botched execution. This is at least the fourth time in the past year that Defendants have asserted in a discovery dispute that their failure to execute Creech says nothing about their ability to constitutionally execute Pizzuto. *See* Dkt. 158, 160, 178. The line is getting old. As the Court previously observed, Defendants "strain credulity by asserting that the IDOC's recent bungled execution of an individual who shares important characteristics with Pizzuto has no material bearing on Pizzuto's case." Dkt. 158 at 6. The Court finds the argument no more persuasive today.

Defendants do, however, raise legitimate points about maintaining the anonymity of the execution team members. The Court agrees that the use of a pseudonym is insufficient to guard against the risk of disclosure. Idaho is a small place, geography notwithstanding, and these individuals are members of our community. It hardly takes a leap of imagination to conclude that an in-person deposition could end up revealing their identities.

Fortunately, this risk can be fully mitigated by ordering an audio-only deposition, done either by telephone or video with the camera turned off. At least one other court faced with similar secrecy concerns has taken this approach. *See Ringo v. Lombardi*, No. 09-4-95-CV, 2010 WL 3310240, at *6 (W.D. Mo. Aug. 19, 2010) (mentioning that the parties agreed to an anonymous telephone deposition). Further, if Defendants feel that a line of questioning risks the

disclosure of the witnesses' identities, counsel can make an objection and instruct the deponent not to answer, in which case Pizzuto will have the option to bring a motion to compel. *Def.'s Resp.* at 4, Dkt. 177.

Pizzuto suggests that remote depositions are less effective. This is a valid concern, and Rule 30(b)(4) makes clear that an in-person deposition is the default. But these benefits are relatively slight, and they do not outweigh the risk of disclosure from an in-person deposition. Permitting audio-only depositions for these witnesses appropriately balances Pizzuto's need for the evidence against the undue burden posed by the risk of revealing their identities.

## ORDER

**IT IS ORDERED that:**

1. Defendants' Motion to Vacate Notices of Deposition for Medical Team Leader and Central Line Volunteer (Dkt. 175) is **GRANTED IN PART and DENIED IN PART** as follows:

   a. The depositions must take place **remotely and only by audio**.

   b. In all other respects, the motion is **denied**.



DATED: February 19, 2025

B. Lynn Winmill
U.S. District Court Judge