**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GERALD ROSS PIZZUTO, Jr., | No. 24-2275 |
| *Plaintiff - Appellee*, | D.C. No. 1:21-cv-00359-BLW |
| v. | |
| JOSH TEWALT, Director, Idaho Department of Correction, in his official capacity; RANDY VALLEY, Warden, Idaho Maximum Security Institution, in his official capacity, | OPINION |
| *Defendants - Appellants*. | |

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued and Submitted September 25, 2024
San Francisco, California

Filed March 21, 2025

Before: Ronald M. Gould, Johnnie B. Rawlinson, and Mark
J. Bennett, Circuit Judges.

Opinion by Judge Bennett

# SUMMARY[*]

**Discovery / 42 U.S.C. § 1983 / Collateral Order Doctrine**

In this interlocutory appeal, the panel affirmed the district court's order granting Idaho death-row inmate Gerald Ross Pizzuto's request for discovery about where Idaho's execution protocol drugs originated, how the drugs were manufactured, and when Idaho obtained the drugs.

Pizzuto filed a complaint under 42 U.S.C § 1983 against the director of Idaho's Department of Corrections and the warden of the Idaho Maximum Security Institution alleging that his execution would constitute cruel and unusual punishment in violation of the Eighth Amendment.

The panel held that it had jurisdiction to review the district court's interlocutory discovery order because the order fell into the narrow class of cases satisfying the collateral order doctrine. First, unlike other discovery orders, later review may not cure the possible harms caused by the disclosures in the district court's order. Second, the State has an interest in protecting the identity of its execution drug manufacturer. Third, unlike attorney-client privilege and similar discovery disclosures, protection of an execution drug manufacturer's identity is rarely invoked. Finally, no justice is afforded to the parties by not reaching the merits of Defendants' challenge to the district court's order.

The panel held that the district court did not abuse its discretion in ordering Defendants' responses. The district

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court did not abuse its discretion in finding that Pizzuto's requests for admission were relevant. Idaho's secrecy statute did not create an evidentiary privilege that binds federal courts in federal question cases, and the panel was not persuaded to declare a new federal evidentiary privilege in the identity of a state's execution drug supplier. Applying a "reasonable degree of certainty" standard, the district court did not abuse its discretion in ordering the disclosures. The district court's opinion was well reasoned in articulating why it ordered the disclosures. Idaho did not show, to the requisite degree, how its strong interest in enforcing its criminal laws, including its death penalty law, would be inappropriately harmed or burdened by allowing the challenged discovery.

## COUNSEL

Jonah J. Horwitz (argued), Assistant Federal Public Defender, Capital Habeas Unit; Christopher M. Sanchez, Assistant Federal Public Defender; Federal Defenders of Idaho, Boise, Idaho; Stanley J. Panikowski III, DLA Piper LLP US, San Diego, California; Sarah Kalman, DLA Piper LLP US, Philadelphia, Pennsylvania; for Plaintiff-Appellee.

Kristina M. Schindele (argued), Deputy Attorney General, Idaho Department of Correction; Raul Labrador, Idaho Attorney General; Office of the Idaho Attorney General, Boise, Idaho; Tanner Smith, Moore Elia & Kraft LLP, Boise, Idaho; for Defendants-Appellants.

# OPINION

BENNETT, Circuit Judge:

Gerald Ross Pizzuto, Jr., a death-row inmate in Idaho, filed suit alleging that his execution by lethal injection would violate the Eighth Amendment's prohibition against cruel and unusual punishment. After the Idaho Department of Correction ("Idaho") obtained execution protocol drugs for use in the execution of another death-row inmate, Plaintiff sought certain discovery about where these drugs originated, how these drugs were manufactured, and when Idaho obtained these drugs. Idaho refused to respond, claiming that disclosure would impose an undue burden by revealing the identity of the State's execution drug supplier, thus imperiling its execution protocol. The district court found that the information was relevant, that it was not protected by privilege, and that its disclosure did not unduly burden the State. Idaho filed an interlocutory appeal of the district court's discovery order. We have jurisdiction under the collateral order doctrine, and we affirm.

# BACKGROUND

Plaintiff Gerald Ross Pizzuto, Jr. is an Idaho death-row inmate. On November 16, 2021, he filed an amended complaint under 42 U.S.C. § 1983 against Defendants Josh Tewalt, the director of Idaho's Department of Correction, and Tim Richardson, the warden of the Idaho Maximum Security Institution, in their official capacities ("Defendants" or the "State"). Plaintiff asserted a single claim: that his execution would constitute cruel and unusual punishment, in violation of the Eighth Amendment to the United States Constitution, because his medical conditions and Idaho's lethal injection practices unconstitutionally

increased the risk of pain and suffering during his execution. Plaintiff alleged that Idaho relied on unreliable drug sources for earlier executions, and use of unreliably sourced drugs could lead to "a substantial risk of serious harm in an execution."[1]  Plaintiff alleged that his medical conditions, including his chronic heart problems and gabapentin prescription, created "a substantial risk of serious harm" by "the use of pentobarbital at his execution."

In March 2022, the Idaho Legislature passed House Bill No. 658, modifying state statutes related to state execution participants and state execution drug suppliers.  2022 Idaho Sess. Laws 590–94.  Under the amended law, "the identities" of any "entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution" "shall be confidential, shall not be subject to disclosure, and shall not be admissible as evidence or discoverable in any proceeding before any court."  Idaho Code § 19-2716A(4).

