RAÚL LABRADOR
ATTORNEY GENERAL

Karin Magnelli (ISBN 6929)
Lead Deputy Attorney General
Kristina M. Schindele (ISBN 6090)
Deputy Attorney General
Idaho Department of Correction
1299 North Orchard St., Suite 110, Boise, Idaho 83706
Telephone: (208) 658-2094; Facsimile: (208) 327-7485
kmagnell@idoc.idaho.gov; krschind@idoc.idaho.gov

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
Tanner J. Smith (ISBN 12245)
MOORE ELIA KRAFT & STACEY, LLP
Post Office Box 6756, Boise, Idaho 83707
Telephone: (208) 336-6900; Facsimile: (208) 336-7031
mje@melawfirm.net; tanner@melawfirm.net

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRIC COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD R. PIZZUTO, <br><br> Plaintiff, <br><br> vs. <br><br> BREE DERRICK, et al., <br><br> Defendants. | Case No. 1:21-cv-359-BLW <br><br> **DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES** |

COME NOW Defendants,[1] by and through their undersigned counsel, and hereby submit

their Response to Plaintiff's Eighth Motion to Compel and for Leave to Serve Additional Interrog-

atories as follows:

---

[1] Josh Tewalt resigned from being IDOC's Director, effective April 4, 2025. Bree Derrick has been appointed as IDOC's Director. Under Federal Rule of Civil Procedure 25(d), Ms. Derrick is automatically substituted as a party in this case.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 1**

## INTRODUCTION

Plaintiff has turned this case into a fishing expedition to discover the identity of every states' execution chemical source. Plaintiff recently served a third-party subpoena in this case on the Tennessee Department of Correction ("TDOC") seeking ancillary information related to its execution chemical. Plaintiff's subpoena requested the following:

> All DOCUMENTS generated between December 1, 2024 and the present RE-GARDING any PENTOBARBITAL that YOU obtained for use or potential use in executions, including but not limited to testing information, *such as certificates of analysis; purchase receipts; purchase orders; invoices; Drug Enforcement Admin-istration forms and other regulatory records; package inserts; chain-of-custody documents; temperature logs; instructions for storage and transportation*; COM-MUNICATIONS with the supplier, distributor, and/or manufacturer; and so forth.

(Ex. A, p. 9 (italics added)). Notably, this information is the same information that he is seeking in this case and has moved to compel from the Defendants. Plaintiff served similar subpoenas on Indiana, Utah, and South Carolina. Copies of Plaintiff's subpoenas are attached as Exhibits A through D. (*See* Exs. A–D, p. 9).

TDOC filed a motion to quash. That motion and those parties' relevant memorandums are attached as Exhibits E through H.

In pages 7 through 12 of his response to TDOC's motion (Ex. F), Plaintiff outlines how *he* believes the information requested is relevant to his claim. In particular, he outlines how *he* be-lieves the information will identify Idaho's, Tennessee's, Indiana's, South Carolina's, and Utah's source of execution chemical. Plaintiff made similar arguments in response to Indiana's motion to quash. Copies of that brief are attached as Exhibit I.

Plaintiff's position to other courts shows that he intends to use the information to identify IDOC's and other states' sources. This is what Defendants have brought to the Court's attention and what prompted Defendant's appeal of the Court's prior disclosure order. Plaintiff's tactics

should not be permitted.

With Plaintiff's stated intentions in mind, his request here should be denied. Plaintiff has not made a particularized showing to warrant additional interrogatories. And Defendants' objections to his discovery requests have merit. The Court should deny Plaintiff's Motion.

## LEGAL STANDARDS

### 1. Motion to Compel

The Court has discretion to deny a motion to compel. *Sablan v. Dep't of Fin. of Com. of N. Mariana Islands*, 856 F.2d 1317, 1321 (9th Cir. 1988) (citations omitted). District courts considering a motion to compel under Rule 37 "must 'on motion or on its own,' evaluate such factors as relevance, timeliness, good cause, utility, materiality, and whether the discovery sought can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Valenzuela v. City of Calexico*, No. 14-CV-481-BAS-PCL, 2015 WL 2184304, at *3 (S.D. Cal. May 11, 2015) (citing Fed. R. Civ. P. 26(b); *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

Rule 26 limits the scope of discovery to non-privileged matters that are both "relevant" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The party seeking to compel discovery has the burden of establishing that its request satisfies the requirements of Rule 26." *Apple Inc. v. Wi-LAN Inc.*, No. 14CV2235-DMS (BLM), 2017 WL 11680855, at *2 (S.D. Cal. Nov. 28, 2017). And generally, if a "responding party objects to a discovery request, the party moving to compel bears the burden of demonstrating why the objections are not justified." *Hammler v. Clark*, No. 1:19-CV-00373-AWI-SAB (PC), 2020 WL 8483914, at *2 (E.D. Cal. Dec. 11, 2020) (citations omitted).

