Jonah J. Horwitz, Idaho Bar No. 10494
Christopher M. Sanchez, Idaho Bar No. 12070
FEDERAL DEFENDER SERVICES OF IDAHO
702 W. Idaho Street, Suite 900, Boise, ID 83702-8929
Telephone: (208) 331-5530; Facsimile: (208) 331-5559
ECF: jonah_horwitz@fd.org
　　　christopher_m_sanchez@fd.org

Sarah E. Kalman, Pennsylvania Bar No. 325278
(admitted *pro hac vice*)
DLA PIPER LLP (US)
One Liberty Place
1650 Market Street, Suite 500, Philadelphia, PA 19103-7301
Telephone: (215) 656-2438; Facsimile: (215) 656-3301
ECF: sarah.kalman@dlapiper.com

*Attorneys for Plaintiff Gerald Ross Pizzuto, Jr.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| **GERALD ROSS PIZZUTO, JR.,**<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**JOSH TEWALT**, Director, Idaho Dept. of Correction, et al.<br><br>　　　　　Defendants. | CASE NO. 1:21-cv-359-BLW<br><br>**REPLY IN SUPPORT OF EIGHTH MOTION TO COMPEL DISCOVERY AND FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES [DKT. 183]** |

Plaintiff Gerald Ross Pizzuto, Jr. files this reply in support of his eighth motion to compel and his request for leave to serve additional interrogatories.

### I.   The defendants' general secrecy concerns are meritless and irrelevant.

The defendants begin their response with an introductory section entirely devoted to reiterating their standard conspiracy theory about secrecy and drug suppliers. *See* Dkt. 187 at 2–3. Apart from the defendants' usual boilerplate, which has already been soundly rejected, the only new element in the argument is a discussion of Mr. Pizzuto's non-party subpoenas in other states.

REPLY IN SUPPORT OF EIGHTH MOTION TO COMPEL – Page 1

*See id.* According to the defendants, the litigation over those subpoenas reflects how Mr. Pizzuto "believes the information" sought "will identify" drug sources. *Id.* at 2. The defendants are wrong. In other states, as in Idaho, Mr. Pizzuto is *not* requesting the identity of any protected entity or individual and has consented to any appropriate redactions to protect such information. *See* Dkt. 187-7 at 18. Mr. Pizzuto's relevance theory is based on the *assumption* that Idaho has the same source as these other states. *See id.* at 8. The only judicial ruling to opine on Mr. Pizzuto's position so far, in the Southern District of Indiana, has accepted it as correct. *See* Dkt. 187-10 at 7–8. Mr. Pizzuto also stresses that three of the five discovery requests at issue here did not even draw a secrecy objection, *see* Dkt. 183-1 at 2–4, suggesting that the defendants' emphasis is misplaced.

**II.     The defendants' privilege theory and secrecy test are foreclosed and incorrect.**

Taking issue with a conclusion reached by this Court almost two years ago, which was upheld by the Ninth Circuit only last month, the defendants belatedly ask for reconsideration of the ruling that there is no federal evidentiary privilege for execution suppliers. *See* Dkt. 187 at 4–6. The defendants recognize that this Court has already rejected their invitation, *see id.* at 4, but they do not even attempt to satisfy the governing test for interlocutory reconsideration, which requires "extraordinary circumstances" in which the initial decision is "clearly erroneous" and "would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).[1] It would be implausible for the defendants to describe this Court's prior finding as "clearly erroneous" when every other judicial decision agrees that there is no privilege. *See, e.g.*, *Jordan v. Comm'r, Miss. Dep't of Corrs.*, 947 F.3d 1322, 1340 (11th Cir. 2020); *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 239 (6th Cir. 2016). As if that weren't enough, the

---

[1] Unless otherwise indicated, all internal quotations are omitted, all emphasis is added, and all citations are cleaned up.

