*Gerald Ross Pizzuto, Jr. v. Josh Tewalt*, U.S. Dist. Ct. No. 1:21-cv-359-BLW
Submitted in Support of Memorandum in Support of Motion to Modify Scheduling Order [Dkt. 198]

# EXHIBIT 8

RAÚL LABRADOR
ATTORNEY GENERAL

Karin Magnelli (ISBN 6929)
Lead Deputy Attorney General
Kristina M. Schindele (ISBN 6090)
Deputy Attorney General
Idaho Department of Correction
1299 North Orchard St., Suite 110
Boise, Idaho 83706
Telephone: (208) 658-2094
Facsimile: (208) 327-7485
kmagnell@idoc.idaho.gov
krschind@idoc.idaho.gov

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
Tanner J. Smith (ISBN 12245)
MOORE ELIA & KRAFT, LLP
Post Office Box 6756
Boise, Idaho 83707
Telephone: (208) 336-6900
Facsimile: (208) 336-7031
mje@melawfirm.net
*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **GERALD ROSS PIZZUTO, JR.**, Plaintiff, v. **BREE DERRICK**, Director, Idaho Department of Correction, in his official capacity, **RANDY VALLEY**, Warden, Idaho Maximum Security Institution, in his official capacity, and **LIZ NEVILLE**, Chief of Prisons,[1] in her official capacity, Defendants. | Case No. 1:21-cv-359-BLW<br><br>DEFENDANTS RESPONSES TO INTERROGATORIES 39, 42, 44, AND 47 AND RFA 544 PURSUANT TO DKT. 199. |

---

[1] Defendant Liz Neville was appointed to the position of Chief of Prisons effective June 22, 2025.

Defendants' Supplemental Responses to Interrogatories and RFA Per Court Order – Page 1

Defendants by and through their attorneys of record, the Idaho Attorney General's Office, pursuant to Federal Rule of Civil Procedure 33, hereby provide supplemental responses to certain interrogatories contained in Plaintiff's Seventh Set of Interrogatories, namely Interrogatories Numbered 39, 42, 44, and 47 as well as Request for Admission 544.

The Court ordered these supplemental responses. *See* Dkt. 199. Plaintiff agreed to extend the deadline to respond to these Interrogatories and RFA until July 7, 2025.

**Interrogatories**

39. Describe in detail what led the First Set of Execution Drugs to be placed in—and removed from—a refrigerator, including an explanation of why the drugs were refrigerated, why they were taken out of the refrigerator, why those two events took place on the dates when they did, who was involved in both decisions, and so forth.

    **Defendants' Response**: Defendants object to Interrogatory 39 as it is beyond the scope of Federal Rule of Civil Procedure 33(a)(1) and the parties' Discovery Plans. *See* Dkts. 21, 41. In addition, Defendants object to this Interrogatory under Federal Rule of Civil Procedure 26(b)(1), on grounds that the Interrogatory creates an undue burden on the IDOC, is not relevant to Plaintiff's claims, and is not proportional to the needs of the case.

    Defendants also object to this interrogatory to the extent the information is protected by the work product and/or attorney-client privileges. Defendants also object to this interrogatory to the extent it calls for an expert opinion, which requires specialized knowledge, skill, experience, training, or education. *See* Fed. R. Civ. P. 702.

    Finally, Defendants object to the Interrogatory as the question is overbroad, exceeds the scope of Plaintiff's claims, and is not relevant to the issues raised in Plaintiff's *as applied* Eighth

Amendment Claim as the execution chemicals that IDOC obtained in October 2023 (identified by Plaintiff as First Set of Execution Drugs) will not be used in Plaintiff's execution.

**Defendant Derrick's Supplemental Response:** Per my inquiry and based on information and belief, the execution chemical IDOC acquired in October 2023 was incorrectly placed in the refrigerator in the IMSI Warden's Office by Warden Tim Richardson. According to the temperature log maintained by Warden Richardson, the execution chemical acquired in October 2023 was kept in the refrigerator from October 12, 2023, until November 27, 2023. The temperature taken on November 27, 2023, reflects a refrigeration temperature of 39.0 degrees and the temperature take on November 28, 2023, reflects a room temperature of 67.8 degrees. Based on information and belief, Warden Richardson removed the chemicals from the refrigerator on November 27, 2023. The two then-named defendants, Warden Richardson and former Director Tewalt, denied RFA 170, which asked "Admit or deny that the Execution Chemicals currently in IDOC's possession are in a refrigerator". The denials were served on Plaintiff that same date. I do not have any further information about this matter.

**Defendant Neville's July 7, 2025, Response**: I defer to Director Derrick for this response. I do not have any information about the subject matter.

**Defendant Valley's July 7, 2025, Response**: I defer to Director Derrick for this response. I do not have any information about the subject matter.

42. Explain in detail why Defendant Tewalt provided an incorrect expiration date when he responded to RFA 290 on June 10, 2024.

