*Gerald Ross Pizzuto, Jr. v. Josh Tewalt*, U.S. Dist. Ct. No. 1:21-cv-359-BLW
Submitted in Support of Memorandum in Support of Motion to Modify Scheduling Order [Dkt. 198]

# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JOSH TEWALT, Director, Idaho ) <br> Department Of Correction, ) <br> RANDY VALLEY, Warden, Idaho ) <br> Maximum Security Institution, ) <br> LIZ NEVILLE, Deputy Chief Of Prisons, ) <br> Idaho Department Of Correction, ) <br> ) <br> Defendants. ) <br> _____ ) <br> ) <br> INDIANA DEPARTMENT OF ) <br> CORRECTION, ) <br> ) <br> Interested Party. ) | No. 1:24-mc-00052-SEB-MKK |

**ORDER**

This matter is before the Court on Indiana Department of Correction's ("INDOC's") Motion to Quash Subpoena, Dkt. [1]. The Motion is ripe for the Court's ruling. For the following reasons, the Motion to Quash, Dkt. [1], is **DENIED**.

**I.   Background**

This matter arises from a case in the United States District Court for the District of Idaho in which Plaintiff Gerald Ross Pizzuto, Jr., is seeking equitable, declaratory, and injunctive relief from Idaho's lethal injection procedure. (Dkt. 1 at 1; Dkt. 11-10 at 3–7). In 1986, Plaintiff was convicted of first-degree murder and sentenced to death in Idaho County District Court. (Dkt. 11-10 at 5); *Pizzuto v.*

*Ramirez*, 783 F.3d 1171, 1174 (9th Cir. 2015). On September 9, 2021, he filed suit in federal court in Idaho. *Pizzuto v. Tewalt,* No. 1:21-cv-00359-BLW, Dkt. 1: Complaint (D. Idaho Sept. 9, 2021). In his Second Amended Complaint in that suit ("the underlying case"), Plaintiff alleges that the use of pentobarbital at his anticipated execution "creates a substantial risk of serious pain and suffering because of his health conditions and medical history, amongst other factors, all in violation of the Eighth Amendment." (Dkt. 11-10 at 18).[1]

On September 10, 2024, Plaintiff served INDOC with a subpoena pursuant to Federal Rule of Civil Procedure 45. (Dkt. 2-1). The subpoena requests production of the following:

> 1. All DOCUMENTS generated between June 1, 2024 and the present REGARDING any PENTOBARBITAL that YOU obtained for use or potential use in executions, including but not limited to testing information, such as certificates of analysis; purchase receipts; purchase orders; invoices; Drug Enforcement Administration forms and other regulatory records; package inserts; chain-of-custody documents; temperature logs; instructions for storage and transportation; COMMUNICATIONS with the supplier, distributor, and/or manufacturer; and so forth.

(*Id.* at 7). On September 20, 2024, INDOC filed a Motion to Quash Plaintiff's Subpoena. Dkt. [1]. Plaintiff responded in opposition, (Dkt. 11), and INDOC replied, (Dkt. 12). On January 16, 2025, this Court held a hearing on the Motion to Quash, (Dkt. 17), which is now ripe for review.

---

[1] The page numbers listed at the bottom of Plaintiff's Second Amended Complaint do not coincide with those auto-generated in the top case caption. The undersigned elects to cite to the latter.

## II.   Legal Standard

Federal Rule of Civil Procedure 26(b)(1) ("Rule 26") allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevancy under Rule 26 is construed broadly. *See CSX Trans., Inc. v. Zayo Group, LLC*, No. 1:21-cv-02859-JMS-MJD, 2023 WL 5485997, at *1 (S.D. Ind. Aug. 24, 2023) ("during discovery, 'a broad range of potentially useful information should be allowed' when it pertains to issues raised by the parties' claims") (quoting *Bank of Am., Nat'l Ass'n v. Wells Fargo Bank, N.A.*, 2014 WL 3639190, at *3 (N.D. Ill. July 23, 2014) (internal quotation marks and citations omitted). "On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative . . . or . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).

