RAÚL LABRADOR
ATTORNEY GENERAL

Karin Magnelli (ISBN 6929)
Lead Deputy Attorney General
Kristina M. Schindele (ISBN 6090)
Deputy Attorney General
Idaho Department of Correction
1299 North Orchard St., Suite 110, Boise, Idaho 83706
Telephone: (208) 658-2094; Facsimile: (208) 327-7485
kmagnell@idoc.idaho.gov; krschind@idoc.idaho.gov

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
Tanner J. Smith (ISBN 12245)
MOORE ELIA KRAFT & STACEY, LLP
Post Office Box 6756, Boise, Idaho 83707
Telephone: (208) 336-6900; Facsimile: (208) 336-7031
mje@melawfirm.net; tanner@melawfirm.net

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRIC COURT
FOR THE DISTRICT OF IDAHO**

|  |  |
|---|---|
| GERALD R. PIZZUTO,<br><br>      Plaintiff,<br><br>vs.<br><br>BREE DERRICK, et al.,<br><br>      Defendants. | Case No. 1:21-cv-359-BLW<br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF OBJECTION TO PLAINTIFF'S THIRD-PARTY CONTRACTOR SUBPOENAS AND MOTION TO QUASH AND FOR PROTECTIVE ORDER** |

COME NOW Defendants, by and through their undersigned counsel, and hereby submit their Memorandum in Support of Objection to Plaintiff's Third-Party Contractor Subpoenas and Motion to Quash and for Protective Order as follows:

## INTRODUCTION

This Motion turns on a straightforward question: can inmates use third-party subpoenas to obtain prison blueprints and schematics. Courts have uniformly answered this question in the negative due to the facially apparent security and safety concerns created by disclosure.

Prison blueprints and schematics have nothing to do with Plaintiff's claim. This case is about a single, narrow question: whether executing Plaintiff by a lethal injection of pentobarbital violates his Eighth Amendment rights because of his claimed medical conditions. Blueprints of IDOC's prisons shed no light on that inquiry. They do not reveal how pentobarbital interacts with Plaintiff's conditions. They do not make any material fact more or less probable.

But what the material does reveal are potential ways for inmates to escape, potential ways to smuggle weapons or other contraband into the prisons, and potential ways to exploit blind spots in the prison's security and surveillance systems. That is why the Ninth Circuit, federal and state courts around the country, state legislatures, and Congress have uniformly excluded prison blueprints and schematics from disclosure requirements.

Plaintiff's subpoenas are attempts sidestep the rules. IDOC objected to Plaintiff's attempts to obtain IDOC's prison blueprints and schematics months before he issued his subpoenas. Instead of meeting with Defendant to discuss the validity of the objections or otherwise moving to compel, Plaintiff issued overly broad and vague objections to third-party contractors for the materials under the guise of requests for communications. Rule 26 does not reward that kind of runaround; Rule 45 protects non-parties from it.

IDOC has been reasonable. It offered a site inspection of F Block after it has been renovated as an alternative to providing blueprints and schematics, which would give Plaintiff a safe and sufficient way to see whatever might arguably matter. Plaintiff's counsel responded by saying that

they would take IDOC up on the site inspection, but are still demanding the prison blueprints. A textbook example of the idiom "give an inch, they take a mile."

The Court should quash the subpoenas and enter a protective order prohibiting Plaintiff from requesting or receiving IDOC's prison blueprints and schematics.

## PROCEDURAL HISTORY

Shortly after Thomas Creech's February 28, 2024, execution attempt, Plaintiff's counsel sent Defendants' counsel a letter asking that Defendant supplement their discovery responses. (8th Decl. Smith, ¶ 3, Ex. 1). Plaintiff sent this letter on March 11, 2024. (*Id.*). Relevant here, Plaintiff's counsel asked for "All documents related to any maintenance done or changes made in the execution chamber, including electrical, audio/visual, structural, and so forth." (*Id.* ¶ 4).

On May 29, 2024, IDOC responded and objected to the request to the extent it sought disclosure of prison blueprints or schematics:

> RESPONSE: After a diligent search, Defendants have not located responsive documents. If responsive documents are located, this response will be supplemented. Defendants have contracted and commenced construction changes in F Block. *See* documents attached entitled Contract #005 for 2022064 IDOC_Female Prison, Medical Annex & Sewage Lagoon and 2024.04.15 Medical Exam Room Renovation Estimate. Defendants have provided page 1 of a document entitled DPW Project No22064 Change Order 1. **Defendants object to release of schematics associated with the construction based on safety and security of the institution. Defendants specifically assert disclosure of the schematics will create an undue burden on Defendants, IDOC and the State of Idaho under Federal Rule of Civil Procedure 26(b)(1). Defendants propose alternative discovery options to providing the schematics**.

