RAÚL LABRADOR
ATTORNEY GENERAL

Karin Magnelli (ISBN 6929)
Lead Deputy Attorney General
Kristina M. Schindele (ISBN 6090)
Deputy Attorney General
Idaho Department of Correction
1299 North Orchard St., Suite 110, Boise, Idaho 83706
Telephone: (208) 658-2094; Facsimile: (208) 327-7485
kmagnell@idoc.idaho.gov; krschind@idoc.idaho.gov

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
Tanner J. Smith (ISBN 12245)
MOORE ELIA KRAFT & STACEY, LLP
Post Office Box 6756, Boise, Idaho 83707
Telephone: (208) 336-6900; Facsimile: (208) 336-7031
mje@melawfirm.net; tanner@melawfirm.net

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRIC COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD R. PIZZUTO,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>JOSH TEWALT, et al.,<br><br>　　　　Defendants. | Case No. 1:21-cv-359-BLW<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER**<br>**(Dkt. 207)** |

COME NOW Defendants, by and through their undersigned counsel, and hereby submit their Opposition to Plaintiff's Motion to Modify Scheduling Order as follows:

### INTRODUCTION

Enforceable deadlines matter. Without enforceable deadlines, cases would drag on for years, decades, and in some cases, centuries. That is why the Federal and Local District Rules require the Court to set enforceable deadlines "as soon as practicable." Fed. R. Civ. P. 16(b)(2);

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 1**

*see also* Dist. Idaho Loc. Civ. R. 16.1. These deadlines allow the Court to "control or limit discovery in order to advance the progress of their trial dockets." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1027 (9th Cir. 2006). That's why "establishing a firm discovery cutoff date is commonplace" and "the enforcement of such an order should come as a surprise to no one." *Id*. Enforceable deadlines are particularly important here because the Court has a "responsibility to ensure that method-of-execution challenges to lawfully issued sentences are resolved fairly and expeditiously, so that the question of capital punishment can remain with the people and their representatives, not the courts, to resolve." *Barr v. Lee*, 591 U.S. 979, 981 (2020) (citation modified). Plaintiff asks that the Court disregard these directives. The Court should deny that invitation.

Without enforceable deadlines, this case will undoubtedly take up decades of litigation. This case is already almost four years old—even though it is on an "expedited" track. (*See* Dkts. 20, 22, 42, 43). Discovery was originally set to conclude in May 2022—over three years ago. (*See* Dkt. 22, p. 3). This case's deadlines have been pushed out fourteen times. Just three months ago, on a joint proposal from the parties, the Court set the following deadlines:

- Fact discovery and Plaintiff's expert disclosures: Tuesday, September 2, 2025.
- Defendants' expert disclosures: Monday, September 8, 2025.
- Plaintiff's rebuttal expert disclosures: Monday, September 22, 2025.
- Expert discovery: Monday, October 6, 2025.
- Dispositive motion deadline: Friday, October 31, 2025.

(Dkt. 198; *see also* Dkt. 197). Plaintiff now asks to push the deadlines out for almost another year. That's excessive and unnecessary. This case must end at some point. The parties can move towards resolution now. The Court should deny Plaintiff's Motion and enforce the agreed-to deadlines.

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 2**

**ARGUMENT**

Scheduling orders "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The good cause inquiry is focused on "the moving party's reasons for seeking modification" and "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "The key determination is whether the subject deadline 'cannot reasonably be met despite the diligence of the party seeking the extension.'" *Desio v. State Farm Mut. Auto. Ins. Co*., 339 F.R.D. 632, 638 (D. Nev. 2021) (quoting *Johnson*, 975 F.2d at 609). "If that party was not diligent, the inquiry should end." *Johnson*, 975 F.2d at 609. In addition to diligence, the Court can also look to other factors like prejudice to the non-moving party. *Id*. The party seeking modification bears the burden of establishing good cause. *Desio*, 339 F.R.D. at 638.

1. **Plaintiff has not demonstrated that the deadlines need to be extended despite his diligence.**

Courts in the Ninth Circuit have articulated a three-step inquiry to determine good cause under Rule 16. *Morgal v. Maricopa Cnty.*, 284 F.R.D. 452, 460 (D. Ariz. 2012). Under this inquiry, the Court looks to: (1) whether the movant "was diligent in assisting the court in creating a workable Rule 16 order;" (2) if "his noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding his diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference;" and (3) if "he was diligent in seeking amendment of the Rule 16 order, once it became apparent that he could not comply with the order." *Id.* (citation modified).

