RAÚL LABRADOR
ATTORNEY GENERAL

Karin Magnelli (ISBN 6929)
Lead Deputy Attorney General
Kristina M. Schindele (ISBN 6090)
Deputy Attorney General
Idaho Department of Correction
1299 North Orchard St., Suite 110, Boise, Idaho 83706
Telephone: (208) 658-2094; Facsimile: (208) 327-7485
kmagnell@idoc.idaho.gov; krschind@idoc.idaho.gov

Michael J. Elia (ISBN 5044)
Special Deputy Attorney General
Tanner J. Smith (ISBN 12245)
MOORE ELIA KRAFT & STACEY, LLP
Post Office Box 6756, Boise, Idaho 83707
Telephone: (208) 336-6900; Facsimile: (208) 336-7031
mje@melawfirm.net; tanner@melawfirm.net

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRIC COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD R. PIZZUTO, | Case No. 1:21-cv-359-BLW |
| Plaintiff, | |
| vs. | **REPLY IN SUPPORT OF MOTIONS FOR PROTECTIVE ORDER, TO QUASH, AND TO CLAWBACK, DESTROY, AND PROHIBIT DISSEMINATION OF IDOC'S PRISON BLUEPRINTS** |
| BREE DERRICK, et al., | |
| Defendants. | **(Dkts. 211, 224)** |

COME NOW Defendants, by and through their undersigned counsel, and hereby submit their Reply in support of Dkts. 211 and 224 as follows:

## ARGUMENT

**1. Prison blueprints are too dangerous to be in Plaintiff's counsel's possession.**

Plaintiff agrees that possession of IDOC's prison blueprints outside of IDOC "implicate[s] legitimate security concerns." (Dkt. 228, p. 4). These types of documents "can be used to identify

potential escape routes and ways for contraband (including weapons) to be smuggled into IDOC's institutions." (Decl. Derrick, ¶ 4 (Dkt. 213)). "These materials identify IDOC's site-specific security measures and detail the security operations of the institutions." (*Id*.). "The materials also identify communication and surveillance systems used at the facilities." (*Id*.). "The materials can also be used to identify the strength of the construction materials used in the facilities." (*Id*.). "The materials also show ventilation ducts, potential crawl spaces, and potential other pathways that can be used to move throughout the facilities." (*Id*.). "The materials can also be used to determine what is and is not captured by IDOC's security cameras." (*Id*.).

That is why courts, states, and Congress uniformly prohibit anyone who is not part of prison administration from obtaining prison blueprints. (*See* Dkt. 212, pp. 7, 11–18 (collecting sources)). Plaintiff does not contest the nationwide consensus on this point. He even agrees that he should not be allowed to access the documents. (Dkt. 228, p. 4). But he argues that his counsel should. That cannot be permitted.

Plaintiff does not argue that the security and safety risks are minimized by his counsel's possession of the documents. He just says that entering attorney's eyes only protections over the materials "would address the risks animating the … [cases] cited by Defendants, which [(he says)] involved pro se prisoners." (Dkt. 228, p. 4). But he does not explain how that "addresses" the risks.

A bar card does not equate to security clearance. Courts have recognized this by prohibiting *represented* inmates from obtaining prison blueprints. *See Rhoads v. Miller*, No. 07-CV-306-D, 2008 WL 11411510, at *2 (D. Wyo. July 28, 2008); *Procunier v. Super. Ct.*, 110 Cal. Rptr. 531, 531 (Cal. App. 1st Dist. 1973), *disapproved of on other grounds by Shepherd v. Super. Ct.*, 550 P.2d 161 (Cal. 1976); *Rosario v. New York*, 805 N.Y.S.2d 498 (Ct. Cl. 2005); *Ohio v. Sanders*, No. C-960253, 1998 WL 212756, at *3 (Ohio App. 1st Dist. May 1, 1998), *aff'd*, 750 N.E.2d 90

(Ohio 2001). While Defendants cited these cases (Dkt. 212, pp. 12–14), Plaintiff overlooks them.

Plaintiff is also silent about IDOC's consideration of his request. The Director has already assessed whether Plaintiff's counsel can possess the materials under a protective order: determining that they cannot. (Dkt. 213, p. 3). The Director determined "that this material cannot be disclosed to Mr. Pizzuto or his counsel because such disclosure would create serious security and safety risks to IDOC, its staff and residents, and the public at large." (*Id*. ¶ 7). The Director "also considered whether providing the material to Mr. Pizzuto's counsel under a protective order negates those serious security and safety risks." (*Id*. ¶ 8). The Director determined that "that these safety and security risks are not minimized by providing the material to Plaintiff or his counsel under a protective order." (*Id*.).

