UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR., <br><br> Plaintiff, <br><br> v. <br><br> BREE DERRICK, Director, Idaho Department of Correction, in her official capacity; TIMOTHY RICHARDSON, Warden, Idaho Maximum Security Institution, in his official capacity; LIZ NEVILLE, Chief of Prisons, Idaho Department of Corrections, in her official capacity, <br><br> Defendants. | Case No. 1:21-cv-00359-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court are Plaintiff's Motion for Leave to Depose Josh Tewalt and to Compel the Removal of Redactions from the Certificate of Analysis (Dkt. 241), Defendants' Motion to Seal Dkts. 207-1 and 207-4 (Dkt. 217), and Plaintiff's unopposed Motion to Seal Two Deposition Transcripts (Dkt. 239). The Court will grant leave to depose Mr. Tewalt and require the removal of the Certificate of Analysis redactions, but the Order will be stayed for the time being. As far as the motions to seal, the Court will keep most of the materials temporarily sealed and give the parties fourteen days to make any additional confidentiality designations.

# BACKGROUND

Plaintiff Gerald Ross Pizzuto, Jr., brought this action in September 2021 to challenge the Idaho Department of Corrections' plan to execute him with pentobarbital. The past several years have been consumed with discovery disputes, largely centering on Pizzuto's efforts to obtain potentially sensitive information about the IDOC's lethal drugs. In the meantime, Idaho adopted the firing squad as the default method of execution, and that policy is set to go into effect on July 1, 2026. Lethal injection will remain the backup method if the firing squad is unavailable. Executions have been paused since May 2025 due to the renovation of the IDOC's execution facilities. In the meantime, discovery has continued in the present matter and is currently set to close on December 1, 2025.

# ANALYSIS

As a threshold matter, Defendants contend that the case is moot because the firing squad is now the default method of execution in Idaho. In addition to contesting Pizzuto's discovery requests on this basis, Defendants recently filed a motion for summary judgment, which is not yet ripe. Dkt. 244. Pizzuto argues that this case should instead be stayed while the IDOC renovations are underway, though he asks the Court to nonetheless issue a decision on the present discovery issues. Dkt. 246, 247. In the interest of judicial efficiency, and given that lethal injection remains an authorized method of execution, the Court will rule on the

discovery disputes but stay the present Order until the motion for summary judgment is resolved. Therefore, the current issues will be analyzed within the Court's established framework for discovery disputes.

1. **Deposition of Josh Tewalt**

Pizzuto first seeks leave to depose former IDOC Director Josh Tewalt. The parties' Discovery Plan (Dkt. 41) allows for five depositions per side, and Pizzuto has already reached this limit. Defendants consented to one additional deposition—of current IDOC Director Bree Derrick—but oppose the deposition of Mr. Tewalt.

Rule 30(a)(2)(A)(i) creates a presumptive limit of 10 depositions per side. Because Pizzuto stipulated to a lower number, the Court considers his request in light of both Rule 16(b)(4)'s standard for modifying a scheduling order, which requires the moving party to show "good cause," and the factors set out in Rule 26(b)(2). *See White v. Gerardot*, No. 1:05-cv-382, 2007 WL 608461, at *1 (N.D. Ind. Feb. 22, 2007). The Rule 26(b)(2) factors are:

> whether: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

*Thykkuttathil v. Keese*, 294 F.R.D. 597, 600 (W.D. Wash. 2013).

MEMORANDUM DECISION & ORDER - 3

Each of these factors weighs in Pizzuto's favor. First, the discovery is not cumulative or duplicative due to Mr. Tewalt's central role in Idaho executions from 2018 to 2025, when events key to this litigation occurred. For example, Mr. Tewalt oversaw the failed attempt to execute Thomas Creech in February 2024, and he gave the IDOC staff instructions, now alleged to be improper, that the execution chemicals should be refrigerated. Additionally, Mr. Tewalt has allegedly been the source of inaccuracies in past disclosures, including whether the Central Line Volunteer was previously designated as the Rescue Doctor, Dkt. 183-5 at 3, and the expiration date of the Second Set of Execution Drugs, Dkts. 177-3, 138-6. These misstatements, and other witnesses' testimony about Mr. Tewalt's unique knowledge, indicate that the information sought cannot be obtained from another source.

