UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR.,<br><br>Plaintiff,<br><br>v.<br><br>BREE DERRICK, Director, Idaho Department of Correction, in her official capacity; TIMOTHY RICHARDSON, Warden, Idaho Maximum Security Institution, in his official capacity; LIZ NEVILLE, Chief of Prisons, Idaho Department of Corrections, in her official capacity,<br><br>Defendants. | Case No. 1:21-cv-00359-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is Defendants' Motion for Summary Judgment (Dkt. 244) and Plaintiff's Motion to Stay Proceedings (Dkt. 247). Oral argument was held on January 5, 2026. As explained further below, the Court will stay the proceedings and defer ruling on summary judgment.

# BACKGROUND

Plaintiff Gerald Ross Pizzuto brought this as-applied Eighth Amendment challenge to Idaho's lethal injection protocol in 2021. At the time, lethal injection was the default method of execution in Idaho, and Pizzuto offered the firing squad

as an alternative, more humane execution method. *See Glossip v. Gross*, 576 U.S. 863, 877 (2015) (requiring a plaintiff bringing a method-of-execution challenge to "identify an alternative that is feasible, readily implemented, and in fact significantly reduces a substantial risk of serious pain" (cleaned up)).

In March 2025, Idaho enacted a law making the firing squad the default method of execution, with lethal injection as the backup. *See* Idaho Code § 19-2716. This means that if the firing squad is "available"—as certified by the Director of the Idaho Department of Corrections—that is the method that must be utilized. Only if the firing squad is unavailable does lethal injection become the method of execution. The law goes into effect on July 1, 2026, and all executions in Idaho are paused while the execution facilities undergo renovations.

## ANALYSIS

Defendants seek summary judgment on the theory that the firing squad legislation has mooted Pizzuto's challenge to the lethal injection.[1] They also argue that the case is unripe because Idaho does not presently have the ability to execute Pizzuto, and there is not an active death warrant for him. Pizzuto seeks to instead stay the proceedings due to lingering uncertainty related to the firing squad.

---

[1] Pizzuto argues that Defendants' should have filed a motion to dismiss under Rule 12(b)(1) rather than a motion for summary judgment under Rule 56. The Court will avoid taking up this dispute because it does not currently bear on the resolution of the underlying issues.

ORDER - 2

### 1. Mootness

"A case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome of the litigation." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011). The burden is usually on the party asserting mootness. *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006). In particular, if the defendant voluntary ceased the challenged conduct, the defendant bears the "burden of establishing that the challenged behavior cannot reasonably be expected to recur." *Brach v. Newsom*, 38 F.4th 6, 12 (9th Cir. 2022).

Despite the above standard, Defendants suggest that Pizzuto bears the burden to show that the case is *not* moot because mootness is based on a legislative change. When a legislature repeals or amends a challenged provision, "we should presume that the repeal, amendment, or expiration of legislation will render an action challenging the legislation moot." *Bd. of Trust. Of Glazing Health & Welfare Trust v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019). Under this doctrine, the Court agrees that the burden would be on Mr. Pizzuto if Idaho had removed lethal injection as a permitted method of execution. But that is not what happened. Lethal injection remains the secondary method, and it is up to the IDOC to determine whether the primary method of firing squad is unavailable. For that reason, the Court will not start from the presumption that the case is moot.

Thus, the correct framework is voluntary cessation, not legislative change, and the burden is on Defendants. The Court takes on good faith Defendants' representation that they do not currently intend to execute Mr. Pizzuto via firing squad. But intentions change. If there are any complications around the firing range, it remains entirely plausible that IDOC could turn to lethal injection again. The completion of the execution facilities renovations should clarify things considerably, and it would be premature to dismiss this case until, at the least, the construction of the firing range is done.

Accordingly, the Court lacks sufficient information, at this juncture, to declare this action moot. Instead, a stay will properly protect Defendants' interests and preserve judicial resources while the work of implementing the firing squad method of execution proceeds.

### 2. Ripeness

Defendants also seek summary judgment on the theory that Pizzuto's case is unripe because he does not have an active death warrant, and they do not presently have the ability to execute him. To support this, they cite the recent Ninth Circuit case *Hogan v. Bean*, 140 F.4th 1001, 1044-45 (9th Cir. 2025), for the proposition that method-of-execution claims are not ripe until there is a death warrant, among other factors. But this overstates *Hogan*'s ruling and obscures several crucial factual distinctions.

In *Hogan*, a habeas petitioner argued that Nevada's lethal drug cocktail constituted cruel and unusual punishment. He brought the claim before the state ever issued a death warrant for him, and the drugs that he challenged were replaced by a new cocktail during the pendency of his action. *Id.* at 1045. Further, Nevada lacked one of the new drugs (ketamine) and was barred from obtaining the one of the old drugs (midazolam) due a lawsuit brought by the drug manufacturer. As a result, the Ninth Circuit held:

> Under the new protocol, "Nevada presently has no execution protocol that it *could* apply." *Floyd*, 949 F.3d at 1152 (emphasis added). Nevada has no usable ketamine, and drug manufacturers have blocked Nevada from purchasing additional midazolam. *See id.* Moreover, Nevada has not issued an execution warrant, so it is premature for us to speculate on any future developments. Thus, we find that Hogan's drug-specific lethal-injection challenge is not yet ripe, and this claim is not justiciable.

*Id.* at 1045.

Here, in contrast, Idaho has already issued death warrants for Mr. Pizzuto—several death warrants in fact, in the four years since this case was filed. And though IDOC does not currently have execution drugs on hand or an active agreement to procure new ones, Idaho does have a lethal injection protocol that it *could* apply. Pizzuto's case is not the pure speculation that characterized *Hogan*; it stems from concrete IDOC policies and actions. Given these factual distinctions, Defendants seek a dramatic extension of *Hogan*, not simply the application of binding precedent.

The Court declines to adopt such an extension because it would make method-of-execution cases impossible to litigate. Imagine that a death row plaintiff did wait for the state to obtain a death warrant before challenging the execution method. If a court found enough cause for concern to stay the execution while developing the factual record, the expiration of the death warrant would render the case unripe and necessitate dismissal. The state would then seek a new warrant, and the plaintiff would file suit again and seek a stay, and the parties would be stuck forever in that revolving door. This is not what the Ninth Circuit mandated in *Hogan*.

In sum, the Court will keep Defendant's Motion for Summary Judgment under advisement while awaiting further developments regarding the firing squad. The Court will stay the proceedings in the interim, except as necessary to resolve the pending motions to seal. The Court will set a status conference for June 2026, shortly before the firing squad law becomes effective.

## ORDER

THEREFORE, IT IS HEREBY ORDERED that:

1. Defendants' Motion for Summary Judgment (Dkt. 244) is **HELD IN ABEYANCE** pending the resumption of executions in Idaho.
2. Plaintiff's Motion to Stay Proceedings (Dkt. 247) is **GRANTED**.

The proceedings are hereby **stayed** except for any actions necessary to resolve the pending motions to seal.

DATED: February 6, 2026

_____
B. Lynn Winmill
U.S. District Court Judge