In December 2021, Defendants answered Plaintiff's amended complaint, and Plaintiff served discovery on the State.  Plaintiff served three sets of discovery on the State by January 2023.   The first set consisted of document production requests, physical space inspection requests,

---

[1] Plaintiff alleged that the use of improperly compounded drugs could create "risks that the [drug] particle becomes contaminated or lodged in small blood vessels or in a prisoner's lungs, which would be extremely painful."  He alleged that unreliably sourced drugs could "become contaminated with fungi, bacteria, and other contaminants" that "would elicit an inflammatory reaction and c[ould] result in shock" or produce "immediate anaphylaxis."  Plaintiff alleged that "[t]hese various problems with [improperly sourced] compounded drugs create a substantial risk of serious pain."

interrogatories, and requests for admission.  Exhibit 30, *Pizzuto v. Tewalt*, No. 21-cv-00359 (D. Idaho Nov. 22, 2022), ECF No. 54-31.  The second set consisted of interrogatories.  Exhibit 1, *Pizzuto v. Tewalt*, No. 21-cv-00359 (D. Idaho Apr. 13, 2023), ECF No. 82-2.  The third set consisted of interrogatories.  Exhibit 3, *Pizzuto v. Tewalt*, No. 21-cv-00359, (D. Idaho Apr. 13, 2023), ECF No. 82-4; Exhibit 5, *Pizzuto v. Tewalt*, No. 21-cv-00359 (D. Idaho Apr. 13, 2023), ECF No. 82-6; Exhibit 7, *Pizzuto v. Tewalt*, No. 21-cv-00359 (D. Idaho Apr. 13, 2023), ECF No. 82-8.

The State refused to answer six of Plaintiff's interrogatories and two of Plaintiff's requests for admission. The State refused to answer Plaintiff's Interrogatory 3 from his first set of interrogatories which asked "[i]f manufactured, what companies are involved in the[] manufacture [of the execution chemicals]?"  The State responded, citing Idaho's execution secrecy statute:

> Defendants Tewalt and Richardson object to this interrogatory pursuant to Idaho Code § 19-2716A, which prohibits the disclosure of "[a]ny person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution . . . ." Further, Defendants cannot answer this interrogatory as the Department does not currently have any execution chemical in its possession.

Second Mot. To Compel Disc. at 5, *Pizzuto v. Tewalt*, No. 21-cv-00359 (D. Idaho Apr. 13, 2023), ECF No. 82-1

(alterations in original). The State provided the same response to: Interrogatory 4, which asked "[i]f compounded, what is the compounding pharmacy" for the drugs; Interrogatory 7, which asked Defendants to "[d]escribe how the drugs were chosen for Mr. Pizzuto's execution"; and Interrogatory 8, which asked Defendants to "[d]escribe how the source of the drugs was chosen for Mr. Pizzuto's execution, i.e., the compounder or manufacturer." *Id.* The State responded similarly to Interrogatory 15, which asked for a description of "every step [Defendants] have taken from August 23, 2022 to the present to locate a source of chemicals for Mr. Pizzuto's execution," and Interrogatory 19, which asked the State to describe the circumstances under which a member of the medical execution team had left the medical team. *Id.* at 5–6.

The State also objected on the same basis to Plaintiff's Request for Admission 54 that the State "[a]dmit that [it] will make inquiries to determine the manufacturer of the [Active Pharmaceutical Ingredients] for the Execution Drugs" and Plaintiff's Request for Admission 89 that the State "[a]dmit that [it] will identify to [Plaintiff's] counsel the person or persons providing the 'technical assistance' and performing the 'technical review' described on page 25 of [Standard Operating Procedure] 135." *Id.* at 7. The State similarly objected to Plaintiff's Request for Production 16 for all emails received or sent "regarding the choice of, search for, acquisition of, transportation of, and/or maintenance of execution chemicals." Exhibit 7, *Pizzuto*, ECF No. 82-8. Plaintiff moved to compel.

In a July 2023 order, the district court found that "Idaho's secrecy statute does not create an evidentiary privilege that binds federal courts in federal question cases" and was not persuaded to declare "a new, coextensive federal

privilege in the identities of states' execution-drug
suppliers." But, recognizing Idaho's interest in enforcing its
criminal laws, including the death penalty, the district court
evaluated whether Plaintiff's discovery requests constituted
an undue burden on Defendants under Federal Rule of Civil
Procedure 26(c). The district court found it would place an
undue burden on Defendants to produce "any information
that would, to a reasonable degree of certainty, identify any
person or entity involved in preparing for, supplying drugs
for, or administering the death penalty in Idaho."

Applying this standard, the district court ordered
Defendants to comply with certain of Plaintiff's discovery
requests. The district court denied as irrelevant Plaintiff's
motion to compel a response to Interrogatory 15 about every
step the State took to identify a source of execution drugs.
The district court found Defendants would be unduly
burdened if required "to identify their execution-drug
supplier" and denied Plaintiff's motion to compel responses
to Interrogatories 3 and 4. Similarly, the district court denied
Plaintiff's motion to compel responses to Interrogatories 7
and 8 and Request for Production 16 to the extent it sought
any answer "that would identify the State's execution team
members or drug suppliers to a reasonable degree of
certainty," but the district court granted Plaintiff's motion to
compel to the extent it would not so identify them. The
district court ordered Defendants to respond within twenty-
one days to Plaintiff's Interrogatory 19 about why a member
of the medical team had left. The district court denied
Plaintiff's motion to compel a response to Request for
Admission 89 that sought "to compel Defendants to identify
the person who will provide technical assistance."

According to Plaintiff, the State "[e]ven after being
ordered to provide additional information," continued to

offer "vague statements" and withheld "rudimentary details, like whether the drugs being sought [we]re compounded or manufactured."   Mot. for Leave to Serve Additional Interrogs. at 3, *Pizzuto v. Tewalt*, No. 21-cv-00359 (D. Idaho Sept. 1, 2023), ECF No. 91-1.   According to Plaintiff, the State "also declined to tell Mr. Pizzuto what information [it] will give him about the actual drugs they obtain for his execution, despite the Court's directive."   *Id.*   Plaintiff did not file another motion to compel related to these interrogatories.

In late 2023, an Idaho state court issued a death warrant for Thomas Creech, another inmate on death row.   The State informed Creech that it had "secured the chemicals necessary to carry out an execution by lethal injection" under Idaho's execution protocol.   When it issued his death warrant, the State informed Creech that it intended to use pentobarbital as part of his lethal injection protocol and had already acquired the pentobarbital.   Plaintiff served requests for admission about the source of the pentobarbital that the State had obtained for Creech's execution.[2]   Plaintiff requested that the State, among other things:

> (1) "Admit or deny that the Execution Drugs were manufactured by Akorn," a defunct pharmaceutical company;

---

[2] Creech's execution was set for February 28, 2024.  The execution was halted after the execution team failed eight times to set an intravenous line to administer the lethal injection drugs.  The State issued another death warrant for November 13, 2024, but on November 6, 2024, a federal district court issued a stay of execution.