### 2.  Motion for Additional Interrogatories

Rule 33 sets a presumptive cap of twenty-five interrogatories. Fed. R. Civ. P. 33(1). A party seeking additional interrogatories must "make a particularized showing as to why additional discovery is needed." (Dkt. 178, pp. 4–5 (quoting *Stephenson v. Clendenin*, No. 2:22-CV-01521-DAD-JDP (PC), 2024 WL 2924687, at \*1 (E.D. Cal. May 14, 2024) (cleaned up)). If a party makes a particularized showing, the Court then analyzes whether leave to serve additional interrogatories is warranted under Rule 26(b)(2). *Stephenson*, 2024 WL 2924687, at \*1. Under Rule 26(b)(2) the Court "must limit the frequency or extent of discovery" if: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

### ARGUMENT

### 1.  The Court should protect those involved in executions with a federal privilege.

In Dkt. 88, the Court addressed whether it should recognize a federal privilege by looking to I.C. § 19-2716A in isolation. (Dkt. 88, pp. 14–19). The Court chose not to recognize a privilege based on Idaho's lone statute. But there is a consensus of states who recognize this privilege. State consensus is sufficient reason for recognizing a privilege. *See Jaffee v. Redmond*, 518 U.S. 1, 13 (1996). The federal government also recognizes the privilege. Defendants respectfully request the Court reconsider its privilege analysis in light of this consensus.

Federal courts enforce privileges in "light of reason and experience." Fed. R. Evid. 501. To determine "reason and experience," courts can look to "the policy decisions of the states." *Jaffee*, 518 U.S. at 13. (citing *Trammel v. U.S.*, 445 U.S. 40, 48–50 (1980)). This is because "state

legislatures are fully aware of the need to protect the integrity of the factfinding functions of their courts" so "consensus among the states" supports recognizing a privilege. *Id.* It is thus "appropriate to treat a consistent body of policy determinations by state legislatures as reflecting both 'reason' and 'experience'" for Rule 501. *Id.* (discussing *Funk v. U.S.*, 290 U.S. 371, 376–81 (1933)).

Twenty-seven states allow for capital punishment. All those states, besides California,[2] have operative death penalty protocols. All but two of those states have codified confidentiality protections for those involved in executions. Ariz. Rev. Stat. § 13-757(c); Ark. Code § 5-4-617(i); Fla. Stat. § 945.10(1)(a)(2)(g); Ga. Code § 42-5-36(d)(2); Idaho Code § 19-2716A(4); Ind. Code § 35-38-6-1(f); Kan. Stat. § 22-4001(b); Ky. Rev. Stat. § 45A.720; La. Stat. § 15:570(G); Miss. Code § 99-19-51(3)(c); Mo. Ann. Stat. § 546.720(3)[3]; Mont. Code § 46-19-103(5); Neb. Rev. Stat. § 83-967(2); N.C. Gen. Stat. § 132-1.2(7); Ohio Rev. Code § 2949.221(B); Okla. Stat. tit. 22, § 1015(B); Or. Admin. R. 291-024-0016(3); 61 Pa. Stat. and Cons. Stat. § 4305(c); S.C. Code § 24-3-580; S.D. Codified Laws § 23A-27A-31.2; Tenn. Code § 10-7-504(h)(1); Tex. Code Crim. Proc. art. 43.14(b); Utah Code § 64-13-27(3); Wyo. Stat. § 7-13-916.[4] The two states that haven't yet codified confidentiality in the execution process treat the information as such. *See Miller v. Hamm*, No. 2:22-cv-00506-RAH, Dkts. 102, 119 (M.D. Ala.); (*see also* Ex. K, pp. 2–3 ¶ D); *Floyd v. Daniels*, No. 3:21-cv-00176, Dkts. 235, 301 (D. Nev). The federal government has also treated the information as protected and confidential. (Ex. L, p. 2 ¶ B; *see also* Ex. M).