REPLY IN SUPPORT OF EIGHTH MOTION TO COMPEL – Page 2

defendants' perspective on privilege is also ruled out by the Ninth Circuit's recent opinion, which they do not even acknowledge in this section of their response. The Ninth Circuit embraced this Court's determination "that Idaho's secrecy statute does not create an evidentiary privilege that binds federal courts." *Pizzuto v. Tewalt*, 131 F.4th 1070, 1083 (9th Cir. 2025). That language is doubly important here—once because it was issued by a higher court in this very case, and twice because it is now the published precedent of the Ninth Circuit.

All of that is also true of the defendants' proposed secrecy test. The defendants want the Court to abandon its established framework for secrecy objections, which probes whether there is a "reasonable certainty" of identifying a drug source, and instead adopt a rule whereby a discovery request is forbidden if there is any "possibility" the answer would disclose protected information. Dkt. 187 at 7. Again, this Court has already rebuffed the defendants' proposal. *See* Dkt. 88 at 4–5. And again, the defendants do not reckon with—let alone satisfy—the criteria for reconsideration. Instead, they repeat their usual vague accounts of how other drug suppliers have been outed without even attempting to tie the facts in those situations to any discovery request in Mr. Pizzuto's case. *See* Dkt. 187 at 8–9. As before, the defendants also overlook the reality that the Ninth Circuit has already cast aside the test they are proffering. The panel explained that this Court "did not abuse its discretion in using its 'reasonable degree of certainty test.'" *Pizzuto*, 131 F.4th at 1084. Much as they might prefer otherwise, the defendants have lost this battle. Finally, the result is not changed by the defendants' references to Mr. Pizzuto's briefing in ancillary litigation related to this case. *See* Dkt. 187 at 7. That briefing was filed in other courts in other circuits. In the Ninth Circuit, where we are, the defendants' recommended test is a dead letter.

### III. Additional interrogatories are appropriate.

The defendants resist Mr. Pizzuto's effort to serve a modest number of narrowly tailored interrogatories in excess of the cap. *See id.* at 10–12. They first complain that good cause is not the standard, but rather that of a "particularized showing." *Id.* at 10. Whatever the merits of that technical distinction, Mr. Pizzuto has made the requisite showing. A "particularized showing" demands "a specific justification for each additional interrogatory," Dkt. 178 at 10, and Mr. Pizzuto has proffered his, *see* Dkt. 183-1 at 4–5.

Confusingly, the defendants insist that Mr. Pizzuto's handling of the interrogatories was "procedurally improper and flies in the face of the Court's order." Dkt. 187 at 10. The defendants seemingly interpret the Court's January 22, 2025 order as requiring Mr. Pizzuto to seek leave *before* serving his additional interrogatories. But the Court said no such thing. Quite to the contrary, the order in question *granted* Mr. Pizzuto's motion to compel with respect to three interrogatories that he had already served. *See* Dkt. 178 at 11. That is the same posture as the interrogatories under consideration now. The Court was aware of the situation when it authorized Mr. Pizzuto "to file a combined motion for additional interrogatories and to compel." Dkt. 183-2 at 1; Ex. 1 at 1. Mr. Pizzuto has pursued the additional interrogatories in the conventional manner approved of by the Court and the defendants have no basis for their own counterintuitive and inefficient take on discovery litigation. *See, e.g.*, *Allahverdi v. Regents of Univ. of N.M.*, 228 F.R.D. 696, 698 (D.N.M. 2005) ("When a party believes that another party has asked too many interrogatories, the party to which the discovery has be[en] propounded should object to all interrogatories or file a motion for [a] protective order.").