**Defendants' Response**: Defendants object to Interrogatory 42 as it is beyond the scope of Federal Rule of Civil Procedure 33(a)(1) and the parties' Discovery Plans. *See* Dkts. 21, 41. In addition, Defendants object to this Interrogatory under Federal Rule of Civil Procedure

Defendants' Supplemental Responses to Interrogatories and RFA Per Court Order – Page 3

26(b)(1), on grounds that the Interrogatory creates an undue burden on the IDOC, is not relevant to Plaintiff's claims, and is not proportional to the needs of the case. Defendants also object to this interrogatory to the extent the information is protected by the work product and/or attorney-client privileges. Finally, Defendants object to the Interrogatory as the question is not relevant to the issues raised in Plaintiff's *as applied* Eighth Amendment Claim as the execution chemicals that IDOC obtained in or about February 2024 (identified by Plaintiff as Second Set of Execution Drugs) will not be used in Plaintiff's execution.

**Defendant Derrick's July 7, 2025, Supplemental Response**: Per my inquiry, when IDOC acquired execution chemical in February 2024, the Department had anticipated acquiring chemical with an expiration date later than February 28, 2025. IDOC in fact obtained chemical in February 2024 with a shorter expiration date. Former Director Tewalt inadvertently approved RFA 290 on June 10, 2024, as drafted and routed to him. This approval was inaccurate and corrected once he realized he had the wrong expiration date.

**Defendant Neville's July 7, 2025, Response**: I defer to Director Derrick for this response. I do not have any information about the subject matter.

**Defendant Valley's July 7, 2025, Response**: I defer to Director Derrick for this response. I do not have any information about the subject matter.

44. Explain in detail why SOP 135 removed from the previous version of the protocol the requirement that a physician be available to revive the inmate if necessary.

**Defendants' Response**: Defendants object to Interrogatory 44 as it is beyond the scope of Federal Rule of Civil Procedure 33(a)(1) and the parties' Discovery Plans. *See* Dkts. 21, 41. Defendants also object to this interrogatory as its use of the term "previous version of the protocol" is undefined and subject to multiple reasonable interpretations. In addition,

Defendants' Supplemental Responses to Interrogatories and RFA Per Court Order – Page 4

Defendants object to this Interrogatory under Federal Rule of Civil Procedure 26(b)(1), on grounds that the Interrogatory creates an undue burden on the IDOC, is not relevant to Plaintiff's claims, and is not proportional to the needs of the case.

**Defendant Derrick's July 7, 2025, Response**: I defer to Defendant Neville's explanation below as I was not involved in the drafting of SOP 135, approved October 11, 2024.

**Defendant Neville's July 7, 2025, Response**: In revising SOP 135, then-Director Tewalt and I consulted with the Central Line Volunteer and the Medical Team. Following those discussions, then-Director Tewalt approved a change in the requirement that a "rescue doctor" be available during an execution. As required by the revised SOP, IDOC has recruited a Central Line Volunteer. The Central Line Volunteer will be present and available during the entirety of the execution process. Based on consultation with the Central Line Volunteer, IDOC has ensured that medications and equipment necessary for insertion of a central line are available to the Central Line Volunteer throughout the execution process. The October 2024 version of SOP 135 also specifically provides, "Emergency medical personnel and ambulance service will be present near the Execution Unit as determined by the Administrative Team to provide emergency medical assistance and transport to anyone requiring such care during the process, including any necessary resuscitation effort of the condemned person and first aid emergency care for any person in the immediate area if needed." (SOP 135, pp. 8-9). SOP 135 as revised requires stand-by medical personnel "be available to revive the inmate if necessary" rather than a rescue doctor. The medications and equipment deemed necessary by the Central Line Volunteer are available to respond to a medical emergency. The presence of a rescue doctor appeared to be redundant and unnecessary. I am responsible for ensuring the Medical Team and Central Line Volunteer are appropriately trained on the execution protocol.

        The Central Line Volunteer is prepared to assist with medical issues that could arise during the execution process, including "revival" efforts.

        **Defendant Valley's July 7, 2025, Response**: I do not have any information about the subject matter.

47.    Describe the licensing and certification status of the laboratory that generated the certificates of analysis that you have produced to FDSI, including but not limited to what bodies (if any) they are accredited with, what accreditations they possess, their regulatory histories, what due diligence you have done into their licensure and regulatory histories, and so forth.

        **Defendants' Response**: Defendants object to Interrogatory 47 as it is beyond the scope of Federal Rule of Civil Procedure 33(a)(1) and the parties' Discovery Plans. *See* Dkts. 21, 41. Defendants also object to this interrogatory as the terms "licensing and certification status," "due diligence," "certificates of analysis," "histories," and "bodies" are undefined and subject to multiple reasonable interpretations. Defendants also object to this interrogatory as it is overbroad and not sufficiently confined in scope. Defendants also object to this interrogatory as it contains compound, conjunctive, or disjunctive questions. Defendants also object to this interrogatory as it is vague and uncertain in its use of the term "and so forth." Defendants also object to this interrogatory as it asks for confidential information and implicates the privacy interests of third parties

        In addition, Defendants object to this Interrogatory under Federal Rule of Civil Procedure 26(b)(1), on grounds that the Interrogatory creates an undue burden on the IDOC, is not relevant to Plaintiff's claims, and is not proportional to the needs of the case. Finally, Defendants object to this Interrogatory as the question may lead to the disclosure of the identity of the source or manufacturer of IDOC's execution chemicals. Defendants submit

Idaho Code § 19-2716A(4) requires IDOC staff keep the identities of such persons or entities confidential. This statutory mandate informs IDOC's undue burden analysis as disclosure impedes the Department's ability to carry out an execution and interferes with its statutory and constitutional duties to carry out lawfully imposed death sentences. The limited relevance to Plaintiff's claims is greatly outweighed by the harm and risk of harm to IDOC.