With certain limitations, Federal Rule of Civil Procedure 45 ("Rule 45") allows a party to command production of documents or electronically stored information in a non-party's possession, custody, or control. Fed. R. Civ. P. 45. "The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules." *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002). The requesting party "must take reasonable steps[, however,] to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R.

3

Civ. P. 45(d)(1). Rule 45(d)(3)(A) provides a mechanism for enforcing this requirement:

> (3) Quashing or Modifying a Subpoena.
>
> (A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> (i) fails to allow a reasonable time to comply;
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv) subjects a person to undue burden.

Fed. R. Civ. Pro. 45(d)(3)(A)(i)–(iv). To determine whether a subpoena is unduly burdensome, a court may consider "non-party status, relevance, the issuing party's need for the discovery, and the breadth of the request." *Donald v. Outlaw*, No. 2:17-cv-32-TLS-JPK, 2020 WL 2899689, at *7 (N.D. Ind. June 2, 2020) (citation omitted). The opposing party "bears the burden of proving that it is unduly burdensome." *Id.* (citation omitted); *see also Patrick Collins, Inc. v. John Doe No. 3*, No. 1:12-cv-00844-TWP-MJD, 2013 WL 820307, at *1 (S.D. Ind. Mar. 5, 2013); *Ultimate Timing, L.L.C. v. Simms*, No. 3:09-mc-00006-RLY-WGH, 2009 WL 1148056, at *1 (S.D. Ind. Apr. 28, 2009).

### III. Discussion

INDOC raises several arguments in support of its Motion to Quash: (1) the information requested in the subpoena has no relevance to Plaintiff's case; (2) production of the information sought would impose an undue burden on non-party INDOC; (3) the requested information is not proportional to the needs of the

underlying case; and (4) the subpoena seeks protected matter that is not discoverable. (*See generally* Dkt. 2). The Court will address each of these arguments in turn.

### A.   Relevance

The Court begins with the threshold inquiry of relevance. To succeed on his Eighth Amendment claim, Plaintiff must (i) establish that Idaho's method of execution presents a risk that is sure or very likely to cause serious illness and needless suffering and (ii) identify an alternative method that is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain. *Glossip v. Gross*, 576 U.S. 863, 877–878 (2015). INDOC argues that its documents and communications regarding pentobarbital are irrelevant to both of these elements. (Dkt. 2 at 9). More specifically, INDOC argues that its information on pentobarbital could not be relevant to the available-alternative prong of Plaintiff's claim, because Plaintiff himself asserts that *any* use of pentobarbital would be unconstitutional. (*Id.*; Dkt. 11-10 at 18–28). Nor can the information be relevant to the likelihood-of-suffering prong, because there is no connection between Idaho's pentobarbital and Indiana or its pentobarbital, INDOC argues. (Dkt. 2 at 9–10).

Plaintiff responds that the sought-after information is relevant to the likelihood-of-suffering prong. (Dkt. 11 at 10). Idaho and Indiana (as well as Utah and South Carolina) likely have the same pentobarbital supplier, he asserts. (*Id.* at 8). As a result, documents related to INDOC's pentobarbital are relevant in that any information they reveal about the reliability of Indiana's drugs are likely to

have a bearing on the reliability of Idaho's drugs, Plaintiff maintains. (*Id.* at 10). In other words, any flaws in Indiana's pentobarbital increase the likelihood of similar deficiencies in Idaho's pentobarbital considering the likelihood that the two states share the same supplier, Plaintiff argues. (*Id.*). And that is why, Plaintiff continues, the subpoena targets "testing information, such as certificates of analysis." (*Id.* at 12 (citing Dkt. 2-1 at 7)). These documents could explain the chemical makeup of Indiana's pentobarbital, which could be the same as that of Idaho. (*Id.* at 12–13). Plaintiff explains that the other documents sought by the subpoena seek similar information: regulatory records and chain of custody documents could show if there was an "extended journey" from the manufacturer to the supplier, which in turn could affect the drug's quality; temperature logs and instructions for transportation and storage could speak to the conditions necessary to maintain stability of the drug and in what actual conditions the drug was kept; and communications with suppliers could indicate where the supplier is located, which is important since not all countries have the same regulatory standards. (*Id.* at 13). Thus, Plaintiff argues, the documents are not only relevant, but very likely to help him prove his allegations. (*Id.* at 14).