(*Id.* ¶ 6, Ex. 2 (bold type added)). Plaintiff never questioned the objections or moved to compel the disclosure of blueprints or schematics from anyone at IDOC. (*Id.* ¶ 7). Accordingly, Defendants believed that Plaintiff properly gave up any attempts to obtain prison blueprints or schematics.

Sometime around June 2025, Plaintiff served third-party subpoenas on Elevatus Architecture, Okland Construction, Soundscape Engineering, and Cator Ruma & Associates Co. (8th Decl.

Smith, ¶ 8). These companies are construction contractors who are working on various IDOC prisons. (Decl. Derrick, ¶ 5). Each subpoena sought "ALL DOCUMENTS generated between January 1, 2023 and the PRESENT REGARDING any work that YOU performed or contemplated performing for IDOC at any of its properties or institutions, including but not limited to COMMUNICATIONS with IDOC and other individuals and entities in Idaho." (8th Decl. Smith, Ex. 3 (capitalization in original)).

IDOC was later alerted by the contractors that Plaintiff's counsel had meet and confers with them related to their objections to the subpoenas. (*Id.* ¶ 9–11). IDOC was informed that Plaintiff informed them that he intended to move to compel compliance with the subpoena. (*Id.*). In particular, IDOC was informed that Plaintiff intended to move to compel production of IDOC's prison blueprints and schematics. (*Id.*).

On August 14, 2025, shortly after learning of Plaintiff's intention to move to compel the third-party contractors, IDOC sent a written objection to Plaintiff's counsel. (*Id.* ¶ 12). IDOC objected to any attempt by Plaintiff or his counsel to obtain prison blueprints and schematics. (*Id.* at Ex. 4). IDOC pointed out that state law prohibits the disclosure of prison blueprints and schematics, that disclosing such information is unduly burdensome for creating unnecessary safety and security risks, that courts in the Ninth Circuit have held that prison blueprints should not be disclosed in litigation, and that IDOC objected to Plaintiff's attempts to obtain prison blueprints and schematics before he served the subpoenas. (*Id.*).

Counsel for the parties had a telephonic meet and confer on August 18, 2025 regarding the subpoenas. (*Id.* ¶ 13). At the meeting, Defendants' counsel asked Plaintiff's counsel for what relevance they thought the information may have. Plaintiff's counsel indicated that it was relevant to lethal injection because the renovations to F Block may affect what may be seen at an execution.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF OBJECTION TO PLAINTIFF'S THIRD-PARTY CONTRACTOR SUBPOENAS AND MOTION TO QUASH AND FOR PROTECTIVE ORDER - 4**

(*Id*.). Plaintiff's counsel also indicated that it was relevant to Plaintiff's proffered alternative method of firing squad. (*Id*.). Defendants' counsel offered a site inspection after construction was finished as an alternative and asked if that would remedy the present dispute. (*Id*.). Plaintiff's counsel responded by saying that they appreciated the idea of a site inspection and would now be asking for that as well. (*Id*.). But he also said that they still want the blueprints and schematics. (*Id*.).

## LEGAL STANDARD

The Court has broad discretionary power to control discovery. *Little v. Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Rule 45 *requires* that the Court quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies" or "subjects a person to undue burden." Fed. R. Civ. P. 45(3)(A). Further, Rule 45 *permits* the Court to quash a subpoena if it requires disclosing confidential information. Fed. R. Civ. P. 45(3)(B)(i).

Protective orders are authorized under Rule 26(c). Under that Rule, the Court may, for good cause, enter a protective order "forbidding the disclosure of discovery," "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters," or require that "trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1). Justifications for a protective order include protecting against "annoyance, embarrassment, oppression, or undue burden or expense." *Id*.

## ARGUMENT

### 1. Defendants have standing to object to Plaintiff's third-party subpoenas.

"Although typically only the recipient of a subpoena has standing to assert objections, a party has standing to challenge a subpoena issued to third parties where its own interests may be

implicated." *Cabell v. Zorro Prods., Inc.*, 294 F.R.D. 604, 607 (W.D. Wash. 2013) (citation modified); (*see also* Dkt. 97, pp. 3-4 (the Court describing circumstances where a party has standing to quash a third-party subpoena)).

Plaintiff intends to obtain blueprints and schematics of IDOC's prisons. IDOC has a direct interest in the matter because it is information about IDOC's secure facilities. In fact, Plaintiff originally requested that material from Defendants, but Defendants objected to disclosing such information. Instead of then moving the Court for relief against Defendants, Plaintiff tried to get the information a different way: third-party subpoenas that facially appeared directed at unrelated communications.