The second factor is dispositive here. Plaintiff's entire argument boils down to one point: he thinks he *may* need additional time to *potentially* conduct more discovery in the future. But Plaintiff does not mention anywhere in his 20 pages of briefing why that discovery could not have

been completed within this case's four-year lifespan. He overlooks how his reasons for wanting the information relevant to his claim have existed for the last four years, and anything predicated on recent events has existed for at least a year-and-a-half (since Creech's February 2024 execution attempt). Plaintiff has not been diligent in pursuing discovery; he has been careless. But "carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson*, 975 F.2d at 609.

Plaintiff waited years to serve the discovery he bases his Motion on instead of requesting it at a reasonable time. His reasoning for doing so is evident: to delay his sentence for as long as possible. *See Woodard v. Hutchins*, 464 U.S. 377, 380 (1984) (Powell, J., concurring) (noting the "pattern" of similar tactics by capital inmates to delay their death sentence). Plaintiff's approach mirrors delay tactics courts have cautioned against. *E.g., Ramirez v. Collier*, 595 U.S. 411, 451 (2022) (Thomas, J., dissenting) (collecting sources and discussing various ways capital inmates and their counsel "employ any means available to stave off their sentences"). The Supreme Court has established that the Court has a "responsibility" to protect against this. *Barr*, 591 U.S. at 981.

Plaintiff is on death row for murders committed 39 years ago. *See Pizzuto v. Idaho* ("*Pizzuto III*"), 146 Idaho 720, 723, 202 P.3d 642, 645 (2008). He has been using litigation for nearly 40 years to delay his sentence. He is now trying to use discovery to push his sentence out even further. That should not be condoned. This case needs to come to an end. Leaving the deadlines in place is the best way to do that.

Plaintiff argues that his extensive discovery requests show diligence. But discovery volume does not equal diligence. Plaintiff has served 607 requests for admission, 30 requests for production, and 48 interrogatories. He has deposed multiple people and arranged for more people to be deposed. He has conducted multiple site inspections. He has issued subpoenas to governmental

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 4**

agencies, other states for information about their execution practices, and non-parties for information that has no bearing on his claim. Plaintiff fails to appreciate how his roughly 700 different discovery requests show that there is no further need for additional discovery.

Plaintiff's claim is premised on contentions regarding how pentobarbital may interact with his medical conditions. *But see Barr*, 591 U.S. at 981 (describing how claims like Plaintiff's are without merit). Ultimately, this case comes down to a "battle of the experts." *See id.* (explaining how pentobarbital claim was contingent on expert testimony). Whatever fact discovery was needed has been accomplished in the past four years and roughly 700 different discovery requests.

Plaintiff also mistakes the parties' prior agreements. Plaintiff contends that discovery must stay open because there are depositions scheduled after the current deadline (the Medical Team Leader and Chief of Prisons Neville). While true, Defendants have already agreed to those depositions taking place regardless of the deadline.

And while Plaintiff tries to argue that he cannot challenge Defendants' confidentiality objections made at the Central Line Volunteer's, Medical Team Leader's, or Chief Neville's depositions without keeping discovery open, that overlooks the parties' agreement regarding the objections.[1] The Court created a system where Defendants can object to confidentiality at the depositions and the witness is not required to respond. (Dkt. 181, pp. 6–7). The Court already determined that if Plaintiff wants to challenge those objections, he can move to compel. (*Id.*). If the Court agrees with Plaintiff on the objection, that corresponding deposition can be reopened for Plaintiff to get those select responses. The parties then agreed to the dates for the Central Line Volunteer,

---

[1] Defendants do not concede that Plaintiff can reopen Mr. Richardson's or Mr. Valleys' depositions to re-examine them on objected-to questions after the discovery deadline because he has had ample time beforehand to do so but chose not to.

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 5**

Medical Team Leader, and Chief Neville's depositions.[2] Due to the dates of the depositions, Defendants recognize and agree that if Plaintiff wants to challenge objections made at these depositions, he can regardless of the discovery deadline, so long as the challenge to the objection is made at a reasonable time.