The Supreme Court established that courts are "ill equipped to deal with the difficult and delicate problems of prison management," so courts "afford[] considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world." *Thornburgh v. Abbott*, 490 U.S. 401, 407–08 (1989). IDOC has determined that Plaintiff's counsel's possession of the material—even with attorney's eyes only protections—creates unacceptable safety and security risks. *See also Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (explaining that prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices" about institutional security). Because IDOC has assessed Plaintiff's request and determined it would create unacceptable security and safety risks, the Court should order return, destruction, and non-dissemination of the materials.

The security and safety risks are further established by the conduct of counsel for both parties. As discussed in Dkts. 217-1 and 219, Plaintiff's counsel recently published information learned at an attorney's eyes only deposition. While Defendants initially thought this was a

mistake, Plaintiff countered by saying that it was intentional and made clear that they have differ-

ing opinions on what type of protections "attorney's eyes only" designations provide. (*See* Dkt.

220). This further establishes IDOC's assessment that Plaintiff's counsel's possession of the ma-

terials creates serious safety and security risks.

Defendants' counsel's recent error also establishes the risk. During their efforts to alert the

Court of the pending issue, Defendants' counsel mistakenly published a link to the prison blue-

prints. (*See* Dkt. 227-1 (describing the mistake)). Luckily, this mistake was discovered quickly and

is in the process of being corrected, but it further establishes the security risks present where attor-

neys possess the documents. The security risks are so significant that Mr. Smith and Mr. Elia have

destroyed the documents in their possession. (10th Decl. Smith, ¶ 6).

Possession of the material by Plaintiff's counsel—even with attorney's eyes only protec-

tions—creates unacceptable safety and security risks. The Court should order Plaintiff and his

counsel to return, destroy, and not disseminate or use the materials, and prevent him from attempt-

ing to obtain these types of materials in the future.

## 2.  Plaintiff does not genuinely contest Defendants' privilege arguments.

Defendants made two privilege arguments: (1) that the consensus of state and federal law

establishes a privilege under Federal Rule of Evidence 501; and (2) the state secrets privilege.

Plaintiff does not legitimately dispute Defendants' arguments on either basis.

The Court can identify a privilege under Rule 501 based on reason and experience as es-

tablished by the policy decisions of the states. *Jaffee v. Redmond*, 518 U.S. 1, 13 (1996). Privileges

can also be based on the policy decisions of Congress. *See* Fed. R. Evid. 501 (identifying federal

statutes as basis governing privilege). Defendant identified a consensus between the states and the

federal government protecting prison blueprints from disclosure. (Dkt. 212, pp. 15–16 (collecting

sources)). There is also a consensus throughout the judiciary. (*Id.* pp. 11–14 (collecting state and federal cases holding that prison blueprints are protected from disclosure)). Plaintiff only addresses the judiciary's determination that these materials are not discoverable. Plaintiff does not address the consensus of the states combined with the protections provided by Congress. Because it is "appropriate to treat a consistent body of policy determinations by state legislatures as reflecting both 'reason' and 'experience'" for Rule 501, and there is an undisputed consensus, the Court should recognize the privilege protecting prison blueprints under Rule 501. *Jaffee*, 518 U.S. at 13.

The state secrets privilege also protects the materials. Plaintiff argues that the state secrets privilege does not apply because Defendants did not "identif[y] any 'military matters' or 'international relations' at issue." (Dkt. 228, p. 6). But Plaintiff overlooks the other basis for the privilege: "where disclosure would be inimical to national security." *Fazaga v. Fed. Bureau of Investigation*, 124 F.4th 637, 655 (9th Cir. 2024). National security was the main basis of Defendants' argument. Plaintiff did not address Defendants' argument. *See Pfaender v. Town of Sahuarita*, 656 F. Supp. 3d 912, 923 (D. Ariz. 2023) ("The Court will not manufacture a party's arguments for them." (citing *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003)); *accord Cordon v. Wachovia Mortg.*, 776 F. Supp. 2d 1029, 1040 (N.D. Cal. 2011)). Because it is undisputed that allowing Plaintiff or his counsel to possess IDOC's prison blueprints would be inimical to national security, the Court should protect the blueprints under the state secrets privilege.

IDOC's prison blueprints and schematics are privileged and not subject to disclosure.

**3.  Plaintiff confuses the elements of his claim to argue that the material is relevant.**

Plaintiff argues that the material is relevant because his complaint contains allegations about visibility. But allegations are not relevant unless they are *material* to a claim. Fed. R. Evid. 401(b) (relevant evidence are only facts that are "of consequence in determining the action").