Second, Pizzuto has not had "ample opportunity" to obtain the information sought. Although he has been diligent in seeking discovery—as evidenced by the numerous motions to compel filed in the past two years—some of the circumstances necessitating Mr. Tewalt's deposition have only recently come to light. Further, Pizzuto has used his limited depositions in a reasonable and strategic fashion, particularly given the delays in the discovery process resulting from Defendants' interlocutory appeal. And, as mentioned above, Pizzuto's attempts to use less intrusive discovery devices, like RFAs, have been insufficient or

**MEMORANDUM DECISION & ORDER - 4**

unsuccessful. It was partly Mr. Tewalt's inaccurate responses to those inquiries that created the need for a more wide-ranging mode of questioning.

Third, the benefit of the discovery outweighs the burden. A deposition is not a terribly strenuous undertaking, and Defendants will have the opportunity to object to any specific questions that could pose an undue burden. Particularly given the importance of Mr. Tewalt's testimony and the high stakes of a method-of-execution case, Pizzuto has shown good cause for the deposition.

Finally, Defendants object to Mr. Tewalt's deposition under the "apex doctrine," which they claim requires "extraordinary circumstances" for the deposition of high-ranking government officials. The doctrine protects high-ranking government officials from the "tremendous potential for abuse or harassment" that comes along with these "apex" depositions. *Apple Inc. v. Samsung Elecs. Co.*, Ltd, 282 F.R.D. 259, 263 (N.D. Cal. 2012). When deciding whether to allow an apex deposition, courts consider "(1) whether the deponent has unique first-hand, non-repetitive knowledge of facts at issue in the case, and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." *Empire Lumber Co. v. Indiana Lumbermens Mut. Ins. Co.*, No. 3:10-CV-00533-REB, 2012 WL 6203722, at *1 (D. Idaho Dec. 12, 2012) (quotation omitted). This is hardly the "extraordinary circumstances" test that Defendants invoke. Indeed, the case cited by Defendants, *In re. U.S. Dep't of Ed.*,

25 F.4th 692 (9th Cir. 2022), is not about apex doctrine, but rather constitutional limitations on the federal judiciary's authority to scrutinize executive actions.

Assuming that apex doctrine applies to Mr. Tewalt, the deposition remains justified. As explained above, Mr. Tewalt has unique first-hand knowledge of important facts related to IDOC execution procedures and execution-related missteps. And for reasons previously stated, Pizzuto has exhausted less intrusive options such as RFAs. Therefore, the Court will grant Pizzuto's request for leave to depose Mr. Tewalt.

### 2. Certificate of Analysis Redaction

Pizzuto next asks the Court to order Defendants to remove the redaction of the "date tested" information on the certificates of analysis. Defendants object based on execution secrecy concerns.

As the Court has previously and repeatedly explained, the IDOC may withhold otherwise discoverable evidence if the information "would, to a reasonable degree of certainty" reveal the identity of the IDOC's lethal drug source. The Ninth Circuit has endorsed this approach. *Pizzuto v. Tewalt*, 136 F.4th 855, 869-71 (9th Cir. 2025). Defendants again ask the Court to adopt a different standard—protecting all information that "could possibly" identify drug suppliers, *see Martin v. Ward*, No. 1:18-cv-4617-MLB, 2021 WL 1186749, at *9 (N.D. Ga. Mar. 30, 2021)—and the Court will again decline. All Defendants need to do to

avoid discovery is to explain how it would lead to the identity of the drug source. But time and time again, Defendants have failed to even attempt to make this showing, instead gesturing vaguely at the dangers of John Oliver's investigative journalism. That appeal is no more persuasive today.

    The Court recognizes that the mosaic of information now acquired by Pizzuto increases the likelihood that he will identify the IDOC's drug supplier. Although the Court has not closely followed his discovery litigation in other jurisdictions, it does raise concerns about the IDOC's ability to protect this sensitive information. But Defendants need to articulate with specificity how the COA redactions, combined with the other information already obtained, will actually allow that identification. Broad concerns about "pulling purchase records for the chemical tested," Dkt. 243 at 18, are insufficient without an explanation of how Pizzuto's knowledge of the testing date would allow him to obtain those records, or even who he would obtain them from. For this reason, and the reasons explained the last time this issue was litigated, *see* Dkt. 123 at 21-23, Defendants have not met their burden.

    Having concluded that the secrecy objection is meritless, the Court turns to the broader analysis of Rule 26(b)(1), which requires that discovery is relevant and proportionate to the needs of the case. Defendants did not assert a relevance objection in response to the discovery request, and the Court agrees that it is

waived. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992). Regardless, as previously noted, the discovery is relevant because "the date on which the chemical testing was performed could theoretically bear on the reliability of the test results or the presence of deleterious intervening conditions." Dkt. 123 at 23. Likewise, the information is proportionate given the nature of Pizzuto's claims about the reliability of the IDOC's lethal drugs.