(2) "Admit or deny that [Idaho] identified a source of Execution Drugs prior to October 10, 2023";

(3) "Admit or deny that [Idaho] obtained Execution Drugs prior to October 10, 2023";

(4) "Admit or deny that [Idaho] would potentially use the Execution Chemicals currently in its possession to execute Mr. Pizzuto";

(5) "Admit or deny that the Execution Chemicals currently in [Idaho's] possession are compounded";

(6) "Admit or deny that the Execution Drugs were made in America" or "outside of America";

(7) "Admit or deny that the Execution Drugs came from a veterinary source" or "a hospital"; and

(8) "Admit or deny that the Execution Drugs were sold by a wholesaler/distributor" or "pharmacy."

Exhibit A, *Pizzuto v. Tewalt*, No. 21-cv-00359 (D. Idaho Feb. 14, 2024), ECF No. 115-2; Exhibit A, *Pizzuto v. Tewalt*, No. 21-cv-00359 (D. Idaho Feb. 2, 2024), ECF No. 109-2; Exhibit 7, *Pizzuto v. Tewalt*, No. 21-cv-00359 (D. Idaho Feb. 15, 2023), ECF No. 102-8.

Plaintiff also requested that the State supplement its earlier discovery responses. The State had previously answered Plaintiff's interrogatories and requests for

Case: 24-2275, 03/21/2025, DktEntry: 24.1, Page 11 of 33
Case 1:21-cv-00359-BLW   Document 182   Filed 03/21/25   Page 11 of 33

PIZZUTO V. TEWALT                            11

production but had not yet obtained the pentobarbital or had not acknowledged it had obtained pentobarbital. Plaintiff requested supplemental information about the acquired execution chemicals including "[a]ll documents generated or obtained in connection with [Idaho's] acquisition, transportation, and storage of execution chemicals, including but not limited to receipts, purchase orders, expiration dates, and so forth," and "[a]ll documents obtained from the source of [the State]'s execution chemicals."

Defendants answered the second, fourth, and fifth admission requests listed above, but refused to answer the others, objecting similarly to each, because each:

> [C]reates an undue burden on the [State] and interferes with the agency's duty to carry out a lawfully imposed death sentence. The Idaho Legislature enacted Idaho Code § 19-2716A to prohibit the disclosure of the identities of any person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution. Defendant[s] . . . object[] to disclosure of any information that could lead to the identification of the person or entity from whom [the State] acquired execution chemicals. Defendant[s] . . . assert[] disclosure of the requested information could

lead to the identity of the source of execution
chemicals.

The State produced a purchase order and a United States
Drug Enforcement Agency registration form for the
pentobarbital but redacted the purchase date on the purchase
order.  The State also provided a "Certificate of Analysis"
that contained results of chemical testing performed on the
drug but redacted the report date of the analysis.  The State
began to produce documents responsive to Plaintiff's
requests for production and stated that it would
"supplement" its responses "as appropriate."  Plaintiff
moved to compel Defendants' responses to these requests for
admission and production.

In March 2024, the district court granted in part and
denied in part the motions to compel.  The district court
found that the requested information was relevant.  The
district court reiterated its earlier standard for whether the
requests constituted an undue burden finding that
Defendants could withhold "information that would, to a
reasonable degree of certainty, identify a person or entity
involved in preparing for, supplying drugs for, or
administering the death penalty in Idaho" and thus
undermine the State's ability to "enforce its criminal laws."

Applying this standard, the district court found that
Defendants "offer[ed] only bare speculation that the
purchase date could be used in conjunction with 'other
records' to trace the execution drugs to a particular supplier."
The district court found that the State failed "to go further
and explain, in concrete terms, how [its] answers to these
particular questions" about whether the execution drug
manufacturer was domestic or foreign "may actually lead to
the identification of [its] supplier."  Similarly, the district

Case: 24-2375, 03/21/2025, DktEntry: 24.1, Page 13 of 33
Case 1:21-cv-00359-BLW   Document 182   Filed 03/21/25   Page 13 of 33

PIZZUTO V. TEWALT                                           13

court found that the State "offered no evidence or analysis to
support [its] speculation" that information about the type of
drug manufacturer, such as whether it was a veterinary or
hospital source, would lead to the identification of the
manufacturer.  The district court refused to reject Plaintiff's
discovery requests "based on some unquantified risk that
Defendants' answers could theoretically lead to the
identification of the drug supplier."  And the district court
found that Defendants did not explain how their supplier
could be identified if the report date on the Certificate of
Analysis or whether Akorn was the manufacturer were
disclosed.

All told, while the district court reasoned that the State's
claim that the requested information "would increase the risk
that [Idaho's] supplier will be identified" was "true as a
general matter," "Defendants fail[ed] to go further and
explain, in concrete terms, how their answers to these
particular questions may actually lead to the identification of
their supplier."  The district court concluded that answering
Plaintiff's requests for admission identified above and
producing a Certificate of Analysis with an unredacted
report date would not unduly burden Defendants.  The
district court ordered that Defendants respond to Plaintiff's
requests for admission, save for the dates by which the State
identified its execution drugs, which Defendants had
adequately provided.

On April 10, 2024, Defendants filed a timely notice of
interlocutory appeal of the district court's March 2024 order.
Defendants did not file an appeal of the district court's July
2023 order.

Case: 24-2375, 03/21/2025, DktEntry: 24.1, Page 14 of 33
Case 1:21-cv-00359-BLW   Document 182   Filed 03/21/25   Page 14 of 33

14                    PIZZUTO V. TEWALT

## STANDARD OF REVIEW

"We have jurisdiction to determine whether we have jurisdiction to hear the case." *Aguilar v. Walgreen Co.*, 47 F.4th 1115, 1120 (9th Cir. 2022) (quoting *Childs v. San Diego Fam. Hous. LLC*, 22 F.4th 1092, 1095 (9th Cir. 2022)). We review questions of our jurisdiction de novo. *Id.* (citing *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1140 (9th Cir. 2009)). We review a district court's discovery rulings for abuse of discretion. *U.S. Fid. & Guar. Co. v. Lee Invs. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011).