---

[2] California has a moratorium in place. Cal. Exec. Ord. N-09-19.

[3] Missouri's statute applies to the members of its "execution team," but that term broadly applies to everyone involved, including suppliers. Mo. Dep't of Corr. Preparation and Admin. of Chem. for Lethal Injection, p. 1 (Rev. Oct. 18, 2013); *see also Dorsey v. Foley*, No. 4:24-cv-00359-HEA, Dkt. 2 (E.D. Mo.) (copy of policy).

[4] Nebraska's, Oregon's, and Montana's laws apply to the executioner and execution team.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 5**

The states (and federal government) overwhelmingly agree that this information must be protected. States are best positioned to "rapidly recognize[] the wisdom" of the privilege and develop it "faster legislatively than it would have in the courts." *Jaffee*, 518 U.S. at 14. State consensus establishes the "reason and experience" for the privilege.

The *Jaffee* Court also explained that the privilege must serve public ends. 518 U.S. at 11. That is met here. States enacted these "shield laws" to ensure their ability to carry out executions. As the Supreme Court explained, because the death penalty is constitutional, "there must be a means of carrying it out." *Baze*, 553 U.S. at 47 (citation omitted). But without protections for those involved, capital punishment cannot be carried out. *See, e.g., Glossip v. Gross*, 576 U.S. 863, 869–72 (2015). Recognizing the privilege is in the public good because it allows lawful sentences to be enforced. *See Ramirez v. Collier*, 595 U.S. 411, 433 (2022) (explaining, "the State and the victims of crime have an important interest in the timely enforcement of a sentence." (citation omitted)).

There is also a historical basis for recognizing the privilege. The identities of those involved in executions have historically been concealed and confidential. *See* Mary D. Fan, *The Supply-Side Attack on Lethal Injection and the Rise of Execution Secrecy* ("*Supply-Side Attack*"), 95 B.U. L. Rev. 427, 428 (2015). This historical anonymity was designed "to protect against retaliation by supporters of the condemned and to help communities find people to do the tough job." *Id.* (citation omitted). These are the exact reasons states *still* treat the identities of those involved confidential; it was even the purpose of Idaho's statute.[5]

The Court should recognize a federal privilege protecting the identities of those involved in executions.

---

[5] *See* https://legislature.idaho.gov/sessioninfo/2022/legislation/H0658/.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 6**

**2. Conversely, the Court should adopt *Martin v. Ward*'s "possibility" test because the Parties agree that it is a better approach than reasonable certainty.**

The Court created a "reasonable certainty" test, which provides that Defendants do not have to disclose information that "would, to a reasonable degree of certainty, identify any person or entity involved in preparing for, supplying drugs for, or administering the death penalty in Idaho." (Dkt. 88, pp. 4–5).

Since then, the parties have agreed, albeit in different cases, that the proper inquiry should be the "possibility test" from *Martin v. Ward*, No. 1:18-cv-4617-MLB, 2021 WL 1186749 (N.D. Ga. Mar. 30, 2021). Four months after the Court issued Dkt. 88, Plaintiff urged the Indiana court to use a "possibility" test instead of the Court's "reasonable certainty" test. (Ex. I, p. 19). Plaintiff "commend[ed] to the [Indiana] Court the approach taken in *Martin v. Ward* …." (Ex. I, p. 19). Plaintiff said:

> The *Martin* court's method is a judicious one. Like Georgia, INDOC can produce documents "[w]ith the redaction of any information that *could possibly* identify any entity or person involved in providing drugs." *Id.* It should be ordered to do so.

(*Id.* (italics added)).

In the Tennessee litigation, Plaintiff again used *Martin*'s possibility test as a benchmark example of where the court "successfully used [redaction] in execution litigation." (Ex. G, p. 18 (quoting *Martin* for the following proposition: "'With the redaction of any information that *could possibly* identify any entity or person involved in' executions, 'the Court concludes Defendants have not met their burden of showing good cause for the complete withholding of documents sought in' the discovery requests." (italics added))).

Courts have relied on Plaintiff's citation to *Martin* when analyzing Plaintiff's subpoenas. For example, the Indiana court explained, "Plaintiff requests that the Court follow the approach taken by the Northern District of Georgia in *Martin v. Ward*." (Ex. J, p. 13). And ultimately, the

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 7**

Indiana Court required the state to comply with Plaintiff's subpoena but allowed the state to redact anything that would, directly or indirectly, identify anyone involved in the state's execution processes. (*Id.* pp. 16–17).