The defendants' comments on Mr. Pizzuto's showing are no more persuasive. They submit that Mr. Pizzuto hasn't made his particularized showing because "the information can be obtained

REPLY IN SUPPORT OF EIGHTH MOTION TO COMPEL – Page 4

some other way." Dkt. 187 at 10. Yet the defendants do not point to any other viable source for the answers he is seeking in the interrogatories. It is true, as the defendants generically assert, that some of Mr. Pizzuto's requests for admission (RFAs) concern the same subject matter as the additional interrogatories. *See id.* at 11. Nevertheless, that hardly means that the interrogatories are unnecessary. The four interrogatories all call for narrative responses from the defendants. Interrogatories 39, 42, and 44, for their part, are each designed to elicit explanations from the defendants about decisions they made: *why* they placed drugs in—and then removed them from—a refrigerator; *why* former Idaho Department of Correction (IDOC) Director Josh Tewalt bungled the expiration dates; and *why* the rescue doctor was removed from the protocol. *See* Dkt. 183-1 at 2. As for Interrogatory 47, it is geared toward learning substantive information about the regulatory history of the testing laboratory. *See id.* at 3. There is no way to meaningfully delve into any of these areas with the yes-or-no limitations inherent to RFAs. Indeed, the defendants' examples only prove how inadequate RFAs are to the task. Consider, for instance, the defendants' assurance that Mr. Tewalt has "already explained his mistake in disclosing the wrong expiration date when responding to" other RFAs. Dkt. 187 at 11. Mr. Tewalt has "explained" nothing. In his only statement on the expiration misadventure, Mr. Tewalt said only that he made an error and that it was not "intentionally misleading." *See* Ex. 2 at 2. Mr. Pizzuto has no idea what caused the error, which is the information Interrogatory 42 seeks.

   The defendants' reliance on depositions fares no better. They maintain that Mr. Pizzuto "has or will depose the people who can opine on the requested information." Dkt. 187 at 12. The defendants' citations undermine their own position. In the cases cited by the defendants for this rule, the party requesting additional interrogatories represented to the Court that it would be deposing the individual in possession of the pertinent information. *See Howard v. Urban Inv.*

*Trust, Inc.*, No. 03 C 7668, 2011 WL 976767, at *2 (N.D. Ill. Mar. 18, 2011); *Duncan v. Paragon Publ'g*, 204 F.R.D. 127, 129 (S.D. Ind. 2001). Here, by contrast, there is important information in the hands of individuals who Mr. Pizzuto may not be able to depose. Mr. Pizzuto has already scheduled his fifth deposition, *see* Ex. 1 at 1, which is the maximum under the discovery plan, *see* Dkt. 21 at 4. Although Mr. Pizzuto will likely seek additional depositions at the appropriate time, it would be imprudent for the Court to base a decision now on speculation about what it might decide down the road. And unlike in *Howard* and *Duncan*, there is clearly information responsive to the interrogatories that is not known to the individuals whose depositions are certain. With respect to the refrigeration issue, for example, Warden Richardson's testimony was that he removed the chemicals from the refrigerator after he "consulted with . . . Director Tewalt." Dkt. 177-1 at 60. The answer to Interrogatory 39 speaks to such consultations and it can be addressed now regardless of what depositions the future might hold.

    **IV.**    **Responses to the discovery requests should be compelled.**

Mr. Pizzuto takes the objection to each discovery request in turn below. Before doing so, Mr. Pizzuto takes up the defendants' more general proposition that any discovery requests related to expired drugs are no longer tenable. *See* Dkt. 187 at 12–13. As an initial matter, the defendants are mistaken in presenting this attack as going to all of Mr. Pizzuto's requests. Interrogatory 44 concerns the execution protocol, not the drugs, and it would remain live even under the defendants' construction. *See* Dkt. 183-1 at 2. More importantly, the defendants misunderstand the nature of relevance. To begin, evidence that the defendants have flawed procedures with respect to storing drugs, testing chemicals, and checking their expiration dates—the potential implication of Interrogatories 39, 42, and 47—would be highly salient at any future execution. *See, e.g.*, *id.* at 7. The defendants' recommendation for how to handle discovery at this juncture is also impractical.