Finally, Defendants object to the Interrogatory as the information requested is not relevant to the issues raised in Plaintiff's *as applied* Eighth Amendment Claim as the execution chemicals that IDOC obtained in October 2023 and October 2024 (identified by Plaintiff as First Set of Execution Drugs and Third Set of Execution Drugs) will not be used in Plaintiff's execution.

**Defendant Derrick's July 7, 2025, Supplemental Response**: Per my inquiry and based on information and belief, IDOC has confirmed that the manufacturer of the execution chemical acquired in October 2023 and October 2024 has a base of operations in the United States. IDOC has also confirmed that the manufacturer has been approved by the FDA to manufacture pentobarbital in the United States. IDOC has not engaged in any additional actions regarding the licensing and certification of the laboratory that generated the certificate of analysis for the October 2023 and October 2024 execution chemical.

Defendant Neville's July 7, 2025, Response: I defer to Director Derrick for this response. I have not engaged in any conduct about the subject matter.

Defendant Valley's July 7, 2025, Response: I defer to Director Derrick for this response. I do not have any information about the subject matter.

**Request for Admission**

544.  Admit or deny that IDOC has obtained execution drugs Manufactured by a company that opposes the use of its products in executions.

**Defendant Tewalt's Response**: Defendant Tewalt objects to RFA 544 under Federal Rule of Civil Procedure 26(b)(1). Defendant Tewalt asserts the subject of this RFA creates an undue burden on the IDOC and interferes with the agency's duty to carry out a lawfully imposed death sentence. The Idaho Legislature enacted Idaho Code § 19-2716A to prohibit the disclosure of the identities of any person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution. Defendant Tewalt objects to disclosure of any information that could lead to the identification of these confidential persons or entities. Defendant Tewalt asserts disclosure of the requested information specifically seeks information about the identity of a person or entity who compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution.

Defendant Tewalt objects to disclosure of any information that could lead to the identity of a person or entity that compounds, synthesizes, tests, sells, supplies, manufactures, stores, transports, procures, dispenses, or prescribes the chemicals or substances for use in an execution. Defendant Tewalt specifically objects to disclosing any information that could confirm or dispel any information regarding the identity of these statutorily designated confidential persons or entities, including information or inferences that the person or entity is or is not the same person or entity that has communicated with IDOC, Defendnat Tewalt, or any other Idaho official or agency.

Defendant Tewalt asserts the information requested increases the risk of disclosure of a person or entity that compounded, synthesized, tested, sold, supplied, manufactured, stored, transported, procured, dispensed, or prescribed the chemicals or substances for use in an execution. These identities are expressly protected by state law and incorporated into Federal Rule of Civil Procedure 26. Such risk creates an undue burden on IDOC, especially where disclosure is immaterial to the claims raised in Plaintiff's as applied method-of-execution claim and disproportionate to his needs in this litigation. Plaintiff's interest in disclosure is outweighed by the State's interest in protecting its execution chemical sources.

Defendant Tewalt also objects to this request as it is vague, ambiguous, confusing, misleading, and/or subject to being misconstrued because the terms "obtained" and "opposes" are undefined and subject to multiple reasonable interpretations as used in RFA 544.

**Defendant Derrick's July 7, 2025, Supplemental Response**: Admit.

**Defendant Valley's July 7, 2025, Supplemental Response**: I defer to Director Derrick as I do not know the answer to this question.

**Defendant Neville's July 7, 2025, Supplemental Response**: I defer to Director Derrick as I do not know the answer to this question.

Pursuant to 28 U.S.C. § 1746, I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

DATED this 7th day of July 2025.

Signed: /s/ Bree Derrick
Bree Derrick

Pursuant to 28 U.S.C. § 1746, I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

DATED this 7th day of July 2025.

Signed: /s/ Randy Valley
Randy Valley

Pursuant to 28 U.S.C. § 1746, I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

DATED this 7th day of July 2025.

Signed: /s/ Liz Neville
Liz Neville

## CERTIFICATE OF SERVICE

I certify that on this 7th day of July 2025, I caused to be served a true and correct copy of the foregoing via email service as follows:

Jonah J. Horwitz: Jonah_Horwitz@fd.org
Christopher M. Sanchez: Christopher_M_Sanchez@fd.org

/s/ Kristina M. Schindele
Kristina M. Schindele