The Court finds that Plaintiff has made the minimal showing required to establish that the information requested is relevant to his claim. In his Second Amended Complaint, Plaintiff alleges that it is "likely that Idaho will continue to try to obtain chemicals from unreliable sources, thereby increasing the risk of problems arising at the execution that would increase the pain and suffering felt by

Mr. Pizzuto." (Dkt. 11-10 at 9). If Indiana and Idaho do in fact have the same supplier, then documents related to the stability of Indiana's pentobarbital may have a bearing on the stability of Idaho's pentobarbital. Although the Court agrees with INDOC that Plaintiff has not established with certainty that Indiana and Idaho share a supplier, (Dkt. 12 at 4), Plaintiff need not do so at this stage of the case, *i.e.*, discovery. Moreover, Plaintiff's inference regarding the shared supplier is not without support. As Plaintiff indicates, Idaho, Indiana, Utah, and South Carolina all received pentobarbital in the same year, after a decade of the drug being difficult, if not impossible, for them to obtain. (Dkt. 11 at 8). Both Utah and Idaho have stated that their pentobarbital is manufactured (as opposed to compounded). (*Id.* at 9). Plaintiff alleges that this fact is significant because in the past. manufactured pentobarbital was not available to prisons because the manufacturers opposed their drugs being used in executions; thus, states resorted to compounded versions of the drugs. (*Id.*). Plaintiff argues that these facts create an "unmistaken probability that all four states are getting their drugs from the same [] source." (*Id.* at 10).

This logical chain, while far from shifting Plaintiff's assertion from inference to fact, amounts to more than mere speculation. And for Plaintiff to establish relevance under Rule 26, he does not need to prove that the supplier is the same; rather he need only show that there is a reasonable likelihood for his belief. *See Freeman v. Ocwen Loan Servicing, LLC*, No. 1:18-cv-03844-TWP-DLP, 2022 WL 999780, at *2 (S.D. Ind. Apr. 4, 2022) ("Relevance in discovery is broader than

relevance at trial; during discovery, a broad range of potentially useful information should be allowed when it pertains to issues raised by the parties' claims.") (internal citations and quotation marks omitted); *Doe v. Loyola Univ. Chicago*, No. 18 cv 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) ("If relevance is in doubt, courts should err on the side of permissive discovery.") (quoting *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004)); 8 Wright & Miller, Fed. Prac. & Proc. § 2001 (3d ed.) (updated Apr. 2022) ("a party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory"). In other words, the Court does not need to be *certain* that Idaho and Indiana's suppliers are the same to conclude that the discovery sought is relevant. *See Martin v. Ward*, No. 1:18-cv-4617-MLB, 2021 WL 1186749, at *5 (N.D. Ga. Mar. 30, 2021) ("Plaintiff is attacking the potency of Georgia's compounded pentobarbital and seeking information about it. How it works may depend on how it was created, stored, and transported. At this point, the Court cannot say the requested information about the pharmacies that manufacture the drug, how they do so, and the procedures they follow to maintain quality control is not likely to lead to the discovery of admissible evidence.").

Finally, the Court notes that INDOC's argument that it cannot have relevant information because Indiana has not executed any individuals with pentobarbital is moot, considering Indiana used pentobarbital to execute Joseph Corcoran on December 18, 2024.[2]

---

[2] Dkt. 18 at 28, 34; Sophia Tareen & Rick Callahan, *Man convicted of quadruple homicide is put to death in Indiana's 1st execution in 15 Years*, THE ASSOCIATED PRESS (last updated Dec. 18, 2024,

8

In sum, the Court finds that Plaintiff has adequately demonstrated that the requested production is relevant to the likelihood-of-suffering prong of his Eighth Amendment claim.