IDOC's direct interest in the matter is also exemplified by Idaho law. Idaho Code § 74-105(4)(a) provides that exceptions to Idaho's public records laws include records "of which the public interest in confidentiality, public safety, security and habilitation clearly outweighs the public interest in disclosure as identified pursuant to the authority of the state board of correction…." In turn, IDAPA 06.01.01.108.04(a), provides that in "order to protect information consistent with the public's interest in confidentiality, public safety, security, and the habilitation of offenders," records "that define specific building design details, such as facility blueprints," and records "that define site-specific security operations, such as facility security procedures, site-specific post orders, and security camera locations, numbers, or recordings" are not to be disclosed outside of the Department. These provisions show that IDOC—and therefore Defendants—have a direct stake in the protecting the requested information from disclosure.

Defendants have standing to object to Plaintiff's third-party subpoenas.

**2. Even if Defendants did not have standing to object to the subpoenas, they can move for a protective order prohibiting the disclosure of the material or can move to quash.**

A party "can move for a protective order in regard to a subpoena issued to a nonparty if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26." *Nelson-Ricks Cheese Co. v. Lakeview Cheese Co., LLC*, No. 4:16-CV-00427-DCN, 2017 WL 4839375, at *3 (D. Idaho Oct. 26, 2017) (citation modified, collecting sources). Parties can also move to quash third-party subpoenas. *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005). A party has standing under Rule 26 "when it believes that its own interest is jeopardized by discovery sought from another." *Nelson-Ricks*, 2017 WL 4839375, at *3 (citation modified).

Disclosure of IDOC prison blueprints and schematics are matters squarely within IDOC's interest. IDOC has a personal stake in protecting the information because it concerns IDOC's prisons and disclosure of the material negatively impacts safety and security for which IDOC is responsible. (Decl. Derrick, ¶¶ 3-8). In turn, Defendants have a personal stake in the matter because they are IDOC's Director, Chief, Division of Prisons, and Warden of the Idaho Maximum Security Institution ("IMSI") who are all being sued in their official capacities.

Further, disclosure of this information unduly burdens IDOC's interests because it creates unnecessary safety and security risks for IDOC, its staff, its residents, and the general public. (Decl. Derrick, ¶¶ 3-8); *see also Manriquez v. Huchins*, No. 1:09-CV-00456-OWW, 2011 WL 3290165, at *20 (E.D. Cal. July 27, 2011) (holding that prison was not required to disclose prison blueprints because it negatively affected the institution's interests in "maintaining the safety and security of the institution."); (*see also infra* § 4 (discussing why the blueprints and schematics cannot be disclosed)).

Defendants can properly move for a protective order or to quash the subpoenas because

their own interests are jeopardized by disclosure of the information Plaintiff seeks from the third-party contractors.

### 3. Plaintiff's attempt to obtain blueprints and schematics from third-party contractors is procedurally improper.

The scope of discovery through a subpoena is the same scope as defined by Rule 26. *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022) (collecting sources). In addition to Rule 26's discoverability factors, people subjected to third-party subpoenas are also "entitled to special consideration[s]." *Id.* (collecting sources). These considerations make it "quicker to find that the burden or expense in question is undue and offer protection as needed to alleviate it." *Id.* (citation omitted). "As part of this inquiry, the Court may evaluate whether information requested through a non-party subpoena is readily available from a party." *Id.* at 82 (collecting sources).

"[W]hen an opposing party and a non-party both possess documents, the documents should be sought from the party to the case." *Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (citing *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007)). "Consequently, where plaintiffs have not shown they attempted to obtain documents from the defendant in an action prior to seeking the documents from a non-party, a subpoena duces tecum places an undue burden on a non-party." *Mi Familia Vota*, 343 F.R.D. at 95 (collecting sources).

Here, while Plaintiff vaguely requested the blueprints and schematics from Defendants, Defendants objected to disclosure of any such material. (8th Decl. Smith, ¶ 6). Plaintiff chose not to meet and confer with Defendants about the topic, to engage with the Court for an informal mediation of the issue, or move to compel the production of the materials. (*Id.* ¶ 7). Instead, Plaintiff chose to send out broad and vague subpoenas to third parties for the information. That's procedurally improper. If Plaintiff wanted to try and overcome Defendants' objections, he was

required to move to compel the production of the blueprints and schematics. But he did not do that.