And to the extent that Plaintiff argues that his recent subpoenas warrant extension, he is wrong.[3] Plaintiff chose to wait years before issuing any of these subpoenas. Whatever relevant reason, if any, he may have for subpoenaing these states has existed since before he filed suit. He knew, or at least should have known, that his subpoenas to other states asking for all information related to the identity of their execution chemical would raise objections. In fact, he knows that he is not entitled to this information because the Court already made that determination as to Idaho's execution chemical. (*See, e.g.,* Dkt. 81, p. 24 (holding that it is unduly burdensome for state to disclose identity of supplier)). He cannot use his appeals of other Federal Court's denials of his motions to compel as a basis to delay his death sentence any longer. *See In re: Subpoena Issued to Tenn. Dep't of Corr. by Pizzuto* ("*In re: Subpoena*"), No. 3:25-mc-0003, Dkt. 15 (M.D. Tenn. July 23, 2025) (order denying Plaintiff's motion to compel and describing how the subpoenas are attempts to identify the people involved in executions).[4]

Likewise, his subpoenas to IDOC's third-party construction contractors cannot be used as another stalling device. Through these subpoenas, Plaintiff is trying to obtain IDOC's prison blueprints and schematics. As set forth in Defendants' objection to these subpoenas, this is improper

---

[2] The parties agreed to reschedule Chief Neville's deposition because she had a medical emergency. The parties also agreed to reschedule the Medical Team Leader's deposition because Defendants' counsel's mother was transitioning to end of life the week of the deposition and passed away the night before it was scheduled. The parties agreed that these depositions would still occur regardless of the discovery deadline.
[3] Copies of Plaintiffs' subpoenas are attached as **Exhibit 2**.
[4] Attached as **Exhibit 1**.

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 6**

because the information is not subject to disclosure because of the facially apparent security and safety issues associated with disclosure.[5] *See also* Idaho Code § 74-105(4)(a); IDAPA 06.01.01.108.04; *Schroeder v. Kaleo-Lum*, 931 F.2d 61, at *2 (9th Cir. 1991) (unpublished) (acknowledging the security and safety risks associated with disclosure of prison blueprints).

Plaintiff's claim that Defendants have mishandled the discovery process is wrong. Plaintiff tries to fault Defendants for exercising their right to object to his discovery requests because the Court overruled *some* of Defendants' objections. But Plaintiff overlooks that objecting to discovery is a proper tool under the Federal Rules. Fed. R. Civ. P. 30(c)(2), 33(b), 34(b), 36(a)(3), (5). He also overlooks that the Court has sustained some of Defendants' objections and has denied some of *his* motions to compel. (*See* Dkt. 88, pp. 24, 27–28; Dkt. 123, p. 8). And while Plaintiff tries to point the finger at Defendants for appealing one of the Court's discovery orders, he overlooks that the Ninth Circuit determined it was a proper appeal. *See Pizzuto v. Tewalt* ("*Pizzuto VI*"), 136 F.4th 855, 867 (9th Cir. 2025) (holding that the appeal was properly brought under the collateral order doctrine). Most notably, Plaintiff overlooks the fact that these objections, discovery motions, and the appeal have given him additional time to pursue discovery. (*See, e.g.,* Dkt. 150 (order staying all deadlines pending appeal)).

Additionally, while Plaintiff tries to chastise Defendants' counsel for not being able to locate a signed purchase order, he overlooks that Defendants' counsel have diligently and

---

[5] As set forth in Defendant's Objection to Plaintiff's Third-Party Subpoenas and Motion to Quash and for Protective Order, IDOC objected to Plaintiff's attempts to obtain prison blueprints and schematics months before he issued his subpoenas. Plaintiff never disputed that objection, asked for a meet and confer regarding the objection, or otherwise moved to compel disclosure of IDOC's prison blueprints and schematics from IDOC. IDOC was not aware that Plaintiff was trying to use third-party subpoenas to obtain IDOC's prison blueprints and schematics until it was contacted by one of the contractors who notified IDOC that Plaintiff's counsel had a meet and confer with them and said that he intends to move to compel production of IDOC's prison blueprints and schematics from the third-party contractor.