Here, Plaintiff made an *as applied* Eighth Amendment method-of-execution claim challenging the use of pentobarbital at his execution. (Dkt. 153, p. 17). Plaintiff labelled his claim: "The Use of Pentobarbital at Mr. Pizzuto's Execution Violates the Eighth Amendment." (*Id*.); *see also Brown v. Pocatello*, 148 Idaho 802, 809–10, 229 P.3d 1164, 1171–72 (2010) (explaining that Rule 8 "requires more than a naked recitation of facts from which a hyper-vigilant attorney could possibly foresee the possibility of a given cause of action. A plaintiff cannot, in his complaint, paint us a picture of a four-legged animal with fur and a tail labeled 'cat' and then assert at summary judgment that the picture depicts a dog."). Plaintiff's claim is governed by the *Baze-Glossip-Bucklew* test, which asks if Plaintiff's alleged unique medical conditions will have adverse effects with pentobarbital, which in turn, makes pentobarbital sure or very likely to result in superadded pain in comparison with firing squad. *Glossip v. Gross*, 576 U.S. 863, 877 (2015).

What is seen at the execution is not material to Plaintiff's legal claim. Plaintiff has not actually argued that it is or identified any authority to support a contention that it may be. Instead, he suggests that it *may* be relevant to facts related to a claim that he has *not* made—which would be under the First Amendment. *See Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81 (D. Ariz. 2022) (explaining that the party seeking discovery bears the burden of satisfying Rule 26(b)'s relevancy requirement). Plaintiff's suggested relevancy does not satisfy Rule 26(b)'s discoverability requirements. Because blueprints are not relevant to Plaintiff's actual, stated claim, the blueprints are not subject to disclosure.

### 4.  Even if visibility was relevant, a site inspection satisfies Plaintiff's needs, if any.

IDOC has agreed to allow Plaintiff's counsel to inspect F Block after renovations are completed. Courts have determined that this is a reasonable alternative. *E.g., Rosario v. New York*, 805 N.Y.S.2d 498, 500 (Ct. Cl. 2005) (state allowed site inspection); *Manriquez v. Huchins*, No. 1:09-

CV-00456-OWW, 2011 WL 3290165, at *20 (E.D. Cal. July 27, 2011) (inmate was familiar with room); *Scott v. Palmer*, No. 1:09-CV-01329-SKO PC, 2015 WL 1637781, at *4 (E.D. Cal. Apr. 13, 2015) (inmate was familiar with the room).

Plaintiff argues that Defendants' offered site inspection is not "workable." He argues that because the Court's discovery deadline ends before construction may be completed, any such inspection would be "useless." His contentions overlook IDOC's express agreement.

IDOC has agreed to let Plaintiff's counsel inspect the facility after construction regardless of any deadline in this case. Thus, if he learns of a potential problem with "visibility," he can assert it. Such claim would be separate from the claim made in this lawsuit. Regardless, Plaintiff has not identified any basis to think that the execution chamber's layout will be unconstitutional. So the discovery deadlines here (in a case challenging the use of pentobarbital) does not give him a basis to contend that the site inspection would be "useless" to test the issues raised in this litigation.

Plaintiff's contentions also confuse proportionality. It is undisputed that states, courts, and Congress have determined that providing access to prison blueprints is not permissible and otherwise unduly burdensome. (Dkt. 212, pp. 11–18 (collecting sources)). This is true regardless of an alternative offered. IDOC was not required to offer the alternative in the first place. The Court should not turn IDOC's professional courtesy into a basis for requiring production or possession of the blueprints.

**5.  Plaintiff acknowledges that he tried to circumvent IDOC's objection.**

Plaintiff concedes that instead of litigating the propriety of IDOC's objection to his blueprint request, he filed third-party subpoenas, facially tailored to discover communications between IDOC and the state's contractors, months later to try and obtain the objected-to IDOC's blueprints. This is improper on many levels. (*See* Dkt. 212, pp. 8–9).

Plaintiff tries to overcome these procedural improprieties by saying that he originally requested the material from IDOC. While he did send an *informal* request to IDOC, he overlooks that IDOC objected to the request, and he never disputed that objection. That cannot be used as a basis to claim that he was in the right for using third-party subpoenas facially tailored to communications to try and obtain prison blueprints. The proper procedure was for him to meet and confer with Defendants or otherwise move to compel. But he did not do that.

**6.  The Court can order return, destruction, and non-dissemination of the materials.**

In Dkt. 224-1, Defendants identified six bases for the Court to order the return, destruction, and non-dissemination of the materials: Rule 26(c), the Court's inherent authority, the All Writs Act, Rule 65, and Rule 26's and 45's Mandatory Clawback Provisions. Plaintiff does not genuinely dispute that each of these provisions provides a separate, independent basis for relief.