Accordingly, the Court will order Defendants to remove the redactions to the "date tested" information on the certificates of redaction.

3. **Motions to Seal**

Finally, the Court turns to the Motions to Seal, which concern Docket 207-1, 207-4, and the deposition transcripts of the Central Line Volunteer and Deputy Chief of Prisons Liz Neville. The Court has sealed these materials in the interim while considering the parties' arguments.

First, Defendants argue that Dockets 207-1 and 207-4 should be sealed because they reference facts learned at the deposition of the Central Line Volunteer, which was confidential and attorneys' eyes only. Pizzuto responds that he did not file the transcript itself and the facts referenced are not sensitive.

This dispute appears to hinge on whether all information revealed in the deposition falls under the Protective Order, or only the information so designated by a party. In general, the Protective Order provides, "Any information . . . that is

designated by either Party as CONFIDENTIAL shall not be disclosed to the general public, the press, or news media." Dkt. 81 at 3. For depositions, transcripts are treated as confidential in their entirety for 30 days. *Id.* at 8-9. After that, only portions of testimony so designated by a party remain confidential. *Id.* Additional protections apply to the deposition of the Central Line Volunteer, and that transcript is considered "attorneys' eyes only" for the 30-day period. *Id.* at 9. But even for that deposition, the parties were required to actively make confidentiality designations—either during the deposition or within the 30-day period—for the transcript to remain attorneys' eyes only. *Id.*

When Pizzuto publicly filed Dockets 207-1 and 207-4, the 30-day period had not elapsed. Thus, any reference to information learned at the deposition needed to be filed under seal. At this level, the Court agrees with Defendants' interpretation of the Protective Order. Defendants have been required to produce very sensitive information, and the Protective Order recognizes the high potential harm of public disclosure. Thus, the threshold for sealing material is much lower than the "reasonable degree of certainty" test that the Court has employed for secrecy objections. Pizzuto must abide by these restrictions in any future filings referencing confidential deposition materials.

But the 30-day period has now passed without Defendants making any confidentiality designations. The Court is uncertain whether this is intentional or

MEMORANDUM DECISION & ORDER - 9

reflects a misunderstanding of the Protective Order. To err on the side of caution, the Court will keep Dockets 207-1 and 207-4, as well as the deposition transcript itself (Dkt. 204-2), sealed for the time being. Defendants shall have an additional fourteen days from the date of this order to make any confidentiality designations. The parties shall then submit supplemental briefs of no more than five pages addressing the significance of those confidentiality designations on Defendants' Motion to Seal Dkts. 207-1 and 207-4. Alternatively, the Court encourages the parties to submit a stipulation resolving this matter.

The final request to seal concerns the transcript of the deposition of Chief Neville. Pizzuto filed the transcript under seal because the 30-day period had not yet elapsed. Defendants subsequently submitted their confidentiality designations, Dkt. 242, and Pizzuto then publicly filed a redacted version of the transcript, Dkt. 245-2. Accordingly, the Court will grant the motion to seal the unredacted version of the transcript.

## ORDER

THEREFORE, IT IS HEREBY ORDERED:

1. Plaintiff's Motion for Leave to Depose Josh Tewalt and to Compel the Removal of Redactions from the Certificate of Analysis (Dkt. 241) is **GRANTED**. This Order is **STAYED** pending the Court's ruling on

    Defendants' Motion for Summary Judgment.

2. Defendants' Motion to Seal Dkts. 207-1 and 207-4 (Dkt. 217) is **GRANTED IN PART**.

    a. Within 14 days of the date of this order, any party wishing to designate the transcript, or portions thereof, of the Central Line Volunteer's deposition as CONFIDENTIAL or ATTORNEYS EYES ONLY shall notify the court reporter and all parties, in writing, of the specific pages and lines of the transcript to be so designated.

    b. Within 14 days of the submission of those confidentiality designations, or of the expiration of the deadline for submitting such designations, the parties shall submit simultaneous briefs of no more than 5 pages addressing the significance of those designations.

    c. In the interim, Dkts. 207-1 and 207-4 shall remain **SEALED**.

3. Plaintiff's Motion to Seal Two Deposition Transcripts (Dkt. 239) is **GRANTED IN PART**. The unredacted Transcript of Deposition of Liz Neville (Dkt. 240-2) is **SEALED**. The Transcript of Deposition of Central Line Volunteer (Dkt. 240-1) is temporarily **SEALED** pending the parties' confidentiality designations and supplemental briefing.



DATED: November 18, 2025

B. Lynn Winmill
U.S. District Court Judge