## DISCUSSION

### A. We have jurisdiction under the collateral order doctrine.

Courts of appeals "have jurisdiction of appeals from all final decisions of the district courts of the United States, . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291. "A 'final decision' is typically one 'by which a district court disassociates itself from a case.'" *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009) (brackets omitted) (quoting *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995)).

In limited circumstances appeals may be taken before a final decision is made. This class of cases includes orders certified by a district court for immediate appeal, *see* 28 U.S.C. § 1292(b), or decisions that "do not end the litigation" but "are appropriately deemed 'final.'" *Mohawk Indus.*, 558 U.S. at 106 (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545–46 (1949)). We accommodate review of this latter subset of decisions as "final" under the collateral order doctrine. *See Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994)

(noting "[t]he collateral order doctrine is best understood not
as an exception to the 'final decision' rule laid down by
Congress in § 1291, but as a 'practical construction' of it"
(quoting *Cohen*, 337 U.S. at 546)).  This category of cases is
narrow because "[p]ermitting piecemeal, prejudgment
appeals . . . undermines 'efficient judicial administration'
and encroaches upon the prerogatives of district court
judges, who play a 'special role' in managing ongoing
litigation." *Mohawk Indus.*, 558 U.S. at 106 (quoting
*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374
(1981)).

"To fall within the narrow class of orders satisfying the
Supreme Court's collateral order doctrine, an order must
(1) 'conclusively determine the disputed question,'
(2) 'resolve an important issue completely separate from the
merits of the action,' and (3) 'be effectively unreviewable on
appeal from a final judgment.'" *Childs*, 22 F.4th at 1095
(quoting *Will v. Hallock*, 546 U.S. 345, 349 (2006)).  The
Supreme Court has summarized these considerations as
(1) "conclusiveness," (2) "separateness," and (3) "effective
unreviewability." *Mohawk Indus.*, 558 U.S. at 108.

The district court's March 2024 ruling on Plaintiff's
motion to compel discovery did not end the litigation on the
merits, and the district court did not certify its order for
interlocutory review under 28 U.S.C. § 1292(b).  But
because the district court's discovery order falls into the
narrow class of cases satisfying the collateral order doctrine,
we have jurisdiction.

The parties agree that the order conclusively determined
the disputed question.  And the parties do not dispute that
this issue is completely separate from the merits.  But the
parties dispute the importance of this question and whether

Case: 24-2375, 03/21/2025, DktEntry: 24.1, Page 16 of 33
Case 1:21-cv-00359-BLW  Document 182  Filed 03/21/25  Page 16 of 33

16                    PIZZUTO V. TEWALT

this question would "be effectively unreviewable on appeal from a final judgment" because a lack of review "would imperil a substantial public interest." *Will*, 546 U.S. at 349, 353.

Lack of review "imperil[s] a substantial public interest," *id.*, "only where the order at issue involves 'an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial,'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (quoting *United States v. MacDonald*, 435 U.S. 850, 860 (1978)).  To resolve whether an order imperils a substantial public interest, the Supreme Court has instructed us to look to "the entire category to which a claim belongs" rather than individualized claims of jurisdiction.  *Digit. Equip. Corp.*, 511 U.S. at 868.  "As long as the class of claims, taken as a whole, can be adequately vindicated by other means, 'the chance that the litigation at hand might be speeded, or a particular injustic[e] averted,' does not provide a basis for jurisdiction under § 1291."  *Mohawk Indus.*, 558 U.S. at 107 (alteration in original) (quoting *Digit. Equip. Corp.*, 511 U.S. at 868).

Defendants seek review of the district court's March 2024 discovery order.  In general, the Supreme Court has instructed that the collateral order doctrine does not apply to discovery orders.  *See Firestone Tire*, 449 U.S. at 377 ("[W]e have generally denied review of pretrial discovery orders."); *Mohawk Indus.*, 558 U.S. at 108.  We have jurisdiction here, however, because the context and the disclosures in the district court's order are distinct from the ordinary class of discovery orders.

First, unlike other discovery orders, later review may not cure the possible harms caused by the disclosures in the

Case: 24-2375, 03/21/2025, DktEntry: 24.1, Page 17 of 33
Case 1:21-cv-00359-BLW   Document 182   Filed 03/21/25   Page 17 of 33

PIZZUTO V. TEWALT                                    17

district court's order.  The Supreme Court has instructed that "[t]he crucial question" in evaluating the public interest at stake "is not whether an interest is important in the abstract; it is whether deferring review until final judgment so imperils the interest as to justify the cost of allowing immediate appeal of the entire class of relevant orders." *Mohawk Indus.*, 558 U.S. at 108.  "[T]he finality requirement should 'be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered.'"  *Firestone Tire*, 449 U.S. at 376 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 331 n.11 (1976)).

Significant to our determination is that there is a possibility that Defendants' important interests would be "imperil[ed]" without review.  *Mohawk Indus.*, 558 U.S. at 108.  The State's interest in keeping the identity of its execution drug supplier a secret is substantial.  If the State's execution drug supplier were identified, the State's execution drug protocol would be imperiled.  The State is concerned that information about its execution drug supplier, once released, is available forever and could be used together with other information to reveal the identity of its execution drug supplier.

Defendants argue that disclosure of the requested information will allow Plaintiff and anti-death penalty advocates to identify and target the manufacturer of Idaho's execution drugs.  If Defendants are correct, then the order is effectively unreviewable on appeal from a final judgment.  The manufacturer would be identified, and Idaho's execution protocol would be imperiled.  *See Glossip v. Gross*, 576 U.S. 863, 869–71 (2015) (describing efforts by anti-death penalty advocates to lobby drug manufacturers and suppliers to make execution drugs unavailable).  Even if

Case: 24-2275, 03/21/2025, DktEntry: 24.1, Page 18 of 33
Case 1:21-cv-00359-BLW   Document 182   Filed 03/21/25   Page 18 of 33

18                          PIZZUTO V. TEWALT

we later determined that the information Plaintiff requested was not relevant or useful, we could not cure this harm.