In the appeal currently before the Ninth Circuit in this case, Defendants argued for the adoption of *Martin*'s possibility test. *See Pizzuto v. Tewalt*, No. 24-2275, Dkt. 4.1, pp. 12–14, Dkt. 27.1, p. 24 (9th Cir.). The possibility test better accounts for the real-world realities of disclosure. It also better accounts for first-time identification being made. And it better accounts for how Plaintiff is seeking to use the information to identify various states' sources.

The test also protects against how real-world disclosures have occurred. For example, in their pending appeal, Defendants explained how HBO's John Oliver identified and broadcast to the world the federal government's source using information similar to what Plaintiff requests in this case. *See* 9th Cir. Case. No. 24-2275, Dkt. 4.1, pp. 12–14, Dkt. 27.1, p. 24.[6] Oliver and his team learned by public records requests that the federal government's source was Absolute Standards. Oliver explained in his show that an FDA records custodian made a "big, old whoopsie" by informing them that the responses were taking so long because the records were "related to the death penalty." This allowed Oliver and his team to identify Absolute Standards as the federal government's source. Oliver's identification of Absolute Standards has been confirmed as being correct. *See* Death Penalty Information Ctr., *Secret Execution Drug Supplier Confirmed, While Federal Death Penalty Reviews Continue at Department of Justice*, Updated Mar. 14, 2025.[7] This is what Defendants told the Court would happen with Plaintiff's requests. (*See* Dkt. 104, pp. 4–5).

---

[6] *See also* https://www.youtube.com/watch?v=SOn3wba8c-Y.
[7] https://deathpenaltyinfo.org/secret-execution-drug-supplier-confirmed-while-federal-death-penalty-reviews-continue-at-department-of-justice

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 8**

NPR has also identified Texas's supplier with information like what Plaintiff seeks here. *See* Eisner, *NPR Investigation reveals information about death row in Texas*, July 10, 2024;[8] Eisner, *Unmarked cars and secret orders: How a pharmacy prepared drugs for Texas' executions*, July 10, 2024.[9] There, NPR noted that "[d]espite laws that allow the government to hide information about executions, clues do slip out." It used public records requests addressed to the DEA and Texas Department of Criminal Justice to learn that Texas obtained chemical from Rite-Aid; hence why Plaintiff sought to know whether IDOC's chemical is from a pharmacy in prior motions to compel. (*See* Dkt. 123, pp. 16–18).

The possibility test better accounts for how real-world identifications occur. (*See also* Dkt 104, pp. 4–5; Dkt 109, pp. 4–5; Dkt. 115, pp. 3–4 (discussing other identifications). Under the Court's use of the reasonable certainty test, no real-world example can be given credit unless the exact information has actually led to disclosure in the past. (*See* Dkt. 13, p. 17). But that does not account for first time identification or the fact that death penalty litigants are creative; hence how they pursued a new way to render their sentences impossible to be carried by going after suppliers. *See* Fan, *Supply-Side Attack*, 95 B.U. L. Rev. at 439–41. Particularly where Plaintiff himself has outlined his mission for finding various states' suppliers, these real-world examples must be considered. The possibility test allows that to happen.

Because the parties agree that a possibility test like *Martin*'s should be used, the Court should modify its undue burden analysis to use a possibility test.

---

[8] https://www.npr.org/2024/07/10/nx-s1-5028187/npr-investigation-reveals-information-about-death-row-in-texas.

[9] https://www.npr.org/2024/07/10/g-s1-9016/unmarked-cars-and-secret-orders-how-a-pharmacy-prepared-drugs-for-texas-executions.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 9**

### 3.    Plaintiff mistakes the burden to obtain additional interrogatories.

Plaintiff argues that "[g]ood cause is the standard for both additional interrogatories under Rule 33(a)(1), and for modification of the discovery plan. (Dkt. 183-1, p. 4 (cleaned up)). That is incorrect. The Court has already determined that Plaintiff must set forth a "particularized showing" to establish a need for more interrogatories. (Dkt. 178, pp. 9–11). This requirement demands more than good cause. (*Id*.). The case Plaintiff relies upon dealt with a pro se party. *See McClellan v. Kern Cnty. Sheriff's Off.*, No. 110CV0386LJOMJSPC, 2015 WL 5732242, at *1 (E.D. Cal. Sept. 29, 2015). That case explained that the burden required by pro se parties is lessened from particularized showing to good cause. *Id.* But because Plaintiff is represented, he must make a particularized showing of the need for additional interrogatories. *Id*.