IDOC will not obtain new drugs until a death warrant is signed, *see* Ex. 3 at 1, which means an execution scheduled thirty days later at the most, *see* Idaho Code § 19-2715(2), (3). Within those thirty days, Mr. Pizzuto has to formulate and serve any discovery request regarding the drugs; the defendants have to respond with all of their objections; the parties have to litigate the disputes; the Court has to resolve them; and only then can Mr. Pizzuto use the information, if he's still alive. That is ill-advised as a matter of judicial economy. There is no reason why the defendants cannot respond to the interrogatories now, when there is time and space for orderly discovery proceedings.

      A.  Interrogatory 39

Mr. Pizzuto has already refuted several of the defendants' criticisms of Interrogatory 39, leaving only the questions of attorney-client privilege and expert witnesses. *See* Dkt. 187 at 17–18. On attorney-client privilege, the defendants clarify now—for the first time—that they are not advancing the defense-of-counsel exception. *See id.* at 17. Rather, this is apparently a scenario in which "the attorney just asks the client a question." *Id.* But if the attorney only asked the defendants a question, then counsel's role in the exchange does not need to be set forth in the response to the interrogatory. The posing of a question by definition does not explain why an action took place with respect to refrigeration, which is what Interrogatory 39 is directed towards. The defendants likewise miss the mark on expert opinion. It is the defendants' fear that they are being asked "to opine on the impact temperatures have on the chemical." *Id.* at 18. No one is asking them to do so. Interrogatory 39 asks only why *IDOC* officials moved drugs in and out of a refrigerator. *See* Dkt. 183-1 at 2. IDOC can illuminate its own actions, and it should be compelled to do so.

      B.  Interrogatory 42

For Interrogatory 42, the only lingering question goes to attorney-client privilege. There, the defendants advise the Court, as with Interrogatory 39, that they are not claiming the protection

REPLY IN SUPPORT OF EIGHTH MOTION TO COMPEL – Page 7

of the defense of counsel. What is not apparent, however, is what the defendants *are* claiming. It is entirely unknown what role, if any, counsel played in Mr. Tewalt's expiration-date missteps. Without any information on that front, the defendants have not "establish[ed] the privileged nature of the communications," *United States v. Ruehle*, 583 F.3d 600, 609 (9th Cir. 2009), and the objection does not insulate them from the interrogatory.

### C. Interrogatory 44

The defendants' relevance assault on Interrogatory 44 is based on an implausible and incomplete analysis of the rescue doctor's purpose. In the defendants' eyes, the rescue doctor was provided for by the previous protocol "to provide any necessary resuscitation effort of the condemned person" which does not "have anything to do with preventing pain and suffering during an execution." Dkt. 187 at 18–19. The defendants do not articulate their reasoning and it is difficult to follow. Surely when a medical doctor is attempting to resuscitate an inmate experiencing a botched execution the physician is trying to minimize the individual's pain and suffering.

Retreating from relevance, the defendants take a stab at proportionality, positing that "the new version of SOP 135 provides the same level of care" because it authorizes the presence of "[e]mergency medical personnel" in lieu of the rescue doctor. *Id*. at 19. The defendants' self-serving opinion about the quality of their own protocol does not make a question disproportionate. In the prior protocol, the rescue doctor was a *doctor*, who had to be "currently licensed by the Idaho Board of Medicine." Dkt. 54-12 at 8. Of the new "emergency medical personnel," the new protocol requires only that they "will maintain proper professional licensing or certification." Dkt. 175-7 at 9. What that means is anyone's guess. At summary judgment, Mr. Pizzuto might well aver that this reduction in qualifications adds risk to the pain and suffering associated with a botched execution, for the level of care provided during resuscitation efforts will not be as strong

as it would have been under a licensed physician's supervision. The defendants are certainly entitled to make the opposite case, i.e., that "the protocol is constitutional," Dkt. 187 at 19, but discovery is not the time or place for that quarrel about the merits.