## B. Proportionality

Having addressed relevance, the Court next turns to Rule 26's requirement that discovery be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). This inquiry involves consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

INDOC characterizes Plaintiff's subpoena as a "fishing expedition" that at most will be of marginal benefit to Plaintiff. (Dkt. 2 at 6). INDOC further argues that if Plaintiff is seeking this discovery to prove pentobarbital will cause a "demonstrated risk of severe pain," then the discovery "would be cumulative of what he has alleged throughout his complaint." (*Id.* at 9 (citing Dkt. 11-10 at ¶¶ 163, 184, 187–193, 194, 223–25, 228, 230, 236)). In response, Plaintiff rejects INDOC's argument in its entirety, pointing to the reasonable likelihood that he will obtain useful information for his case. (Dkt. 11 at 14). He further rejects the "cumulative" argument by noting the distinction between allegations in a complaint and evidence gathered during discovery. (*Id.* at 14–15).

---

4:44 AM EST), https://apnews.com/article/indiana-execution-joseph-corcoran-fc5f9c8fa9055e8fbc0aafd300e6d7ac.

9

The Court is unpersuaded by INDOC's argument that the requested production would be cumulative or duplicative of other discovery in the underlying case. While it is true that the relative value of INDOC's production may decrease if Plaintiff obtains similar information from other states, full production from those states is not a sure thing. (*See* Dkt. 18 at 9–10). Moreover, although any information Plaintiff does obtain from the other states may decrease the relative value of INDOC's production, such information would not eliminate the value of INDOC's production completely.

The Court notes that INDOC did not attack the breadth of Plaintiff's subpoena request in its brief. (*See* Dkt. 2 at 4–13). Nevertheless, the Court inquired as to the breadth of the request at the hearing. (Dkt. 18 at 24–27). But even then, INDOC failed to develop any argument that the requested scope of production was somehow disproportionate to the potential benefit to Plaintiff. (*Id.*). Regardless (and acknowleding the broad definitions used in the subpoena), the Court finds that its scope is reasonably tailored, considering its limited time period and its narrow subject-matter. (*See* Dkt. 2-1 at 7 (seeking documents generated between June 1, 2024, and the present related to pentobarbital obtained for use or potential use in executions)). On this record, the Court finds that the information sought in Plaintiff's subpoena is proportional to the needs of the case.

## C. Undue Burden

The Court now considers whether INDOC has proven that Plaintiff's subpoena is unduly burdensome, an inquiry which overlaps to some extent with the questions of relevance and proportionality. *See Donald*, 2020 WL 2899689, at *7.

INDOC argues that by invading Indiana's protected confidentiality interests, the subpoena burdens Indiana's significant interest in exercising its sovereign power to enforce its criminal laws. (Dkt. 2 at 5 (citing *In re: Mod. Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018))). In support of this position, INDOC argues that responding to the subpoena would require it to violate Indiana Code § 35-38-6-1(f). (*Id.*). That statute provides:

> The following are confidential, are not subject to discovery, and may not be introduced as evidence in any civil or criminal proceeding:
>
> (1) The identity of a person described in subsection (e) [*i.e.*, an outsourcing facility, a wholesale drug distributor, a pharmacy, or a pharmacist] that enters into a contract with the department of correction under subsection (e) for the issuance or compounding of lethal substances necessary to carry out an execution by lethal injection.
>
> (2) The identity of an officer, an employee, or a contractor of a person described in subdivision (1).
>
> (3) The identity of a person contracted by a person described in subdivision (1) to obtain equipment or a substance to facilitate the compounding of a lethal substance described in subsection (e).
>
> (4) Information reasonably calculated to lead to the identity of a person described in this subsection, including a:
>   (A) name;
>   (B) residential or business address;
>   (C) residential or office telephone number; and
>   (D) Social Security number or tax identification number.