As the Idaho Supreme Court has explained, "discovery should not be a game played by lawyers." *Gem State Roofing, Inc. v. United Components, Inc.*, 168 Idaho 820, 829, 488 P.3d 488, 497 (2021). Plaintiff should not be rewarded for skirting around the proper discovery rules to try and obtain copies of prison blueprints and schematics where he chose not to litigate the issue with Defendants. The Court should quash or modify Plaintiff's third-party subpoenas or enter a protective order prohibiting Plaintiff from obtain IDOC's prison blueprints and schematics.

**4. IDOC's blueprints and schematics are beyond the scope of discovery.**

Rule 26 provides the scope of discovery. *Mi Familia Vota*, 343 F.R.D. at 81. It provides that parties "may obtain discovery regarding any [1] nonprivileged matter that is [2] relevant to any party's claim or defense and [3] proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). IDOC's prison blueprints and schematics do not fall within any of these requirements.

**4.1. The information is not relevant to Plaintiff's as applied Eighth Amendment claim.**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. If evidence does not meet this test, it is not discoverable. Fed. R. Civ. P. 26(b)(1).

Plaintiff has made one claim in this suit: that a lethal injection of pentobarbital violates his Eighth Amendment rights. (Dkt. 153, pp. 17–40). Plaintiff's claim is governed by the *Baze-Glossip-Bucklew* test, which provides that a state's chosen method only violates the Eighth Amendment if it is "sure or very likely" to cause superadded pain in comparison to a feasible readily implemented alternative that significantly reduces the substantial risk of severe pain. *Glossip v. Gross*, 576 U.S. 863, 877 (2015). This test does not care about prison logistics. Where the question is

whether pentobarbital violates the inmate's Eighth Amendment rights, all that matters is the effect pentobarbital will have on the inmate when injected.

IDOC's blueprints and schematics are not relevant to this case. Prison logistics and layouts have no bearing on Plaintiff's as applied claim. It does not matter how IDOC's prisons are constructed or what the logistics of the prisons' rooms are. All that matters for Plaintiff's claim is what effect pentobarbital has on his identified health conditions. (*See* 8th Decl. Smith, Ex. 6, p. 2 (Plaintiff's interrogatory response identifying coronary artery disease, diabetes, hypertension, and edema as the health conditions he bases his claim on)).

Plaintiff also seeks blueprints for all of IDOC's facilities. But Plaintiff's claim cannot reasonably be said to have any connection to any building besides F Block at IMSI, the building where executions occur. Plaintiff's subpoenas are overbroad and seek irrelevant information.

At the meet and confer, Defendants' counsel asked Plaintiff's counsel why they thought the material was relevant. *See also Mi Familia Vota*, 343 F.R.D. at 81 (explaining that the "party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)"). Plaintiff's counsel said that they *think* that the blueprints and schematics may go to what can be seen at an execution. But that is not a consideration of the *Baze-Glossip-Bucklew* test. So that contention cannot save Plaintiff's subpoenas.

Plaintiff's counsel also indicated that the information may be relevant to Plaintiff's proffered alternative, firing squad. But that's wrong too. The alternative method inquiry asks if there is a feasible readily implemented alternative that significantly reduces a substantial risk of severe pain. *Glossip*, 576 U.S. at 877. Prison blueprints do not make any of those requirements more or less probable. And Plaintiff was already asked to fully detail his alternative, which he did. (8th Decl. Smith, Ex. 5).

Prison blueprints and schematics are beyond the scope of discovery because they are not relevant to his as applied method-of-execution claim.

## 4.2. Requiring disclosure is disproportionate to Plaintiff's needs.

The proportionality inquiry considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This analysis was added to Rule 26 in 2015. *See In re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016) (discussing Rule 26's 2015 amendment).

Providing prison blueprints and schematics would be unduly burdensome. (Decl. Derrick, ¶¶ 3–8). Divulging this type of information poses extreme security risks. *See Allen v. Eckard*, No. 1:17-CV-996, 2019 WL 1099001, at *3 (M.D. Pa. Mar. 8, 2019) (agreeing and collecting sources holding the same). Disclosing this type of information would allow people who are not employed by IDOC to learn about and locate potential escape routes and, conversely, ways to smuggle weapons and other contraband into the prisons. (Decl. Derrick, ¶ 4). The blueprints and schematics detail the site-specific security operations, the communication and surveillance systems (including where the systems are located and number of them), and the strength of the construction materials used throughout IDOC prisons. (*Id.*). Blueprints and schematics show the specific building design details, the location and pathways of ventilation ducts and potential crawl spaces. (*Id.*). The material will also show what is captured by security systems and cameras and where potential dead zones are. (*Id.*).