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 7**

consistently been looking for the document but for whatever reason have not been able to locate it. Defendants' counsel continue to look for the document and will provide it if located. Regardless, the purchase order issue is not a reason for pushing out discovery because of Defendants' ongoing duty to supplement encompasses the issue.

Plaintiff's attempts to create confusion with the date a proposed order was emailed to the Court in Pizzuto's multiple attempts case, *Pizzuto v. Tewalt* ("*Pizzuto V*"), 1:23-cv-00081-BLW, is misplaced. Plaintiff overlooks the procedural history of that case and his other challenges. In that case on March 9, 2023, Pizzuto moved for a preliminary injunction. *Pizzuto V*, 1:23-cv-00081-BLW, Dkt. 10 (D. Idaho Mar. 9, 2023). The defendants in *Pizzuto V* filed their non-opposition to Pizzuto's motion on August 31, 2023, because:

1. The Court in *Pizzuto v. Richardson* ("*Pizzuto IV*"), 1:22-cv-00452-BLW, had entered an order granting Pizzuto's application for a stay of execution. Based on the stay entered in *Pizzuto IV*, the State of Idaho could not seek a death warrant for Pizzuto at the time the non-opposition or proposed order were submitted in *Pizzuto V*.

2. On August 1, 2023, the Court in *Pizzuto V*, denied the defendants' motion to dismiss Pizzuto's Eighth Amendment multiple attempts claim.

3. On August 3, 2023, the Court in *Pizzuto V*, contacted the parties to schedule a hearing on Pizzuto's motion for preliminary injunction. The defendants in *Pizzuto V* submitted that filing their non-opposition to a preliminary injunction at that stage of the litigation presented an efficient method to address Pizzuto's claim in made in *Pizzuto V*.

*Pizzuto V*, 1:23-cv-00081-BLW, Dkt. 10. On October 10, 2023, defendants counsel in *Pizzuto V* submitted via email a proposed order (in Word format) to grant Pizzuto's motion for preliminary injunction. At the time, IDOC did not have the present ability to execute Pizzuto. Nothing in the

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 8**

proposed order was false. Thus, while Plaintiff would like to fabricate nefarious conduct on Defendants' counsel, his contentions are nothing more than unfounded speculation that cannot be the bases of extending discovery in this case. Further, Plaintiff's argument is based on the timing of Thomas Creech's execution warrant, which IDOC is not responsible for acquiring and otherwise does not affect Plaintiff's execution or his claims. (*See also* Dkt. 137 (ordering denying Plaintiff's motion to consolidate his case with Creech's method-of-execution claim)).

Plaintiff is trying to delay his execution.[6] The Supreme Court has established that the Court must protect against these types of unnecessary delays. *E.g., Barr*, 591 U.S. at 981; *see also Ramirez*, 595 U.S. at 451 (Thomas, J., dissenting) (collecting sources). Plaintiff has not shown the diligence required to establish good cause to modify the parties' agreed-to discovery deadlines. The Court should deny Plaintiff's Motion.

---

[6] Plaintiff has also used extensive discovery to identify the alleged manufacturers of IDOC's execution chemical. *See In re: Subpoena*, No. 3:25-mc-0003, Dkt. 17 (M.D. Tenn. July 23, 2025) (attached as **Exhibit 3**). To do so, Plaintiff used the material the Court recently compelled Defendants to provide in Dkt. 199 about whether the manufacturer of IDOC's chemical opposes its products being involved in executions, taken together with the other information Plaintiff has learned through discovery in this case. (*See* Ex. 3, pp. 6–7 (Pizzuto detailing how he made the identification); Dkt. 199, pp. 9–11 (the Court compelling disclosure)). This is the same type of information that has made capital punishment impossible to carry out in the past. *See Glossip v. Gross*, 576 U.S. 863, 869–71 (2015) (the Supreme Court explaining how executions were impossible to carry out because of the pressure campaigns against those involved in the process); *see also* Mary D. Fan, *The Supply-Side Attack on Lethal Injection and the Rise of Execution Secrecy*, 95 B.U. L. Rev. 427, 436–41 (2015) (same). Thus, Defendants position about disclosure of the information being unduly burdensome was correct because Plaintiff used the information to identify IDOC's alleged manufacturers. Plaintiff's ability to use the information to identify the alleged manufacturer also shows why the *Martin v. Ward* possibility test should be adopted to evaluate undue burden under Rule 26. No. 1:18-CV-4617-MLB, 2021 WL 1186749, at *9 (N.D. Ga. Mar. 30, 2021) (allowing the state to withhold "any information that *could possibly* identify any entity or person involved in [executions]" (italics added)).