Plaintiff's main contention is that the material is not privileged, so, he says, the Mandatory Clawback Provisions are inapplicable. Fed. R. Civ. P. 26(b)(5)(B); Fed. R. Civ. P. 45(e)(2)(B). He is wrong. As stated, Plaintiff has not addressed Defendants' privilege arguments. (*Supra* § 2). Because there is a consensus of state (and federal) laws protecting the material, and courts uniformly protect the material, the materials are privileged under Rule 501. *Jaffe*, 518 U.S. at 13. And because disclosure of the material would be "inimical to national security," *Fazaga*, 124 F.4th at 655, the state secrets privilege also applies. Plaintiff even agrees that the material implicates "legitimate security concerns." (Dkt. 228, p. 4). Because the materials are privileged, they are subject to the Mandatory Clawback Provisions.

Plaintiff's other arguments also fail. Plaintiff does not dispute that Rule 26(c) gives the Court "substantial latitude to fashion protective orders," or that the Court can be as "inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule."

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002). He also does not dispute that the Court can order the return and destruction of materials obtained through the litigation process, including discovery. *Cahill v. Insider Inc.*, 131 F.4th 933, 938 (9th Cir. 2025) (explaining that courts have the power to order return and destruction of materials). Under these powers, the Court can order the return, destruction, and non-dissemination of the materials because neither Plaintiff nor his counsel should be in possession of the materials, and they used the discovery process to obtain them.

Plaintiff tries to distinguish *Cahill* for involving material produced under a protective order. But his contentions are misplaced. Plaintiff provides no authority to support his contention that the Court's power is limited to material obtained under an existing protective order. The Supreme Court has long held that the Court has authority "to correct that which has been wrongfully done by virtue of its process." *Arkadelphia Milling Co. v. St. Louis S.W. Ry. Co.*, 249 U.S. 134, 146 (1919). Where a party obtains confidential materials through the Court's discovery processes, the Court can undoubtably fix that wrong regardless of why it occurred.

Plaintiff also does not genuinely dispute Defendants' injunction argument. He does not contest the merits of any of Defendants' arguments. Instead, he incorrectly argues that injunctions are limited to preserving the "status quo." (Dkt. 228, p. 10). But he overlooks that a mandatory preliminary injunction can be entered under Rule 65 to require a party to take action—like returning, destroying, and ordering non-dissemination of material. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (describing mandatory injunctions). Plaintiff also overlooks that maintaining the status quo is accomplished by returning the materials because neither he nor his counsel were ever supposed to obtain the materials. Thus, to return to the status quo and to otherwise protect security and safety, the Court should enter an injunction requiring the return, destruction,

and non-dissemination of the material.

**7. Plaintiff's mootness contentions are beside the point.**

Plaintiff contends that the issue is moot with respect to the two responding contractors because they responded to the subpoenas. But that does not prevent the Court from ordering claw-back, destruction, and non-dissemination under Defendants' identified authorities. *E.g., Cahill*, 131 F.4th at 938.

**8. Defendants are agreeable to modification of the subpoenas so long as blueprints and similar documents are excluded from the scope, the material is confined to communications about F Block, and IDOC can oversee the process.**

Plaintiff alternatively argues that the subpoenas should be modified to be confined to F Block and not require production of IDOC's prison blueprints, schematics, and specifications. Defendants are agreeable to this. But to ensure that no confidential material is disclosed (particularly because Plaintiff did not alert IDOC when he received the documents or that he was going to move to compel production of prison blueprints), Defendants request that they be the intermediary for this process. Under such, the contractors provide the material to Defendants, and Defendants then inspect the material and thereafter send it to Plaintiff. If Defendants believe anything should be held back, they will create a privilege log sufficiently identifying the reasoning for such. If Plaintiff contests the objection, Plaintiff can move to compel or for in camera review.

## CONCLUSION

The Court should order the return, destruction, non-dissemination, and non-use of the challenged materials.

Respectfully submitted this 10th day of September, 2025.

MOORE ELIA KRAFT & STACEY, LLP

*/s/ Tanner J. Smith*
Tanner J. Smith
Attorneys for Defendants

OFFICE OF THE ATTORNEY GENERAL

*/s/ Kristina M. Schindele*
Kristina M. Schindele
Deputy Attorney General
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of September, 2025, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jonah J. Horwitz
Christopher M. Sanchez
Federal Defender Services of Idaho
702 W. Idaho St., Ste. 900
Boise, Idaho 83702

☐ U.S. Mail, postage prepaid
☐ Hand Delivered
☐ Overnight Mail
☐ Facsimile Transmission
☒ E-Mail: Jonah_horwitz@fd.org, Christopher_m_sanchez@fd.org, stanley.panikowski@dlapiper.com

Stanley J. Panikowski
Sarah E. Kalman
DLA Piper LLP
401 B St., Ste. 1700
San Diego, CA 92101

*Attorneys for Plaintiff*

/s/ Sara Yerby
Sara Yerby