The parties agree that requiring outright disclosure of the drug manufacturer would be effectively unreviewable on appeal.  Oral Arg. at 16:24–16:47, 19:02–21:47.  And the parties likely would not dispute that the disclosure of information completely unrelated to the source of the execution drugs would be reviewable on appeal because this information could not be used to identify the drug manufacturer.  Plaintiff's discovery requests fall somewhere in between these examples.

The district court's order compelled disclosure of the following information: the "purchase date" of the execution drugs, the dates Idaho obtained the execution drugs, whether the drugs "were made 'in America'" or were "imported," "whether the drugs came from a 'veterinary source' or a hospital," "whether the drugs were sold by a 'wholesaler/distributor' or a pharmacy," "the 'Report Date' on the Certificate of Analysis," and whether the drugs "were manufactured by Akorn, a now-bankrupt pharmaceutical company."  Taken together with other publicly available information, it is possible that Plaintiff or anti-death penalty advocates might identify the manufacturer of Idaho's execution drugs.[3]

When the collateral order doctrine does not apply, the Supreme Court has found that post-merits remedies can cure a prior error, even in common discovery contexts.  *See, e.g.*, *Mohawk Indus.*, 558 U.S. at 109 ("Appellate courts can

---

[3] As we discuss below, "might" or "could" be able to identify is not the merits standard by which we judge if the district court abused its discretion in ordering discovery.

Case: 24-2375, 03/21/2025, DktEntry: 24.1, Page 19 of 33
Case 1:21-cv-00359-BLW   Document 182   Filed 03/21/25   Page 19 of 33

PIZZUTO V. TEWALT                    19

remedy the improper disclosure of privileged material in the same way they remedy a host of other erroneous evidentiary rulings: by vacating an adverse judgment and remanding for a new trial in which the protected material and its fruits are excluded from evidence."); *see also SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 725–27 (9th Cir. 2017) (finding state-action immunity is immunity from liability, not suit, and "can be protected by a post-judgment appeal"); *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1224 (9th Cir. 2023) (holding party substitution under Federal Rule of Civil Procedure 25 was reviewable upon entry of a final judgment by replacing the named party).

But unlike other types of discovery disclosures, the possible consequences of the district court's order cannot "be adequately vindicated by other means." *SolarCity Corp.*, 859 F.3d at 724 (quoting *Mohawk Indus.*, 558 U.S. at 107). If the identity of the State's execution drug supplier or information leading to the supplier's identity were revealed, there is no way to undo that disclosure. Unlike the disclosure of privileged information, there would be no way to "redo" the disclosures without revealing the State's execution drug supplier. And, on review, any argument that the discovery requests had unduly burdened the State would be moot because that information would already have been revealed. *See generally Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016) (discussing the non-justiciability of review when intervening circumstances make it impossible to grant relief).

Second, the State has an interest in protecting the identity of its execution drug manufacturer. In our prior cases applying the collateral order doctrine to motions to seal or unseal information, we have looked to the interests asserted

in keeping the information secret.  In *Islamic Shura Council of Southern California v. FBI*, 635 F.3d 1160 (9th Cir. 2011), we found a ruling that unsealed an order containing sensitive national security and law enforcement information was effectively unreviewable on appeal because "once the order is unsealed, any government appeal of the issue after judgment would be moot.  When an order is unsealed, the unsealing cannot be reversed." *Id.* at 1164.  On the other hand, in *United States v. Guerrero*, 693 F.3d 990 (9th Cir. 2012), we found that orders to unseal mental competency proceedings for public access were not immediately appealable because "concerns raised by public access to a criminal defendant's competency proceedings" were not "comparable" to "national security" or other dire interests. *Id.* at 998.

As the district court correctly recognized, Idaho's interest in protecting the identity of its drug manufacturer is significant.  *See Nelson v. Campbell*, 541 U.S. 637, 644 (2004) ("[A] constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself . . . . [A] State retains a significant interest in meting out a sentence of death in a timely fashion."); *Towery v. Brewer*, 672 F.3d 650, 661 (9th Cir. 2012) (per curiam) ("We also recognize that the State ordinarily has 'a strong interest in enforcing its judgments without undue interference from federal courts . . . .'"); *Landrigan v. Brewer*, 625 F.3d 1132, 1143 (9th Cir. 2010) (Kozinski, C.J., dissenting from denial of rehearing en banc) ("Certainly [the state] has a legitimate interest in avoiding a public attack on its private drug manufacturing sources . . . ."); *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) ("Our federal system recognizes the independent power of a State to articulate societal norms through criminal

Case: 24-2375, 03/21/2025, DktEntry: 24.1, Page 21 of 33
Case 1:21-cv-00359-BLW    Document 182    Filed 03/21/25    Page 21 of 33

PIZZUTO V. TEWALT                    21

law; but the power of a State to pass laws means little if the State cannot enforce them." (quoting *McCleskey v. Zant*, 499 U.S. 467, 491 (1991))); *Glossip*, 576 U.S. at 869 (noting the Supreme Court has never invalidated a procedure for carrying out the death penalty as infliction of cruel and unusual punishment, "animated in part by the recognition that because it is settled that capital punishment is constitutional, '[i]t necessarily follows that there must be a [constitutional] means of carrying it out.'" (alterations in original) (quoting *Baze v. Rees*, 553 U.S. 35, 47 (2008) (plurality opinion))).

Plaintiff asserts there is a countervailing public interest in learning about executions "so that citizens 'can determine whether lethal injections are fairly and humanely administered.'" But we have held that the identity of the manufacturer of execution drugs differs from other public rights to access executions and "that the public does not have a right of access to th[at] information." *First Amend. Coal. of Ariz., Inc. v. Ryan*, 938 F.3d 1069, 1078 (9th Cir. 2019).