### 4.    Plaintiff cannot establish a particularized showing for more interrogatories.

In Dkt. 178, the Court noted that "it is not entirely clear what 'particularized showing' entails." (*Id.* p. 10). The Court explained that it requires more than good cause and requires the moving party to set forth reasons why the particular additional interrogatories are needed. (*Id*.). The Court ultimately concluded that Plaintiff had "not justified fifteen additional interrogatories." (*Id.* p. 11). Even so, Plaintiff served eleven additional interrogatories nineteen days after the Court issued its order. This was procedurally improper and flies in the face of the Court's order. Plaintiff should have obtained leave before serving the additional interrogatories; he should not be permitted to disregard the Court's order.

Notwithstanding, Plaintiff has again failed to establish a particularized showing. Courts analyzing the requirement have indicated that the showing cannot be met where the information can be obtained some other way. For example, in *Duncan v. Paragon Pub., Inc.*, 204 F.R.D. 127 (S.D. Ind. 2001), the court held that additional interrogatories were not required because the

information could be learned in depositions, would be cumulative of other forms of discovery, and the proposed interrogatories would likely result in lengthy and unneeded discovery litigation. *Id.* at *129; *see also Howard v. Urb. Inv. Tr., Inc*., No. 03 C 7668, 2011 WL 976767, at *2 (N.D. Ill. Mar. 18, 2011) (more interrogatories were not warranted because information could be obtained through depositions, and would be burdensome, expensive, and delay the discovery process).

Plaintiff cannot make a particularized showing. To date, Plaintiff has served 549 requests for admission.[10] These requests cover the information sought here. Requests 31, 32, 58–85, 95–97, 166, 173–209, 226–229, 240–244, 277–307, 360, 363, 383–408, 418–455, 464, 469–538, and 546–548 all dealt with specific information about IDOC's now-expired and unusable chemical, and informed him, among other things, that the chemical was made from one of four FDA-approved manufacturers, complied with the applicable regulatory requirements, has all expired, and that IDOC has not yet obtained possession of new chemical; thus, there is no need for Interrogatory Nos. 39, 42, or 47 because IDOC cannot execute Plaintiff with any of the chemical he asks about. Requests 170, 397, 398, 418–420, 423–429 were all questions about refrigeration; thus, there is no need for Interrogatory No. 39. And Mr. Tewalt already explained his mistake in disclosing the wrong expiration date when responding to Requests for Admission Nos. 290 and 497; thus, there is no need for Interrogatory 42.

Plaintiff was also provided certificates of analysis for all of IDOC's now-unusable chemical. And now that IDOC's chemical has all expired and cannot be used, none of the interrogatories seek information that is probative to his claim. Because Rule 26 limits the scope of discovery to matters relevant and proportional to the needs of a case, Fed. R. Civ. P. 26(b)(1), Plaintiff cannot

---

[10] A compilation of Plaintiff's requests for admission and Defendants' corresponding responses, including supplements, are being filed with the Court under seal for the Court to be able to analyze the various requests in context.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 11**

demonstrate a particularized showing for the additional interrogatories because they do not seek relevant information and are otherwise disproportionate to his needs.

Further, Plaintiff has or will depose the people who can opine on the requested information. Plaintiff has deposed Warden Richardson about some of the topics in these interrogatories. (*See* Dkt. 183-1, p. 7). Warden Richardson answered the questions posed to him on the applicable topics. (*See id.*).

Plaintiff is also deposing Warden Valley tomorrow, April 16. Warden Valley was the party responsible for the care, custody, and control of IDOC's chemical. Plaintiff can ask Warden Valley questions about the chemical's storage then. And Deputy Chief Liz Neville is set to be deposed on July 16, 2025. Deputy Chief Neville is part of the Administrative Team and will be able to speak on SOP questions and requirements of the Medical Team. Thus, all of the information from Plaintiff's proposed interrogatories has or can be obtained by less burdensome means.

Plaintiff's Motion should be denied because he cannot set forth a particularized need for each additional interrogatory.

## 5. Defendants properly objected to Plaintiff's requests.

As a preliminary matter, Defendants' objections are made not only for the information that Defendants have now, but also with respect to any developments in the future because there is a continuing duty to supplement, which Defendants recognize and have done as needed. This is particularly important when analyzing Defendants' objections to the various requests to the extent they seek information protected by attorney-client and work product privileges.