### D. Interrogatory 47

The defendants contest Interrogatory 47 as vague because they do not know what "due diligence" means in the context of a question about what inquiries *IDOC* made into the laboratory that generated the certificates of analysis (COAs). *See* Dkt. 187 at 16. Mr. Pizzuto might well have "a different meaning in mind than Defendants," *id.*, but he is asking them for *their* meaning. The defendants' own protocol obligates them to confirm that the drugs "are obtained and tested at an accredited lab following United States Pharmacopeia or other applicable, nationally recognized or generally accepted testing standards." Dkt. 175-7 at 2–3. At a minimum, the defendants are certainly capable of accounting for how they carried out this responsibility—if they did.

The defendants label the interrogatory as disproportionate because "the chemical these laboratories relate to cannot be used in Plaintiff's execution." Dkt. 187 at 16. That is a factual assertion of doubtful veracity. For the First and Third Sets of Execution Drugs (the only ones for which a COA has been produced), IDOC gave Mr. Pizzuto identical certificates. *See* Ex. 1 at 1–2. Considering that circumstance, it is incumbent upon the defendants to explain why the next set will have a COA produced by a different laboratory, which they have not done. What's more, even if the laboratory has changed, the subject-matter would remain relevant. *See* Dkt. 183-1 at 16.

Lastly, the defendants' secrecy objection is even more anemic than usual. They offer a bare assertion that "the specific certifications and licenses of the laboratories will further dwindle down the potential manufacture[r]." Dkt. 187 at 17. It is the defendants' burden to "provide a way for someone to identify the drug supplier from the disclosed information." *Pizzuto*, 131 F.4th at 1086.

REPLY IN SUPPORT OF EIGHTH MOTION TO COMPEL – Page 9

They have provided not a single shred of evidence to support the notion that the credentialing of the laboratory has anything to do with the manufacturer. Furthermore, the defendants have not even attempted to establish that *any* fact about licensure is risky. Under their theory, they cannot offer a simple yes or no answer to the question of whether the laboratory is accredited *anywhere* or whether it has been cited by *anyone*. The extreme nature of that position underlines how tenuous the defendants' secrecy objection is. And the fact that IDOC is withholding every single piece of information about the laboratory that created the only document upon which the defendants are relying for the reliability of their chemical confirms that the interrogatory is proportional.

### E. RFA 544

Coming at last to RFA 544, IDOC deems it irrelevant whether the manufacturer is opposed to the use of its products in executions because the chemicals are expired. *See* Dkt. 187 at 15. The Department's basis is that "the manufacturer's stance on capital punishment has no bearing on the efficacy of the chemical." Dkt. 187 at 15. Mr. Pizzuto has presented evidence to the contrary in the form of a sworn declaration from a pharmaceutical expert. *See* Dkt. 183-1 at 19. The defendants cannot refute that evidence with fifteen un-cited words written by their non-expert attorney.

As elsewhere, IDOC's secrecy objection here is inadequately developed. The defendants aver that "[s]ome, but not all, of the FDA-approved manufacturers have indicated that they might [sic] be opposed to their products being used for capital punishment." Dkt. 187 at 15. But Mr. Pizzuto has stated that, to his knowledge, every such manufacturer is opposed. *See* Dkt. 183-1 at 18–19. Unlike the defendants, Mr. Pizzuto backed up his version with citations. *See id.* Thus, "it is Defendants' burden to demonstrate why the disclosures would constitute an undue burden." *Pizzuto*, 131 F.4th at 1086. They cannot satisfy their burden with ipse dixit and this request, like the others, should be responded to.

DATED this 24th day of April 2025.

  /s/ Jonah J. Horwitz
Jonah J. Horwitz
Christopher M. Sanchez
FEDERAL DEFENDER SERVICES OF IDAHO

/s/ Sarah E. Kalman
Sarah E. Kalman
DLA PIPER LLP (US)

COUNSEL FOR PLAINTIFF

# CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which is designed to send a Notice of Electronic Filing to persons including the following:

Kristina Schindele
kscchind@idoc.idaho.gov

Mary Karin Magnelli
kmagnell@idoc.idaho.gov

Michael J. Elia
mje@melawfirm.net

Tanner J. Smith
tanner@melawfirm.net

  /s/ L. Hollis Ruggieri
L. Hollis Ruggieri