11

Ind. Code § 35-38-6-1(f). INDOC argues that this law demonstrates Indiana's commitment to the non-disclosure of the type of information sought by Plaintiff's subpoena. (Dkt. 2 at 6). INDOC cites to various cases to support its argument that disclosing the identity of a lethal injection drug supplier imposes an undue burden on a state with such a secrecy statute. (*Id.* at 11–13 (citing *In re Mo. Dep't of Corr.*, 839 F.3d 732, 736 (8th Cir. 2016), *cert. denied*, 137 S. Ct. 2180 (2017); *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 237 (6th Cir. 2016); *Jordan v. Comm'n, Miss. Dep't of Corr.*, 947 F.3d 1322, 1326 (11th Cir. 2020))).

In response, Plaintiff argues that production would not result in any undue burden on INDOC because the Department can simply redact any sensitive information that might identify the drug supplier. (Dkt. 11 at 2). Plaintiff explains that he seeks documents such as "testing information, . . . certificates of analysis," and "temperature logs, [] which presumably would be compiled solely by INDOC and have no connection to the supplier." (*Id.* at 3). Given the availability of redactions as a way to mitigate any concerns related to identifying the supplier, Plaintiff argues that INDOC has failed to prove that it is entitled to quash the subpoena in its entirety. (*Id.* at 4 (citing *Hodgdon v. Northwestern Univ.*, 245 F.R.D. 337, 341 (N.D. Ill. 2007); *Cody v. City of St. Louis*, No. 4:17-cv-2707-AGF, 2018 WL 5634010, at *4 (E.D. Mo. Oct. 31, 2018))). Plaintiff further submits that INDOC has waived any arguments that certain documents are too sensitive to disclose with redactions or that it is too burdensome to redact the documents. (*Id.* at 5–6).

Moreover, Plaintiff continues, he has amply demonstrated the relevance and usefulness of the documents to his case. (*See supra* Part III.A).

Plaintiff also distinguishes the precedent relied on by INDOC, reiterating that he is not requesting the identity of the supplier and arguing that his relevance theory rests on firmer footing than those of the plaintiffs in the cited cases. (*See* Dkt. 11 at 15-19). Plaintiff requests that the Court follow the approach taken by the Northern District of Georgia in *Martin v. Ward*. (*Id.* at 19). There, the district court ordered the Georgia Department of Corrections to produce documents regarding the creation, storage, and transportation of pentobarbital, but allowed the Department to redact information that could disclose the supplier's identity. *Martin*, 2021 WL 1186749, at *9.

In reply, INDOC stands by its argument that the subpoena should be quashed in its entirety, maintaining that even a partial production would violate the secrecy statute and impose an undue burden on Indiana. (Dkt. 12 at 2–3; Dkt. 18 at 23 (affirming that INDOC refused to produce any documents because the subpoena is "unduly burdensome on its face")). The Department asserts it declined to tell Plaintiff even the *number* of documents that may or may not contain supplier identification, because volunteering even that information would be unlawful. (Dkt. 12 at 2). INDOC questions Plaintiff's motives and summarily asserts that "[t]emperature logs, standard forms, the length of email signatures, receipts, orders, and the existence or nonexistence of all that material as well as the volume of that material is calculated to lead to the identity of the supplier." (*Id.*). INDOC

distinguishes *Martin* on the basis that here, INDOC is a non-party, while the Department in *Martin* was a defendant. (*Id.* at 3 (citing *Martin*, 2021 WL 1186749)).

INDOC has failed to carry its burden of proving that the subpoena should be quashed under Rule 45. As a preliminary matter, INDOC has limited its undue burden argument to the burden on Indiana's interest in maintaining the confidentiality of its pentobarbital supplier. (Dkt. 2 at 5–13; Dkt. 18 at 24–25). It has waived any burden arguments related to either the size of the production or the work involved in applying redactions. That said, the Court does recognize that Indiana has a legitimate interest in protecting the identity of its supplier and its ability to enforce its criminal statutes. That interest is real and being forced to reveal the supplier's identity may very well constitute an undue burden. *See, e.g., Martin*, 2021 WL 1186749, at *7–10. If the supplier's identity can be redacted, however, then production of the requested information would not give rise to such undue burden. This conclusion is supported by the fact that INDOC has made public certain documents involving its use of pentobarbital and execution protocol. (*See* Dkt. 18 at 26–27; Dkt. 17-1). INDOC cannot argue that *any* production would be an undue burden while simultaneously publicly displaying documents that would be responsive to Plaintiff's subpoena. For these reasons, the Court finds that INDOC has not shown that responding to the subpoena, in accordance with the directions provided herein, would impose an undue burden.