Blueprints and schematics can be used by prisoners and non-incarcerated people to learn the best possible means of escape, as well as potential ways to smuggle in and hide weapons and

other contraband. (*Id*.). Disclosure of the blueprints and schematics will also endanger prisoners, IDOC staff, and the general public because it will lead to circumventing law enforcement efforts aimed at preventing escapes and impermissible contraband, as well as negatively affecting the security and safety of the institution. (*Id*.). Likewise, it will lead to the escape of inmates which creates direct and significant security and safety risks for the general public. (*Id*.).

Courts have consistently rejected inmates' requests for blueprints and schematics of prisons by acknowledging the facially apparent security and safety risks in disclosure. For example, the Ninth Circuit rightly recognized that "prison officials correctly determined that the possession of prison floor plans posed a threat to the safety of the prison" in *Schroeder v. Kaleo-Lum*, 931 F.2d 61, at *2 (9th Cir. 1991) (unpublished) (citation omitted).

District courts in the Ninth Circuit have also determined that prison blueprints are not subject to disclosure under the Federal Rules of Civil Procedure. *See Manriquez*, 2011 WL 3290165, at *20 (explaining that the prison was not required to disclose prison blueprints because of "compelling interest[s] in maintaining the safety and security of the institution" (collecting sources)); *Gilmore v. Lockard*, No. 1:12-CV-00925-SAB (PC), 2017 WL 678278, at *4 (E.D. Cal. Feb. 16, 2017) (permitting the prison to withhold prison schematics because of the "potential dangers associated with inmates possessing photographs and diagrams of a particular prison"); *Scott v. Palmer*, No. 1:09-CV-01329-SKO PC, 2015 WL 1637781, at *4 (E.D. Cal. Apr. 13, 2015) (denying motion to compel for physical prison layout details, in part, because of "the security risk associated with the possession of such physical prison layout details by inmates").

Federal courts outside of the Ninth Circuit have also determined that prison blueprints and schematics are not subject to disclosure. For instance, in *Murray v. Albany Cnty. Bd. of Cnty. Comm'rs*, the Tenth Circuit explained that the underlying district court denied the plaintiff's

motion to compel which sought jail blueprints "because giving plaintiff blueprints of the jail could seriously compromise its security." 211 F.3d 1278 (10th Cir. 2000). In *Allen v. Eckard*, the court permitted the prison to withhold the "floor plan or diagram of the cell block" because "disclosure of this kind of document poses a great security risk that outweighs any potential relevance to the plaintiff's case." No. 1:17-CV-996, 2019 WL 1099001, at *3 (M.D. Pa. Mar. 8, 2019). In *Coleman v. Danforth*, the court did not require disclosure of "prison schematics" because of the "valid concern[s] regarding the security implications of providing prison schematics to inmates." No. CV 316-095, 2017 WL 5490918, at *5 (S.D. Ga. Nov. 15, 2017). Likewise, in *Casey v. Pallito*, the court affirmed the magistrate's denial of a motion to compel which sought "photos, diagrams, and/or layouts" of the prison because doing so "would pose security risks." No. 5: 12-CV-284, 2016 WL 96157, at *6 (D. Vt. Jan. 7, 2016). In *Rhoads v. Miller*, the court held that prison blueprints were not subject to disclosure because of the "significant security issues" associated with disclosure. No. 07-CV-306-D, 2008 WL 11411510 (D. Wyo. July 28, 2008). In *Murray v. Palmer*, the court held that the prison was not required to provide prison blueprints in part because of "security concerns." No. 903-CV-1010 DNH/GHL, 2006 WL 2516485, at *6 (N.D.N.Y. Aug. 29, 2006). And in *Jackson v. Acevedo*, the court denied a motion to compel a "map or blueprint" of the prison due to "security concerns." No. 09-1401, 2011 WL 8950, at *3 (C.D. Ill. Jan. 3, 2011).

State courts have also held that prison blueprints and schematics are not subject to disclosure. *See Procunier v. Super. Ct.*, 110 Cal. Rptr. 531, 531 (Cal. App. 1st Dist. 1973), *disapproved of on other grounds by Shepherd v. Super. Ct.*, 550 P.2d 161 (Cal. 1976) (holding that "building plans, lay-out plats, maps and diagrams that depict [prison facilities]" are not subject to disclosure because of "overwhelming public and governmental interest[s]" in prison security and safety of the public); *Rosario v. New York*, 10 Misc. 3d 960, 963, 805 N.Y.S.2d 498 (Ct. Cl. 2005) (denying

motion to compel for prison blueprints because the of "security concerns" and the prison let the plaintiff visit the facility and view the area); *Ohio v. Sanders*, No. C-960253, 1998 WL 212756, at *3 (Ohio Ct. App. May 1, 1998), *aff'd*, 750 N.E.2d 90, (holding that disclosure of prison blueprints was not required for being "unreasonable and oppressive" because of "security risks" and "the confidential nature of the records").