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 9**

**2. Extending discovery would prejudice Defendants, Plaintiff's victims, and the public.**

The "state and the victims of crime have an important interest in the timely enforcement of a sentence." *Ramirez*, 595 U.S. at 430 (quoting *Hill v. McDonough*, 547 U.S. 573, 584 (2006)); *see also Bucklew v. Precythe*, 587 U.S. 119, 168 (2019) (Breyer, J., dissenting) ("Undue delays in death penalty cases frustrate the interests of the State and of surviving victims, who have 'an important interest' in seeing justice done quickly."). "Endless delay harms the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." *Ramirez*, 595 U.S. at 456 (Thomas, J., dissenting) (citation modified). "This interest is magnified when the offense is of a heinous nature." *Id.* (citation modified).

It has been about 40 years since Pizzuto murdered Berta and Del Herndon by tying them up and bludgeoning them to death with a hammer "just for the sake of killing." *Pizzuto III*, 146 Idaho at 723, 202 P.3d at 645. It has been even longer since Pizzuto murdered Jon Jones by shooting him in the face at near point-blank range. *See Washington v. Pizzuto* ("*Pizzuto I*"), 778 P.2d 42, 43–44 (Wash. App. Div. 1 1989). And it has been even longer since Pizzuto robbed and killed Rita Drury, a grandmother who was babysitting her granddaughter, by binding her hands and feet and brutally assaulting her. *See id*. All four of these murders occurred about a year after Pizzuto was released from prison in Michigan for rape. *Pizzuto v. Arave* ("*Pizzuto II*"), 280 F.3d 949, 969 (9th Cir. 2002), *opinion amended and superseded on other grounds*, 385 F.3d 1247 (9th Cir. 2004).

The public has waited four decades for justice to be served. Plaintiff asks the Court to make them wait longer because he *may* want to pursue additional discovery on irrelevant matters related to ending capital punishment throughout the country. But Pizzuto's victims and the public have waited long enough. Plaintiff agreed to end this case with the current deadlines three months ago. He should be held to that agreement. The public should not be prejudiced any further by Plaintiff's

discovery games. *See also Gem State Roofing, Inc. v. United Components, Inc.*, 168 Idaho 820, 829, 488 P.3d 488, 497 (2021) (explaining that "discovery should not be a game played by lawyers.").

Further, this case likely cannot be resolved before trial because Plaintiff's as applied Eighth Amendment claim is highly fact dependent. His claim asks: (1) if an execution by pentobarbital is sure or very likely to result in superadded pain; and (2) if (a) his proposed alternative (firing squad) is both (i) feasible and (ii) readily implemented, (b) if firing squad in fact significantly reduces a substantial risk of severe pain in comparison to pentobarbital, and (c) if IDOC refused Plaintiff's firing squad proposal without a legitimate penological reason. *Baze v. Rees*, 553 U.S. 35, 50–52 (2008) (plurality). Besides prongs (2)(a) and (2)(c), this test is dependent on facts established by experts. But the parties haven't even disclosed experts. (*But see* Dkts. 20, 22, 42, 43 (designating the case for an expedited track)).

The victims of Pizzuto's crimes, the public, and Defendants are prejudiced by continuing discovery. The Court should deny Plaintiff's Motion.

### 3. Plaintiff's request is excessive and improperly attempts to anchor the Court.

When Plaintiff initially asked Defendants to push out discovery for the fifteenth time, he asked for a deadline of December 2, 2025. But in his Motion, he asks for fact discovery to be pushed all the way out to July 2026. That's excessive. Plaintiff is trying to manufacture a false compromise position by asking for a year when even he thinks three months is enough. Plaintiff's requested timeframe is nothing more than an attempt to anchor the Court into thinking three months is reasonable in comparison to a year. Just as anchoring is improper when used to inflate a damage award, Plaintiff's tactics should not be rewarded here. *See Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *as amended* (Dec. 22, 1995), *cert. granted*,

*judgment vacated on other grounds sub nom. Consorti v. Owens-Corning Fiberglas Corp.*, 518 U.S. 1031 (1996) (explaining that anchoring tactics like "specifying target amounts for the jury to award [are] disfavored" because these "suggestions anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence.").