Third, unlike the attorney-client privilege and similar discovery privileges, protection of an execution drug manufacturer's identity is rarely invoked.[4] Collateral review of these types of orders, therefore, does not implicate significant "institutional costs," *Mohawk Indus.*, 558 U.S. at 112, or "swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage

---

[4] At the end of 2023, there were 728 death penalty cases pending in federal district courts and state supreme courts within the Ninth Circuit. U.S. Cts. for the Ninth Cir., 2023 Annual Report 62 (2023). And within this small class of cases, we have seen few discovery orders that risk divulging the identity of the supplier of a state's execution drugs.

Case: 24-2275, 03/21/2025, DktEntry: 24.1, Page 22 of 33
Case 1:21-cv-00359-BLW  Document 182  Filed 03/21/25  Page 22 of 33

22          PIZZUTO V. TEWALT

of the litigation may be ventilated," *Digit. Equip. Corp.*, 511 U.S. at 868 (citation omitted).

Finally, no justice is afforded the parties by not reaching the merits of Defendants' challenge to the district court's order.  To assess our jurisdiction, we must already grapple with the possibility of the disclosure of Idaho's execution drug supplier due to the district court's order—the basis for Defendants' challenge to the discovery order.  The collateral order doctrine is driven by the value of judicial economy, which we do not serve by declining to accommodate review.  And as we have seen, these types of discovery orders will continue to arise in this and other Idaho cases and possibly elsewhere.  It would not benefit anyone for us to simply decline to address these issues now.

Because it is cabined to this context, our decision will not "overpower the substantial finality interests § 1291 is meant to further: judicial efficiency, for example, and the 'sensible policy of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise.'"  *Will*, 546 U.S. at 350 (alteration in original) (internal quotations omitted) (quoting *Firestone Tire*, 449 U.S. at 374).  Accordingly, we have jurisdiction to review the district court's discovery order.

**B.  The district court did not abuse its discretion in ordering Defendants' responses.**

We review discovery orders for abuse of discretion.  *See Branch v. Umphenour*, 936 F.3d 994, 1005 (9th Cir. 2019).  "A district court 'has wide latitude in controlling discovery, and its rulings will not be overturned in [the] absence of a clear abuse of discretion.'"  *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008) (quoting *White v. City of*

*San Diego*, 605 F.2d 455, 461 (9th Cir. 1979)). "A court abuses its discretion when it applies an incorrect legal rule or relies upon a factual finding that is illogical, implausible, or without support in inference that may be drawn from the record." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014) (quoting *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1014 (9th Cir. 2013)).

Defendants argue that the "district court did not consider other factors required by Federal Rule of Civil Procedure 26—including relevance, timeliness, good cause, utility, or materiality." Regarding relevance, Defendants did not argue below that the dates on which Defendants acquired the drugs were irrelevant. Thus, Defendants have waived these relevance objections.[5] *See* Fed. R. Civ. P. 36(a)(5) ("The grounds for objecting to a request must be stated."); *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection.").

For the other requested information, the district court found that the geographic origin of the drugs, the type of drug supplier, and whether Akorn was the drug supplier were all relevant. "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir.

---

[5] Even were these objections not waived, we would easily conclude that under the broad discovery standards, the date information that Plaintiff seeks *is* reasonably calculated to lead to the discovery of admissible evidence. Plaintiff alleged that improperly stored or old pentobarbital degrades the chemical and increases the risks associated with lethal injection. The dates that the State obtained its execution drugs are relevant to both the efficacy and the safety of the State's execution protocol.

Case: 24-2375, 03/21/2025, DktEntry: 24.1, Page 24 of 33
Case 1:21-cv-00359-BLW   Document 182   Filed 03/21/25   Page 24 of 33

24                        PIZZUTO V. TEWALT

2005).  "Relevant information for purposes of discovery is
information 'reasonably calculated to lead to the discovery
of admissible evidence.'"  *Id.* (quoting *Brown Bag Software
v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992)).
This standard is a "low bar."  *Sandoval v. County of San
Diego*, 985 F.3d 657, 666 (9th Cir. 2021).

The district court did not abuse its discretion in finding
that Plaintiff's requests for admission were relevant.
Plaintiff alleges that "[t]he use of pentobarbital at [his]
execution creates a substantial risk of serious pain and
suffering" in violation of the Eighth Amendment.  The date
that the drugs were obtained,[6] the geographic origin of the
drugs,[7] and the type of company formulating the drugs[8] are

---

[6] Plaintiff alleged that old or improperly stored pentobarbital increases
the risks associated with lethal injection.  When the State obtained the
drugs is relevant to whether Plaintiff would experience unconstitutional
risk of pain or suffering in his execution.

[7] Plaintiff alleged that sterile and technical manufacturing protocols must
be implemented to avoid chemical degradation or contamination.
Absent these standards, Plaintiff alleged he faces an increased risk of
pain or suffering in his execution.  Whether the State's drugs were made
by manufacturers in countries with robust chemical manufacturing
standards or monitoring by the United States Food and Drug
Administration ("FDA") is relevant.

[8] Plaintiff alleged that drugs manufactured by compounding pharmacies
are not subject to the FDA's safety and efficacy standards.  He alleged
that drugs made by compounding pharmacies are generally not tested for
"identity, potency, and purity, or to detect contamination."  He alleged
that "[a]ny one of these problems increases the danger that a
compounded drug would not work as it is intended to and would
therefore lead to a substantial risk of serious harm in an execution."
Whether the State's drugs were made by a compounding pharmacy is
relevant to whether Plaintiff would experience unconstitutional pain or
suffering in his execution.

Case: 24-2275, 03/21/2025, DktEntry: 24.1, Page 25 of 33
Case 1:21-cv-00359-BLW   Document 182   Filed 03/21/25   Page 25 of 33

PIZZUTO V. TEWALT                    25

relevant because these factors may bear on the reliability of the drugs.