### 5.1. None of Plaintiff's requests seek discoverable information.

All of IDOC's chemical has expired and cannot be used at Plaintiff's execution. (*See* Req. for Admis. Nos. 176, 290, 474, 480, 483, 528). The chemical to which Plaintiff's requests are

directed had expired by the end of February 2025. *Ibid*. While IDOC can obtain new chemical, it has not yet done so. *See Pizzuto v. Labrador*, 1:23-cv-00081-BLW, Dkt. 57-1 (D. Idaho). Plaintiff also knows that IDOC will not use expired or unreliable chemical at his execution. (*See* Req. for Admis. No. 535).

This means that all the discovery requests Plaintiff has brought to the Court's attention seek irrelevant information. Plaintiff asserts a single Eighth Amendment method-of-execution claim. To prove his claim, Plaintiff must, at minimum, establish: (1) that IDOC's method is sure or very likely to cause superadded pain; and (2) that (a) there is an alternative method which is both (i) feasible and (ii) readily implemented, (b) the alternative significantly reduces a substantial risk of severe pain, and (c) IDOC refused to adopt that alternative without a legitimate penological reason. *Baze v. Rees*, 553 U.S. 35, 50–52 (2008) (plurality).

Only the first element of this test involves execution chemical. But that element only cares about the chemical to be used at Plaintiff's execution. *See Bucklew v. Precythe*, 587 U.S. 119, 123–25 (2019) (method of execution challenges implicate things that will affect an execution). The element does not care about chemical that cannot be used. *See id*. Because IDOC's chemical has expired and will not be used, none of Plaintiff's requests seek relevant information or anything that has any probative value to his claim.

Further, Rule 26 now limits the scope of discovery to matters that are "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also In Re Bard IVC Filters Products Liab. Litig*., 317 F.R.D. 562, 564 (D. Ariz. 2016) (discussing new Rule 26 requirements). Plaintiff's requests do not seek anything relevant because they are concerned with chemical that cannot be used at his execution. Thus, Plaintiff's requests do not seek discoverable information.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 13**

It should be noted that Plaintiff mistakes relevancy's requirements. He points to *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978), to claim that relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." (Dkt. 183-1, p. 6). But that case, issued in 1978, was "effectively abrogated" by Rule 26's 2015 amendment. *See Bard IVC Filters*, 317 F.R.D. at 564. The current analysis requires actual relevancy under Fed. R. Evid. 401 and proportionality. Under the correct analysis, Plaintiff is not seeking discoverable information because the matters are neither relevant nor proportional to his needs in this case.

### 5.2. Interrogatory No. 42

This interrogatory asks for an explanation of why Mr. Tewalt mistakenly identified the wrong expiration date in response to Request for Admission No. 290. This mistake has since been corrected. (Req. for Admis. Nos. 290, 307, 498). This interrogatory does not seek relevant information because Defendants corrected the error and provided Plaintiff with the right expiration date in their supplemental response. The interrogatory is also unduly burdensome and disproportionate to Plaintiff's needs because Mr. Tewalt already provided the explanation to Plaintiff. (*See* Suppl. Resp. to Req. for Admis. No. 290). Mr. Tewalt explained that the "error was inadvertent" and denied "that he intended to misrepresent the expiration date." (*Id.*). Plaintiff has even served a request for admission asking Mr. Tewalt to admit or deny whether his "June 10, 2024 response to RFA 290 was mistaken," (Req. for Admis. No. 498); to which Mr. Tewalt admitted. There is nothing more to know.

Also, to the extent a response would involve communications between Mr. Tewalt and counsel, such information would be subject to the attorney-client and work product privileges. Without waiving privilege, Plaintiff is mistaken about "defense of counsel" claim because that

would only apply where counsel told Mr. Tewalt to provide the wrong answer. Counsel will represent to the Court that no such thing occurred. Mr. Tewalt made a simple mistake, corrected that mistake, and informed Plaintiff that it was just a mistake.

### 5.3. Request for Admission No. 544

Request for Admission No. 544 asks Defendants to admit or deny whether IDOC has obtained chemical from a company "that opposes the use of its products in executions."