### D. Protected Matter

Finally, INDOC argues that the Court should quash the subpoena, as the information sought by the subpoena is "other protected matter" under Rule 45(d)(3)(A)(iii). (Dkt. 2 at 14–15). INDOC contends that this District has applied Indiana confidentiality statutes to discovery requests in federal constitutional cases, (*id.* at 15 (citing *Davis v. Carmel Clay Sch.*, 282 F.R.D. 201, 208–210 (S.D. Ind. 2012), *on reconsideration in part*, 286 F.R.D. 411 (S.D. Ind. 2012))), and asserts that other federal courts have recognized that privacy interests and confidentiality concerns can factor into a decision to quash a subpoena under Rule 45 even though the information requested by the subpoena is not subject to a federal evidentiary privilege, (*id.* at 15–16 (citing *Gissendaner v. Bryson*, 136 S. Ct. 26 (2015); *Jordan*, 947 F.3d at 1336, 1340–42)).

In response, Plaintiff again insists that any identifying information protected by the statute can be redacted. (Dkt. 11 at 22). Plaintiff also argues that regardless of the outcome of this Motion, the Court should direct INDOC to produce a privilege log, as it is required by the Rules and necessary to evaluate INDOC's reliance on secrecy protections. (*Id.* at 22–23 (citing Fed. R. Civ. P. 45(e)(2)(A)(ii))). Plaintiff further contends that INDOC's failure to provide a privilege log has resulted in a waiver of the protections it invokes under Rule 45. (*Id.* at 23). INDOC responds that it is not required to produce a privilege log or redacted documents because the materials sought are not subject to discovery. (Dkt. 12 at 6).

This Court declines to determine whether a federal evidentiary privilege exists here. And, indeed, neither party advocates for the Court to engage in that inquiry. (*See* Dkt. 2 at 15–16 ("In blocking Pizzuto's discovery request, this Court would not stand alone: other federal courts have recognized that privacy interests and confidentiality concerns can factor into a decision whether to quash a subpoena under Rule 45, *even though the information requested by the subpoena is not subject to a federal evidentiary privilege.*" (emphasis added); Dkt. 11 at 20).

As noted above, the Court does recognize Indiana's interest in maintaining the confidentiality of its supplier and the effect disclosure of the supplier's identity could have on the State's ability to enforce its criminal laws. But the Court finds that INDOC cannot withhold *all* information that is responsive to the subpoena as "protected information" pursuant to Rule 45(d)(3)(A)(iii). As discussed above, INDOC can redact information that would identify the supplier of its pentobarbital. The Court expressly authorizes INDOC to do just that in responding to the subpoena. Although INDOC must adhere to normal privilege log requirements (*e.g.*, logging documents withheld on the basis of attorney-client privilege), it need not log information redacted solely to protect the identity of the pentobarbital supplier.

## IV.   Conclusion

For the foregoing reasons, the Court **DENIES** INDOC's Motion to Quash, Dkt. [1]. **Within twenty-one (21) days of this Order**, INDOC shall comply with Plaintiff's subpoena and produce the responsive documents. INDOC may redact a responsive document if the redacted portion of the document would identify,

directly or indirectly, an individual or entity involved in providing, issuing, or compounding execution drugs or equipment, or preparing for or administering executions in Indiana.

**Within seven (7) days of this Order,** Plaintiff and INDOC shall meet and confer to discuss the need for a protective order regarding the disclosure and sealing of responsive documents or whether an existing protective order in the underlying case can be amended to cover INDOC's production. Plaintiff and INDOC shall work cooperatively to ensure timely production in an efficient manner.

So ORDERED.

Date: 02/10/2025

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via CM/ECF.