Prison blueprints and schematics are not even subject to disclosure under federal law. Exemption 7(F) to the Freedom of Information Act exempts disclosure of information that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Federal courts in the Ninth Circuit have interpreted this exemption to prohibit disclosure of prison "physical security plans, blue prints, architectural floor plans, door and key lock specifications, ceiling plans, and any information regarding the internal physical structure of a BOP correctional facility." *Raher v. Fed. Bureau of Prisons*, No. CV-09-526-ST, 2011 WL 2014875, at *11 (D. Or. May 24, 2011). Federal courts outside of the Ninth Circuit have held the same. *See, e.g., Am. Civ. Liberties Union v. Fed. Bureau of Prisons* ("*ACLU*"), No. CV 20-2320 (RBW), 2022 WL 17250300, at *19–20 (D.D.C. Nov. 28, 2022) (holding that BOP correctly withheld prison blueprints, maps, and emergency plans because the material is "inherently sensitive and clearly subject to the protections of Exemption 7(F)").

Further, Plaintiff has access to any relevant information that would come from the blueprints and schematics because IDOC has agreed to let his counsel tour and inspect F Block after renovations are completed. (8th Decl. Smith, ¶ 13). Coincidently, because there are alternative ways for Plaintiff's counsel to learn of any relevant information about the building, it would be unduly burdensome for Plaintiff to be able to obtain prison blueprints and schematics. Likewise, there is no need for Plaintiff to get the blueprints or schematics because his counsel can inspect

the facility.

Disclosing IDOC's prison blueprints and schematics is disproportionate to Plaintiff's needs in this case. The blueprints and schematics are beyond the scope of discovery.

### 4.3. IDOC's blueprints and schematics are privileged.

By enacting Federal Rule of Evidence 501, "Congress manifested an affirmative intention not to freeze the law of privilege," but instead to "provide the courts with the flexibility to develop rules of privilege on a case-by-case basis and to leave the door open to change." *Trammel v. U.S.*, 445 U.S. 40, 47 (1980) (citation modified). Federal courts enforce privileges in "light of reason and experience." Fed. R. Evid. 501. To determine "reason and experience," courts can look to "the policy decisions of the states." *Jaffee v. Redmond*, 518 U.S. 1, 13 (1996) (citing *Trammel*, 445 U.S. at 48–50). This is because "state legislatures are fully aware of the need to protect the integrity of the factfinding functions of their courts" so "consensus among the states" supports recognizing a privilege. *Id*. It is thus "appropriate to treat a consistent body of policy determinations by state legislatures as reflecting both 'reason' and 'experience'" for Rule 501. *Id*. (discussing *Funk v. U.S.*, 290 U.S. 371, 376–81 (1933)).

States uniformly protect prison blueprints and schematics from disclosure under state laws and regulations. *See* Ala. Code § 36-12-40(a); Alaska Stat. Ann. §§ 40.25.120(4), (6), (10); Ariz Rev. Stat. § 39-103(B); Cal. Gov't Code Ann. § 7922.000; 1990 Ops. Cal. Att'y Gen. No. 90-303; Colo. Rev. Stat. Ann. § 24-72-204(2)(a)(VII); Conn. Gen. Stat. Ann. §§ 1-210(18), (19); Del. Code Ann. tit. 29, §§ 10002(13), (17); D.C. Code Ann. § 2-534(10); Fla. Stat. Ann. §§ 119.071(3), 286.0113; Ga. Code Ann. § 50-18-72(25)(A); Haw. Rev. Stat. Ann. § 92F-13; Idaho Code § 74-105; IDAPA 06.01.01.108.04; 5 Ill. Comp. Stat. Ann. §§ 140/7 (1)(e), (1)(k), (1)(v); Ind. Code Ann. § 5-14-3-4(23)(B); Iowa Code Ann. §§ 22.7(15), (50); Kan. Stat. Ann. §§ 45-221(a)(12),