Plaintiff has not demonstrated good cause to extend this case any longer. If the Court disagrees, it should not extend discovery any more than thirty days. This is enough time for all of Plaintiff's identified discovery "issues" to be resolved while still moving this case towards trial.

**4. If the Court modifies the scheduling order, it should also extend the time between the parties' expert disclosures.**

Defendant's expert disclosures are currently due six days after Plaintiff's disclosures. While Defendants originally agreed to this timeframe, they no longer believe that this timeframe provides their experts with adequate time to prepare their reports in response to what Plaintiff's experts may opine. The six-day turnaround also does not provide Defendants with adequate time to locate experts to respond to unforeseen opinions. Accordingly, Defendants request that if the Court modifies the scheduling order to extend discovery, it also modify other deadlines as follows:

- Plaintiff's expert disclosures due on the same day as the discovery deadline (same comparative timeframe as now).
- Defendant's expert disclosures due 45 days after Plaintiff's disclosures.
- Plaintiff's rebuttal expert disclosures due 14 days after Defendants' disclosures (same comparative timeframe as now).
- Expert discovery deadline 30 days after Plaintiff's rebuttal deadline (14 days later than the current comparative deadline)
- Dispositive motion deadline 30 days after expert witness deadline (5 days later than the current comparative deadline)

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 12**

These timeframes provide the parties with adequate time to disclose experts, respond to each other's experts, and to potentially file dispositive motions. Plaintiff is not prejudiced by these disclosures because the modifications do not negatively impact his case or ability to prepare for trial. Without these modifications, Defendants cannot adequately respond to Plaintiff's expert witnesses' claims in compliance with Federal Rules of Civil Procedure or Federal Rules of Evidence.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's Motion. Alternatively, if the Court modifies the scheduling order, it should only push the discovery deadline out 30 days (October 2, 2025) and modify the other deadlines as follows:

- Plaintiff's expert disclosures due on the same day as the discovery deadline, October 2, 2025 (same comparative timeframe as now).

- Defendant's expert disclosures due 45 days after Plaintiff's disclosures: November 17, 2025.[7]

- Plaintiff's rebuttal expert disclosure due 14 days after Defendants' disclosures (same comparative timeframe as now): December 1, 2025.

- Expert discovery deadline 30 days after Plaintiff's rebuttal deadline (14 days later than the current comparative deadline): December 31, 2025

- Dispositive motion deadline 30 days after expert witness deadline (5 days later than the current comparative deadline): January 30, 2026.

---

[7] 45 days ends on a Sunday. Under Fed. R. Civ. P. 6(a)(1), the deadline would continue to run to the following Monday.

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 13**

Respectfully submitted this 27th day of August, 2025.

        MOORE ELIA KRAFT & STACEY, LLP

        */s/ Tanner J. Smith*
        Tanner J. Smith
        Attorneys for Defendants

        OFFICE OF THE ATTORNEY GENERAL

        */s/ Kristina M. Schindele*
        Kristina M. Schindele
        Deputy Attorney General
        Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of August, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Jonah J. Horwitz<br>Christopher M. Sanchez<br>Federal Defender Services of Idaho<br>702 W. Idaho St., Ste. 900<br>Boise, Idaho 83702<br><br>Stanley J. Panikowski<br>Sarah E. Kalman<br>DLA Piper LLP<br>401 B St., Ste. 1700<br>San Diego, CA 92101<br><br>*Attorneys for Plaintiff* | ☐ U.S. Mail, postage prepaid<br>☐ Hand Delivered<br>☐ Overnight Mail<br>☐ Facsimile Transmission<br>☒ E-Mail: Jonah_horwitz@fd.org, Christopher_m_sanchez@fd.org, stanley.panikowski@dlapiper.com |

*/s/ Sara Yerby*
Sara Yerby

**OPPOSITION TO PLAINTIFF'S MOTION TO MODIFY SCHEDULING ORDER - 15**