In its July 2023 order, the district court found that Idaho's secrecy statute did not create a federal evidentiary privilege, and it did not find that any other federal evidentiary privilege applied to Idaho's secrecy statute. Defendants do not directly challenge the district court's evidentiary privilege ruling, but in responding below and on appeal, they rely on Idaho's secrecy statute in refusing to respond to Plaintiff's requests for admission. They argue that "the text of [Idaho's secrecy] statute is important to the application of the undue burden standard set forth in Federal Rule of Civil Procedure 26" and that suppliers rely on this statute in deciding to transact with Idaho, making it "imperative" to "accord some deference to that reliance."

We agree with the district court that "Idaho's secrecy statute does not create an evidentiary privilege that binds federal courts in federal question cases." And we are not persuaded to declare a new federal evidentiary privilege in the identity of a state's execution drug supplier. *See Jaffee v. Redmond*, 518 U.S. 1, 8 (1996) ("Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting 'common law principles . . . in the light of reason and experience.'" (alteration in original)); *id.* at 13 (discussing how a "consensus among the States" supports recognition of a new federal evidentiary privilege); *Trammel v. United States*, 445 U.S. 40, 51 (1980) (explaining that a new testimonial privilege must "promote[] sufficiently important interests to outweigh the need for probative evidence"). As the district court correctly noted, to find states have such a privilege would invite states to "dodge federal judicial review by broadly exempting themselves from the discovery process."

Case: 24-2375, 03/21/2025, DktEntry: 24.1, Page 26 of 33
Case 1:21-cv-00359-BLW   Document 182   Filed 03/21/25   Page 26 of 33

26                          PIZZUTO V. TEWALT

Other circuit courts have similarly declined to find that
federal protections or privileges completely shield all
information about an execution drug manufacturer from
discovery. *See Jordan v. Comm'r, Miss. Dep't of Corr.*, 947
F.3d 1322, 1336–38 (11th Cir. 2020) (declining to extend
federal trade secret protections or "other protected matter"
protections to disclosure of the identity of maker of
pentobarbital, even in the presence of a state secrecy statute);
*In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 239 (6th
Cir. 2016) (declining to "federalize the Ohio secrecy law as
a common-law privilege for immunity") .

But even though the information is not "privileged," as
the district court recognized, requests for information like
these about or related to execution drug suppliers and
execution drugs may impose undue and/or improper burdens
on a state. *See First Amend. Coal.*, 938 F.3d at 1079–80
(noting the right of public access to execution information
did not extend to all minute details of an execution). Other
circuit courts have similarly held that requiring the
disclosure of the identity of the manufacturer of execution
drugs would impose undue burdens on the state. *See Jordan*,
947 F.3d at 1342; *In re: Mo. Dep't of Corr.*, 839 F.3d 732,
736 (8th Cir. 2016) (per curiam); *In re Ohio*, 845 F.3d at
238–39; *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 192 (4th
Cir. 2019) (affirming a district court's finding that disclosure
of a manufacturer's identity would unduly burden the state).
We therefore assess whether the district court abused its
discretion in determining that Plaintiff's requested
admissions and providing an unredacted Certificate of
Analysis would not impose undue burdens on Defendants.

The district court found that disclosure constituted an
undue burden when the requested information "would, *to a
reasonable degree of certainty*, identify a person or entity

involved in preparing for, supplying drugs for, or administering the death penalty in Idaho" (emphasis added). Defendants challenge this standard as failing to appreciate the harms caused by disclosure and permitting disclosure of "ancillary" information that has led to the exposure of execution drug manufacturers in other states.[9] Defendants argue that the district court should have instead not required disclosure when the information "could possibly" identify the supplier, as articulated by the U.S. District Court for the Northern District of Georgia in *Martin v. Ward*, No. 18-cv-4617, 2021 WL 1186749 (N.D. Ga. Mar. 30, 2021).

Plaintiff asserts that the appropriateness of the district court's "reasonable degree of certainty" test is "outside the scope" of this appeal because the district court made and applied the test in its July 2023 discovery order. We disagree. "An interlocutory appeal . . . is moot when a court can no longer grant any effective relief sought in the . . . request." *Akina v. Hawaii*, 835 F.3d 1003, 1010 (9th Cir. 2016) (per curiam). The appropriateness of the district court's "reasonable degree of certainty" test is moot for the disclosures and admissions that Defendants have already made. *See Richmark Corp.*, 959 F.2d at 1479 ("Compliance with a discovery order renders moot an appeal of that order."). But this issue is not moot for any of Defendants' obligations to supplement their responses under the July

---

[9] At oral argument, Defendants stated they do not challenge the district court's standard but challenged the district court's request for concrete examples of how the information would lead to identifying the source of the execution drugs. Oral Arg. at 1:16–3:05. This conflicts with their briefing which identifies an alternative standard, and their argument still challenges the district court's standard.

2023 order or for information requested under the instant order.

The district court did not abuse its discretion in using its "reasonable degree of certainty" test. The district court correctly articulated and applied the standard for a protective order under Federal Rule of Civil Procedure 26(c). *See Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010).

First, the district court did not err in finding:

> [T]he State of Idaho and its officials have a strong interest in enforcing the State's criminal laws, including its death penalty laws. And second, that interest will be harmed if Defendants are forced to disclose the identity of their execution-drug supplier, because doing so will presumably make it more difficult—or impossible—to obtain execution drugs in the future.

As a matter of law, the district court was correct. These strong interests of Idaho and other states in enforcing their criminal laws, including the death penalty, must be given appropriate consideration by district courts reviewing execution drug-related discovery requests. But in this dispute, like in other similar discovery disputes, it is the evaluation of the need for the requested information and the effect of granting the requested discovery that determines whether a state's strong interests are inappropriately harmed.

The district court also did not err in finding that Plaintiff has an interest in obtaining information about the drugs that may be used in his execution. We agree with the district

court that although the State has a strong interest in
protecting the identity of its drug supplier, "that does not
mean Defendants can conceal all information remotely
related to their selection of drugs and drug suppliers." And
the district court did not abuse its discretion in fashioning its
test to balance the State's interest against the "marginal
relevance" of the drug supplier's identity to Pizzuto's
claims. *See Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1063–64
(9th Cir. 2004) ("If a court finds particularized harm will
result from disclosure of information to the public, then it
balances the public and private interests to decide whether a
protective order is necessary." (quoting *Phillips v. Gen.
Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002))).