The information is irrelevant to Plaintiff's claim because: (a) the old chemicals cannot be used in his execution; (b) the manufacturer's stance on capital punishment has no bearing on the efficacy of the chemical; (c) Plaintiff knows that the manufacturer is one of four companies listed in the FDA's Orange Book[11] because Defendants admitted such (*See* Req. for Admis. Nos. 209, 280, 281, 508, 509); and (d) a manufacturer's opinion is not an element of Plaintiff's claim. There is nothing probative to be gained from the information.

But even if there was, the request is unduly burdensome. The information is being requested to narrow focus on the potential manufacture down from four companies. Some, but not all, of the FDA-approved manufacturers have indicated that they might be opposed to their products being used for capital punishment. This information will result in identification in the manner done by John Oliver and NPR by way of public records requests to either Idaho state agencies or through FOIA requests. And there is no need for the information because it has nothing to do with chemical that will be used at Plaintiff's execution.

---

[11] Defendants disclosed that the manufacturer of its chemical is listed in the FDA's Orange Book. (*See* Req. for Admis. Nos. 209, 280, 508, 509). The Orange Book only lists four pentobarbital manufacturers. See FDA, *Approved Drug Products With Therapeutic Equivalence Evaluations* ("Orange Book"), app. B, pp. 53, 105, 170, 173, found at: https://www.fda.gov/media/71502/download?attachment.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 15**

Plaintiff's own briefing even acknowledges that he seeks the information to identify four states' sources: Idaho, Indiana, Tennessee, and Utah. (Dkt. 183-1, pp. 20–21). Plaintiff proffers his theory that all the states have the same source, and that he is on the verge of uncovering that source's identity. While Plaintiff has no proof, his claims do highlight that his mission is to identify every source he can.

Plaintiff's request to compel a response to Request for Admission No. 544 should be denied.

### 5.4. Interrogatory No. 47

This interrogatory asks for the licensing and certification status of the laboratory that generated the certificates of analysis provided to Plaintiff so far in this litigation, and specifically what bodies they are accredited with, what accreditation they possess, their regulatory histories, what due diligence Defendants have done into their licensure and regulatory histories, and so forth.

This request is vague. Plaintiff does not dispute this. Indeed, he posits that Defendants should define what "due diligence" means in his request. By his own statements, he acknowledges that he likely has a different meaning in mind than Defendants. The other words highlighted in Defendants' objection are also vague and ambiguous because they are not defined and are subject to multiple reasonable interpretations.

The interrogatory also contains at least six distinct questions. First, what are the laboratories' licenses? Second, what are the laboratories' certification statuses? Third, what body accredits them? Fourth, what accreditation do they possess? Fifth, what are their regulatory histories? And sixth, what due diligence has IDOC done into these companies?

It is also unduly burdensome and disproportionate to Plaintiff's needs. The information has no use for Plaintiff because the chemical these laboratories relate to cannot be used in Plaintiff's

execution. And the specific certifications and licenses of the laboratories will further dwindle down the potential manufacture from four potential manufacturers. Plaintiff already knows that IDOC's chemical came from the four FDA-approved manufacturers. This information will be used in ways similar to John Oliver and NPR to identify IDOC's source.

Plaintiff's request about Interrogatory No. 47 should be denied.

### 5.5. Interrogatory No. 39

This interrogatory asks for the details behind the First Set of Execution Drugs being placed in, then removed, from the refrigerator. This interrogatory does not seek relevant information because those chemicals cannot be used in his execution. The interrogatory is overbroad because all that is potentially pertinent is whether or not the chemical was placed in and removed from the refrigerator, which Defendants have disclosed. The reasoning behind why has no bearing on the issues in this case.

Further, the request is unduly burdensome. As Plaintiff points out, he already deposed Warden Richardson about this and obtained Warden Richarson's answers. (Dkt. 183-1, pp. 7–8). Warden Richardson was the person who put the chemical in the fridge then took it out. Warden Richardson already explained why he did that. Plaintiff already asked the person with knowledge about this matter. There is nothing further to be gained with the subject request.