(a)(45); Ky. Rev. Stat. Ann. § 61.878(m); La. Stat. Ann. §§ 44:3(A)(3), 44:4(40); Me. Rev. Stat. Ann. tit. 1, §§ 402(3)(L), (Q); Md. Gen. Provis. §§ 4-352(a)(2); Mass. Gen. Laws Ann. ch. 4, § 7(26)(n); Mich. Comp. Laws Ann. §§ 15.243(1)(c), (1)(u), (1)(y); Minn. Stat. Ann. § 13.37(2)(a), 13.85(3); Mo. Rev. Stat. Ann. §§ 610.021(19)–(21); Mont. Code Ann. § 2-6-1003(2); Neb. Rev. Stat. Ann. § 84-712.05(9); N.J. Stat. Ann. § 47:1A-1.1; N.Y. Pub. Off. Law § 87(2)(f), (2)(g), (2)(i); N.C. Gen. Stat. Ann. § 132-1.7; N.D. Cent. Code Ann. § 44-04-24; Ohio Rev. Code Ann. §§ 149.433(B); Okla. Stat. Ann. tit. 51, § 24A.28; Or. Rev. Stat. Ann. § 192.345(23); Or. Rev. Stat. Ann. §§ 192.355 (5), (25); Pa. Stat. Ann. tit. 65, § 67.708(b)(3); 38 R.I. Gen. Laws Ann. §§ 38-2-2(D)–(F); S.D. Codified Laws §§ 1-27-1.5(8), (23); S.D. Codified Laws § 1-27-1.13; Tenn. Code Ann. § 10-7-504(i); Tex. Gov't Code Ann. §§ 418.181, 418.182, 552.108; Tex. Atty. Gen. Op. ORD 413 (1984); Utah Code Ann. § 63G-2-106; Vt. Stat. Ann. tit. 1, § 317(32); Va. Code Ann. §§ 2.2-3705.2(14); Wash. Rev. Code Ann. § 42.56.420(2); W. Va. Code Ann. § 29B-1-4(19); Wis. Stat. Ann. § 19.36(9); Wyo. Stat. Ann. § 16-4-203(b)(vi). The state consensus provides a basis for recognizing a federal privilege.

Further, the federal government has exempted prison designs and schematics from disclosure under FOIA laws. As stated, federal courts within the Ninth Circuit have determined that prison records are exempt from disclosure under FOIA exemptions. *See Raher*, 2011 WL 2014875, at *11. Courts outside of the Ninth Circuit have held the same. *E.g., ACLU*, 2022 WL 17250300, at *19–20.

The consensus of state and federal law protecting prison blueprints and schematics establishes that there is a federal privilege under Rule 501 to protect the information.

The *Jaffee* Court also explained that the privilege must serve public ends. 518 U.S. at 11. This is met here. The states and federal government have enacted these protections to ensure safety

and protection for their institutions, employees, the public, and incarcerated persons. Courts have recognized and accepted these as sufficient justifications for not disclosing the information. *E.g.,* *Schroeder*, 931 F.2d at *2 (explaining that "prison officials correctly determined that the possession of prison floor plans posed a threat to the safety of the prison"); *Manriquez*, 2011 WL 3290165, at *20 (explaining that prison need not disclose prison blueprints because of safety and security); *Scott*, 2015 WL 1637781, at *4 (permitting prison to keep prison layout details confidential because of security risks); *Allen*, 2019 WL 1099001, at *3 (explaining that disclosure of prison floor plans and diagrams presents "great security risk"); *Coleman*, 2017 WL 5490918, at *5 (recognizing that disclosure of prison schematics presents security issues); *Casey*, 2016 WL 96157, at *6 (explaining that disclosure of prison diagrams and layouts "would pose security risks").

There is a consensus of state and federal laws protecting prison blueprints and schematics from disclosure, and the public's interest is served by protecting the information. Therefore, Rule 501 recognizes a federal privilege to protect prison blueprints and schematics from disclosure.

Additionally, the state secrets privilege applies under *U.S. v. Reynolds*, 345 U.S. 1 (1953). This privilege "encompasses a privilege against revealing military or state secrets, a privilege which is well established in the law of evidence." *Mohamed v. Jeppesen Dataplan, Inc*., 614 F.3d 1070, 1079 (9th Cir. 2010) (citation modified). The *Reynolds* privilege "operates like any other evidentiary privilege: the privileged information does not come in and the case goes on without it." *Fazaga v. Fed. Bureau of Investigation*, 124 F.4th 637, 656 (9th Cir. 2024). The privilege has two requirements: proper assertion and that the material is privileged. *Id.* at 654–56.

The privilege is properly asserted here. To assert the privilege, there must "be a formal claim of the privilege, lodged by the head of the department which has control over the matter,

after actual personal consideration by that officer." *Id*. (citation omitted). Even though the official must make the assertion, she "cannot reasonably be expected personally to explain why each item responsive to a discovery request affects the national interest." *Fazaga*, 124 F.4th at 655 (citation modified, citing *Kasza v. Browner*, 133 F.3d 1159, 1169 (9th Cir. 1998)). This requirement is met here. (*See* Decl. Derrick, ¶¶ 3-8).