We hold that disclosure of information that would
reasonably lead to the identification of the State's execution
drug supplier unduly burdens the State. Other circuits have
similarly held that the outright disclosure of the identity of a
state's execution drug supplier or information that "would
jeopardize a state's ability to implement its death penalty
laws" imposed an undue burden. *Jordan*, 947 F.3d at 1340;
*see, e.g.*, *In re: Mo. Dep't of Corr.*, 839 F.3d at 735–37
(finding a "speculative" concern that a supplier would be
identified would not constitute an undue burden while
disclosure of the supplier's identity would); *In re Ohio*, 845
F.3d at 239 (noting that if the requested information were
disclosed Ohio "*will* suffer an undue burden and prejudice"
(emphasis added)); *Va. Dep't of Corr.*, 921 F.3d at 186, 192
(finding disclosure of documents that "*would* reveal the
identity of Virginia's" execution drug supplier imposed an
undue burden (emphasis added)). In contrast to the State's
proposed standard, no other circuit courts have found
requested information that *speculatively* or merely *could*

Case: 24-2375, 03/21/2025, DktEntry: 24.1, Page 30 of 33
Case 1:21-cv-00359-BLW Document 182 Filed 03/21/25 Page 30 of 33

30                          PIZZUTO V. TEWALT

lead to the identification of a state's drug supplier would impose an undue burden on the state.

Applying the "reasonable degree of certainty" standard, the district court did not abuse its discretion in ordering the disclosures. The district court's opinion was well reasoned in articulating why it ordered the disclosures: Defendants failed to explain, "in concrete terms, how their answers to the[] particular questions *may* actually lead to the identification of their supplier" (emphasis added). The district court in its July 2023 ruling declined to order the State to identify the manufacturer of its execution drugs because that information *would*, without speculation, identify the drug supplier. In its March 2024 ruling, the district court correctly found that Defendants' "arguments [were] speculative and conclusory" and that the State had not "provided any basis for [its] conclusion" that its drug supplier would be identified.

Defendants again argue on appeal that disclosure of the requested information could lead to disclosure of the supplier but again fail to explain why this information *would* lead to the supplier's identity or what information *would* be combined with *these* disclosures to do so. We can only speculate how Plaintiff's requested admissions would identify the State's drug supplier. The State has provided no concrete examples of when identification occurred previously based on information like the information Plaintiff requested here and has failed to articulate why this information, in particular, would lead to identifying the State's supplier. We are forced to imagine what information, already available, would be combined with Plaintiff's requested admissions to identify the supplier of the State's drugs. At oral argument, Defendants asserted that each disclosure could "link back" to the supplier and that other

sources of information, like Freedom of Information Act requests could form a "mosaic" to reveal the source from otherwise "innocuous" disclosures, but this again fails to detail how *these* disclosures would lead to the drug supplier. Oral Arg. at 5:32–9:52; *see also* Oral Arg. at 12:18–16:16. Like the district court, we are "left with very little information about the likelihood that answering these [requests for admission] would result in the identification of the drug supplier."

We recognize that disclosure of any information about the execution drug supplier might increase the possibility that it is identified. But given the State's arguments and responses here, that risk is purely speculative for the disclosures ordered by the district court. Without additional information from Defendants about how or why this information would lead to the identity of this supplier, we are left, like the district court, only to speculate. This speculation is insufficient to support a finding that the district court abused its discretion in concluding that the disclosures do not unduly burden Defendants. *See Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) ("Such abuses must be unusual and exceptional; we will not merely substitute our judgment for that of the trial judge. A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based that decision." (citation omitted)).

Defendants argue that requiring them to demonstrate how these disclosures would reveal their supplier's identity erroneously "shift[s] the burden of persuasion to Defendants" when Plaintiff should bear the burden of establishing why the information should be produced. But

Case: 24-2275, 03/21/2025, DktEntry: 24.1, Page 32 of 33
Case 1:21-cv-00359-BLW   Document 182   Filed 03/21/25   Page 32 of 33

32                    PIZZUTO V. TEWALT

Plaintiff has shown that the information is relevant. Thus, it is Defendants' burden to demonstrate why the disclosures would constitute an undue burden. *See Rivera*, 364 F.3d at 1063–64 ("The burden is upon the party seeking" to limit discovery "to 'show good cause' by demonstrating harm or prejudice that will result from the discovery." (quoting *Phillips*, 307 F.3d at 1210–11)). As the district court put it, "Pizzuto need not prove a negative by showing that Defendants' answers will *not* lead to the identification of their supplier. Rather, Defendants must show good cause for shielding them from Pizzuto's discovery requests."

Next, Defendants misunderstand the district court's request. The district court found that Defendants failed to present a chain of events or a set of information that, when combined with the ordered disclosures, would identify Idaho's execution drug supplier. The district court requested that Defendants provide a way for someone to identify the drug supplier from the disclosed information to challenge this conclusion. Defendants failed to do so. Without this showing, it was not an abuse of discretion for the district court to conclude that the requested disclosures did not unduly burden Defendants.

We must set out the limits of our holding. Again, we start with this correct determination by the district court:

> [T]he State of Idaho and its officials have a strong interest in enforcing the State's criminal laws, including its death penalty laws. And . . . that interest will be harmed if Defendants are forced to disclose the identity of their execution-drug supplier, because doing so will presumably make it more

difficult—or    impossible—to    obtain
execution drugs in the future.

This strong interest of the State must be considered by every
district court in dealing with execution drug discovery,
including execution drug manufacturer/supplier discovery.

And we are not holding that those who face execution
are always entitled to the challenged discovery Plaintiff
sought here.  We are holding that here, Idaho did not show
why the discovery should not be had; that is, that Idaho did
not show, to the requisite degree, how its strong interest in
enforcing its criminal laws, including its death penalty laws,
would be inappropriately harmed or burdened by allowing
the challenged discovery.

**AFFIRMED.**