Also, to the extent Defendants' counsel spoke with them regarding this topic in connection with litigation, such conversations are subject to privilege. Plaintiff also mistakes the defense of counsel exception to the attorney-client privilege. That exception applies to negate scienter in some types of claims. *See Abdo v. Fitzsimmons*, No. 17-CV-00851-TSH, 2022 WL 2276898, at *1 (N.D. Cal. June 23, 2022). The exception does not apply where the attorney just asks the client a question on the topic or did not cause the client to do the complained of conduct.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 17**

And the interrogatory seeks some information that Defendants are not qualified to opine on. Defendants are not proper witnesses to opine on the impact temperatures have on the chemical. While Defendants know of facts related to the storage of its chemical, it is believed that Plaintiff is seeking opinions through this interrogatory that require an expert. Plaintiff and Creech have even tried to use an expert to opine on the temperature range the chemical is to be stored at (*see* Dkts. 183-3, 183-10), but her conclusions are faulty, as explained in the Creech litigation. *See Creech v. Tewalt*, 1:20-cv-00114-GMS, Dkt. 170, pp. 1–5, 11–17 (D. Idaho). Plaintiff's reliance on Dr. Almgren further shows that the matters require expert opinion.

Plaintiff's request about Interrogatory No. 39 should be denied.

### 5.6. Interrogatory No. 44

This interrogatory asks for Defendants to detail why IDOC's updated execution protocol does not have the requirement for a physician to be available to revive the inmate if necessary. Defendants initially objected to vagueness because the interrogatory did not specify which prior version of the protocol it was asking about. That issue was resolved when Plaintiff's counsel provided further clarification.

The information sought is not relevant. Plaintiff's claim does not care about why IDOC's protocol was revised. Plaintiff's claim involves the process of his execution. Plaintiff's claim does not involve care prior to his death. The information Plaintiff requests is separate and apart from his Eighth Amendment claim.

Plaintiff's argument also overlooks the purpose of the physician. The physician was intended to be present "to provide any necessary resuscitation effort of the condemned person and first aid emergency care for any person in the immediate area if needed." (Ex. N, p. 9 (prior SOP 135). Neither of these things have anything to do with preventing pain and suffering during an

execution.

Plaintiff's argument is also unavailing. Plaintiff makes a bare and conclusory allegation: "Indeed, it is ironic that IDOC would in the latest protocol remove the licensed physician whose role was to minimize pain while adding a different licensed physician whose role it is to kill [Plaintiff]." (Dkt. 183, p. 13). This is contrary to the plain purpose identified in the former version of SOP 135.

Additionally, the new version of SOP 135 provides the same level of care. The currently-applicable SOP 135 provides, "Emergency medical personnel and ambulance service will be present near the Execution Unit as determined by the Administrative Team to provide emergency medical assistance and transport to anyone requiring such care during the process, including any necessary resuscitation of the condemned person and first aid emergency care for any person in the immediate area if needed." (Dkt. 166-2, pp. 9–10). Plaintiff's argument overlooks this entirely.

The interrogatory is also disproportionate to Plaintiff's needs in the case. Plaintiff cannot dictate IDOC's execution protocol or IDOC's processes. So long as the protocol is constitutional, the how and why IDOC reached certain procedures is not material to Plaintiff's claim. The PLRA was enacted "to stop federal courts from micromanaging our Nation's prisons and from providing more than the constitutional minimum necessary to remedy the proven violation of federal rights." *Balla v. Idaho State Bd. of Correction*, No. 1:81-CV-1165-BLW, 2020 WL 2812564, at *6 (D. Idaho May 30, 2020) (cleaned up). But that is all that Plaintiff is trying to do here.

Plaintiff's request about Interrogatory No. 44 should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion in full.

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 19**

DATED this 15th day of April 2025.

MOORE ELIA KRAFT & STACEY, LLP

/s/ Tanner J. Smith
Tanner J. Smith
Attorneys for Defendants

OFFICE OF THE ATTORNEY GENERAL

/s/ Kristina M. Schindele
Kristina M. Schindele
Deputy Attorney General
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of April 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jonah J. Horwitz
Christopher M. Sanchez
Federal Defender Services of Idaho
702 W. Idaho St., Ste. 900
Boise, Idaho 83702

Stanley J. Panikowski
DLA Piper LLP
401 B St., Ste. 1700
San Diego, CA 92101

*Attorneys for Plaintiff*

☐ U.S. Mail, postage prepaid
☐ Hand Delivered
☐ Overnight Mail
☐ Facsimile Transmission
☒ E-Mail: Jonah_horwitz@fd.org, Christopher_m_sanchez@fd.org, stanley.panikowski@dlapiper.com

*/s/ Tanner J. Smith*
Tanner J. Smith

**DEFENDANTS' RESPONSE TO PLAINTIFF'S EIGHTH MOTION TO COMPEL AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES - 21**