IDOC's prison blueprints are confidential. The state secrets privilege applies to various types of information, including information that if disclosed "would be inimical to national security." *Fazaga*, 124 F.4th 655 (citation omitted). Courts sustain the privilege claim if "from all the circumstances of the case, [] there is a reasonable danger that compulsion of the evidence will expose matters which, in the interest of national security, should not be divulged." *Id*. (citation modified, citing *Reynolds*, 345 U.S. at 10).

As discussed above, disclosure of IDOC's prison blueprints pose real and significant dangers to national security. *See also Ayyad v. Holder*, No. 05-CV-02342-WYD-MJW, 2014 WL 4747451, at *32 (D. Colo. Sept. 24, 2014) (explaining that "promoting the security of its prisons, correctional personnel and inmates" are matters of "national security"). Disclosure can lead to convicted persons (including capital inmates) escaping prison. Disclosure can also lead to weapons and other contraband being smuggled into the prison where they can be used in riots and other nefarious activity. And if inmates are able to escape IDOC's prisons, the public is directly at risk of attacks and other dangerous activities. Likewise, if prisoners use the material to escape, law enforcement can be harmed by violent attacks by these offenders when trying to re-apprehend the escaped convicts. Similarly, victims, judges, attorneys, and other people who the inmates may blame for their sentences and incarcerations are exposed to increased security and safety risks if inmates are able to escape. As a whole, national security is at risk if IDOC's prison blueprints and

schematics are subject to disclosure. Accordingly, the material is protected by the state secrets privilege.

Because IDOC's prison blueprints and schematics are privileged, they are not within the scope of discovery.

**5.   Even if the information were within the scope of discovery, Defendants are entitled to a protective order preventing Plaintiff from obtaining the information.**

A party seeking a protective order need only show good cause to protect the information. *In re Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011). This requirement just requires a showing that "specific prejudice or harm will result if the protective order is not granted." *Id.* (citation modified). This can be shown by either "specific examples" or "articulated reasoning." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

As discussed above, disclosing IDOC's prison blueprints and schematics would create extreme security and safety risks that are not needed. Courts around the country have recognized these risks and denied litigants' efforts to obtain these types of materials. Where the information is not relevant to Plaintiff's claim and IDOC has agreed to let his counsel inspect F Block after renovations are completed, there is no reason for Plaintiff to obtain prison blueprints and schematics. Defendants have articulated good cause for a protective order preventing Plaintiff from requesting or obtaining blueprints and schematics.

**6.   The Court should quash or modify the subpoena.**

The Court must quash a subpoena that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(3)(A). The Court may quash a subpoena if it requires disclosing confidential information. Fed. R. Civ. P. 45(3)(B).

As set forth above, disclosure of IDOC's prison blueprints and schematics would be unduly burdensome and present unneeded security and safety concerns. The information is also privileged

under Rule 501 because of the consensus of state and federal law.  The information is also privileged under federal common law because the disclosure of the material poses extreme national security risks. Therefore, under Rule 45(3)(A), the Court must quash or modify the subpoena to protect IDOC's blueprints and schematics from disclosure. Alternatively, the Court should quash or modify the subpoena to protect IDOC's blueprints and schematics from disclosure under Rule 45(3)(B) because the information is confidential.

## CONCLUSION

The Court should quash Plaintiff's subpoenas and enter a protective order prohibiting Plaintiff from obtaining copies of IDOC's prison blueprints and schematics.

Respectfully submitted this 27th day of August, 2025.

MOORE ELIA KRAFT & STACEY, LLP

*/s/ Tanner J. Smith*
Tanner J. Smith
Attorneys for Defendants

OFFICE OF THE ATTORNEY GENERAL

*/s/ Kristina M. Schindele*
Kristina M. Schindele
Deputy Attorney General
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of August, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jonah J. Horwitz
Christopher M. Sanchez
Federal Defender Services of Idaho
702 W. Idaho St., Ste. 900
Boise, Idaho 83702

Stanley J. Panikowski
Sarah E. Kalman
DLA Piper LLP
401 B St., Ste. 1700
San Diego, CA 92101

*Attorneys for Plaintiff*

☐ U.S. Mail, postage prepaid
☐ Hand Delivered
☐ Overnight Mail
☐ Facsimile Transmission
☒ E-Mail: Jonah_horwitz@fd.org, Christopher_m_sanchez@fd.org, stanley.panikowski@dlapiper.com

*/s/ Tanner J. Smith*
Tanner J. Smith